# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,** | § § § § § § § § § § | |
| *Plaintiffs,* | § | |
| **v.** | § § | **CIVIL ACTION NO. _____** |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND,** in his official capacity as Attorney General of the United States, *and* **STEVEN M. DETTELBACH,** in his official capacity as Director of ATF, | § § § § § § § § § | |
| *Defendants.* | § § | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

1.  Since 1938, when Congress first began regulating firearms "dealers," federal statutes have always recognized the legality of private, unregulated sales by non-dealers. And in 1986, Congress narrowed the definition of "dealer" specifically to make it harder for ATF to pursue private sellers of firearms. But now, with the stroke of the regulatory pen, ATF is flouting this decades-long Congressional direction, seeking to declare countless thousands of Americans unlawfully "engaged in the business," and thereby attempting to implement the very regime that Congress has expressly sought to avoid.

2.   Plaintiffs bring this action seeking a stay of agency action, temporary restraining order, and/or a preliminary injunction to preserve the status quo, followed by a declaratory judgment and permanent injunctive relief restraining Defendants from enforcing a Final Rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives of the U.S. Department of Justice on April 19, 2024, entitled "Definition of 'Engaged in the Business' as a Dealer in Firearms" ("Final Rule"), 89 Fed. Reg. 28968.

3.   While purporting to amend federal regulations to comport with recently amended federal firearms statutes, the Final Rule goes far beyond the subtle change Congress made to the law, subjecting hundreds of thousands of law-abiding gun owners to ***presumptions of criminal guilt*** for all manner of activities relating to the innocuous, statutorily authorized, and constitutionally protected private sale of firearms.

4.   This Court's action is necessary on an urgent basis because, contrary to past practice, Defendants have accelerated the effective date of their latest edict to a mere ***30 days*** from publication in the Federal Register, in an attempt to circumvent timely judicial review.[1] *Cf.* 83 Fed. Reg 66514 (90 days for bump stock rule); 87 Fed. Reg 24652 (120 days for "frame or receiver" rule); 88 Fed. Reg 6478 (120 days for pistol stabilizing brace rule). And so that (once again) hundreds of thousands of Americans are not turned into felons overnight, this Court should administratively stay, temporarily restrain, or preliminarily enjoin the Final Rule pending full review on the merits.

---

[1] What is more, "ATF intends to further update [its] guidance once it issues this final rule." 89 Fed. Reg. at 28971. Plaintiffs are left guessing as to whether this purportedly "final" rule is indeed a final rule at all, or whether ATF will continue to move the goalposts.

5.   The Final Rule was published in the Federal Register on April 19, 2024, and has an effective date of May 20, 2024.

## I.   Jurisdiction and Venue

6.   This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331. This Court has authority to grant the remedy Plaintiffs seek pursuant to 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

7.   Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

## II.   Parties

8.   Plaintiff the State of Texas is a sovereign state of the United States.

9.   Plaintiff the State of Louisiana is a sovereign state of the United States.

10.   Plaintiff the State of Mississippi is a sovereign state of the United States.

11.   Plaintiff the State of Utah is a sovereign state of the United States.

12.   Jeffrey W. Tormey is a firearm owner and a member of Gun Owners of America, Tennessee Firearms Association, and Virginia Citizens Defense League, residing in Amarillo, Texas, within this district. Mr. Tormey is eligible to possess firearms under state and federal law and is an avid gun owner and Second Amendment supporter. Mr. Tormey possesses a large collection of firearms, and over the years has occasionally purchased, traded, and sold various firearms through private sales, in order to enhance his personal collection, as finances allow. Mr. Tormey has never held a federal firearms license and has never been "engaged in the business" of dealing in firearms. Mr. Tormey wishes to continue to engage in this same lawful course of activity, as he has done during his several decades of firearms ownership. Nevertheless, as described further in his declaration, Mr. Tormey reasonably fears that the vague threats and ambiguous definitions in the

Final Rule will be yielded as a weapon against him, in order to threaten and to coerce him into complying with ATF's bureaucratic edict, and forcing him to obtain a license that federal law does not require he obtain. Mr. Tormey fears that, should he continue to engage in this lawful behavior that the statute allows, but which the Final Rule now declares unlawful, he will be subject to administrative action, civil forfeiture, an ATF cease-and-desist letter, or even arrest and criminal indictment. *See* Declaration of Jeffrey W. Tormey.

13. Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business in Springfield, VA. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including tens of thousands within Texas, many of whom reside in this district. As discussed in more detail below, many of these persons, like the individual Plaintiff, are being irreparably harmed by the Final Rule. *See* Declaration of Erich Pratt.

14. Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business in Springfield, VA. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. *See* Declaration of Erich Pratt.

15.   Plaintiff Tennessee Firearms Association ("TFA") has its principal place of business in Nashville, Tennessee. It is organized and operated as a non-profit membership organization under Tennessee law and is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. TFA was formed in 1995 to preserve and defend Second Amendment rights of gun owners. TFA has several thousand members and supporters in Tennessee, along with a number who reside in other states. *See* Declaration of C. Richard Archie.

16.   Plaintiff Virginia Citizens Defense League ("VCDL") is a non-stock corporation with its principal place of business in Newington, Virginia. VCDL is organized and operated as a nonprofit civil league and is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. VCDL has tens of thousands of members and supporters, including within the jurisdiction of this Court, and operates as a nonpartisan, grassroots organization dedicated to advancing the enumerated right to keep and bear arms as guaranteed by the Second Amendment to the U.S. Constitution and Article I, § 13 of the Virginia Constitution. *See* Declaration of Philip Van Cleave.

17.   Defendant United States Department of Justice ("DOJ") is an executive agency within the federal government of the United States. DOJ is headquartered at 950 Pennsylvania Avenue NW, Washington, D.C. 20530. DOJ is the agency responsible for enforcing federal firearms laws.

18.   Defendant Merrick Garland is the United States Attorney General. Attorney General Garland oversees the DOJ. He is sued in his official capacity.

19.   Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a component of the DOJ, and is headquartered at 99 New York Avenue, Washington, D.C. 20226. ATF is

delegated authority to enforce federal gun control laws. *See* 28 U.S.C. § 599A; 28 C.F.R. § 0.130; 18 U.S.C. § 926(a).

20.   Defendant Steven M. Dettelbach is the Director of ATF and is responsible for overseeing the agency's promulgation of the Final Rule challenged herein. He is sued in his official capacity.

## III. Statutory History

### A.   The Federal Firearms Act of 1938 ("FFA")

21.   The notion that one must obtain a license in order to deal in firearms, on pain of criminal penalty, is a thoroughly modern invention. Even so, federal law has defined "dealer" in one form or another for more than 80 years, and only now do Defendants claim that private sales pose a regulatory issue that must be solved through bureaucratic edict.

22.   The FFA first defined a "dealer" of firearms to mean "any person engaged in the business of selling firearms or ammunition…."[2] Congress later repealed the FFA, finding that it "had not provided adequate license fees or proper standards for the granting or denial of licenses and that this had led to licenses being issued to unqualified persons." *United States v. Gross*, 313 F. Supp. 1330, 1332 (S.D. Ind. 1970).

### B.   The Gun Control Act of 1968 ("GCA")

23.   Later recodifying the FFA's definition of "dealer" into the new GCA, Congress defined the term "in somewhat the same manner as that definition appears in [the FFA]." *See* Act of Apr.

---

[2]https://1.next.westlaw.com/Link/Document/Blob/Iab48cdc1d03c11d8a81b00065ba32aee.pdf?t
argetType=us-
statlrg&originationContext=document&transitionType=DocumentImage&uniqueId=831bb52a-
bcba-45a4-a205-
66750d622617&ppcid=856b29ff18984d079a00b1592d4963ea&contextData=(sc.DocLink)

29, 1968, Pub. L. No. 90-351, 1968 U.S.C.C.A.N. 2112, 2201 (to be codified at 18 U.S.C § 921(a)(11)).[3]

24.   As amended, the GCA defined "dealer" to mean "(A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term 'licensed dealer' means any dealer who is licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(11).

25.   Like the FFA, the GCA did not define what it meant to be "engaged in the business." That determination was left to judicial interpretation, which resulted in varying holdings.

26.   In 1979, ATF issued a notice of proposed rulemaking which proposed to define "engaged in the business," on the theory that the phrase was "not defined in the law or the regulations." *See* Definition of the Phrase "Engaged in the Business," 44 Fed. Reg. 75186 (Dec. 19, 1979) (to be codified at 27 C.F.R. pt. 178). But in its 1979 proposed rule, ATF failed to identify a single court that had trouble defining or applying the phrase, despite courts' varying approaches.

27.   To the contrary, ATF's proposal acknowledged that "courts have continually found that the current situation is adequate for enforcement purposes...." *Id.* at 75187.

28.   On March 31, 1980, ATF extended the comment period for 30 days, *see* Definition of the Phrase "Engaged in the Business," 45 Fed. Reg. 20930 (March 31, 1980) (to be codified at 27 C.F.R. pt. 178), but no action was taken thereafter.

---

[3] https://www.westlaw.com/Document/IC70AEF6063EA11D9B7CECED691859821/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0

29.   That is to say, ATF ultimately decided not to define the phrase "engaged in the business," apparently determining the statutory text to be adequate.

## C.   The McClure-Volkmer Firearms Owners' Protection Act ("FOPA")

30.   In 1986, FOPA, Pub. L. No. 99-308, 100 Stat. 449, added a definition of "engaged in the business" to the statute: "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." Firearms Owners' Protection Act, Pub. L. 99-308, 100 Stat. 450. (1986).

31.   FOPA further defined the term "with the principal objective of livelihood and profit" to mean "that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.*

32.   Shortly thereafter, FOPA was amended to clarify that "proof of profit" was not required "as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism." Firearms Owners' Protection Act, Pub. L. No. 99-360, § 1(b), 100 Stat. 766, 766 (1986).

33.   Prior to FOPA's enactment, there was no statutory definition of "engaged in the business." As such, two tests emerged. The majority of circuits followed the test in *United States v. Gross*, which held that "'dealer' means anyone who is engaged in *any* business of selling firearms,

8

and that 'business' is that which occupies time, attention and labor for the purpose of livelihood and profit." *United States v. Gross,* 451 F.2d 1355, 1357 (7th Cir. 1971) (citation omitted). [4]

34. The other test emerged in *United States v. Jackson*, which held that persons are considered to be "engaged in the business of dealing firearms if they have guns on hand or are ready and able to procure them, in either case for the purpose of selling some or all of them to such persons as they might from time to time conclude to accept as customers." *United States v. Jackson*, 352 F. Supp. 672, 674 (S.D. Ohio 1972), aff'd without opinion, 480 F.2d 927 (6th Cir. 1973). *See also United States v. Swinton*, 521 F.2d 1255, 1258 (10th Cir. 1975) (declining to following the holdings in *Gross* and *Day*, the court held that the government is not required to "establish that a person engaged in the business of dealing in firearms make a profit, even though the 'dealing' activity requires time, attention and effort.")

35. By defining the never-before defined "engaged in the business" in FOPA, Congress narrowed the broad and varying tests that emerged from the courts.

---

[4] *See United States v. Van Buren*, 593 F.2d 125, 126 (9th Cir. 1979)(Defendant was willing to trade or sell firearms in profitable transactions and his activity was more than occasional sales); *United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976)("'Business' is commonly understood to mean an activity engaging of some of one's time, attention and effort performed in expectation of profit or other benefit" and "'Dealing in firearms' is commonly understood as selling and/or trading in firearms, as well as acquiring firearms for sale by purchase and/or trades"); *United States v. Huffman*, 518 F.2d 80, 81 (4th Cir. 1975)("…while the government need not prove an actual profit from sales of firearms, it must show a willingness to deal, a profit motive, and a greater degree of activity than occasional sales by a hobbyist" (citing *Gross*)); *United States v. Williams*, 502 F.2d 581, 583 (8th Cir. 1974)("There appears to be little doubt that 'dealer' means anyone who is engaged in any business of selling firearms, and that 'business' is that which occupies time, attention and labor for the purpose of livelihood or profit." (citation omitted); *United States v. Day*, 476 F.2d 562, 567 (6th Cir. 1973) (The district court borrowed the definition of 'engaged in the business' from *Gross* and the Sixth Circuit held "that this definition is an adequate reflection of the plain meaning of the phrase and approve it.").

36.   On October 29, 1986, ATF adopted Temporary Rule, 51 Fed. Reg. 39612, to implement FOPA, and invited comments. Under the Temporary Rule, the phrase "engaged in the business" was defined to mirror FOPA's statutory language. On March 31, 1988, ATF adopted the regulatory definitions with no changes, again apparently deciding that the statutory text was adequate. *See* Commerce in Firearms and Ammunition, 53 Fed. Reg. 10480 (March 31, 1988) (to be codified at 27 C.F.R pts. 72, 178 and 179).

37.   Importantly, as to the definition of "engaged in the business," one commenter had requested "the definition list examples illustrating when a license is required," but *ATF declined to add examples* "since the definition adequately addresses this concern by expressly delineating the activity requiring licensing from that of a firearms collector not subject to licensing." *Id.* at 10481. But as discussed further below, what ATF previously believed to be "adequate" apparently is no longer so.

### D.   The Bipartisan Safer Communities Act ("BSCA")

38.   For several decades—from FOPA's addition of definitions in 1986 until enactment of BSCA in 2022—18 U.S.C. § 921(a)(21)(C) has stated, in part, that "engaged in the business" meant "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business **with the principal objective of livelihood and profit** though the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby or who sells all or part of his personal collection of firearms."

39.   Further, 18 U.S.C. § 921(a)(22) previously defined the term "with the principal objective of livelihood and profit" to mean the "intent underlying the sale or disposition of firearms is

predominantly one of **obtaining livelihood and pecuniary gain**, as opposed to other intents, such as improving or liquidating a personal firearms collection…."

40.  But in 2022, the BSCA amended this definition of "engaged in the business" as it pertained to dealers, replacing Section 921(a)(21)(C)'s phrase "with the principal objective of livelihood and profit" with the phrase "to **predominantly earn a profit**…."

41.  Due to that tweak in terminology, 18 U.S.C. § 921(a)(22) was also amended to define "to predominantly earn a profit," replacing the language "obtaining livelihood and pecuniary gain" with the singular intent of "obtaining pecuniary gain…."

42.  Thus, the BSCA slightly expanded the definition of "dealer" by removing the word "livelihood." Before BSCA, a person selling a firearm was not a "dealer" unless the sale was part of the person's "livelihood." In other words, if a person did not sell firearms, that person's income would significantly decrease. According to ATF, "[t]he BSCA amendments to the statutory definition of 'engaged in the business' and this rule implementing those amendments constitute only **a modest congressional expansion** of the previous FFL licensing requirements." Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28968, 29009 (April 19, 2024) (to be codified 27 C.F.R. pt. 478) (emphasis added).

43.  Under the BSCA, a person selling a firearm is a "dealer" if the sale was predominantly intended to make a profit, provided satisfaction of the remaining statutory elements, **unless** that sale is an "occasional sale[], exchange[], or purchase[] of firearms for the enhancement of a personal collection or for a hobby or … all or part of [a] personal collection of firearms." In other words, even if a person sells a firearm for a profit, he is not a "dealer" if the sale was an occasional sale.

44.  The Final Rule is not consistent with the statutory framework as amended by the BSCA.

45.  On March 14, 2023, following enactment of the BSCA, President Biden issued an Executive Order directing the Attorney General, *inter alia*, to "(i) clarify the definition of who is engaged in the business of dealing in firearms, and thus required to become Federal firearms licensees (FFLs), in order to increase compliance with the Federal background check requirement for firearm sales, including by considering a rulemaking, as appropriate and consistent with applicable law; [and] (ii) prevent former FFLs whose licenses have been revoked or surrendered from continuing to engage in the business of dealing in firearms." 89 Fed. Reg. at 28972.

46.  Purportedly acting pursuant to this directive, the DOJ announced the notice of proposed rulemaking on August 31, 2023, claiming that its proposed revisions "conform[] ATF's regulations to the new BSCA definition and further clarify[] the conduct that presumptively requires a license under that revised definition."[5]

47.  But while some of the proposed revisions in the notice of proposed rulemaking ("NPRM") amended various regulations to mirror the newly enacted federal statutory language, others fabricated entirely new provisions that contravene and effectively nullify the very statutes they claim to implement. Plaintiffs identified these atextual provisions and numerous other defects in their respective public comments to the NPRM. *See* Public Comment of Gun Owners of America, Inc. et al. (Dec. 2023) ("GOA Comment");[6] Public Comment of State Attorneys General (Dec. 7, 2023) ("States' Comment").[7]

---

[5]atf.gov/news/pr/justice-department-proposes-new-regulation-update-definition-engaged-business-firearms

[6]  https://www.gunowners.org/wp-content/uploads/GOA-Comments-to-ATF-on-Definition-of-Engaged-in-the-Business-as-Gun-Dealer.pdf

[7]https://dojmt.gov/wp-content/uploads/Comment-Letter-to-ATF-88-Fed-Reg-61993-Filed.pdf.

## IV. The Final Rule

48.   The Final Rule purports to do two things: (1) implement the BSCA and (2) "provide additional guidance on what it means to be engaged in the business as a 'dealer....'" 89 Fed. Reg at 28973.

49.   However, the Final Rule, for the most part, has nothing to do with the BSCA. Rather, for the most part the Final Rule represents an ATF wish list of how it would like the statute to operate.

50.   The Final Rule revises the existing definitions of *dealer*, *engaged in the business*, and *principal objective of livelihood and profit*. And it adds definitions of *personal collection (or personal collection of firearms, or personal firearms collection)*, *former licensee inventory*, *predominantly earn a profit*, *responsible person*, and *terrorism*.

51.   The definition prior to the effective date of the Final Rule of *dealer* is "[a]ny person engaged in the business of selling firearms at wholesale or retail; any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms; or any person who is a pawnbroker. The term shall include any person who engages in such business or occupation on a part-time basis." 27 C.F.R. § 478.11.

52.   The Final Rule's new definition is: "Any person engaged in the business of selling firearms at wholesale or retail; any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms; or any person who is a pawnbroker. The term shall include any person who engages in such business or occupation on a part-time basis. **The term shall include such activities wherever, or through whatever medium, they are conducted, such as at a gun show or event, flea market, auction house, or gun range or club; at one's home; by mail order; over the Internet (e.g., online broker or**

13

auction); through the use of other electronic means (e.g., text messaging service, social media raffle, or website); or at any other domestic or international public or private marketplace or premises."** (Emphasis added to new part of the definition.)

53.   In relevant part, the definition prior to the effective date of the Final Rule of *engaged in the business* is:

c. DEALER IN FIREARMS OTHER THAN A GUNSMITH OR A PAWN BROKER. A person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such a term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms;

27 C.F.R. § 478.11.

54.   The Final Rule's new definition revises paragraph (c), and adds new paragraph (g):

c. Revised paragraph: *Dealer in Firearms other than a gunsmith or a pawnbroker.* The term "engaged in the business as a dealer in firearms other than a gunsmith or a pawnbroker" shall have the same meaning as in § 478.13.

g. *Related definitions.* For purposes of this definition—

(1) The term "*purchase*" (and derivative terms thereof) means the act of obtaining a firearm in an agreed exchange for something of value;

(2) the term "*sale*" (and derivative terms thereof) means the act of disposing of a firearm in an agreed exchange for something of value, and the term "resale" means selling a firearm,

including a stolen firearm, after it was previously sold by the original manufacturer or any other person; and

(3) the term "*something of value*" includes money, credit, personal property, (*e.g.,* another firearms or ammunition), a service, a controlled substance, or any other medium of exchange or valuable consideration, legal or illegal.[8]

55.   The Final Rule adds the following definition of *personal collection (or personal collection of firearms, or personal firearms collection).*

(1) *General Definition.* Personal firearms that a person accumulates for study, comparison, exhibition (e.g., collecting curios or relics, or collecting unique firearms to exhibit at gun club events), or for a hobby (e.g., noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, historical re-enactment, or noncommercial firearms safety instruction). The term shall not include any firearm purchased for the purpose of resale with the predominant intent to earn a profit (e.g., primarily for a commercial purpose or financial gain, as distinguished from personal firearms a person accumulates for study, comparison, exhibition, or for a hobby, but which the person may also intend to increase in value). In addition, the term shall not include firearms accumulated primarily for personal protection: Provided, that nothing in this section shall be construed as precluding a person from lawfully acquiring firearms for self-protection or other lawful personal use.

---

[8] The Final Rule's preamble further defines some of these terms.  89 Fed. Reg at 28975 n.56.

(2) *Personal collection of licensee.* In the case of a firearm imported, manufactured, or otherwise acquired by a licensed manufacturer, licensed importer, or licensed dealer, the term shall include only a firearm described in paragraph (1) of this definition that was—

(i) Acquired or transferred without the intent to willfully evade the restrictions placed upon licensees under chapter 44, title 18, United States Code;

(ii) Recorded by the licensee as an acquisition in the licensee's acquisition and disposition record in accordance with §§ 478.122(a), 478.123(a), or 478.125(e) (unless acquired prior to licensure and not intended for sale);

(iii) Recorded as a disposition from the licensee's business inventory to the licensee's personal collection or otherwise as a personal firearm in accordance with §§ 478.122(a), 478.123(a), or 478.125(e) (unless acquired prior to licensure and not intended for sale);

(iv) Maintained in such personal collection or otherwise as a personal firearm (whether on or off the business premises) for at least one year from the date the firearm was so transferred, in accordance with 18 U.S.C. 923(c) and 27 C.F.R. 478.125a; and

(v) Stored separately from, and not commingled with the business inventory. When stored or displayed on the business premises, the personal collection and other personal firearms shall be appropriately identified as "not for sale" (e.g., by attaching a tag).

56.   The Final Rule adds the following definition of *Former licensee inventory*: Firearms that were in the business inventory of a licensee at the time the license was terminated. Such firearms differ from a personal collection and other personal firearms in that they were purchased repetitively before the license was terminated as part of a licensee's business inventory with the predominant intent to earn a profit.

57.   The definition prior to the effective date of the Final Rule of *principal objective of livelihood and profit* is: The intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents such as improving or liquidating a personal firearms collection: Provided, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. 27 C.F.R. § 478.11.

58.   The Final Rule's new definition removes the definition of *principal objective of livelihood and profit* and instead adds a definition of *predominantly earn a profit*, but moves it out of § 478.11 (Meaning of Terms) and moves it to the new § 478.13 (Definition of "engaged in the business as a dealer in firearms other than a gunsmith or pawnbroker.").

59.   The Final Rule's addition of § 478.13 (Definition of "engaged in the business as a dealer in firearms other than a gunsmith or pawnbroker") (i) adds a definition of *engaged in the business as a dealer in firearms other than a gunsmith or pawnbroker*, (ii) declares that whether a person is engaged in the business as a dealer in firearms is a "fact-specific inquiry," and (iii) adds *presumptions that a person is engaged in the business as a dealer* that are nowhere to be found in the statute. The new § 478.13 also (iv) adds a definition of *predominantly earn a profit*, (v) adds *presumptions that a person has intent to predominantly earn a profit* that are nowhere to be found in the statute, (vi) adds *conduct that does not support a presumption* that is nowhere to be found in the statute, (vii) adds *rebuttal evidence* that is nowhere to be found in the statute, but then concludes, in a catch-all section, that (viii) *presumptions, conduct, and rebuttal evidence are not exhaustive*.

60.   ATF lists five circumstances in which a person shall be presumed to be engaged in the business of dealing in firearms, 89 Fed. Reg. at 29091, when the person:

(1) Resells or offers for resale firearms, and also represents to potential buyers or otherwise demonstrates a willingness and ability to purchase and resell additional firearms (i.e., to be a source of additional firearms for resale);

(2) Repetitively purchases for the purpose of resale, or repetitively resells or offers for resale, firearms—

(i) Through straw or sham businesses, or individual straw purchasers or sellers; or

(ii) That cannot lawfully be purchased, received, or possessed under Federal, State, local, or Tribal law, including:

(A) Stolen firearms (e.g., 18 U.S.C. 922(j));

(B) Firearms with the licensee's serial number removed, obliterated, or altered, or not identified as required by law (e.g., 18 U.S.C. 922(k) or 26 U.S.C. 5861(i));

(C) Firearms imported in violation of law (e.g., 18 U.S.C. 922(l), 22 U.S.C. 2778, or 26 U.S.C. 5844, 5861(k)); or

(D) Machineguns or other weapons defined as firearms under 26 U.S.C. 5845(b) that cannot lawfully be possessed (e.g., 18 U.S.C. 922(o); 26 U.S.C. 5861(d));

(3) Repetitively resells or offers for resale firearms—

(i) Within 30 days after the person purchased the firearms; or

(ii) Within one year after the person purchased the firearms if they are—

(A) New, or like new in their original packaging; or

(B) The same make and model, or variants thereof;

(4) As a former licensee (or responsible person acting on behalf of the former licensee), resells or offers for resale to a person (other than a licensee in accordance with §§ 478.57 or 478.78)

firearms that were in the business inventory of the former licensee at the time the license was terminated (i.e., license revocation, denial of license renewal, license expiration, or surrender of license), whether or not such firearms were transferred to a responsible person of the former licensee after the license was terminated in accordance with §§ 478.57(b)(2) or 478.78(b)(2); or

(5) As a former licensee (or responsible person acting on behalf of the former licensee), resells or offers for resale firearms that were transferred to the licensee's personal collection or otherwise as personal firearms in accordance with 18 U.S.C. 923(c) and 27 C.F.R. 478.125a(a) prior to the time the license was terminated, unless:

(i)The firearms were received and transferred without any intent to willfully evade the restrictions placed on licensees by chapter 44, title 18, United States Code; and

(ii) One year has passed from the date of transfer to the licensee's personal collection or otherwise as personal firearms.

61.   Shockingly, where ATF declares that whether a person is engaged in the business as a dealer in firearms is a fact-specific inquiry, it also states that "there is no minimum threshold number of firearms purchased or sold that triggers the licensing requirement. Similarly, there is no minimum number of transactions that determines whether a person is 'engaged in the business' of dealing in firearms. For example, **even a single** firearm transaction **or offer** to engage in a transaction, when combined with other evidence (e.g., where a person represents to others a willingness and ability to purchase more firearms for resale), may require a license; whereas, a single isolated firearm transaction without such evidence would not require a license. At all times, the determination of whether a person is engaged in the business of dealing in firearms is based on the totality of the circumstances."89 Fed. Reg. at 29091.

62. Elsewhere in the Final Rule, ATF claims that, under the statute which requires "the repetitive **purchase and resale** of firearms," "**no actual sales** are required…." 89 Fed. Reg. at 29021 (emphases added).

63. Further complicating the matter, ATF lists seven circumstances in which a person shall be *presumed to have intent* to predominantly earn a profit, 89 Fed. Reg. at 29091-92, when the person:

(i) Repetitively or continuously advertises, markets, or otherwise promotes a firearms business (e.g., advertises or posts firearms for resale, including through the Internet or other digital means, establishes a website to offer their firearms for resale, makes available business cards, or tags firearms with sales prices), regardless of whether the person incurs expenses or only promotes the business informally;

(ii) Repetitively or continuously purchases, rents, or otherwise exchanges (directly or indirectly) something of value to secure permanent or temporary physical space to display firearms they offer for resale, including part or all of a business premises, a table or space at a gun show, or a display case;

(iii) Makes and maintains records to document, track, or calculate profits and losses from firearms repetitively purchased for resale;

(iv) Purchases or otherwise secures merchant services as a business (e.g., credit card transaction services, digital wallet for business) through which the person intends to repetitively accept payments for firearms transactions;

(v) Formally or informally purchases, hires, or otherwise secures business security services (e.g., a central station-monitored security system registered to a business, or guards for security) to protect firearms assets and repetitive firearms transactions;

(vi) Formally or informally establishes a business entity, trade name, or online business account, including an account using a business name on a social media or other website, through which the person makes, or offers to make, repetitive firearms transactions; or

(vii) Secures or applies for a State or local business license to purchase for resale or to resell merchandise that includes firearms.

64. ATF is careful to note that the five presumptions that a person is engaged in the business as a dealer, and the seven presumptions that a person has intent to predominantly earn a profit, apply "shall not apply to any criminal case," but in the same sentence ATF goes on to say that the presumptions "may be useful to courts in criminal cases, for example, when instructing juries regarding permissible inferences." § 478.13(h).

65. In other words, the Final Rule offers a 'wink wink, nudge nudge' that courts nonetheless should use these presumptions to aid DOJ in its criminal prosecutions of the many thousands of gun owners now exposed to criminal liability by the Final Rule. *See, e.g.*, 89 Fed. Reg. at 28976 & n.66, 29014.

66. After creating this set of five presumptions that a person is unlawfully engaged in the business, and a separate set of seven presumptions that a person has an unlawful profit motivation, the Final Rule then establishes six categories of conduct that purportedly "may be used to rebut" any of the aforementioned presumptions. 89 Fed. Reg. at 29092.

67. Thus, "[a] person shall not be presumed to be engaged in the business of dealing in firearms when reliable evidence shows that the person is only reselling or otherwise transferring firearms…" (1) as bone fide gifts; (2) occasionally to obtain more valuable, desirable, or useful firearms for the person's personal collection; (3) occasionally to a licensee or to a family member

for a lawful purpose; (4) to liquidate (without restocking) all or part of the person's personal collection; (5) to liquidate firearms (i) that are inherited; or (ii) pursuant to a court order; or (6) to assist in liquidating firearms as an auctioneer when providing auction services on commission at an estate-type auction. 89 Fed. Reg.at 29092.

68.   In stark contrast to the Final Rule's "conduct that does not support a presumption" (89 Fed. Reg.at 29092), the statute provides that a "dealer in firearms … *shall not include* a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added).

69.   Watering down that clear statutory safe harbor, the Final Rule establishes a regime where that conduct only can be "used to rebut" its presumptions by provision of "reliable evidence," rather than accept that the statute clearly and unequivocally provides when a person is *not* a dealer in firearms.

70.   Equally alarming is the Final Rule's creation of "a Catch-22 situation where ATF will *require* a person to obtain a license in order to sell firearms, only then to *deny* that person the very license that ATF demanded be obtained." GOA Comment at 58. Indeed, while alleging scores of gun owners are currently engaging in the business without a license (a willful violation of the GCA), ATF simultaneously "claims that it will 'den[y] a firearms license application … on the basis that the applicant was presumed under this rule to have willfully engaged in the business of dealing in firearms without a license.' " *Id.*

71.  Finally, the Final Rule adds new regulations for an FFL holder to discontinue business (§ 478.57), and requirements for a former licensee whose license proceedings ended in disapproval or termination of his or her license (§ 478.78), neither of which are statutorily authorized.

## V.  Legal Analysis

### A.  The Final Rule violates the APA because it is contrary to statute and exceeds the authority granted by Congress.

72.  The Final Rule revises and adds definitions that are already defined by statute. Indeed, Defendants claim that "the fact that Congress generally defined the term 'engaged in the business' does not mean that the Department lacks the authority to further define that term." 89 Fed. Reg. at 29011.

73.  But ATF only has statutory authority to "prescribe ... such rules and regulations as are *necessary* to carry out the provisions of this chapter." 18 U.S.C. § 926(a) (emphasis added).

74.  "As a general rule of statutory construction, where the terms of the statute are unambiguous, judicial inquiry is complete." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990).

75.  Terms already defined by statute cannot be further defined (i.e., changed) by regulation. Rather, "the need to rewrite clear provisions of the statute should have alerted [ATF] that it had taken a wrong interpretive turn." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).

76.  Because many terms the Final Rule defines—"dealer," "engaged in the business," and "to predominantly earn a profit"—are *already defined by statute*, ATF must accept the congressionally provided definition of these terms.

77.  In the face of congressionally enacted definitions, "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms." *Util. Air Regul. Grp.*, 573 U.S. at 325.

78.  Indeed, as the Supreme Court observed, "[a]gencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always 'give effect to the unambiguously expressed intent of Congress.'" *Util. Air Regul. Grp.*, 573 U.S. at 325-26. For this reason, the Tenth Circuit explained that, "[w]hen the Supreme Court has discussed the exercise of agency discretion 'in the interstices created by statutory silence,' it has done so *only when 'considering undefined terms in a statute....'" Maralex Res., Inc. v. Barnhardt*, 913 F.3d 1189, 1201 (10th Cir. 2019) (emphasis added).

79.  The statute here is far from silent.

80.  ATF disagrees that it must follow the statutory language. "While some commenters reference particular words or phrases *in the statute,* the statutory language must be considered as a whole." 89 Fed. Reg. at 29021 (emphasis added).

81.  The statute specifically defines terms such as "engaged in the business," and it further defines what it means to "predominantly earn a profit." ATF has no authority to "define" (i.e., rewrite) those statutorily prescribed definitions. *See also* GOA Comment at 10 n.12 ("The likelihood of abuse here is hardly speculative. … [With] ATF's definition of a definition of a definition[,] … ATF has taken something unambiguous and made it ambiguous.").

82.  Nor is ATF permitted to provide plain meaning, dictionary definitions for clear and unambiguous statutory terms.

83.  For example, the Final Rule purports to define the term "purchase" (and derivative terms thereof) as "the act of obtaining a firearm in agreed exchange for something of value." 89 Fed. Reg. at 29090.

84.   The Final Rule purports to define the term "sale" (and derivatives terms thereof) as "the act of disposing of a firearm in an agreed exchange for something of value, and the term 'resale' means selling a firearm, including a stolen firearm, after it was previously sold by the original manufacturer or any other person." *Id.*

85.   The Final Rule purports to define the term "something of value" as "money, credit, personal property (*e.g.,* another firearm or ammunition), a service, a controlled substance, or any other medium of exchange or valuable consideration, legal or illegal." *Id.*

86.   ATF has not identified any ambiguity in the terms it purports to define, nor has it explained why a person of common understanding cannot comprehend these simple statutory words.

87.   Even if there was some grievous ambiguity in Congress's statutory definitions, many of the definitions in the Final Rule simply add language, rather than resolve some ambiguity or explain some nuance in greater detail. In fact, many commenters "stated that the rule is arbitrary because it causes the proposed definition of a dealer 'engaged in the business' to be less clear and makes it almost impossible to determine when one is in compliance." 89 Fed. Reg. at 29015. Defendants' only response, that they 'used dictionary definitions and decades of case law' (89 Fed. Reg. at 29016), does not cure these defects.

88.   Even to the extent that some further clarification of the statute was necessary—which it is not—the rule of lenity requires that ambiguous criminal laws be construed in favor of the criminal defendant. *See Cargill v. Garland*, 57 F.4th 447, 469 (5th Cir. 2023); *id.* at 473 (Ho, J., concurring) ("it is not enough to conclude that a criminal statute *should* cover a particular act. The statute must *clearly* and *unambiguously* cover the act."). In other words, the statute must be interpreted so that licensure is *not* required in ambiguous cases. The Final Rule, however, takes the opposite approach.

*See* 89 Fed. Reg. at 29091 (establishing presumptions of required licensure in myriad contexts), 89 Fed. Reg. at 29092 (reducing explicit statutory safe harbors to "rebuttal evidence" for use against its presumptions).

89.   Moreover, *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992), requires the government to apply *one interpretation* of a statute, uniformly, across civil and criminal contexts: "The rule of lenity … is a rule of statutory construction whose purpose is to help give authoritative meaning to statutory language. It is not a rule of administration calling for courts to refrain in criminal cases from applying statutory language that would have been held to apply if challenged in civil litigation." *Id.* at 518 n.10.  *See also Leocal v. Ashcroft*, 543 U.S. 1 (2004).

90.   Accordingly, despite purporting to disclaim use of its presumptions outside "civil and administrative proceedings" (89 Fed. Reg. at 29014), the Final Rule establishes an untenable condition where courts must apply ATF's presumptions of guilt in criminal prosecutions to avoid running afoul of *Thompson/Center*.

91.   The Final Rule is an assertion of authority in excess of what was statutorily granted to ATF by Congress and therefore is invalid.

**B.   The Final Rule violates the APA because it is arbitrary, capricious, an abuse of discretion, and not in accordance with law.**

92.   Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

93.   An agency acts arbitrarily and capriciously when it departs sharply from prior practice without reasonable explanation, or disregards either alternatives to its action or the affected

communities' reliance on the prior rule. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).

94.   The Final Rule purports to interpret the GCA but instead departs from the statute's text.

95.   The GCA's express purpose is not "to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or other lawful activity." Pub. L. No. 90-618, 82 Stat. 1213.

96.   Further, the GCA is "not intended to discourage or eliminate the private ownership or use of firearms for law-abiding purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably needed to implement and effectuate the provisions of this title." Pub. L. No. 90-618, 82 Stat. 1214.

97.   The 'other-than-reasonably-necessary' requirement ensures the GCA does not burden lawful gun owners' rights.

98.   FOPA and BSCA clarified parts of the GCA, but *did not amend* the GCA's other-than-reasonably-necessary requirement.

99.   The Final Rule violates the GCA's letter and spirit.

100. The Final Rule renders anyone that ATF identifies to be selling a firearm for a profit as a person engaged in the business of dealing in firearms.

101. A firearms dealer without the required FFL faces civil, administrative, and criminal consequences.

102. The Final Rule's five "engaged in the business" presumptions and seven "to predominantly earn a profit" presumptions are entirely arbitrary and conflict with statute.

103. The Final Rule's rebuttable evidence is entirely arbitrary and conflicts with statute.

104. First, the idea that there are various actions a person can take which "presumptively" prove that he is unlawfully "engaged in the business" is found nowhere in any of the statutes Congress enacted.

105. In fact, if Congress wanted to enact such presumptions, it is perfectly capable of doing so. *See, e.g.*, 18 U.S.C. § 1469(a) (creating a criminal presumption that obscene material was transported in interstate commerce); 18 U.S.C. § 3142(e)(2) (creating a criminal presumption of pretrial detention if the defendant has been convicted of certain enumerated offenses); 35 U.S.C. § 282(a) ("A patent shall be presumed valid."); 38 U.S.C. § 1118 (creating a civil presumption of service connection for certain illnesses associated with service in the Gulf War for purposes of VA compensation).

106. Thus, with no statutory authority creating or authorizing ATF to create legal presumptions of statutory guilt, the Final Rule fails to even clear the starting gate because ATF simply has no authority to water down the text to make it easier for bureaucrats to harass gun owners.

107. The Final Rule is littered with implications that create civil, administrative, and criminal liability for millions of otherwise law-abiding citizens who merely sell or offer to sell a firearm. Indeed, as Plaintiff GOA originally commented, Defendants' new rule "effectively creates 'attempt' liability out of whole cloth."  GOA Comment at 51; *cf.* 89 Fed. Reg. at 29092 (mere "offers" and "represent[ations]" suffice to be presumed in violation of the GCA). *But see United States v. Hopkins*, 703 F.2d 1102, 1104 (9th Cir. 1983) (emphasis added) ("There is no general federal 'attempt' statute. A defendant therefore can only be found guilty of an attempt to commit a federal offense if the statute defining the offense also *expressly proscribes* an attempt.").

108. The Final Rule also represents a complete reversal of course from its apparent recognition that it lacked authority to create a list of examples illustrating when an FFL is required.

109. The Final Rule goes well beyond any reasonable interpretation of the statute and is therefore arbitrary and capricious and should be set aside because it violates the APA.

## C. The Final Rule violates the APA because it is contrary to constitutional right, power, privilege or immunity.

110. The APA requires agency action be set aside if it is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

111. The Final Rule is contrary to the Fifth Amendment, as discussed *infra*.

112. The Final Rule is contrary to the Second Amendment, as discussed *infra*.

113. The Final Rule contrary to the Fourth Amendment, as discussed *infra*.

114. The Final Rule is contrary to Article I, Sections 1 and 7 of the U.S. Constitution, as discussed *infra*.

115. Thus, the Final Rule is contrary to constitutional rights and powers and should be set aside because it violates the APA.

## D. The Final Rule violates the Fifth Amendment's due process protections and is void for vagueness.

116. Federal criminal laws must "give ordinary people fair warning about what the law demands of them." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

117. Accordingly, a law is void for vagueness where it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).

118. The Final Rule acknowledges that "whether a person is engaged in the business as a dealer under paragraph (a) of this section is a fact-specific inquiry." 89 Fed. Reg. at 29091.

119. It then goes on to explain situations that "may" be indicative of business activity, but states that "there is no minimum threshold number of firearms purchased or sold that triggers the licensing requirement."[9] And "similarly, there is no minimum number of transactions that determines whether a person is 'engaged in the business' of dealing in firearms." *Id.*

120. Most shocking is the example in the Final Rule that states "even a single firearm transaction or *offer* to engage in a transaction" (*i.e.*, without any actual transaction) may require a license. *Id.* (emphasis added).

121. Purporting to address public comments that the Final Rule "is vague or lacks clarity," Defendants simply demur that "[t]his rule cannot possibly describe every potential scenario." 89 Fed. Reg. at 28991. But that is not the concern; rather, Plaintiffs object that the Final Rule's presumptions indiscriminately sweep up a whole host of innocent conduct.

122. Defendants appear to acknowledge that no one can ascertain whether the Final Rule applies to them. For example, ATF begins with the presumption that selling a firearm in like-new condition in the original packaging is dealing in firearms. 89 Fed. Reg at 29032. ATF then appears to limit this to firearms in like-new condition in the original packaging to "within one year after the person purchased the firearms…." 89 Fed. Reg.at 29091. But what ATF gives, it then takes back,

---

[9] On the contrary, as Plaintiff GOA commented, there *is* a minimum number under the statute. *See* GOA Comment at 14 ("If the statute was not clear enough already, in order to be 'engaged in the business' as a dealer in firearms, one must also engage in the '*repetitive* purchase and resale of firearms.' 18 U.S.C. § 921(a)(21)(C) (emphasis added). Of course, repetition means more than once, that is, 'the act or an instance of repeating' something 'such as a push-up' that is 'usually counted.'").

as the Final Rule's preamble states that, "a person who intentionally stockpiles and sells new or like-new firearms, or the same make and model or variants thereof, with an intent to evade the one-year turnover limitation may still be considered to be engaged in the business if the circumstances warrant that determination." 89 Fed. Reg. at 29016. This is just one example of the layer upon layer of hopeless nonsense contained in the voluminous Final Rule, which no ordinary person could hope to understand.

123. The Final Rule also claims that the "presumptions, conduct, and rebuttable evidence [are] not exhaustive." 89 Fed. Reg. at 29092.

124. Perhaps even more confusing is the Final Rule's declaration that "the rebuttable presumptions…shall not apply to any criminal case, although they may be useful to courts in a criminal case." *Id.*

125. This is ATF's obvious attempt to maximize criminal penalties for "engaging in the business" of dealing in firearms, based on a thin set of facts that shifts the burden to the defendant to rebut.

126. Because an ordinary person cannot hope to read the Final Rule and distinguish between the permissible and the impermissible, the Final Rule is contrary to the Fifth Amendment and is void for vagueness.

### E.   The Final Rule violates the Second Amendment.

127. The Final Rule seeks to require an FFL of ordinary gun owners who sell one or more of their personal firearms for a profit, including "money, credit, personal property (*e.g.,* another firearm or ammunition), a service, a controlled substance, or any other medium of exchange or valuable consideration, legal or illegal." 89 Fed. Reg. at 29090.

128. The Final Rule also threatens "presumptions" of guilt for those who engage in perfectly innocent conduct. For example, a person who repetitively sells or offers for sale firearms within one year after purchase if the firearm is new or like-new in its original packaging. 89 Fed. Reg. at 29091. Or a person who repetitively sells or offer for sale firearms within one year after purchase if the firearms are of the same make and model. *Id.*

129. Despite the Final Rule regulating conduct that implicates the Second Amendment of the U.S. Constitution, the only time the Final Rule references the Second Amendment is in response to comments suggesting that it is a violation of the Second Amendment.[10] But in responding to those comments, ATF was not faithful to the Second Amendment's text or the Supreme Court's instruction.

130. The Supreme Court recently clarified the framework for determining the constitutionality of a law or regulation under the Second Amendment in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022).

131. There, the Court explained that, if the Second Amendment "covers an individual's conduct," *any* burden on that conduct is presumptively unconstitutional. *Id.*

132. Defendants can overcome that presumption only by showing the "regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

133. The Final Rule fails to comply with this stringent requirement.

134. In addressing the public's Second Amendment concerns, the Final Rule offered a bewildering constitutional analysis that insisted an unprecedented executive edict compelling gun-

---

[10] The NPRM never mentioned the Second Amendment. *See* GOA Comment at 62.

owner licensure both evades the Second Amendment's plain text and finds support in Founding-era and subsequent tradition. *See* 89 Fed. Reg.at 29002-03. This analysis is wrong on all fronts.

135. First, the Final Rule began by misquoting *District of Columbia v. Heller*, editing out the "longstanding" qualifier from its dicta on "conditions and qualifications on the commercial sale of arms." 89 Fed. Reg. at 29002; *cf. District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). Claiming such dicta controls, the Final Rule maintained that it "raises no constitutional concern under the Second Amendment" at all. 89 Fed. Reg. at 29002. In support, the Final Rule listed out a number of activities that individuals could still do as evidence of the Final Rule's purportedly limited sweep. 89 Fed. Reg. at 29002-03. *But see Heller*, 554 U.S. at 629 (explaining that it is "no answer" to claim that alternate methods of enjoying rights remain available).

136. Next, the Final Rule cited abrogated interest-balancing decisions in further support of its position—namely, "one circuit court" rejecting a facial challenge to GCA licensing in 2016, which claimed licensing is "a crucial part of the federal firearm regulatory scheme," and a 2012 district court decision remarking that, under the GCA, one's "right to buy or sell a firearm is not abridged. It is regulated." 89 Fed. Reg. at 29002 (collecting three cases). These interest-balancing decisions only shed light on courts' previous judgment calls (made prior to *Bruen*), not the original public understanding of the Second Amendment.

137. Following this bizarre detour, the Final Rule finally addressed *Bruen*. At the outset, the Final Rule claimed *Bruen* did nothing to upend *Heller*'s purportedly controlling commercial-sales dicta, *citing concurrences only*. 89 Fed. Reg. at 29002. Next, the Final Rule maintained that it survives review at the plain text, because "the right to 'keep and bear Arms' … is silent as to the commercial sale of firearms" and "courts have agreed" the Second Amendment "does not cover

the commercial dealing in firearms." 89 Fed. Reg. at 29002. But this textual argument is flat wrong, as denying a right to purchase, sell, or otherwise acquire arms necessarily would eviscerate the right to "keep and bear" them. U.S. Const. amend. II.[11]

138. But "[e]ven if, contrary to law, the scope of the Second Amendment's protection extended to commercial dealing in firearms," the Final Rule claimed next that "there is a robust historical tradition supporting the Government's authority to require licenses and inspection of firearms sellers." 89 Fed. Reg. at 29002. In support, the Final Rule posited that it need only show

---

[11] Numerous courts across the country have found that the Second Amendment protects the manufacture, purchase, and/or sale of firearms, ammunition, and related items. *See, e.g., United States v. Hicks*, 649 F. Supp. 3d 357, 359-60 (W.D. Tex. 2023) ("[W]hat the Government is suggesting is absurd in practice. If receiving a firearm were illegal, but possessing or carrying one remained a constitutional right, one would first need to break the law to exercise that right. And if buying (receiving) a gun is not covered by the Second Amendment's plain text, neither would selling one. So according to the Government, Congress could throttle gun ownership without implicating Second Amendment scrutiny by just banning the buying and selling of firearms. What a marvelous, Second Amendment loophole!"); *Lynchburg Range & Training, LLC v. Northam*, 105 Va. Cir. 159, 162 (Lynchburg 2020) (alteration in original) (observing that "the right to keep and bear arms 'includ[es] the otherwise lawful … sale[] or transfer of firearms'"); *Kole v. Village of Norridge*, 2017 U.S. Dist. LEXIS 178248, at *29 (N.D. Ill. Oct. 27, 2017) (quoting Thomas Jefferson) ("Our citizens have always been free to make, vend, and export arms."); *Luis v United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment) (constitutional rights "implicitly protect those closely related acts necessary to their exercise."); *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms."); *Duncan v. Bonta*, 2023 WL 6180472, at *8 (S.D. Cal. Sept. 22, 2023) ("[n]either magazines, nor rounds of ammunition, nor triggers, nor barrels are specifically mentioned in the Second Amendment … But without a right to keep and bear triggers, or barrels, or ammunition and the magazines that hold ammunition, the Second Amendment right would be meaningless.") *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("The right to possess firearms for protection implies a corresponding right to acquire...."); *United States v. Hicks*, 2023 U.S. Dist. LEXIS 35485, at *5 (W.D. Tex. Jan. 9, 2023) ("The clear answer is that 'keep and bear arms' includes receipt."); *Bezet v. United States*, 276 F. Supp. 3d 576, 605 (E.D. La. 2017) (emphasis added) ("the rights of law-abiding, responsible citizens … to acquire" firearms), aff'd, 714 F. App'x 336 (5th Cir. 2017); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them … and to purchase and provide ammunition suitable for such arms....").

"relevantly" similar history, omitting any mention of *Bruen*'s discussion of *distinct* similarity or why the Final Rule's perceived societal ills would qualify for a loosening in analogical stringency. 89 Fed. Reg. at 29002.

139. First, the Final Rule identified a 1794 law that "made it unlawful *for a limited period*" to export weapons from the United States, a far cry from controlling *Americans'* access to arms. 89 Fed. Reg.at 29002 (emphasis added).

140. Second, the Final Rule cited the Ninth Circuit's decision in *Teixeira v. County of Alameda* for the proposition that colonial governments placed "restrictions on the commercial sale of firearms." 89 Fed. Reg at 29003. But the page the Final Rule cited only discussed prohibitions on the provision of arms to Indians (i.e., often-hostile non-citizens). *See Teixeira v. County of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017).

141. Third, the Final Rule cited 1805 Massachusetts and 1821 Maine barrel "proving" laws – hardly akin to licensure in order to sell. 89 Fed. Reg.at 29003.

142. Fourth, the Final Rule cited multiple state laws that regulated the storage of gunpowder for fire safety, which existed to prevent era-specific cataclysmic explosions, not firearms dealing. 89 Fed. Reg.at 29003 & nn.151, 152.

143. Finally, the Final Rule cited just *two* laws from 1875 and 1879 that required licensing of arms dealers, which are too few, too transient, and too distant from the Founding to be relevant. 89 Fed. Reg. at 29003 n.152.

144. Defendants' paltry historical record fails under *Bruen*'s (1) controlling "distinctly similar" standard, (2) "how" and "why" metrics, if this Court were to unnecessarily analogize, (3) requirement of "representative" history (i.e., widespread regulation), and (4) elevation of

Founding-era historical evidence and attendant rejection of subsequent, contrary history. *See generally Bruen*, 597 U.S. 1.

145. Nothing in this nation's historical tradition of firearm regulation required that every firearm seller register for a license with the federal government. That is true even if the sale was for a profit. *See* GOA Comment at 63-66.

146. Indeed, there is no Founding-era history, dating to 1791, of any governmental regulation remotely comparable to the Final Rule.

147. Moreover, the Final Rule greatly alters the legal landscape with respect to firearm licensure. Previously, only those who actually engaged in regular commerce in firearms as a business had to be licensed.

148. Now, every gun owner who innocently sells—or even just *offers* to sell—a few guns from his personal collection, but happens to fall within one or more of ATF's "presumptions," is threatened to obtain a Federal Firearms License or else risk the consequences.

149. All told, the Final Rule will result in tens of thousands (if not hundreds of thousands)[12] of new gun dealers being licensed and subject to all of the GCA's statutory and regulatory controls.

150. Defendants bear the burden of showing that the Final Rule is consistent with history and tradition. *Bruen*, 597 U.S. at 17.

151. If Defendants do not meet their burden, the Second Amendment is violated. *Id.*

---

[12] Indeed, in response to comments taking issue with the NPRM's population methodology, ATF adjusted its estimated affected population to "either 23,006 or 85,954" people. 89 Fed. Reg. at 29072. *But see* GOA Comment at 74 (estimating an affected population of more than 478,000 people).

152. Because Defendants will be unable to meet that burden, the Final Rule violates the Second Amendment, and should be declared unconstitutional and should be enjoined.

## F.   The Final Rule violates the Fourth Amendment's right against unreasonable searches and seizures.

153.  The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

154.  Yet once an individual receives an FFL, ATF reserves the right "to enter during business hours" without a warrant, "the premises, including places of storage, of any … licensed dealer for the purpose of inspecting or examining records, documents, ammunition and firearms." 27 C.F.R. § 478.23(b).

155.  For most forced to obtain an FFL by the Final Rule, this "premises" is the private home.

156.  For most forced to obtain an FFL by the Final Rule, "business inventory" is their personal collection of firearms.

157.  ATF can conduct this inspection without a warrant and entirely without notice.

158.  For individuals who were required by the Final Rule to apply for and receive an FFL so they could sell personal collections (or even one firearm) without being unjustly prosecuted for being "engaged in the business," this warrantless search is a violation of the Fourth Amendment.

159.  Under the Final Rule, the ATF is entitled, at least once per year, to conduct warrantless searches of the homes of, at minimum, tens (if not hundreds) of thousands of firearm owners to inspect their personally owned firearms. *See* 89 Fed. Reg. at 29072 (expecting between "23,006 or

85,954" people to "obtain a license to continue engaging in the business of dealing in firearms in compliance with the rule").

160. Further, because an FFL is required to maintain business hours (so the ATF can "enter during business hours" for inspection, *see* 27 C.F.R. § 478.23(a)), this means the FFL must keep his home open for business *every week* in order to comply with the ATF's regulations. This would be a near-impossible task for someone who is employed outside of their home, and who does not actually intend on carrying on a firearms business, but whom the Final Rule requires to be licensed.

161. Finally, the new FFL will be required to maintain a multitude of records and acquisition and disposition books, forever, or until the FFL goes out of business, at which time the person would have to send all records to the ATF. 27 C.F.R. § 478.127.

162. This compelled access to Americans' "houses, papers, and effects" is a violation of the Fourth Amendment.

163. The only "exception" to the Fourth Amendment that could be argued to apply to gun dealers is the "highly regulated industry" exception. Yet the Final Rule expands that narrow exception beyond its breaking point, claiming that tens or even hundreds of thousands of unwitting Americans suddenly have now innocently become part of this highly regulated industry (in spite of their wishes), and claiming the right to engage in a general warrant-type search of their private homes, records, and collections of Second Amendment-protected arms.

164. Thus, the Final Rule violates the Fourth Amendment, and should be declared unconstitutional and should be enjoined.

**G. The Final Rule violates the Constitutional separation of powers doctrine in Article I, Sections 1 and 7.**

165. Article I, § 1 of the U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

166. Article I, § 7, Clause 2 of the U.S. Constitution mandates that "[e]very Bill … shall have passed the House of Representatives and the Senate" and "shall … be presented to the President of the United States … before it becomes a Law…."

167. The Supreme Court has repeatedly instructed that "the separation of powers … requir[es] that Congress, rather than the executive … branch, define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018); *see also Whitman v. United States*, 574 U.S. 1003, 1004 (2014) (Scalia, J., respecting the denial of cert.) ("legislatures, not executive officers, define crimes"); *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019) ("Only the people's elected representatives in Congress have the power to write new federal criminal laws.").

168. In stark contrast, the Defendants claim that rulemaking is necessary "in light of new technologies, mediums of exchange, and forums in which firearms are bought and sold…." 89 Fed. Reg. at 28973. But such developments are quintessentially within congressional (not bureaucratic) purview to address.

## VI. Claims for Relief

### COUNT 1
### Violation of APA, 5 U.S.C. § 706(2)(C): In Excess of Statutory Jurisdiction of Authority

169. All foregoing allegations are repeated and realleged as if fully set forth herein.

170. Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

171.  The Final Rule constitutes a final agency action that is *ultra vires* and should be set aside by the Court.

172. Defendants may only exercise the authority conferred upon them by statute, and may not legislate through regulation in order to implement the perceived intent of Congress or purported congressional purpose behind federal gun control statutes.

173. The Final Rule expands the applicability of federal crimes to make millions of otherwise law-abiding citizens subject to civil liability or felony charges should they fail to obtain an FFL, even though they are not actually engaged in the business in dealing firearms.

174. Congress did not authorize ATF to materially revise definitions or to add definitions to make it so that an FFL is needed even if a person has only communicated that they may be willing to sell a firearm from their personal collection.

175. The Final Rule is in excess of the authority Congress granted to ATF and is therefore in violation of the APA, 5 U.S.C. § 706(2)(C).

## COUNT 2
## Violation of APA, 5 U.S.C. § 706(2)(A): Arbitrary, Capricious, Abuse of Discretion, Not in Accordance with Law

176. All foregoing allegations are repeated and realleged as if fully set forth herein.

177. The Final Rule challenged herein constitutes "agency action" pursuant to 5 U.S.C. § 551(13) for purposes of review under the APA, 5 U.S.C. § 702.

178. Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

179. A court may hold that an agency action is arbitrary and capricious when the agency has failed to consider relevant evidence or articulate a satisfactory explanation for its action.

180. An agency's departure from prior practice can serve as an additional basis for finding an agency's action to be arbitrary and capricious. In this case, the Final Rule is a dramatic policy shift on the part of ATF which, in the past, has sought to dramatically reduce the number of FFLs,[13] but now seems to exponentially expand the number of FFLs. ATF has failed to provide the required explanation for this 180 degree policy shift.

181. Additionally, the Final Rule adopts vague and arbitrary presumptions and rebuttals that invite further arbitrary and capricious actions on the part of ATF.

182. Finally, the Final Rule conflicts with the plain text of the statute it purports to interpret and implement, making it not in accordance with law.

## COUNT 3
### Violation of APA, 5 U.S.C. § 706(2)(B): Contrary to Constitutional Right, Power, Privilege or Immunity

183. All foregoing allegations are repeated and realleged as if fully set forth herein.

184. The APA requires agency action be set aside if it is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

---

[13] *See* GOA Comment at 82 ("ATF's agenda to put tens of thousands of dealers out of business was a direct result of then-President Clinton's directive to the Secretary of the Treasury….").

185. The Final Rule is contrary to the Second Amendment, in that it regulates conduct covered by the Second Amendment's plain text and is unsupported by widespread Founding-era historical tradition.

186. The Final Rule is contrary to the Fifth Amendment, in that it is void for vagueness.

187. The Final Rule is contrary to the Fourth Amendment, in that the Final Rule grants ATF the right to "enter during business hours" without a warrant, "the premises, including places of storage, of any … licensed dealer for the purpose of inspecting or examining the records, documents, ammunition and firearms." 27 C.F.R. § 478.23(b). For individuals who are required, under the Final Rule, to apply for and receive an FFL so they could sell personal firearms without be prosecuted for being "engaged in the business" of dealing in firearms, this warrantless search is contrary to the Fourth Amendment.

188. The Final Rule is contrary to the constitutional separation of powers, which lays out the only legitimate process for the enactment of legislation. *See, e.g.*, *Terkel v. CDC*, 521 F. Supp. 3d 662, 669 (2021).

## COUNT 4
## Fifth Amendment: Void for Vagueness

189. All foregoing allegations are repeated and realleged as if fully set forth herein.

190. A law is void for vagueness where it "'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute.'" *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)).

191. The provisions of the Final Rule fail to give a person of ordinary intelligence fair notice as to when a person would be considered to be "engaged in the business" of dealing firearms because its non-exhaustive list of presumptions sweep up a host of innocent behavior, and because its rebuttals to those presumptions are counterintuitive and water down the statute. For example, the Final Rule provides that "even a single firearm transaction or offer to engage in a transaction" may require an FFL, contrary to the statute's plain text. 89 Fed. Reg at 29091. No person of ordinary intelligence would believe they would be considered to be engaged in the business of selling firearms if they sold one firearm or even just offered to sell one firearm.

192. The Final Rule is therefore void for vagueness.

## COUNT 5
## Second Amendment: Right to Keep and Bear Arms

193. All foregoing allegations are repeated and realleged as if fully set forth herein.

194. The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

195. The text of the Second Amendment provides no qualifications or limitations constraining who may exercise the right or for what purpose the right may be exercised. Accordingly, the Second Amendment presumptively protects all Americans and all lawful purposes.

196. ATF failed "to justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). Nor can ATF justify its regulation because there is no early American tradition of requiring licensure of gun sellers.

197. The Final Rule thus violates the Second Amendment and must be enjoined.

43

## COUNT 6
## Fourth Amendment: Right Against Unreasonable Searches and Seizures

198. All foregoing allegations are repeated and realleged as if fully set forth herein.

199. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

200. The Final Rule is contrary to the Fourth Amendment, in that the Final Rule grants ATF the right to "enter during business hours" without a warrant, "the premises, including places of storage, of any … licensed dealer for the purpose of inspecting or examining the records, documents, ammunition and firearms." 27 C.F.R. § 478.23(b). For individuals who are required, under the Final Rule, to apply for and receive an FFL so they could sell personal firearms without be prosecuted for being "engaged in the business" of dealing in firearms, this warrantless search is contrary to the Fourth Amendment.

201. The Final Rule thus violates the Fourth Amendment and must be enjoined.

## COUNT 7
## Constitution, Article I, Sections 1 and 7: Separation of Powers

202. All foregoing allegations are repeated and realleged as if fully set forth herein.

203. Article I, § 1 of the U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

204. Article I, § 7, Clause 2 of the Constitution mandates that "[e]very Bill … shall have passed the House of Representatives and the Senate" and "shall … be presented to the President of the United States … before it becomes Law…."

205. The Final Rule violates these provisions, usurping legislative powers. The Final Rule represents an attempt by an administrative agency to implement policy change and enact omnibus federal gun control legislation through bureaucratic fiat, rather than through legislation.

## VII.   Demand For Relief

Plaintiffs respectfully request that the Court:

a.   Declare that the Final Rule violates the Administrative Procedure Act as it is in excess of statutory jurisdiction or authority and an *ultra vires* agency action;

b.   Declare that the Final Rule violates the Administrative Procedure Act because it is arbitrary, capricious, an abuse of discretion, and not in accordance with law;

c.   Declare that the Final Rule violates the Administrative Procedure Act because it is contrary to constitutional right, power, privilege or immunity;

d.   Set aside the Final Rule pursuant to 5 U.S.C. § 706 of the Administrative Procedure Act;

e.   Declare that the Final Rule violates the Fifth Amendment;

f.   Declare that the Final Rule violates the Second Amendment;

g.   Declare that the Final Rule violates the Fourth Amendment;

h.   Declare that the Final Rule violates Article I, Sections 1 and 7;

i.   Preliminarily and permanently enjoin Defendants and anyone acting in concert with them from enforcing the Final Rule or from taking any action inconsistent with the injunction of the Final Rule;

j.  Grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably incurred in this action;

k.  Grant Plaintiffs such other relief as the Court deems just and proper and as justice so requires.

Date: May 1, 2024                          Respectfully submitted.

**KEN PAXTON**                             */s/Garrett Greene*
Attorney General                          **GARRETT GREENE**
                                          Special Counsel
**BRENT WEBSTER**                          Texas Bar No. 24096217
First Assistant Attorney General

                                          **KATHLEEN T. HUNKER**
**RALPH MOLINA**                           Special Counsel
Deputy Attorney General for Legal Strategy  Texas Bar No. 24118415

**RYAN D. WALTERS**                        OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Chief, Special Litigation Division         Special Litigation Division
                                          P.O. Box 12548, Capitol Station
                                          Austin, Texas 78711-2548
                                          Tel.: (512) 463-2100
                                          garrett.greene@oag.texas.gov
                                          kathleen.hunker@oag.texas.gov

                                          **COUNSEL FOR PLAINTIFF STATE OF TEXAS**

**LYNN FITCH**                             **ELIZABETH B. MURRILL**
Attorney General of Mississippi            Attorney General

*/s/Justin L. Matheny*                     */s/J. Benjamin Aguiñaga*
**JUSTIN L. MATHENY** (MS Bar 100754)      **J. BENJAMIN AGUIÑAGA***
Deputy Solictor General                    Solicitor General
**OFFICE OF THE ATTORNEY GENERAL**
P.O Box 220                                **LOUISIANA DEPARTMENT OF JUSTICE**
Jackson, MS 39205-0220                     1885 N. Third Street
Tel: (601) 359-3680                        Baton Rouge, Louisiana 70802
Fax: (601) 359-2003                        Tel: (225) 506-3746
justin.matheny@ago.ms.gov                  aguinagab@ag.louisiana.gov

**COUNSEL FOR PLAINTIFF STATE OF**         **COUNSEL FOR PLAINTIFF THE STATE OF**
**MISSISSIPPI**                            **LOUISIANA**
                                          *Admission To NDTX Pending

<table>
<tr>
<td>

SEAN D. REYES
Utah Attorney General

*/S/ Andrew Dymek*
ANDREW DYMEK*
Assistant Solicitor General

UTAH OFFICE OF THE ATTORNEY
GENERAL
350 North State Street, #230
P.O. Box 142320
Salt Lake City, Ut 84114-2320
Tel.: 801-366-0533
adymek@agutah.gov

COUNSEL FOR PLAINTIFF STATE OF UTAH
*Admission To NDTX Pending

</td>
<td>

*/s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH

STAMBOULIEH LAW, PLLC
NDTX#: 102784MS
MS Bar No. 102784
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us

COUNSEL FOR JEFFERY W. TORMEY, GUN
OWNERS OF AMERICA, GUN OWNERS
FOUNDATION, TENNESSEE FIREARMS
ASSOCIATION, AND VIRGINIA CITIZENS
DEFENSE LEAGUE

</td>
</tr>
<tr>
<td>

*/s/ John I. Harris III**
JOHN I. HARRIS III (TN # 12099)

SCHULMAN, LEROY & BENNETT PC
3310 West End Avenue, Suite 460
Nashville, Tennessee 37203
(615) 244 6670 Ext. 111
Fax (615) 254-5407
jharris@slblawfirm.com

COUNSEL FOR JEFFERY W. TORMEY, GUN
OWNERS OF AMERICA, GUN OWNERS
FOUNDATION, TENNESSEE FIREARMS
ASSOCIATION, AND VIRGINIA CITIZENS
DEFENSE LEAGUE
*Admission to NDTX pending

</td>
<td>

*/s/ Brandon W. Barnett*
BRANDON W. BARNETT
Texas Bar No. 24053088

BARNETT HOWARD & WILLIAMS PLLC
930 W. 1st St., Suite 202
Fort Worth, Texas 76102
817-993-9249 (T)
817-697-4388 (F)
barnett@bhwlawfirm.com

LOCAL COUNSEL, COUNSEL FOR JEFFERY W.
TORMEY, GUN OWNERS OF AMERICA, GUN
OWNERS FOUNDATION, TENNESSEE FIREARMS
ASSOCIATION, AND VIRGINIA CITIZENS
DEFENSE LEAGUE

</td>
</tr>
</table>