UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, *and* VIRGINIA CITIZENS DEFENSE LEAGUE,<br>　　*Plaintiffs*,<br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, *and* STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br>　　*Defendants*. | § § § § § § § § § § § § § § § § § § § § § §　Civil Action No. _____ |

### DECLARATION OF ERICH M. PRATT

1. My name is Erich M. Pratt. I am a U.S. citizen and resident of Virginia. I make this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief. Unless otherwise stated, I make this declaration based on personal knowledge. If called as a witness, I can testify to the truth of the statements contained herein.

2. I am the Senior Vice President of Gun Owners of America, Inc. ("GOA"), and the Senior Vice President of Gun Owners Foundation ("GOF").

1

3. In that capacity, I oversee staff that is in daily contact with members and supporters regarding their concerns, questions, requests, and suggestions on how GOA and GOF can best represent their interests.

4. Gun Owners of America, Inc. is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including residents of this district, many of whom will be irreparably harmed by the Department of Justice's ("DOJ") Final Rulemaking entitled "Definition of 'Engaged in the Business' as a Dealer in Firearms" ("Final Rule").

5. Gun Owners Foundation is a Virginia non-stock corporation, with its principal place of business in Springfield, Virginia. GOF is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country, including Texas residents, many of whom are and will be irreparably harmed by ATF's actions. Donations by supporters of GOF fund the organization's activities, including litigation such as this to defend their right to keep and bear arms.

6. Since ATF's Notice of Proposed Rulemaking ("NPRM") was announced in 2023, an overwhelming concern of our members and supporters has been that this Rule will be used to mandate (or threaten) that ordinary gun owners engaged in lawful activity nevertheless must become licensed as Federal Firearms Licensees ("FFL"), attendant with all the warrantless inspections and paperwork requirements that come along with obtaining and maintaining an FFL,

simply to sell their privately owned firearms in an entirely personal and non-business capacity.

7. Traditionally, law-abiding Americans have been able to buy and sell firearms from their personal collections largely without government oversight, and certainly without the fear of being labeled a "dealer" that is "engaged in the business" of dealing in firearms.

8. Our members and supporters desire and overwhelmingly support GOA and GOF's involvement in litigation to protect their right to acquire firearms easily and unimpeded by government, a right that is being unconstitutionally infringed by ATF's Final Rule.

9. GOA and GOF routinely hear from our members and supporters on various topics, including such topics as the Final Rule, which allows us to direct our resources (including to litigation) where they are needed most. By way of example only, members in New York reached out to us after the Supreme Court issued its opinion in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), which triggered a response from the Governor and legislature of New York, culminating in the inaptly named "Concealed Carry Improvement Act," which made the carry of firearms illegal almost everywhere across New York. GOA and GOF immediately filed suit, leading to the reinstatement of the Second Amendment across wide swaths of previously off-limits places to carry. *See Antonyuk v. Hochul*, 639 F. Supp. 3d 232 (N.D.N.Y. 2022) (granting and denying preliminary injunctive relief); *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) (affirming in part and reversing in part the preliminary injunction).

10. As noted, GOA and GOF together have more than two million members and supporters nationwide, including within this district. Among these persons, GOA and GOF represent countless FFLs (both as entities and as individuals), along with numerous GOA Industry Partners within the firearms industry and community.

11. For example, GOA maintains the Caliber Club, a "partnership program" comprised of

more than five thousand gun stores and shooting ranges across the country. Information about this program is listed on our website: https://www.gunowners.org/caliberclub/. Likewise, a listing of Caliber Club members is publicly available on our website as well: https://www.gunowners.org/caliber-club-gun-stores-ranges/. Each of these FFLs and their responsible parties is a GOA member.

12. GOA's Caliber Club members join GOA to collectively support Second Amendment rights, including their rights and interests as firearms dealers, and in turn, GOA advocates for and at times litigates to protect the rights of its Caliber Club members.

13. Since both the NPRM was announced and the Final Rule published, GOA and GOF have heard from members and supporters who will be directly impacted because they have in the past bought and resold firearms, and wish to do so in the future without being labeled as a "dealer" in firearms. Such persons are unsure if the ATF will consider them to be "engaged in the business" of dealing in firearms without a license and thus, whether they will have civil actions brought against them, or be criminally charged (and perhaps raided and killed[1]).

14. And once licensed as dealers, our members and supporters will be subject to ATF's rampage of license revocation under the bureau's new "zero tolerance" policy, as our existing Caliber Club members currently are.

15. This "zero tolerance" policy was announced on June 23, 2021 by President Biden as part of a purported "Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety."[2] Part of that "strategy" was "establishing zero tolerance for rogue gun dealers that

---

[1] *See* https://www.usatoday.com/story/news/politics/elections/2024/04/22/arkansas-lawmakers-demand-answers-atf-raid-death-bryan-malinowski/73413499007/.
[2] *See* https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/

willfully violate the law," described as "a new policy to underscore zero tolerance for willful violations of the law by federally licensed firearms dealers that put public safety at risk." This "zero tolerance" policy has had a profound and negative effect on the firearms community, leading to massive increases in the number of FFLs who are seeing their licenses revoked for a variety of inconsequential misunderstandings and technical paperwork violations. Currently, GOA and GOF are involved as plaintiffs in one case in North Dakota challenging ATF's "zero tolerance" policy, where ATF conveniently decided not to revoke a dealer's license once suit was filed. *See Morehouse Enterprises, LLC d/b/a Bridge City Ordnance, et al., v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, Civil Action No. 3:23-cv-00129-PDW-ARS (D.N.D.). GOA and GOF are supporting a similar challenge in the Northern District of Florida, where ATF once again conveniently decided not to revoke once suit was filed. *See Kiloton Tactical, LLC, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, Civil Action No. 3:23-cv-23985-MCR-ZCB (N.D. Fla.).

16. Under ATF's "zero tolerance" policy, revocations have exploded 3,040%, with ATF even *reopening* old and previously resolved cases to impose harsher punishments under its new policy.[3] These skyrocketing revocation actions will inevitably lead to FFLs whose license was revoked for these new policy reasons, which will negatively impact their ability to sell personally owned firearms in the future under the Final Rule.

17. For example, we recently spoke with one GOA member who was formerly an FFL for a period of several decades, but whose license was recently revoked by ATF under the "zero tolerance" policy.

18. Thus, this member would be considered a "former licensee" with "former licensee

---

[3] https://www.atf.gov/rules-and-regulations/enhanced-regulatory-enforcement-policy.

inventory" under the Final Rule challenged here. Although no federal law places any restrictions on a personal collection by someone who, like this GOA member, is *not* a licensee, the Final Rule creates an entirely new classification of "former licensee," and an entirely new category of "former licensee inventory." FR 29090, 29091.

19. After GOA reviewed the ATF revocation paperwork provided by this FFL, it became clear that ATF had revoked this member's license based on a single, inconsequential recordkeeping error that involved *no* prohibited person obtaining a firearm, *no* intentional wrongful act on the part of the FFL, and *no* inability of ATF to trace any firearm. In other words, this case involved a technical paperwork violation, and raised no public safety concerns. Nevertheless, ATF revoked this license.

20. Being as this GOA member had held an FFL for several decades, the business had accumulated a large number of firearms over the years, but suddenly was left without a license to sell them.

21. Consistent with ATF instructions and federal law, this member informed GOA that they properly transferred their "business inventory" firearms to their "personal collection" prior to termination of their license by ATF.

22. This GOA member reports that they transferred well over 1,000 firearms in this manner, with a value of around a million dollars. This member reports that this lifetime of accumulated inventory largely constitutes their retirement.

23. However, due to being forced out of business by ATF's "zero tolerance" policy, and now promulgation of the Final Rule, this GOA member now fears that they will be unable lawfully to dispose of these firearms from their personal collection without being presumed by ATF to be engaged in the business, and potentially criminally charged, and subject to forfeiture of a

collection accumulated over a lifetime.

24. And although this GOA member properly transferred their business inventory to their personal collection per federal law and ATF instructions, the Final Rule still casts aspersions and makes vague threats as to this member's ability to transfer their firearms. *See* FR 29034 (threatening that a "former licensee" may not sell "former licensee inventory" even to another FFL, after license termination).

25. For example, the Final Rule makes it impossible to transfer such firearms until "[o]ne year has passed from the date of transfer to the licensee's personal collection." FR 29091. But while the statute imposes that requirement on licensees, *unlicensed* persons (like this GOA member) are not similarly restricted.

26. The Final Rule justifies this new rule by claiming that "licensees who know they will be going out of business … cannot simply transfer their business inventory to a 'personal collection' the day before license termination, and two days later, sell off the entire inventory as liquidation of a 'personal collection'...." FR 29035.

27. On the contrary, this is *precisely* what the statute allows, even if ATF does not like how the law operates. In fact, this GOA member reports that their local ATF personnel *expressly instructed* that they could do *exactly* what the Final Rule now says they cannot.

28. Separately, the Final Rule claims that, if ATF asserts this member's transfer to their personal collection was done "to willfully evade" federal law, or if the transfer was otherwise improper or ineffective and ATF believes the firearms remain "business inventory … at the time the license was terminated," ATF may pursue such former licensee and consider them unlawfully "engaged in the business." FR 29091. And if ATF were to make such accusation, then under the Final Rule, this GOA member understands that they *could never transfer* their firearms. FR

7

29052. This inability *ever* to transfer a lifetime collection of firearms would be catastrophic for this GOA member.

29. Moreover, even if this new ATF classification of "former licensees" and new category of "former licensee inventory" do not impede this GOA member's transfers from their personal collection, the Final Rule separately threatens prosecution for "repetitive" sales of former business inventory, *even though this member would not be acquiring any new firearms*. FR 29091.

30. Shockingly, even though the statute clearly requires both "purchase[s] and resale[s]," the Final Rule states that a person might be engaged in the business *merely for selling* firearms from their personal collection. This is based on ATF's claim that prohibited "purchase[s]" can occur during the period of licensure, even though during that period such purchases for resale *were lawful*. FR 29090.

31. The chances are not remote or speculative that ATF might pursue this GOA member for merely doing what the law allows (and what ATF personnel told them to do). Indeed, GOA already has expended significant resources to defend one former FFL from this very charge.

32. Specifically, GOA funded the 2014 legal defense of former FFL and GOA member Robert G. Arwady against criminal charges brought by ATF in Houston, Texas.

33. When Mr. Arwady voluntarily surrendered his FFL (after *previously* being prosecuted by ATF, but acquitted by a jury on all charges), he transferred his "business inventory" firearms to his personal collection. Again, this was consistent with federal law and with ATF instructions to Mr. Arwady.

34. Mr. Arwady then sold those personally owned firearms to other private parties, in order to liquidate his collection and recoup his investment. Notably, each time Mr. Arwady did so, he

8

went out of his way to pay for a transfer *from his local FFL to the buyer's FFL*. This ensured paperwork for each firearm, and a background check for each buyer. In other words, Mr. Arwady did *more* than the law required him to do for these private sales.

35. Nevertheless, a vindictive ATF swooped in and indicted Mr. Arwady a second time. ATF arrested Mr. Arwady, put him in federal lockup, and seized his lifetime of collected firearms. ATF charged Mr. Arwady with being "engaged in the business" without a license merely for selling off his personal collection.

36. However, after the government brought the case to trial, a jury unanimously voted – **_again_** – to acquit Mr. Arwady of all charges.

37. To this day, Mr. Arwady remains the only person of whom GOA is aware to have *twice* been prosecuted by ATF – and then acquitted on all counts.

38. After Mr. Arwady's second acquittal, ATF begrudgingly returned the hundreds of firearms it had seized from him. But although Mr. Arwady's collection previously had been pristine – with many firearms new in their boxes – ATF returned a damaged, and often destroyed, collection, having mishandled, mistreated, and deliberately acted destructively towards Mr. Arwady's collection. Firearms were missing. Firearms were disassembled. Firearms had been modified. And almost all had been damaged, greatly reducing the value of the collection.

39. Not only were many years of Mr. Arwady's life ruined by ATF's baseless prosecution, but also his valuable firearm collection was all but destroyed.

40. In addition to these harms caused by ATF to Mr. Arwady, GOA was forced to expend tens of thousands of dollars to engage in the criminal defense against the baseless charges by ATF.

41. In other words, the harms threatened by the Final Rule, and reasonably feared by many

GOA members, are far from speculative. Rather, *they are a guaranteed certainty* if the Final Rule is allowed to take effect. And the harms created by the Final Rule, which will have a ubiquitous and negative effect on the firearms community, are still yet to be fully realized, as the Final Rule has yet to be fully implemented.

42. Protection of the rights and interests advanced in this litigation is germane to GOA and GOF's respective missions, which includes the effort to preserve and protect the Second Amendment and the rights of Americans to keep and bear arms, including against overreach by unelected and unaccountable anti-gun bureaucrats. GOA and GOF routinely litigate cases throughout the country on behalf of their members and supporters, and GOA and GOF are capable of fully and faithfully representing the interests of their members and supporters without participation by each of the individuals and entities.

I, Erich M. Pratt, declare under penalty of perjury that the foregoing is true and correct.

April 30, 2024
DATE

ERICH M. PRATT