

December 7, 2023

TO: Bureau of Alcohol, Tobacco, Firearms and Explosives

FROM: State of Kansas; Office of the Attorney General of Kansas

RE: Notice of Proposed Rulemaking: "Definition of 'Engaged in the Business' as a Dealer in Firearms"

Docket No.: ATF 2023-19177

The Attorneys General for the States of Kansas, Iowa, Montana, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, New Hampshire, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, West Virginia, and Wyoming, and the Arizona State Legislature submit the following public comment to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the Bureau) in response to the request for comments on its proposed rule titled, *Definition of "Engaged in the Business as a Dealer in Firearms,"* 88 Fed Reg. 61993 (Sept. 8, 2023).

1. **Introduction**

The Bureau's proposed rule takes the unprecedented step of making any individual who sells a firearm "predominantly for profit" liable to civil, administrative, or even criminal penalties—unless the seller acquires a federal license.[1] The Bureau's definition of sale for profit is itself arbitrary and capricious. Beyond capricious, the proposed rule is capacious. The Bureau's presumptions in support of predominant profit-seeking include when a person:

> (1) advertises, markets, or otherwise promotes a firearms business (e.g., advertises or posts firearms for sale, including on any website, establishes a website for selling or offering for sale their firearms, makes available business cards, or tags firearms with sales prices), regardless of whether the person incurs expenses or only promotes the business informally; (2) purchases, rents, or otherwise secures or sets aside permanent or temporary physical space to display or store firearms they offer for sale, including part or all of a business premises, table or space at a gun show, or display case; (3) makes or

---

[1] 88 Fed. Reg. at 62000.

maintains records, in any form, to document, track, or calculate profits and losses from firearms purchases and sales . . .

[or] (7) secures or applies for a State or local business license to purchase for resale or to sell merchandise that includes firearms.[2]

The proposed rule also presumes a person is a "dealer" in firearms if he "sell[s] or offer[s] for sale firearms, and also represent[s] to potential buyers or otherwise demonstrate[s] a willingness and ability to purchase and sell additional firearms."[3] This presumption applies even if the seller only sells one firearm.[4]

The Bureau lists very few exceptions to this rule, and even those exceptions paint a disturbing picture. For instance, the proposed rule states that an "example in which evidence may rebut the presumption would be the occasional sale, loan, or trade of an almost-new firearm in its original packaging to an immediate family member, such as for their use in hunting, without the intent to earn a profit or to circumvent the requirements placed on licensees."[5]

That example is not an aberration but central to the entire proposed rule. The proposed rule expands the definition of earning a profit to be determined by something other than money to include (1) personal property that includes another firearm or ammunition, (2) a service, (3) another medium of exchange, or (4) valuable consideration.[6] In addition, there is no requirement that a firearm actually be sold (only an offer to engage in a transaction)[7] nor is there any requirement that a person selling a firearm make a pecuniary gain.[8]

### 2. The proposed rule violates the Second Amendment

This overreach is both shocking and unconstitutional. Although longstanding regulations of large commercial enterprises that sell firearms might be consistent with the Second Amendment,[9] that is not what this proposed rule does. This proposed rule seeks to

---

[2] *Id.* at 62006–07 (footnotes omitted).
[3] *Id.* at 62000.
[4] *Id.*
[5] *Id.* at 62003.
[6] *Id.* at 61999.
[7] *Id.* at 62000.
[8] *Id.* at 61997.
[9] The U.S. Supreme Court, in *District of Columbia v. Heller*, stated that "laws imposing conditions and qualifications on the commercial sale of arms" were "presumptively lawful." 554 U.S. 570, 626–27 (2008). But the Court did not undertake a thorough historical analysis, and the regulations and presumptions proposed by the ATF here go far beyond any longstanding tradition of firearm regulation. *C.f. Renna v. Bonta*, No. 20-CV-2190-DMS-DEB, 2023 WL 2846937, at *9 (S.D. Cal. Apr. 3, 2023) (unpublished) ("A one sentence conclusion by Defendants that the provisions of the [Unsafe Handgun Act] are presumptively lawful

require a license of every individual who sells a firearm for *anything* the Bureau sees as a profit to include currency, exchange of another firearm, or a service.

Despite the proposed rule regulating conduct that implicates the Second Amendment of the United States Constitution, the proposed rule does not at any point reference the term "Second Amendment." This omission demonstrates that there was no attempt by the Bureau to comply with the Constitution.

As the Bureau should be well aware, the Supreme Court recently clarified the framework for determining the constitutionality of a law or regulation under the Second Amendment.[10] The Court explained that if the Second Amendment "covers an individual's conduct," *any* burden on that conduct is presumptively unconstitutional.[11] The government can overcome that presumption only by showing "the regulation is consistent with this Nation's historical tradition of firearm regulation."[12] The proposed rule doesn't even attempt to do this.

As a starting point, the sale of firearms among individuals for profit is protected by the Second Amendment. The plain text of the Second Amendment protects the rights of the people to "keep and bear" arms. "[T]he core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms."[13] To this end, as many courts have held, the ability to buy a firearm is encompassed in the right to keep a firearm.[14] Likewise, the ability to sell a firearm to another is also protected.[15]

The type of government overreach this proposed rule attempts was among the concerns the Founders had at the time the Second Amendment was ratified. In 1774, King George III embargoed all imports of firearms and ammunition into the Thirteen Colonies,

---

'conditions and qualifications on the commercial sale of arms' is insufficient . . . ."). In addition, this proposed rule and the change in the statute it interprets are not longstanding and therefore enjoy no presumption of constitutionality.

[10] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111, 2129–30 (2022).
[11] *Id.*
[12] *Id.* at 2126.
[13] *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (internal quotation marks omitted).
[14] *See, e.g.*, *Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *12 (D. Colo. Aug. 7, 2023) (unpublished) (collecting cases); *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 106 (3d Cir. 2023); *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:22-CV-410, 2023 WL 3355339, at *3 (E.D. Va. May 10, 2023) (unpublished); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017).
[15] *See, e.g.*, *Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, 647 F. Supp. 3d 508, 521 (W.D. La. 2022); *Altman v. Cnty. of Santa Clara*, 464 F. Supp. 3d 1106, 1125 (N.D. Cal. 2020); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010), *abrogated on other grounds as recognized by Range*, 69 F.4th 96.

which the Americans treated as a plain intent to enslave America. In reaction, the Americans redoubled their efforts to engage in firearms commerce.[16]

In 1777, when it appeared the British were poised to win the American Revolution, British Colonel Undersecretary William Knox drafted a plan called *What is Fit to be Done with America?* to prevent any future rebellions.[17] In relevant part, the plan stated, "the Arms of all the People should be taken away . . . nor should any Foundery or manufactuary of Arms, Gunpowder, or Warlike Stores, be ever suffered in America, nor should any Gunpowder, Lead, Arms or Ordnance be imported into it without Licence."[18]

The proposed rule does not give sufficient treatment to this nation's important historical context. And it does not even mention *Heller* or *Bruen*. Given that those two landmark cases provide the standard with which all federal and state firearms regulations must comply, it is peculiar that they receive no mention in this proposed rule. This omission combined with the stunning overreach of this proposed rule shows that the Bureau has no respect for the Second Amendment rights of the citizens that it tries to regulate.

If the proposed rule attempted to apply *Heller* or *Bruen*, it would fail. Nothing in this country's historical tradition of firearm regulation required that every firearm seller register for a license with the federal government. That holds true even if the sale is for a profit. Indeed, given how broad the conduct covered in the proposed rule is, one would be hard pressed to even find an analogous modern firearm regulation, raising serious *Bruen* concerns.

This proposed rule does not come close to passing constitutional muster. The Bureau should understand this and change course immediately.

### 3. The proposed rule is arbitrary and capricious

Beyond the proposed rule's unconstitutionality, it is also unlawful under the Administrative Procedure Act ("APA"). Under the APA, a court must also "hold unlawful and set aside agency action" that is "arbitrary, capricious [or] an abuse of discretion."[19] An agency acts arbitrarily and capriciously when it departs sharply from prior practice without reasonable explanation or disregards either alternatives to its action or the affected communities' reliance on the prior rule.[20]

Context helps show the extent of the proposed rule's arbitrary and capricious nature. The proposed rule purports to build on the Gun Control Act of 1968 ("GCA") but departs from

---

[16] David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?*, 127 HARV. L. REV. F. 230, 234–35 (2014).
[17] *Id.* at 235.
[18] *Id.*
[19] 5 U.S.C. § 706(2)(A).
[20] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).

that statute's text.[21] In relevant part, the GCA explains that its purpose is not "to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or other lawful activity."[22] Nor is the GCA "intended to discourage or eliminate the private ownership or use of firearms for law-abiding purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably needed to implement and effectuate the provisions of this title."[23] This no-broader-than-reasonably-necessary requirement helps ensure the GCA's focus on mitigating firearms-related crime does not unduly burden lawful gun owners' Second Amendment rights. The Firearms Owners' Protection Act of 1986[24] and Bipartisan Safer Communities Act[25] clarified parts of the GCA, but they did not amend the GCA's requirement of a tailored regulatory approach.

Unfortunately, this proposed rule violates the GCA's letter and spirit. As a starting point, the rule renders anyone that the Bureau identifies to be selling a firearm for profit a firearms dealer. As a firearms dealer without a federal license, that seller will face civil, administrative, and criminal consequences—with very few exceptions. And even those exceptions lead to absurd implications.

For example, one of the above-listed exceptions attempts to carve out sales of firearms to family members. Fair enough. In America, it should be legal for a family member to sell a firearm to another family member without risk of prosecution. But the exception is flawed. Reading the exception, one can conclude that if a family member sells another family member a firearm for as little as one dollar more than the original purchase price, that seller could be open to civil, administrative, or criminal liability. That absurdity risks hurting innocent people and chilling law-abiding behavior. That is not only an unreasonable interpretation of the statute, it conflicts with the GCA, which sought to avoid creating unnecessary burdens on lawful firearms acquisitions. This proposed rule instead maximizes such a burden.

Unfortunately, the absurd results of the above hypothetical are not an aberration. Every part of this proposed rule is littered with implications that create civil, administrative, and criminal liability for millions of otherwise responsible and law-abiding citizens who merely sell or attempt to sell a firearm. In short, the proposed rule goes well beyond any reasonable interpretation of the statute and is arbitrary and capricious.

### 4. The proposed rule is bad public policy

The Bureau has decided to criminalize responsible and law-abiding citizens rather than doing its job—that being arresting, investigating, and aiding in prosecuting violent

---

[21] Pub. L. No. 90-618, 82 Stat. 1213.
[22] *Id.*
[23] *Id.*
[24] Pub. L. No. 99–308 (S. 49), May 19, 1986, 100 Stat 449.
[25] Pub. L. No. 117-159, June 25, 2022, 136 Stat 1313.

criminals who use firearms to terrorize our communities. The undersigned Attorneys General and State Legislature agree that violent crime is at unacceptably high levels. Rather than focus on that primary and important objective, this proposed rule seeks to criminalize what should be lawful behavior.

While the duty to hold violent criminals accountable largely falls to local prosecutors and judges, the Bureau already has tools at its disposal to help combat this. As an example, 18 U.S.C. § 924(e) provides a 15-year mandatory minimum sentence for any individual who possesses a firearm after accumulating three violent felonies or serious drug offenses or both. In addition, 18 U.S.C. § 924(c) provides a five-year mandatory minimum sentence for any individual who carries a firearm during and in relation to a crime of violence or drug trafficking offense. These are just some laws available for the Bureau to enforce.

If the Bureau was serious about combatting violent crime, it would focus on enforcing the laws that are already on the books to hold violent criminals accountable for their actions. That would be the type of work that could save lives. Unfortunately, the Bureau has instead targeted innocent people who sell firearms. That is not only unlawful but wrong and the Bureau must change course.

5. **Conclusion**

For these reasons, the Bureau should withdraw the proposed rule.

Kris W. Kobach
Kansas Attorney General

Brenna Bird
Iowa Attorney General

Austin Knudsen
Montana Attorney General

Steve Marshall
Alabama Attorney General

Treg Taylor
Alaska Attorney General

Tim Griffin
Arkansas Attorney General

Christopher Carr
Georgia Attorney General

Raúl Labrador
Idaho Attorney General

Todd Rokita
Indiana Attorney General

Daniel Cameron
Kentucky Attorney General

Jeff Landry
Louisiana Attorney General

Lynn Fitch
Mississippi Attorney General

Andrew Bailey
Missouri Attorney General

Mike Hilgers
Nebraska Attorney General

John Formella
New Hampshire Attorney General

Drew. H. Wrigley
North Dakota Attorney General

Dave Yost
Ohio Attorney General

Gentner Drummond
Oklahoma Attorney General

Alan Wilson
South Carolina Attorney General

Marty Jackley
South Dakota Attorney General

Jonathan Skrmetti
Tennessee Attorney General

Ken Paxton
Texas Attorney General

Sean D. Reyes
Utah Attorney General

8

Jason Miyares
Virginia Attorney General

Patrick Morrisey
West Virginia Attorney General

Bridget Hill
Wyoming Attorney General

Ben Toma
Speaker of the Arizona House of Representatives

Warren Petersen
President of the Arizona State Senate

9