**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| Plaintiffs, | Case No. 2:24-cv-00089-Z |
| v. | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, | |
| Defendants. | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

I.      Statutory and Regulatory Background ........................................................................ 3

      A.      The Gun Control Act of 1968 ......................................................................... 3

      B.      The Final Rule .................................................................................................. 7

II.     Factual and Procedural Background .......................................................................... 10

LEGAL STANDARD ............................................................................................................ 11

ARGUMENT ......................................................................................................................... 11

I.      Plaintiffs Lack Standing and Fail to Establish Irreparable Harm .............................. 11

      A.      The State Plaintiffs Fail to Allege or Establish Standing and Irreparable
               Harm ............................................................................................................... 12

      B.      Plaintiff Tormey Lacks Standing to Bring a Pre-Enforcement Challenge and
               Fails to Demonstrate that He Will Be Harmed Irreparably by the Rule ..................... 13

      C.      The Organizational Plaintiffs Also Lack Standing and Fail to Demonstrate
               Irreparable Harm From the Rule .................................................................... 18

II.     Venue Is Improper in this District Because No Plaintiff with Standing Resides Here .......... 21

III.    Plaintiffs Are Not Likely to Succeed on the Merits of their Claims ............................ 22

      A.      The Rule Is Consistent with the GCA and ATF's Authority ......................... 22

      B.      The Rule's Presumptions Are a Proper Exercise of ATF's Authority .......... 32

             1.      ATF Is Authorized to Create Regulatory Presumptions to Interpret and
                       Enforce the Gun Control Act .............................................................. 32

             2.      The Rule's Engaged in the Business (EIB) Presumptions Are Permissible ... 35

             3.      The Rule's Intent to Predominantly Earn a Profit Presumptions Are
                       Permissible ......................................................................................... 37

             4.      Conduct That the Rule Identifies as Not Supporting a Presumption Does
                       Not Contradict the Statute ................................................................... 40

      C.      The Rule Appropriately Regulates Former Licensees' Inventory ................. 41

i

D.      Plaintiffs Are Not Likely to Succeed on their Second Amendment Claim..................44

E.      The Rule Is Consistent with the Fourth Amendment .....................................47

F.      Plaintiffs' Separation-of-Powers Claim Lacks Merit .....................................50

IV.     The Balance of Equities and Public Interest Disfavor Injunctive Relief.................50

V.      Any Relief Should Be Limited...............................................................51

CONCLUSION.....................................................................................54

# TABLE OF AUTHORITIES

## CASES

*A.J. Taft Coal Co. v. Barnhart,*
291 F. Supp. 2d 1290 (N.D. Ala. 2003) ............................................................22

*A.V. v. Plano Indep. Sch. Dist.,*
585 F. Supp. 3d 881 (E.D. Tex. 2022) ..............................................................28

*Abramski v. United States,*
573 U.S. 169 (2014) ...................................................................................1, 3

*Alaska Airlines, Inc. v. Brock,*
480 U.S. 678 (1987) ......................................................................................54

*Alliance for Hippocratic Medicine* v. *FDA,*
78 F.4th 210 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 537 (2023) ...........................11

*Altman v. Cnty. of Santa Clara,*
464 F. Supp. 3d 1106 (N.D. Cal. 2020) .............................................................45

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) .....................................................................52, 53

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................16

*Associated Builders & Contractors of Tex., Inc. v. NLRB,*
826 F.3d 215 (5th Cir. 2016) ...........................................................................11

*Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council,*
---F. Supp. 3d---, 2024 WL 1078260 (W.D. La. Mar. 12, 2024) ...........................21, 22

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) ......................................................................................15

*Barber v. Bryant,*
860 F.3d 345 (5th Cir. 2017) .................................................................12, 13, 20

*Barber v. Thomas,*
560 U.S. 474 (2010) ......................................................................................24

*Boyce Motor Lines v. United States,*
342 U.S. 337 (1952) ......................................................................................31

*Bryan v. United States,*
524 U.S. 184 (1998) ......................................................................................17

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ...................................................................................52

*Camacho v. Ford Motor Co.*,
    993 F.3d 308 (5th Cir. 2021) ........................................................................28

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
    98 F.4th 220 (5th Cir. 2024) ........................................................ 34, 35, 37, 38

*Carpenter v. United States*,
    585 U.S. 296 (2018) ...................................................................................48

*Chambered Grp. USA LLC v. Babcock*,
    No. CV-23-01850-PHX-SPL, 2023 U.S. Dist. LEXIS 173796 (D. Ariz. Sept. 27, 2023) ................51

*Chem. Mfrs. Ass'n v. Dep't of Transp.*,
    105 F.3d 702 (D.C. Cir. 1997) ......................................................................35

*City of L.A. v. Patel*,
    576 U.S. 409 (2015) ...................................................................................49

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................. 13, 19

*Cole v. U.S. Dep't of Agric.*,
    33 F.3d 1263 (11th Cir. 1994) .................................................................. 2, 33

*Cox v. Louisiana*,
    379 U.S. 559 (1965) ............................................................................. 31, 32

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
    710 F.3d 579 (5th Cir. 2013) ........................................................................12

*Davis v. Mich. Dep't of Treasury*,
    489 U.S. 803 (1989) ...................................................................................26

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................................... 2, 44

*Do No Harm v. Pfizer Inc.*,
    96 F.4th 106 (2d Cir. 2024) .........................................................................19

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...................................................................................25

*FTC v. Mandel Bros., Inc.*,
    359 U.S. 385 (1959) ...................................................................................25

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*
   695 F.3d 330 (5th Cir. 2012) ...........................................................................................18

*Ga. Republican Party v. SEC,*
   888 F.3d 1198 (11th Cir. 2018) .................................................................................. 21, 22

*Gardner v. Grandolsky,*
   585 F.3d 786 (3d Cir. 2009) ............................................................................................23

*Gill v. Whitford,*
   585 U.S. 48 (2018) ...........................................................................................................52

*Giragosian v. Bettencourt,*
   614 F.3d 25 (1st Cir. 2010) .............................................................................................49

*Haaland v. Brackeen,*
   599 U.S. 255 (2023) .........................................................................................................13

*Holland Am. Ins. Co. v. Succession of Roy,*
   777 F.2d 992 (5th Cir. 1985) ..........................................................................................12

*Holland Livestock Ranch v. United States,*
   655 F.2d 1002 (9th Cir. 1981) ........................................................................................33

*Huddleston v. United States,*
   415 U.S. 814 (1974) ...........................................................................................................3

*Inst. of Certified Pracs., Inc. v. Bentsen,*
   874 F. Supp. 1370 (N.D. Ga. 1994) ................................................................................22

*James v. Hegar,*
   86 F.4th 1076 (5th Cir. 2023) .........................................................................................13

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) .................................................................................... 11, 12

*John Doe # 1 v. Veneman,*
   380 F.3d 807 (5th Cir. 2004) ..........................................................................................52

*Keane v. Velarde,*
   No. 3:20-cv-00977, 2021 WL 4248896 (D. Conn. Sept. 17, 2021) ................................22

*Kole v. Vill. of Norridge,*
   No. 11 C 3871, 2017 WL 5128989 (N.D. Ill. Nov. 6, 2017) ...........................................45

*La Union Del Pueblo Entero v. FEMA,*
   608 F.3d 217 (5th Cir. 2010) ..........................................................................................11

*Labrador v. Poe ex rel. Poe,*
    144 S. Ct. 921 (2024) ............................................................................................................52

*League of United Latin Am. Citizens v. Abbott,*
    604 F. Supp. 3d 463 (W.D. Tex. 2022) ...............................................................................16

*Licon v. Ledezma,*
    638 F.3d 1303 (10th Cir. 2011) ...........................................................................................23

*Louisiana v. Becerra,*
    20 F.4th 260 (5th Cir. 2021) ...............................................................................................52

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .............................................................................................................13

*Lynchburg Range & Training, LLC v. Northam,*
    105 Va. Cir. 159, 2020 WL 8817562 (2020) ......................................................................45

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) .............................................................................................................52

*Magee v. City of S. Padre Island,*
    463 F. App'x 377 (5th Cir. 2012) ................................................................................. 29, 30

*Marshall v. Barlow's, Inc.,*
    436 U.S. 307 (1978) .............................................................................................................49

*Maryland v. King,*
    567 U.S. 1301 (2012) ...........................................................................................................51

*McRorey v. Garland,*
    ---F.4th---, 2024 WL 1825398 (5th Cir. Apr. 26, 2024) ....................................................44

*MD/DC/DE Broads. Ass'n v. FCC,*
    236 F.3d 13 (D.C. Cir. 2001) ..............................................................................................54

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.,*
    60 F.4th 956 (5th Cir. 2023) ...............................................................................................49

*Mich. Ass'n of Pub. Sch. Acads. v. United States Dep't of Educ.,*
    ---F. Supp. 3d---, 2024 WL 455079 (W.D. Mich. Jan. 10, 2024)......................................22

*Miller v. Albright,*
    523 U.S. 420 (1998) .............................................................................................................21

*Miss. State Democratic Party v. Barbour,*
    529 F.3d 538 (5th Cir. 2008) ...............................................................................................14

*Munaf v. Geren*,
    553 U.S. 674 (2008) ....................................................................................................................11

*Munn v. City of Ocean Springs*,
    763 F.3d 437 (5th Cir. 2014) ....................................................................................................32

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
    ---F. Supp. 3d---, 2024 WL 561860 (W.D. Tex. Feb. 12, 2024), *appeal filed*,
    No. 24-50180 (5th Cir. Mar. 14, 2024) ...................................................................................22

*Nat'l Rifle Ass'n v. Brady*,
    914 F.2d 475 (4th Cir. 1990) ....................................................................................................23

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022)...........................................................................................................44, 46, 47

*New York v. Burger*,
    482 U.S. 691 (1987) ....................................................................................................................49

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................................................11, 12, 50

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) ....................................................................................................................50

*ODonnell v. Harris Cnty.*,
    892 F.3d 147 (5th Cir. 2018), *overruled on other grounds by*,
    *Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) ...............................................................52

*Reading Health Sys. v. Bear Stearns & Co.*,
    900 F.3d 87 (3d Cir. 2018) .......................................................................................................21

*Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*,
    647 F. Supp. 3d 508 (W.D. La. 2022) ....................................................................................45

*Republic Aviation Corp. v. NLRB*,
    324 U.S. 793 (1945) ....................................................................................................................32

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ....................................................................................................31

*Roberts v. Sea-Land Servs., Inc.*,
    566 U.S. 93 (2012) ......................................................................................................................26

*Rocky Mountain Wild v. Dallas*,
    98 F.4th 1263 (10th Cir. 2024)................................................................................................24

*Sampson v. Murray*,
    415 U.S. 61 (1974) ......................................................................................................................12

*Speech First, Inc. v. Fenves,*
   979 F.3d 319 (5th Cir. 2020) ..................................................................................11, 12, 20

*Spinelli v. City of New York,*
   579 F.3d 160 (2d Cir. 2009).............................................................................................49

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) .............................................................................................18, 19, 20

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ..................................................................................................*passim*

*Sw. Elec. Power Co. v. U.S. EPA,*
   920 F.3d 999 (5th Cir. 2019) ...........................................................................................54

*Teixeira v. County of Alameda,*
   873 F.3d 670 (9th Cir. 2017) ................................................................................44, 45, 47

*Tex. Democratic Party v. Benkiser,*
   459 F.3d 582 (5th Cir. 2006) ...........................................................................................18

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ...................................................................................................48, 53

*U.S. Steel Corp. v. Astrue,*
   495 F.3d 1272 (11th Cir. 2007) ..................................................................................2, 32

*United States v. Abbate,*
   970 F.3d 601 (5th Cir. 2020) ...........................................................................................31

*United States v. Biswell,*
   406 U.S. 311 (1972) ...................................................................................................49, 51

*United States v. Brenner,*
   481 F. App'x 124 (5th Cir. 2012).....................................................................................34

*United States v. Caldwell,*
   790 F. App'x 797 (7th Cir. 2019).....................................................................................39

*United States v. Carter,*
   801 F.2d 78 (2d Cir. 1986)...............................................................................................36

*United States v. Clark,*
   582 F.3d 607 (5th Cir. 2009) .....................................................................................30, 32

*United States v. Dettra,*
   238 F.3d 424, 2000 WL 1872046 (6th Cir. 2000)...........................................................39

*United States v. Duncan*,
   Case No. 7:20-cr-00167-M-3, 2023 WL 7346042 (E.D.N.C. Nov. 7, 2023)..................................44

*United States v. Fields*,
   608 F. App'x 806 (11th Cir. 2015)................................................................................................36

*United States v. Fleischli*,
   305 F.3d 643 (7th Cir. 2002)........................................................................................................36

*United States v. Flores*,
   652 F. Supp. 3d 796 (S.D. Tex. 2023)..........................................................................................44

*United States v. Fridley*,
   43 F. App'x 830 (6th Cir. 2002)....................................................................................................36

*United States v. Hosford*,
   82 F. Supp. 3d 660 (D. Md. 2015), *aff'd*, 843 F.3d 161 (4th Cir. 2016) ...............................51

*United States v. Idarecis*,
   164 F.3d 620, 1998 WL 716558 (2d Cir. 1998) ..........................................................................28

*United States v. Ilarraza*,
   963 F.3d 1 (1st Cir. 2020) ............................................................................................................36

*United States v. Kevin Shan*,
   361 F. App'x 182 (2d Cir. 2010) ..................................................................................................36

*United States v. King*,
   646 F. Supp. 3d 603 (E.D. Pa. 2022) ..........................................................................................44

*United States v. King*,
   735 F.3d 1098 (9th Cir. 2013) ............................................................................................. 26, 36

*United States v. Lipp*,
   533 F. App'x 418 (5th Cir. 2013) .................................................................................................17

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ...........................................................................................................45

*United States v. McNulty*,
   ---F Supp.3d.---, 2023 WL 4826950 (D. Mass. July 27, 2023) ........................................ 44, 45

*United States v. Mulholland*,
   702 F. App'x 7 (2d Cir. 2017) ......................................................................................................36

*United States v. Nat'l Dairy Prod. Corp.*,
   372 U.S. 29 (1963) ........................................................................................................................32

*United States v. Ochoa,*
   726 F. App'x 651 (9th Cir. 2018) ........................................................................................36

*United States v. Parish of St. Bernard,*
   756 F.2d 1116 (5th Cir. 1985) ............................................................................................11

*United States v. Paul,*
   274 F.3d 155 (5th Cir. 2001) ..............................................................................................31

*United States v. Tilotta,*
   Case No. 3:19-cr-04768-GPC, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) ....................45

*United States v. Tyson,*
   653 F.3d 192 (3d Cir. 2011) ........................................................................................ 16, 17

*United States v. Valdes,*
   681 F. App'x 874 (11th Cir. 2017) ......................................................................................26

*United States v. Vargas,*
   74 F.4th 673 (5th Cir. 2023) ...............................................................................................49

*United States v. Wilkening,*
   485 F.2d 234 (8th Cir. 1973) ..............................................................................................39

*United States v. Williams,*
   553 U.S. 285 (2008) ............................................................................................................29

*United States v. Wilmoth,*
   636 F.2d 123 (5th Cir. Unit A Feb. 1981) ...........................................................................26

*United States v. Zheng Jian Shan,*
   80 F. App'x 31 (9th Cir. 2003) ...........................................................................................36

*USX Corp. v. Barnhart,*
   395 F.3d 161 (3d Cir. 2004) ........................................................................................ 32, 33

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982) ............................................................................................................30

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) ..................................................................................................... 29, 30

*White v. Carlucci,*
   862 F.2d 1209 (5th Cir. 1989) ............................................................................................12

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ................................................................................................................12

x

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018) ........................................................................... 14, 15

**FEDERAL STATUTES**

5 U.S.C. § 705 ........................................................................................... 2, 11, 53

5 U.S.C. § 706 ........................................................................................................50

18 U.S.C. § 921 *et seq.* ..........................................................................................3

18 U.S.C. § 921 .............................................................................................*passim*

18 U.S.C. § 922 .............................................................................................*passim*

18 U.S.C. § 923 .............................................................................................*passim*

18 U.S.C. § 924 ...................................................................................... 16, 17

18 U.S.C. § 926 ................................................................................... 7, 22, 50

28 U.S.C. § 599A ................................................................................... 7, 50

28 U.S.C. § 1391 ...................................................................................................21

Firearms Owners' Protection Act,
  Pub. L. No. 99-308, 100 Stat. 449 (1986) ..........................................................5

Pub. L. No. 99-360, 100 Stat. 766 (1986) ............................................................5

Brady Handgun Violence Prevention Act,
  Pub. L. No. 103-159, 107 Stat. 1536 (1993)........................................................4

Bipartisan Safer Communities Act,
  Pub. L. No. 117-159, 136 Stat. 1313 (2022)....................................................5, 6

**STATE STATUTES**

Va. Code § 44-146.15 ..........................................................................................45

**REGULATIONS**

27 C.F.R. § 478.11 ....................................................................... 8, 27, 28, 29

27 C.F.R. § 478.13 ......................................................................................*passim*

27 C.F.R. § 478.23 ................................................................................................47

27 C.F.R. § 478.57 ..................................................................................... 10, 41, 43

27 C.F.R. § 478.78 .............................................................................................. 10, 41, 43

27 C.F.R. §§ 478.121-478.134 ......................................................................................... 4

28 C.F.R. § 0.130 ............................................................................................................. 7

Treasury Department Order No. 221,
    37 Fed. Reg. 11,696 (June 10, 1972) ........................................................................ 7

Notice of Proposed Rulemaking, Definition of "Engaged in the Business" as a Dealer in Firearms,
    88 Fed. Reg. 61,993 (Sept. 8, 2023) ..................................................................... 7, 23

Final Rule, Definition of "Engaged in the Business" as a Dealer in Firearms,
    89 Fed. Reg. 28,968 (Apr. 19, 2024) ................................................................. *passim*

**OTHER AUTHORITIES**

1 Laws of the State of Maine 546 (1830) ....................................................................... 46

2 General Laws of Massachusetts from the Adoption of the Constitution to February, 1822,
    ch. 52, An Act Providing for the Appointment of Inspectors, and Regulating the
    Manufactory of Gun-Powder (1823) ...................................................................... 46

3 Laws of the Commonwealth of Massachusetts, from November 28, 1780, to
    February 28, 1807 (1807) ...................................................................................... 46

15 The Public Records of the Colony of Connecticut, from May, 1775, to June, 1776, Inclusive
    191, An Act for Encouraging the Manufactures of Salt Petre and Gun Powder (1890) ................. 46

Act of May 22, 1794, 1 Stat. 369 .................................................................................. 46

Acts of the General Assembly of the State of New-Jersey, at a Session Begun at Princeton on
    the 27th Day of August 1776, and Continued by Adjournments 6, ch. 6, An Act for the
    Inspection of Gun-Powder, § 1 (1877) .................................................................. 46

*Administrative Procedure Act*, S. Doc. No. 248, 79th Cong., 2d Sess. 277 (1946) ...................... 53

ATF, Complete Federal Firearms Listings,
    https://www.atf.gov/firearms/listing-federal-firearms-licensees/complete ..................... 45

ATF Form 4473, Firearms Transaction Record,
    https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-
    atf-form-53009/download ...................................................................................... 3

ATF, National Tracing Center,
    https://www.atf.gov/firearms/national-tracing-center .......................................... 4

Colonial Laws of Massachusetts Reprinted from the Edition of 1672, Powder (1890) ...................... 46

Comment of Attorney General of New York, et al., Definition of "Engaged in the Business" as a
    Dealer in Firearms, Docket No. ATF 2022R-17 (Dec. 7, 2023),
    https://ag.ny.gov/sites/default/files/letters/multistate-comment-on-nprm-eitb-atf-rule.pdf.......53

FBI, National Instant Background Check System 2022 Operational Report,
    https://www.fbi.gov/file-repository/nics-2022-operations-report.pdf/view ....................................4

Laws of the State of New Hampshire; With the Constitutions of the United States and of the State
    Prefixed, An Act to Provide for the Appointment of Inspectors and Regulating the Manufactory
    of Gunpowder (1830) ..........................................................................................................................46

Webster's Third New International Dictionary (1971) ...................................................................... 27, 29

William J. Krouse, Cong. Rsch. Serv., IF12197, *Firearms Dealers "Engaged in the Business"* (2022),
    https://crsreports.congress.gov/product/pdf/IF/IF12197/2...........................................................6

## INTRODUCTION

In the Gun Control Act (GCA), Congress required anyone engaged in the business of dealing firearms to obtain a federal firearms license.  When transferring firearms, licensees must verify the transferee's identity, run a background check (and deny the transfer if the background check reveals that the transferee is prohibited from receiving or possessing a firearm), and maintain records that can be used to trace the firearm if it is later recovered from a crime scene.  These requirements serve the "twin goals" of "keep[ing] guns out of the hands of criminals and others who should not have them, and . . . assist[ing] law enforcement authorities in investigating serious crimes."  *Abramski v. United States*, 573 U.S. 169, 180 (2014).  Recognizing the harm to public safety caused by unlicensed dealing in firearms, Congress recently amended the GCA *via* the Bipartisan Safer Communities Act (BSCA) to expand the category of conduct that constitutes engaging in the business of dealing.

In the GCA, Congress vested the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) with authority to promulgate regulations necessary to carry out the GCA's provisions.  In the Rule at issue in this case,[1] ATF exercised that authority by defining "engaged in the business" of dealing in firearms and setting forth examples of conduct that presumptively does, or does not, rise to the level of engaging in the business of dealing.  In this lawsuit, Plaintiffs (four states, four organizations, and one individual) challenge the Rule and ask for a preliminary injunction that would prevent the federal government from implementing or enforcing the Rule against anyone, nationwide. The Court should deny this extraordinary relief, for several reasons.

Plaintiffs are not likely to succeed on the merits.  The Rule falls within ATF's authority to promulgate regulations necessary to carry out the GCA.  Its provisions are consistent with the GCA's text and grounded in decades of case law and law enforcement experience.  In particular, each of the

---

[1] Final Rule, Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 19, 2024) ("Rule").

rebuttable presumptions set forth in the Rule is lawful because a "rational nexus" exists between the facts that give rise to the presumptions and the presumed facts. *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1284 (11th Cir. 2007) (quoting *Cole v. U.S. Dep't of Agric.*, 33 F.3d 1263, 1267 (11th Cir. 1994)). And the GCA's routine dealer-licensing requirements are entirely consistent with the Second Amendment, which permits "laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Plaintiffs' Fourth Amendment claim is foreclosed by Supreme Court precedent holding that the Fourth Amendment allows inspections of federal firearms licensees.

But the Court need not reach the merits because Plaintiffs fail to satisfy their burden to establish standing — much less irreparable harm, which they must show to obtain relief. The State Plaintiffs make no effort to establish standing other than to assert that they are States. The individual plaintiff lacks standing because his conduct described in his declaration does not constitute engaging in the business of dealing under the Rule. The organizations lack standing because none of them identifies a member with standing. Furthermore, because the Rule serves vital public safety interests, including preventing dangerous individuals from obtaining firearms from those engaged in the business of dealing firearms without a license, the balance of the equities weighs strongly against injunctive relief.

Even if the Court were to grant some relief (which it should not), it should reject the nationwide relief Plaintiffs seek. Nationwide injunctions are disfavored because they extend beyond an equity court's traditional role of fashioning relief to be no more intrusive than necessary to prevent the parties' demonstrated irreparable harm — which here is nonexistent. And even if 5 U.S.C. § 705 in some circumstances authorized courts to grant equivalent universal preliminary relief, such relief is not appropriate where, as here, a party-specific injunction would fully remedy any injury Plaintiffs might establish and universal relief would effectively pretermit litigation pending in other federal

district courts.

## BACKGROUND

### I.     Statutory and Regulatory Background

#### A.      The Gun Control Act of 1968

Congress enacted the Gun Control Act, 18 U.S.C. § 921 *et seq.* (GCA), in 1968 to promote

public safety and curb crime and violence caused by the misuse of firearms.  "The twin goals of [the

GCA's] comprehensive scheme are to keep guns out of the hands of criminals and others who should

not have them, and to assist law enforcement authorities in investigating serious crimes."  *Abramski*,

573 U.S. at 180.  The GCA prohibits various groups of people, including felons, fugitives from justice,

and undocumented immigrants, from possessing firearms with a nexus to interstate commerce.  *See*

18 U.S.C. § 922(g).  In restricting the access of criminals and other dangerous individuals to firearms,

"the focus of the federal scheme is the federally licensed firearms dealer."  *Huddleston v. United States*,

415 U.S. 814, 825 (1974).

Federal firearms licensees (FFLs) must comply with various obligations when transferring

firearms to non-licensees, to prevent prohibited persons from obtaining firearms.  "The statute

establishes a detailed scheme to enable the dealer to verify, at the point of sale, whether a potential

buyer may lawfully own a gun."  *Abramski*, 573 U.S. at 172.  In most cases, a transferee must "appear

in person at the licensee's business premises" when acquiring a firearm.  18 U.S.C. § 922(c).  The

licensed dealer must obtain the transferee's "name, age, and place of residence," *id.* § 922(b)(5), and

must "verif[y] the identity of the transferee by examining a valid identification document," *id.*

§ 922(t)(1)(D).  Transferees must fill out a form certifying that they are not prohibited by federal law

from receiving or possessing firearms.[2]  The dealer must submit information about the transferee to

---

[2] *See* ATF Form 4473, Firearms Transaction Record, https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

the FBI's National Instant Background Check System (NICS), which then conducts a background check on the transferee and will deny the transaction if the background check reveals that the transferee is prohibited from receiving or possessing the firearm. 18 U.S.C. § 922(t)(1).[3] Since the NICS became operational in 1998, it has conducted more than 443 million background checks, and more than 2.1 million firearms transactions have been denied. FBI, National Instant Background Check System 2022 Operational Report 14-15, https://www.fbi.gov/file-repository/nics-2022-operations-report.pdf/view.

FFLs also maintain records of acquisitions and dispositions of firearms, which enable tracing of firearms recovered from crime scenes. 18 U.S.C. §§ 922(b)(5), 923(g)(1)(A); 27 C.F.R. §§ 478.121-478.134. When a firearm is recovered from a crime scene, law enforcement (often state or local law enforcement) can submit a request to ATF's National Tracing Center to trace the firearm. *See* ATF, National Tracing Center, https://www.atf.gov/firearms/national-tracing-center. ATF's tracing process typically involves querying the records maintained by FFLs in order to trace the firearm to its first retail purchaser. Firearms tracing, which is enabled by the records maintained by FFLs, helps all levels of law enforcement solve crimes involving firearms. *See* Rule, 89 Fed. Reg. at 28,988.

Each of the above-described obligations relating to the disposition of firearms applies only to transfers by FFLs. Therefore, the GCA's standard for when a person or business must obtain a federal firearms license to deal firearms has vital public safety implications. Since the GCA's original enactment, Congress has prohibited individuals from "engag[ing] in the business of . . . dealing in firearms" without a federal firearms license. 18 U.S.C. § 922(a)(1)(A). If a person is engaged in the business of dealing in firearms, that person must obtain a federal firearms license and comply with the verification, background check, and recordkeeping obligations described above. But if a person is not

---

[3] The NICS was established pursuant to the Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993).

engaged in the business of dealing in firearms, that person may transfer a firearm without conducting a background check, keeping transaction records, or complying with other obligations on FFLs.[4]

When Congress first enacted the GCA, Congress did not further define what it means to engage in the business of dealing firearms.  In 1986, as part of the Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986) (FOPA), Congress added a statutory definition of engaged in the business for the first time.  As applied to a dealer in firearms other than as a gunsmith or pawnbroker, FOPA defined "engaged in the business" as follows:

> a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

*Id.* § 101 (amending 18 U.S.C. § 921).  Congress further defined the term "with the principal objective of livelihood and profit" to "mean[] that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection."  *Id.*  Several months later, Congress amended that definition to clarify that "proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism."  Pub. L. No. 99-360, § 1(b), 100 Stat. 766, 766 (1986).

In 2022, Congress amended the GCA by enacting the Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat. 1313 (2022).  Congress enacted the BSCA in the wake of a series of tragic mass shootings.  In one of those mass shootings, which occurred between Midland and Odessa, Texas, an FFL refused to transfer a firearm to the perpetrator based on mental illness, but the perpetrator then unlawfully obtained the firearm used in the shooting from an unlicensed dealer who did not

---

[4] Certain requirements apply even to firearms transfers by unlicensed individuals.  For example, no person may transfer a firearm if that person knows or has reasonable cause to believe that the transferee is legally prohibited from possessing or obtaining that firearm.  *See* 18 U.S.C. § 922(d).

conduct a background check.  That dealer later pleaded guilty to unlawful unlicensed firearms dealing.  *See* Rule, 89 Fed. Reg. at 28,971-72 & nn.26-29.  As relevant here, the BSCA expanded the GCA's definition of engaged in the business of dealing in firearms.  The BSCA replaced the phrase "with the principal objective of livelihood and profit" with the phrase "to predominantly earn a profit," and defined that phrase in a separate subsection, which clarifies that the term "means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain."  136 Stat. at 1324-25, § 12002.  The BSCA's sponsors intended to address potential confusion about the GCA's application to individuals who dealt in firearms with the intent to earn a profit, but possibly not as a principal source of livelihood, to "clarify who should be licensed, eliminating a 'gray' area in the law, ensuring that one aspect of firearms commerce is more adequately regulated."  Rule, 89 Fed. Reg. at 28,972 (quoting William J. Krouse, Cong. Rsch. Serv., IF12197, *Firearms Dealers* "*Engaged in the Business*" 2 (2022), https://crsreports.congress.gov/product/pdf/IF/IF12197/2); *see also id.* at 28,972 n.31 (collecting statements of BSCA's sponsors).

As amended by the BSCA, the GCA thus currently defines "engaged in the business" as applied to a dealer in firearms other than a gunsmith or pawnbroker as:

> a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

18 U.S.C. § 921(a)(21)(C). [5]

The GCA further defines the term "to predominantly earn a profit" to

> mean[] that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person

_____

[5] A separate statutory provision defines "engaged in the business" as applied to a dealer in firearms as a gunsmith.  18 U.S.C. § 921(a)(21)(D).  Another provision defines "dealer" to include any pawnbroker who receives any firearm as security for payment or repayment of money.  *Id.* § 921(a)(11)(C).  Those provisions were not addressed in the Final Rule and are not at issue in this litigation.

who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

*Id.* § 921(a)(22).[6]

## B.    The Final Rule

ATF is a bureau within the Department of Justice responsible for implementing and enforcing the federal firearms laws, including the GCA.  Congress has vested in the Attorney General the authority to prescribe regulations "necessary to carry out the provisions of" the GCA, *id.* § 926(a), and Congress and the Attorney General have delegated that authority to ATF.[7]

On September 8, 2023, ATF issued a Notice of Proposed Rulemaking for a proposed rule to address when a person is engaged in the business of dealing firearms.  Notice of Proposed Rulemaking, Definition of "Engaged in the Business" as a Dealer in Firearms, 88 Fed. Reg. 61,993 (Sept. 8, 2023) ("NPRM").  ATF received nearly 388,000 comments, including nearly 258,000 comments in support of and nearly 99,000 comments in opposition to the proposed rule.  Rule, 89 Fed. Reg. at 28,984.

After considering these comments, ATF published the Final Rule on April 19, 2024.  ATF explained that the Rule "implement[s]" the BSCA's "statutory change" to the definition of engaged in the business, *id.* at 28,968, and thereby furthers Congress's design "to improve public safety by helping to prevent persons who are prohibited from possessing firearms under Federal law from acquiring firearms and allowing law enforcement officers to trace firearms involved in crime," *id.* at 28,987.[8] The Rule also "provide[s] clarity to persons who remain unsure of whether" they are engaged in the business of dealing in firearms.  *Id.* at 28,968.

---

[6] This provision further contains a definition of "terrorism," which is not at dispute in this litigation. *See* 18 U.S.C. § 921(a)(22).
[7] *See* 28 U.S.C. § 599A(b)(1), (c)(1); 28 CFR § 0.130(a)(1)-(2); Treasury Department Order No. 221, §§ (1), (2)(d), 37 Fed. Reg. 11,696, 11,696-97 (June 10, 1972).
[8] *See also* Rule, 89 Fed. Reg. at 28,993-95 (the Rule will promote compliance with the GCA, which will effectuate the GCA's purposes of enhancing public safety by increasing the number of background checks performed, enabling more traces of firearms, and improving crime gun intelligence).

The Rule defines various subsidiary terms in the GCA's definition of "engaged in the business," consistent with statutory text and ordinary usage. For example, the term "Dealer" includes "[a]ny person engaged in the business of selling firearms at wholesale or retail . . . wherever, or through whatever medium, they are conducted," including at "a gun show," a "flea market," "by mail order," "over the internet," or "through the use of other electronic means." *Id.* at 29,090 (27 C.F.R. § 478.11). ATF explained that this definition reflects the statutory text, because "there is no statutory exemption under the GCA for unlicensed persons to engage in the business of dealing in firearms at a gun show, or at any other venue." *Id.* at 28,989. The list of venues at which firearms dealing could occur is also consistent with decades of case law and ATF practice. *See id.* at 28,973-74 & nn.35-46.

The Rule introduces a standalone section, 27 C.F.R. § 478.13, to define "engaged in the business as a dealer in firearms other than a gunsmith or a pawnbroker." Rule, 89 Fed. Reg. at 29,090-91. Subsection (a) mostly repeats the statutory definition contained in 18 U.S.C. § 921(a)(21)(C), while also clarifying that being engaged in the business covers consignment-type auctions but not estate-type auctions. *Id.* at 29,091 (27 C.F.R. § 478.13(a)).

Subsection (b) states that whether someone is engaged in the business of dealing "is a fact-specific inquiry," and that while "[s]elling large numbers of firearms . . . may be highly indicative of business activity, . . . there is no minimum threshold number of firearms purchased or sold that triggers the licensing requirement." *Id.* (27 C.F.R. § 478.13(b)). This subsection reflects ATF's sensible conclusion that defining "engaged in the business" through a bright-line threshold of number of transactions would be inconsistent with the GCA's text and would necessarily be both underinclusive and overinclusive. *See id.* at 29,086. To clarify the GCA's application, subsection (c) sets forth a number of fact patterns that give rise to rebuttable presumptions "[i]n civil and administrative proceedings" (but not in criminal proceedings) that "a person shall be presumed to be engaged in the business of dealing in firearms." *Id.* at 29,091 (27 C.F.R. § 478.13(c)) (the "EIB presumptions"). For

example, a person is presumed to be engaged in the business of dealing firearms when the person repetitively purchases for the purpose of resale stolen firearms, or resells or offers for resale stolen firearms. *Id.* (27 C.F.R. § 478.13(c)(2)(ii)(A)). These presumptions "are supported by the Department's investigative, regulatory, and enforcement experience, as well as conduct that the courts have found to require a license even before the BSCA expanded the definition of 'engaged in the business.'" *Id.* at 28,977; *see also id.* at 28,977-79 nn.72-73, 74-77, 79-83 (citing case law and examples of federal prosecutions supporting these presumptions).

Subsection (d) clarifies the application of the statutory term "predominantly earn a profit." It starts by repeating the statutory definition in 18 U.S.C. § 921(a)(22), which provides that the term "means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain," then clarifies that "a person may have the intent to profit even if the person does not actually obtain the intended pecuniary gain from the sale or disposition of firearms." Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)(1)). It then sets forth fact patterns giving rise to rebuttable presumptions in civil and administrative proceedings that a person has the intent to predominantly earn a profit. *Id.* (27 C.F.R. § 478.13(d)(2)) (the "PEP presumptions"). For example, a person is presumed to have intent to predominantly earn a profit if the person repetitively or continuously purchases or rents physical space to display firearms offered for resale. *Id.* (27 C.F.R. § 478.13(d)(2)(ii)). Like the EIB presumptions, the PEP presumptions are supported by decades of case law arising before the BSCA's expansion of the statutory language, and enforcement experience. *See id.* at 28,981-82 & nn.97-104.

The Rule then lists categories of conduct that are not to be presumed to be engaging in the business of dealing firearms, and can be used to rebut the EIB presumptions and PEP presumptions, such as reselling or transferring firearms "[o]ccasionally to a licensee or to a family member for lawful purposes." *Id.* at 29,092 (27 C.F.R. § 478.13(e), (f)). Subsection (g) specifies that the activities set

9

forth in the EIB presumptions, PEP presumptions, and list of rebuttal evidence "are not exhaustive of the conduct or evidence that may be considered in determining whether a person is engaged in the business of dealing in firearms, or has the intent to predominantly earn a profit through the repetitive purchase and resale of firearms." *Id.* (27 C.F.R. § 478.13(g)). Subsection (h) provides that the EIB presumptions and PEP presumptions "shall not apply to any criminal case, although they may be useful to courts in criminal cases, for example, when instructing juries regarding permissible inferences." *Id.* (27 C.F.R. § 478.13(h)).

Other provisions of the Rule address the procedures that former licensees must follow when they liquidate business inventory upon license revocation or other termination of their license. Within 30 days of license termination, a former FFL must transfer its business inventory either to an FFL or a responsible person of the former FFL (meaning a person who had the authority to direct the former FFL's firearms business). *Id.* (27 C.F.R. §§ 478.57(b), 478.78(b)). After termination, a former FFL must not continue to engage in the business of dealing firearms or restock its inventory by purchasing additional firearms for resale. *Id.* (27 C.F.R. §§ 478.57(d), 478.78(d)).

The Rule is scheduled to take effect on May 20, 2024. *Id.* at 28,968.

## II.   Factual and Procedural Background

Plaintiffs are four states (Texas, Louisiana, Mississippi, and Utah), four organizations that have a general mission of promoting firearms rights (Gun Owners of America, Inc. (GOA), Gun Owners Foundation (GOF), Tennessee Firearms Association (TFA), and Virginia Citizens Defense League (VCDL)), and one individual (Jeffrey W. Tormey). *See* Complaint for Declaratory and Injunctive Relief ¶¶ 8-16, ECF No. 1 ("Compl."). The Complaint brings three claims that the Rule allegedly violates the Administrative Procedure Act (APA) and claims for violations of the Fifth Amendment's vagueness doctrine, the Second Amendment, the Fourth Amendment, and the separation of powers. *Id.* ¶¶ 169-205. Plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary

Injunction.  ECF No. 16 ("Mot.").  Plaintiffs ask the Court to "postpone[]" the Rule's "effective date," as to all parties nationwide, pursuant to 5 U.S.C. § 705.  Proposed Order, ECF No. 16-7.

## LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy,'" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), that "should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest," *La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010).  The last two factors merge when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The same requirements apply to a temporary restraining order.  *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  The Fifth Circuit has held that the same factors apply when a party seeks to postpone the effective date of agency action under Section 705.  *See Alliance for Hippocratic Medicine* v. *FDA*, 78 F.4th 210, 242 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 537 (2023).  Because Plaintiffs "bring a facial challenge" to the Rule, Plaintiffs "must establish that no set of circumstances exists under which the [Rule] would be valid." *Associated Builders & Contractors of Tex., Inc. v. NLRB*, 826 F.3d 215, 220 (5th Cir. 2016) (citation omitted).  "[A] regulation is presumptively valid, and one who attacks it has the burden of showing its invalidity."  *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1124 (5th Cir. 1985).

## ARGUMENT

### I.   Plaintiffs Lack Standing and Fail to Establish Irreparable Harm

Plaintiffs' demand for a preliminary injunction should be denied at the threshold because they fail to demonstrate that they have standing — much less irreparable harm.  To have Article III standing, "a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc.*

11

*v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citation omitted).  An injury confers standing only if it is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).  "Plaintiffs always have the burden to establish standing." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).  And "[b]ecause a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,'" a plaintiff seeking one must likewise "make a 'clear showing' that they have standing." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Plaintiffs must also show that, in the absence of an injunction, they are "likely to suffer irreparable harm." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (citation omitted).  It is not enough simply to "show[] some possibility of irreparable injury." *Nken*, 556 U.S. at 434-35 (citation omitted).  "Speculative injury is not sufficient" to "make a clear showing of irreparable harm." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).  Moreover, "the irreparable harm element must be satisfied by independent proof, or no injunction may issue." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).  "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600.  Conversely, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Plaintiffs fail to make the requisite clear and independently supported showing of either standing or irreparable harm.

### A.    The State Plaintiffs Fail to Allege or Establish Standing and Irreparable Harm

Texas, Louisiana, Mississippi, and Utah are named plaintiffs in this case.  *See* Compl. ¶¶ 8–11. Yet beyond asserting that each is a "sovereign state of the United States," *id.*, Plaintiffs' Complaint makes no allegations concerning the State plaintiffs' standing to challenge the Rule.  States are not

entitled to assert their citizens' challenges to the Rule. *Haaland v. Brackeen*, 599 U.S. 255, 294-95 (2023). Neither the Complaint nor the Motion identifies any injury the State plaintiffs might allegedly suffer as a result of the Rule, much less whether any such injuries are sufficiently "concrete and particularized" and "actual or imminent" to confer standing, *Barber*, 860 F.3d at 352 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); or how a favorable decision in this case would likely redress such unidentified injuries. Accordingly, the State plaintiffs fail to establish that they have standing or irreparable harm.

### B.    Plaintiff Tormey Lacks Standing to Bring A Pre-Enforcement Challenge and Fails to Demonstrate that He Will Be Harmed Irreparably by the Rule

Plaintiff Tormey, the lone individual plaintiff, also fails to establish that he has standing, much less that he will be irreparably harmed by the Rule going into effect. Because Tormey exclusively seeks prospective and declaratory relief (as do the other plaintiffs), *see* Compl. 45, Demand for Relief, he "must demonstrate . . . a real and immediate threat of repeated injury in the future." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (citation omitted). That is, he must show that any alleged future injury is "certainly impending," or that there is a "substantial risk" that such injury "will occur." *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

Tormey's alleged injury here hinges on the potential enforcement of the Rule's interpretation of the GCA against him for engaging in the business of dealing firearms without a license. More specifically, Tormey alleges that he has "occasionally bought and sold firearms through private sales" to "enhance" his personal firearms collection, and he "fear[s]" that if he continues to engage in this "purely private and non-commercial activit[y]" after the Rule becomes effective, he will at some point be "subject[ed] to an overreaching administrative action, civil forfeiture, an ATF cease-and-desist letter, or even arrest and criminal indictment." Dec. of Jeffrey W. Tormey ¶¶ 10, 17, ECF No. 16-3 ("Tormey Decl."). Potential future enforcement amounts to an Article III injury, however, only if Tormey establishes that he (1) "inten[ds] to engage in a course of conduct"; (2) that intended future

13

conduct is "arguably proscribed" by the Rule's interpretation of the GCA; and (3) "the threat of future enforcement" of the law "is substantial." *Susan B. Anthony List*, 573 U.S. at 161-64 (citation omitted). Tormey fails to satisfy this standard on multiple fronts.

For one, Tormey fails to clearly demonstrate that he has "a serious intention to engage in conduct" that is actually "proscribed" by the Rule's interpretation of the GCA. *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018); *see Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 n.8 (5th Cir. 2008) ("[P]laintiffs must demonstrate a serious interest in acting contrary to a statute." (cleaned up)).

The Rule will impact Tormey only if his firearms-related conduct potentially amounts to being "engaged in the business" of dealing firearms under the Rule's implementation of the GCA, such that he would be required to obtain a federal firearms license or otherwise face consequences for unlicensed dealing. *See* 18 U.S.C. §§ 922(a)(1)(A), 923(a). But the conduct described in Tormey's declaration does not rise to the level of being "engaged in the business" and would not subject him to any enforcement action. Tormey avers that he "presently ha[s] a large personal collection of firearms" that he has "accumulated over many years" as a "collector" and "hobbyist," and he uses those firearms to "engaging in regular shooting activities," including "recreation, competitive shooting, hunting, and training." Tormey Decl. ¶¶ 4-5. "[F]or a number of years," Tormey has, "on average, . . . sold at least a couple, or even several, firearms per year, through various mediums," including gun shows. *Id.* ¶¶ 8-9. These sales involved "getting rid of guns [he] no longer want[ed]"; "freeing up funds for guns" he does want; or "trading up to nicer models as funds permit," to "enhance" his personal firearms collection. *Id.* ¶ 9.

Under the Rule's express terms, such occasional "purely private and non-commercial" sales made for the purpose of "enhancing" a personal firearms collection, *id.* ¶¶ 8, 10, *do not* qualify as being "engaged in the business" of firearms dealing. The Rule defines a "personal collection" of firearms

14

to include "[p]ersonal firearms that a person accumulates . . . for a hobby (e.g., noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, . . . or noncommercial firearms safety instruction)," Rule, 89 Fed. Reg. at 29,090, which describes Tormey's firearms collection almost to the letter, *see* Tormey Decl. ¶ 5.  And both the Rule and the GCA explicitly exclude from the "engaged in the business" definition "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of the person's personal collection of firearms."  Rule, 89 Fed. Reg. at 29,091; *see* 18 U.S.C. § 921(a)(21)(C); *see also* Rule, 89 Fed. Reg. at 29,092 ("A person *shall not be presumed to be engaged in the business* of dealing in firearms when reliable evidence shows that the person is only reselling or otherwise transferring firearms . . . [o]ccasionally to obtain more valuable, desirable, or useful firearms for the person's *personal collection*") (emphasis added).  Thus, such occasional sales and purchases of firearms to enhance a personal collection would not trigger a licensing requirement under the statute as explained by the Rule, or otherwise subject Tormey to potential civil or criminal penalties for unlicensed firearms dealing.  Because there is no "realistic danger" that the Rule's "operation or enforcement" will "direct[ly] injur[e]" Tormey in any meaningful way, he lacks standing. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see Zimmerman*, 881 F.3d at 389 (concluding that a plaintiff who took no steps that would have "demonstrate[d] a serious intent to violate the statute" he was challenging lacked standing).

Given that his planned conduct does not potentially implicate the Rule, Tormey cannot manufacture an injury by claiming to be confused by the Rule's terms.  He suggests that "the Rule arbitrarily defines 'collection' so narrowly that I am not even certain if my firearms collection still qualifies," Tormey Decl. ¶ 13, but as just discussed, the terms of the GCA and the Rule make clear that Tormey is not engaged in the business based on the facts described in his declaration.  And beyond that assertion, Tormey contends only that the Rule "makes portions of [his] perfectly lawful

activity seem suspect," Tormey Decl. ¶ 12, without identifying any particular presumption that could plausibly apply to him. Those vague assertions cannot suffice to show standing to challenge any particular presumption. Tormey's assertion that the Rule is "so convoluted, vague, and ambiguous that [he] cannot determine what is prohibited versus what is allowed," *id.* ¶ 15, is precisely the sort of "naked legal conclusion" that the Court "cannot credit" for purposes of standing. *League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 485 (W.D. Tex. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Tormey's assertion is also inaccurate. The GCA, as amended by the BSCA, establishes what firearms-related conduct is prohibited (e.g., engaging in the business of firearms dealing without a license) and permissible (e.g., making "occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby," 18 U.S.C. § 921(a)(21)(C)) under federal law. And the Rule — far from creating ambiguity or confusion — clarifies these general statutory provisions by, among other things, setting forth concrete fact patterns that help members of the public determine whether they are engaged in the business and require a license under the GCA.

Tormey lacks standing to bring a pre-enforcement challenge for a second reason: Tormey fails to clearly demonstrate a credible threat that he would be subject to any sanctions as a result of his conduct. *See Susan B. Anthony List*, 573 U.S. at 164 (requiring that the "threat of future enforcement" against a plaintiff bringing a pre-enforcement challenge be "substantial").

The GCA prohibits any person other than a "licensed dealer" from "engag[ing] in the business of . . . dealing in firearms." 18 U.S.C. § 922(a)(1)(A). To be criminally liable under § 922(a)(1)(A), however, an individual must "*willfully*" engage in the business of dealing firearms without a license. *See id.* § 924(a)(1)(D) (emphasis added); *see also United States v. Tyson*, 653 F.3d 192, 200 (3d Cir. 2011) ("To obtain a conviction under [§ 922(a)(1)(A)], the government must show that the defendant (1) engaged in the business of dealing in firearms; (2) was not a federally licensed firearms dealer; and (3) *acted*

*willfully*." (emphasis added)).[9]  That distinction matters.  Far from ensnaring "unwitting" violators, the GCA imposes criminal liability only on those individuals who (1) engage in the business of unlicensed firearms dealing *and* (2) "act[] with knowledge that [such] conduct [is] unlawful."  *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (citation omitted); *see United States v. Lipp*, 533 F. App'x 418, 421-422 (5th Cir. 2013).

Per Tormey's declaration, however, his firearms-related conduct could not be considered a willful violation of the GCA.  Despite merely being a firearms "collector and hobbyist" who maintains a "personal collection" for recreational purposes and "occasionally" sells firearms solely "to enhance" that collection — conduct that, as explained above, does not qualify as being "engaged in the business" — Tormey still purportedly "fear[s]" that the Rule might at some point result in his "arrest" or "criminal indictment."  Tormey Decl. ¶¶ 4-5, 10, 17.  Yet the fact that Tormey's alleged conduct so closely matches the "personal collection" exclusion to the GCA's "engaged in the business" definition, *see* 18 U.S.C. § 921(a)(21)(C), combined with his professed uncertainty as to whether his conduct is "prohibited" or "allowed" under the Rule's interpretation of that definition, Tormey Decl. ¶ 15, renders any prospect of Tormey being subject to criminal liability for *willfully* engaging in unlicensed firearms dealing largely "imaginary" and "speculative."  *Susan B. Anthony List*, 573 U.S. at 159-60 (requiring that a plaintiff bringing a pre-enforcement challenge allege a "credible threat of prosecution") (citations omitted).[10]  Nor does Tormey suggest that ATF has done anything to threaten

---

[9] Similarly, civil forfeiture of firearms involved in unlicensed dealing requires showing a "willful" violation, 18 U.S.C. § 924(d)(1), and prior violations of the GCA or its implementing regulations can warrant the denial of a federal firearms license application only if those violations were committed "willfully," *id.* § 923(d)(1)(C).

[10] This does not suggest, of course, that a conviction under 18 U.S.C § 921(a)(1)(A) would be precluded by an individual's purported ignorance of the scope of federal firearms regulations.  Whether someone engaged in the business of dealing in firearms without a license and did so "with knowledge that [such] conduct was unlawful" is inherently a fact-intensive inquiry.  *Tyson*, 653 F.3d at 200-01 (acknowledging that determining whether a defendant was "engaged in the business" is "subject to the idiosyncratic nature of the fact pattern presented").  The relevant question here is whether Plaintiff Tormey has

enforcement of the Rule against him in any way.  *Cf. id.* at 165 (finding standing in part because the "specter of" civil enforcement against the specific plaintiff was "substantial").

### C.   The Organizational Plaintiffs Also Lack Standing and Fail to Demonstrate Irreparable Harm From the Rule

Plaintiffs' request for a preliminary injunction cannot be saved by GOA, GOF, TFA, or VCDL because they too lack standing and fail to establish irreparable harm.  None of these organizations alleges that it is directly harmed by the Rule in any way.  Rather, they all bring suit on behalf of their respective members.  *See, e.g.*, Compl. ¶ 13 (alleging that many of GOA's members "are being irreparably harmed by the [Rule]").  But the organizational plaintiffs have failed to satisfy the basic requirement of identifying a member who "independently meet[s] the Article III standing requirements." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (explaining that associational standing "require[s] plaintiff-organizations to make specific allegations establishing that at least one identified member" has suffered or will suffer harm).[11]

The organizational plaintiffs collectively identify only two members with any degree of specificity.  The first is Plaintiff Tormey.  *See* Compl. ¶ 12 (alleging that Tormey is a member of GOA, TFA, and VCDL).  Yet as explained above, he lacks standing to challenge the Rule in his own right.  The second is "one GOA member" whose federal firearms license was "recently revoked"; who

---

clearly shown that his firearms-related conduct will subject him to a credible risk of prosecution, *see Susan B. Anthony List*, 573 U.S. at 159, and he has not.

[11] GOF lacks associational standing for an additional reason: It has not demonstrated itself to be the sort of membership organization that can invoke such standing in the first place.  *See Summers*, 555 U.S. at 494 ("It is common ground that . . . organizations can assert the standing of their *members*." (emphasis added)).  Plaintiffs do not allege that GOF has any members and instead describe it as a "nonprofit legal defense and educational foundation" that is purportedly "supported by gun owners across the country."  Compl. ¶ 14.  An association without "traditional members" can still establish standing "by proving that is has 'indicia of membership'" — namely, "its members elect leadership, serve as the organization's leadership, and finance the organization's activities, including . . . litigation costs." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (citation omitted).  But GOF provides no evidence of such indicia of membership.

allegedly transferred "well over 1,000 firearms" from their "business inventory" to their "personal collection" before their license termination; and who "now fears that," under the Rule, they will allegedly be "unable lawfully to dispose of these firearms . . . without being presumed by ATF to be engaged in the business, and potentially criminally charged, and subject to forfeiture." Decl. of Erich M. Pratt ¶¶ 17, 21-23, ECF No. 16-4 ("Pratt Decl."). Yet because an "identified member" with standing is required to establish associational standing, *Summers*, 555 U.S. at 498, GOA cannot establish standing based on an unnamed member. *See Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 115-119 (2d Cir. 2024) (holding that an association must "identify . . . by name" a member with standing).

Moreover, the purported injury this unnamed member describes is not sufficient for standing (much less irreparable harm) for the simple reason that it is both "highly speculative," *Clapper*, 568 U.S. at 410 — *i.e.*, the member *might* dispose of their firearms at some point in the future, ATF *might* deem such a disposition as being "engaged in the business" under the Rule, and the member *might potentially* face civil or even criminal sanctions as a result — and does not involve conduct that would actually be proscribed by the Rule, *see Susan B. Anthony List*, 573 U.S. at 159-60. Indeed, contrary to the unnamed member's assertions about not being able to "lawfully" dispose of firearms in their personal collection, Pratt Decl. ¶ 23, the Rule expressly provides that once one year has passed after the transfer of firearms from business inventory to a personal collection, a former licensee will generally "no longer be presumed to be engaged in the business without a new license if they later liquidate all or part of [that] personal collection." Rule, 89 Fed. Reg. at 29,035; *see id.* at 29,092 ("A person shall not be presumed to be engaged in the business . . . when reliable evidence shows that the person is only reselling or otherwise transferring firearms . . . [t]o liquidate (without restocking) all or part of the person's personal collection."). Additionally, since Plaintiffs give no indication as to when the unidentified GOA member's firearms transfer took place, there is no way of knowing whether the member's ability to liquidate his personal collection of firearms would be affected by this presumption.

That leaves the organizational plaintiffs' other unnamed members, who, according to each organization's boilerplate declaration, "will be directly impacted" by the Rule "because they have in the past bought and resold firearms, and wish to do so in the future without being improperly labeled as a 'dealer' in firearms." Pratt Decl. ¶ 13; *see* Decl. of C. Richard Archie ¶ 10, ECF No. 16-5 ("Archie Decl."); Decl. of Philip Van Cleave ¶ 10, ECF No. 16-6. Yet the Supreme Court has unequivocally explained that this sort of vague assertion that some unidentified members somewhere in the United States might engage in some unidentified firearms-related conduct and, as a result of the Rule, suffer some sort of non-specific harm is wholly inadequate to establish associational standing. *Summers*, 555 U.S. at 498 (noting that such a "novel approach to the law of [associational] standing would make a mockery of [the Court's] prior cases").

Indeed, the organizational plaintiffs fail to even mention — let alone clearly establish with evidence, *Barber*, 860 F.3d at 355 (reversing a preliminary injunction because the plaintiffs did not "clearly show[] injury-in-fact") — the frequency of their members' purported firearms sales; the number of firearms sold during those transactions; the types of firearms being sold; whether the circumstances indicate that the sellers are "devot[ing] time, attention, and labor to dealing in firearms"; or whether the circumstances further indicate that such sales are being made with the intent to "predominantly earn a profit." In short, the organizational plaintiffs make no effort to demonstrate whether their unnamed members are engaging in a conduct arguably proscribed by the Rule, let alone whether that conduct would be subject to a "credible threat of prosecution." *Susan B. Anthony List*, 573 U.S. at 159 (citation omitted).

Because the organizational plaintiffs fail to identify even a single member who would "otherwise have standing to sue in their own right," all of them lack standing to seek preliminary injunctive relief here. *Speech First, Inc.*, 979 F.3d at 330. And by definition, all of them fail to establish that they would be irreparably harmed by the Rule becoming effective as well.

## II.    Venue Is Improper in this District Because No Plaintiff with Standing Resides Here

The fact that no plaintiff residing in this District has Article III standing also means that venue is improper in this district.  *See Ga. Republican Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir. 2018) (transferring a case for improper venue where the only party that satisfied venue lacked standing); *Miller v. Albright*, 523 U.S. 420, 427 (1998) ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party.  Because venue in Texas was therefore improper, . . . the court transferred the case to [another district where a defendant resided]." (citation omitted)); *see also Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) ("We agree that threshold disputes over venue and jurisdiction should be resolved before merits disputes.").

In a civil action in which the defendant is the federal government, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  Given that none of the federal defendants "resides" in Texas and that none of the "events . . . giving rise" to the Rule's promulgation took place in the state, the only possible basis for venue in the Northern District of Texas appears to be the fact that Texas is nominally a Plaintiff, *see* Compl. ¶ 8 (alleging only that Texas is a "sovereign state of the United States"), and that Plaintiff Tormey resides in Amarillo, *see id.* ¶ 12.  As explained in detail above, however, both plaintiffs lack standing, which requires that they be dismissed from the case.  *See, e.g., Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*, ---F. Supp. 3d---, 2024 WL 1078260, at *7 (W.D. La. Mar. 12, 2024) ("[T]he Court concludes that the Individual Plaintiffs do not have standing under Article III . . . , and they will be dismissed from this lawsuit without prejudice.").  And the remaining Plaintiffs—none of whom have standing in any event—reside elsewhere.[12]  And

---

[12] The other State plaintiffs obviously do not reside in Texas.  And each organizational plaintiff alleges that it resides outside of Texas.  *See* Compl. ¶ 13 (GOA is a California corporation with a principal

as various federal courts—including ones in this circuit—have held, when the plaintiffs that serve as the sole basis for venue in a particular judicial district lack standing, venue in turn is improper.[13]

Because no plaintiff with standing resides in this district, venue is improper, and Plaintiff's motion for preliminary injunction should be denied as a result.

## III.   Plaintiffs Are Not Likely to Succeed on the Merits of their Claims

### A.   The Rule Is Consistent with the GCA and ATF's Authority

Plaintiffs raise a host of arguments as to why the Rule allegedly exceeds ATF's authority or is inconsistent with the GCA.  *See* Mot. 17-26.  But Plaintiffs are not likely to succeed on any of these arguments.  The Rule lawfully exercises ATF's authority to prescribe regulations necessary to carry out the GCA, and the Rule construes statutory terms consistently with the GCA's text.

1.   Plaintiffs first argue that the Rule is unlawful because several of the statutory terms addressed in the Rule are defined in the GCA.  *Id.* at 17-18.  Plaintiffs argue that the Rule therefore exceeds ATF's and the Attorney General's authority to promulgate regulations "necessary" to implement the GCA.  18 U.S.C. § 926(a).  However, "[b]ecause § 926 authorizes the [Attorney General] to promulgate those regulations which are 'necessary,' it almost inevitably confers some

---

place of business in Virginia); *id.* ¶ 14 (GOF is a Virginia corporation with a principal place of business in Virginia); *id.* ¶ 15 (TFA is based in Tennessee); *id.* ¶ 16 (VCDL is based in Virginia).

[13] *See, e.g.*, *Ga. Republican Party*, 888 F.3d at 1205; *Mich. Ass'n of Pub. Sch. Acads. v. United States Dep't of Educ.*, ---F. Supp. 3d---, 2024 WL 455079 (W.D. Mich. Jan. 10, 2024) (finding that "the Western District of Michigan is no longer the venue best suited to adjudicate this matter" where the only Michigan plaintiff "lack[ed] standing" and the remaining plaintiffs were residents of Ohio and West Virginia); *Keane v. Velarde*, No. 3:20-cv-00977, 2021 WL 4248896, at *5 (D. Conn. Sept. 17, 2021) (transferring a case to the Southern District of New York because the "only party residing in Connecticut" was dismissed for lack of standing); *Inst. of Certified Pracs., Inc. v. Bentsen,* 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1304 (N.D. Ala. 2003) ("Venue is proper in this court because at least one Alabama plaintiff had standing."); *see also Associated Gen. Contractors*, 2024 WL 1078260, at *7 (finding venue improper where the only plaintiffs who resided in the district lacked standing); *Nat'l Infusion Ctr. Ass'n v. Becerra*, ---F. Supp. 3d---, 2024 WL 561860, at *5 (W.D. Tex. Feb. 12, 2024) (same), *appeal filed*, No. 24-50180 (5th Cir. Mar. 14, 2024).

measure of discretion to determine what regulations are in fact 'necessary.'" *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990). In *Brady*, the court approved as "necessary" ATF regulations defining terms in the GCA. *See id.* at 480-81 (upholding ATF regulations defining "business premises" and "gun show or event").

Here, ATF concluded that this Rule was necessary to provide "clarity" regarding when a federal firearms license was required and "deter[]" unlawful unlicensed dealing, NPRM, 88 Fed. Reg. at 61,996, given that "ATF observed a significant level of noncompliance with the GCA's licensing requirements even prior to the BSCA," Rule, 89 Fed. Reg. at 29,086. ATF further determined that the Rule would "improve public safety by helping to prevent persons who are prohibited from possessing firearms under Federal law from acquiring firearms and allowing law enforcement officers to trace firearms involved in crime." *Id.* at 28,987. These are unquestionably valid regulatory objectives that justified providing further clarity regarding the operation of statutory terms. *Brady*, 914 F.2d at 479; *see also Gardner v. Grandolsky*, 585 F.3d 786, 793 (3d Cir. 2009) (holding that agency regulation was lawful because it furthered "legitimate" objective of "protecting the public safety"); *Licon v. Ledezma*, 638 F.3d 1303, 1311 (10th Cir. 2011) (regulation was lawful because agency reasonably explained that it promoted "public safety"). Indeed, elsewhere Plaintiffs argue that the Rule does not provide *enough* clarity. Mot. 24-26. But without the benefit of the Rule, Plaintiffs would have *less* guidance and clarity regarding how the GCA operates, not more. *See infra*, pp. 29-32. Plaintiffs cite cases stating the unremarkable proposition that an agency cannot define a statutory term inconsistently with unambiguous statutory text. *See* Mot. 18. Those cases are inapposite because, for the reasons explained elsewhere in this brief, the Rule is consistent with the GCA's text.

**2.** Plaintiffs next criticize the Rule for defining certain subsidiary terms, such as "purchase" and "sale." *Id.* at 19. Plaintiffs do not contend that ATF's definitions are inconsistent with the statutory text or ordinary meaning. *See* Rule, 89 Fed. Reg. at 28,974 nn.49-50 (citing dictionary

definitions).  They instead suggest that these definitions are unnecessary because the terms "purchase" and "sale" are unambiguous, but ATF explained that it defined these terms to "clarify" that these terms cover exchanges for any kind of valuable consideration, "even where no money is exchanged." *id.* at 28,975, citing cases upholding convictions for unlicensed dealing based on exchanges for the specific types of other consideration listed as examples in the Rule (such as other firearms, ammunition, services, or controlled substances), *id.* at 28,974-75 nn.51-56 (collecting cases).  This case law showing that parties have frequently tried to evade the GCA's licensing requirements by using forms of consideration other than money as a medium of exchange underscores why ATF acted within its authority when it defined these terms.[14]

3.      Plaintiffs next argue that the Rule violates the rule of lenity.  Mot. 19-20.  But the rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."  *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citations omitted).  Here, Plaintiffs invoke the rule of lenity in the abstract, but they identify no "grievous ambiguity" that the Rule construes against potential criminal defendants.

4.      Plaintiffs also argue that the Rule conflicts with the GCA because, in Plaintiffs' view, the GCA's definition of "engaged in the business" requires that a dealer obtain actual profit from dealing in firearms.  Mot. 21-22.  But if a person "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business," 18 U.S.C. § 921(a)(21)(C), all that the GCA requires is that the person has a predominant *intent* to earn a profit through repetitive purchases and resales.

---

[14] Plaintiffs also criticize ATF for stating that the words "occasional" and "repetitively" should be read according to their "ordinary meaning," Mot. 19 (quoting Rule, 89 Fed. Reg. at 28,992), but ATF cited dictionary definitions of these words in the Rule's preamble.  *See* Rule, 89 Fed. Reg. at 28,992 & nn.123-24.  Plaintiffs do not explain why it would be necessary for ATF to provide further elucidation of these words.  *See Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024) (in upholding an agency statutory interpretation, explaining that "[d]ictionary definitions are useful touchstones to determine the ordinary meaning of an undefined statutory term") (citation omitted).

Plaintiffs argue that the language "to predominantly earn a profit" signifies that actual profit is required. *Id.* But the statute specifically defines the phrase "to predominantly earn a profit" to refer to *intent*, not actual profit: "[t]he term 'to predominantly earn a profit' means that *the intent* underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to *other intents*, such as improving or liquidating a personal firearms collection." *Id.* § 921(a)(22) (emphasis added). Plaintiffs point to another clause in the same provision, which notes that "proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism." *Id.* Plaintiffs seek to draw the "negative implication" that proof of actual profit is required outside of transactions for criminal purposes or terrorism. Mot. 22. But such a reading would contradict the clear language in the same provision that "to predominantly earn a profit" refers to "the intent underlying the sale or disposition of firearms," 18 U.S.C. § 921(a)(22), violating the principle that courts should "fit, if possible, all parts [of a statute] into an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959)). In contrast to Plaintiffs' internally contradictory construction, the Rule's construction of this provision harmonizes its language as signifying that a predominant intent to profit is generally required, but such intent to profit is not required when the purpose of firearms transactions is criminal purposes or terrorism. *See* Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)).

Plaintiffs' reading of "to predominantly earn a profit" conflicts not only with clear statutory text, but also with the BSCA's purposes. In the BSCA, Congress replaced the phrase "with the principal objective of livelihood and profit" with "to predominantly earn a profit," to *broaden* the definition of engaged in the business by replacing one intent requirement with a broader intent requirement that did not include an intent to earn a "livelihood." *See* Rule, 89 Fed. Reg. at 28,972 & nn.30-31 (discussing BSCA's legislative history). Yet Plaintiffs erroneously interpret the BSCA as

*narrowing* the definition by introducing a new requirement of actual profit — and try to blame the Rule, rather than the statute, for broadening the definition.  Their disagreement is with Congress, not ATF.

**5.**     Understanding that the phrase "to predominantly earn a profit" refers to predominant intent, rather than actual profit, disposes of Plaintiffs' related argument that multiple successful purchases and sales of firearms are required.  Plaintiffs derive this supposed requirement by reading the phrase "repetitive purchase and resale of firearms," Mot. 20-21, out of context.  But "[s]tatutory language . . . 'cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  The language Plaintiffs highlight occurs at the end of the following phrase: "to predominantly earn a profit through the repetitive purchase and resale of firearms."  18 U.S.C. § 921(a)(21)(C).  Because, as shown above, "to predominantly earn a profit" means that a person's predominant *intent* is pecuniary gain, this phrase as a whole means that a person has the predominant intent of obtaining pecuniary gain by repetitively purchasing and reselling firearms.  To be sure, the first part of the statutory definition of engaged in the business — "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business," *id.* — refers to action, not intent.  But if a person engages in the requisite actions with the requisite intent, that person is engaged in the business of dealing in firearms, regardless of whether the person's devotion of time, attention, and labor to dealing in firearms successfully results in actual sales and actual profit.[15]

---

[15] *See, e.g., United States v. King*, 735 F.3d 1098, 1107 n.8 (9th Cir. 2013) (upholding conviction where defendant attempted to sell one firearm and represented that he could purchase more for resale and noting that "Section 922(a)(1)(A) does not require an actual sale of firearms"); *United States v. Valdes*, 681 F. App'x 874, 877 (11th Cir. 2017) (to show unlicensed dealing, the government "does not need to show 'the defendant's primary business was dealing in firearms or that [she] necessarily made a profit from dealing'") (quoting *United States v. Wilmoth*, 636 F.2d 123, 125 (5th Cir. Unit A Feb. 1981)); *see also* 89 Fed. Reg. at 28,976 n.67, 28,981 n.96 (collecting additional cases).

**6.**     Next, Plaintiffs erroneously argue that the Rule misreads the GCA in defining the term

"personal collection," Mot. 22-24, but the Rule faithfully construes the GCA.  The GCA defines

"engaged in the business" of dealing in firearms to exclude "a person who makes occasional sales,

exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or

who sells all or part of his personal collection of firearms."  18 U.S.C. § 921(a)(21)(C).  The Rule

reproduces this definition, *see* Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(a)), and further

effectuates this provision by defining "personal collection" to mean:

> Personal firearms that a person accumulates for study, comparison, exhibition (*e.g.,* collecting
> curios or relics, or collecting unique firearms to exhibit at gun club events), or for a hobby
> (*e.g.,* noncommercial, recreational activities for personal enjoyment, such as hunting, skeet,
> target, or competition shooting, historical re-enactment, or noncommercial firearms safety
> instruction). The term shall not include any firearm purchased for the purpose of resale with
> the predominant intent to earn a profit (*e.g.,* primarily for a commercial purpose or financial
> gain, as distinguished from personal firearms a person accumulates for study, comparison,
> exhibition, or for a hobby, but which the person may also intend to increase in value).  In
> addition, the term shall not include firearms accumulated primarily for personal protection:
> *Provided,* that nothing in this definition shall be construed as precluding a person from lawfully
> acquiring firearms for self-protection or other lawful personal use.

*Id.* at 29,090 (27 C.F.R. § 478.11).

Plaintiffs argue that this definition is too narrow, but it is consistent with ordinary meaning

and dictionary definitions.  *See, e.g.,* Webster's Third New International Dictionary 444, 1075, 1686

(1971) (defining the term "personal" to include "of or relating to a particular person," "collection" to

include "an assembly of objects or specimens for the purposes of education, research, or interest",

and "hobby" as "a specialized pursuit . . . that is outside one's regular occupation and that one finds

particularly interesting and enjoys doing"); *see also* Rule, 89 Fed. Reg. at 28,980 n.88, 29,038 n.216

(collecting additional definitions).

The Rule's definition of "personal collection" is also consistent with the GCA's definition of

"collector" as meaning "any person who acquires, holds, or disposes of firearms as curios or relics, as

the Attorney General shall by regulation define." 18 U.S.C. § 921(a)(13).[16]  Courts have rejected arguments "that the definition of a gun 'collection' in § 921(a)(21)(c) should be read more broadly than the definition of a gun 'collector'" because "[t]here is no case authority to suggest that there is a distinction between the definition of a collector and of a collection in the statute." *United States v. Idarecis*, 164 F.3d 620, 1998 WL 716558, at *3-4 (2d Cir. 1998) (table); *see also* Rule, 89 Fed. Reg. at 29,038 n.217 (collecting cases).

Therefore, the phrase "personal collection or for a hobby" cannot be read to mean any firearms that a person possesses for any lawful purpose.  Rather, consistent with dictionary definitions, a "personal collection" refers to personal firearms "accumulate[d] for study, comparison, exhibition," and a "hobby" refers to "noncommercial recreational activities for personal enjoyment." *Id.* at 29,090 (27 C.F.R. § 478.11); *see A.V. v. Plano Indep. Sch. Dist.*, 585 F. Supp. 3d 881, 899 (E.D. Tex. 2022) (citing "ordinary meaning" and "dictionary definitions" as valid tools to construe "an undefined statutory term") (quoting *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021)).[17]

Plaintiffs complain that the Rule excludes from the definition of "personal collection" those "firearms accumulated primarily for personal protection."  Mot. 23 (quoting Rule, 89 Fed. Reg. at 29,090).  But firearms accumulated primarily for personal protection fit with neither the ordinary

---

[16] "Curios and relics" are defined by regulation as: "Firearms which are of special interest to collectors by reason of some quality other than is associated with firearms intended for sporting use or as offensive or defensive weapons.  To be recognized as curios or relics, firearms must fall within one of the following categories: (a) Firearms which were manufactured at least 50 years prior to the current date, but not including replicas thereof; (b) Firearms which are certified by the curator of a municipal, State, or Federal museum which exhibits firearms to be curios or relics of museum interest; and (c) Any other firearms which derive a substantial part of their monetary value from the fact that they are novel, rare, bizarre, or because of their association with some historical figure, period, or event. Proof of qualification of a particular firearm under this category may be established by evidence of present value and evidence that like firearms are not available except as collector's items, or that the value of like firearms available in ordinary commercial channels is substantially less." 27 C.F.R. § 478.11.

[17] Plaintiffs complain that the Rule groups together the concepts of "personal collection" and "hobby" within a single regulatory definition.  Mot. 22-23.  But as the Rule's preamble explains, that definition recognizes and gives effect to the independent meaning of "hobby."  *See* Rule, 89 Fed. Reg., at 29,039.

meaning of "collection," *see* Webster's Third New International Dictionary 444 ("an assembly of objects or specimens for the purposes of education, research, or interest"), nor the GCA's definition of "collector," 18 U.S.C. § 921(a)(13) ("any person who acquires, holds, or disposes of firearms as curios or relics").   Again, Plaintiffs' disagreement is with the terms used by Congress.  In addition, while firearms acquired primarily for personal protection do not fall within the personal collection *exclusion* from the definition of engaged in the business, that does not mean that a person is necessarily engaged in the business of dealing when he sells a firearm that he acquired for personal protection. Under the Rule, being engaged in the business still requires that a person "devote[] time, attention, and labor to dealing in firearms as a regular course of trade or business" with the predominant intent "of obtaining pecuniary gain" "through the repetitive purchase and resale of firearms." *Id.* at 29,091 (27 C.F.R. § 478.13(a), (d)(1)); *accord* 18 U.S.C. § 921(a)(21)(C).  An individual selling firearms acquired for personal protection will not be considered as engaged in the business unless those requirements are met.  And in all events, the Rule's interpretation does not burden the ability of individuals to acquire and use firearms for self-defense.  The Rule explicitly states that it shall not "be construed as precluding a person from lawfully acquiring firearms for self-protection or other lawful personal use." Rule, 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11).

     **7.**     Finally, Plaintiffs wrongly argue that the Rule is unconstitutionally vague.  Mot. 24-26. Under the Fifth Amendment's Due Process Clause, a criminal or quasi-criminal law is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).  "[F]acial vagueness challenges, in particular" — which Plaintiffs bring here — "are generally 'disfavored for several reasons,' including but not limited to, the fact that facial invalidity claims often 'rest on speculation.'" *Magee v. City of S. Padre Island*, 463 F. App'x 377, 380 (5th Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican*

*Party*, 552 U.S. 442, 450 (2008)).   "Accordingly, '[i]n determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases.'"   *Id.* (quoting *Wash. State Grange*, 552 U.S. at 449-50).   Instead, to establish that a law is unconstitutionally vague on its face, "the complainant must demonstrate that the law is impermissibly vague in all of its applications," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982), "including its application to the party bringing the vagueness challenge," *United States v. Clark*, 582 F.3d 607, 612-13 (5th Cir. 2009).

Plaintiffs cannot make that showing.   Far from being vague, the Rule provides clarity by setting forth specific circumstances that give rise to presumptions that a person is engaged in the business of dealing in firearms or has the predominant intent to earn a profit, while also setting forth specific types of conduct that do not constitute being engaged in the business of dealing and can be used to rebut the presumptions.   Rather than demonstrating vagueness, Plaintiffs simply list provisions of the Rule with which they disagree.   For example, Plaintiffs highlight a provision stating that a person is presumed to be engaged in the business if he "[r]epetitively resells or offers for resale firearms— . . . Within one year after the person purchased the firearms if they are— . . . New, or like new in their original packaging."   Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)(3)(ii)(A)); *see* Mot. 24 n.16. That provision is quite clear and even sets forth a specific time limitation.[18]   As another example, Plaintiffs highlight the provision stating that a person is presumed to have the intent to predominantly earn a profit if the person "[m]akes and maintains records to document, track, or calculate profits and losses from firearms repetitively purchased for resale."   Rule, 89 Fed. Reg. at 29,091 (27 C.F.R.

---

[18] Plaintiffs note that the Rule's preamble explains that a person may be engaged in the business of dealing "who intentionally stockpiles and sells new or like-new firearms . . . with an intent to evade the one-year turnover limitation."   Rule, 89 Fed. Reg. at 29,016.   That statement does not "walk[] back" the regulatory presumption, as Plaintiffs assert.   Mot. 24 n.16.   It merely reflects that a person may satisfy the standard for being engaged in the business of dealing even in some circumstances in which none of the presumptions apply.

§ 478.13(d)(2)(iii)).  Although Plaintiffs argue (incorrectly) that this provision "makes little sense," Mot. 24 n.17,[19] they fail to explain how it is vague.  Incredibly, Plaintiffs cite as evidence of the Rule's vagueness that in enacting the Rule, ATF clarified several provisions of the proposed rule based on comments that found certain provisions of the proposed rule insufficiently clear.  *Id.* at 25 n.20.  Using the notice-and-comment process to clarify a final rule in response to commenters' concerns is not evidence of vagueness but rather of the rulemaking process working as intended.

Plaintiffs try to demonstrate vagueness by arguing that there could be some borderline cases in which it might be difficult to determine how the Rule applies.  But even if that were true, that is true of almost any statute or rule and is no reason to hold a rule constitutionally vague on its face.  Indeed, the statutory definition (which Plaintiffs do not contend is unconstitutionally vague) uses general language that could undoubtedly lead to close cases, such as "devotes time, attention, and labor" and "regular course of trade or business."  18 U.S.C. § 921(a)(21)(C).

And in any event, the Fifth Circuit has explained that "for [a provision] to pass constitutional muster" under the void-for-vagueness doctrine, it need not "delineate the exact actions a [regulated party] would have to take to avoid liability," *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008), or, conversely, "describe every possible permutation" of conduct that would constitute a violation, *United States v. Abbate*, 970 F.3d 601, 604 (5th Cir. 2020) (quoting *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001)).  Indeed, "most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions."  *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).  The Supreme Court and the Fifth Circuit have rejected vagueness challenges to criminal laws imposing standards as open-ended as: "near" a courthouse, *Cox v. Louisiana*, 379 U.S.

---

[19] As the Rule's preamble explains, keeping records to calculate profits and losses generally indicates a predominant intent to earn a profit because "[t]he point of making or maintaining such a record is to document profits or other pecuniary gain from firearms transactions."  Rule, 89 Fed. Reg. at 29,048.

559, 568 (1965); "immoral purposes," *Clark*, 582 F.3d at 612; "unreasonably low prices," *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 31-33 (1963); and "unreasonable noise," including noise "which, under the circumstances of time, place, and manner in which it is produced . . . annoys . . . a reasonable person of normal sensitivities," *Munn v. City of Ocean Springs*, 763 F.3d 437, 438-39 (5th Cir. 2014) (emphasis and citation omitted). The Rule, by setting forth numerous specific examples of conduct that presumptively does constitute or does not constitute being engaged in the business of dealing in firearms, is even more precise and therefore not void for vagueness.

### B.   The Rule's Presumptions Are a Proper Exercise of ATF's Authority

#### 1.   ATF Is Authorized to Create Regulatory Presumptions to Interpret and Enforce the Gun Control Act

As explained above and in the Rule itself, ATF identified certain activities that give rise to rebuttable presumptions in civil and administrative proceedings that an individual is engaged in the business as defined in the GCA, pending consideration of additional evidence. *See supra* pp. 8-9; Rule, 89 Fed. Reg. at 29,091. These presumptions help effectuate the GCA as revised and provide increased clarity, deter unlicensed dealing, and improve public safety. *See supra* p. 23.

Challenging these presumptions, Plaintiffs first contend that ATF lacks authority to create them at all. The Supreme Court has said otherwise, and decades of precedent across the country have followed. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 804-05 (1945)) (for "a statutory presumption or one established by regulation, the validity . . . depends upon the rationality between what is proved and what is inferred."). ATF, like any other federal agency, has general authority to promulgate regulations to effectuate its administration of the statutes it is charged with administering. Such regulations can include presumptions when such presumptions establish a rational nexus between the facts found and the facts to be presumed. *U.S. Steel Corp.,* 495 F.3d at 1284 ("Preliminarily, administrative agencies may establish presumptions, as long as there is a rational nexus between the proven facts and the presumed facts.") (citation omitted); *see also, e.g., USX Corp. v. Barnhart*, 395 F.3d

161, 171 (3d Cir. 2004) ("Presumptions may, of course, be established both by legislative bodies and by administrative agencies, but their validity depends as a general rule upon a rational nexus between the proven facts and the presumed facts.") (citation omitted)); *Cole v. USDA*, 33 F.3d 1263, 1267 (11th Cir. 1994) ("The law is well established that presumptions may be established by administrative agencies, as long as there is a rational nexus between the proven facts and the presumed facts."); *Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1005 (9th Cir. 1981) ("Administrative agencies are entitled to create evidentiary presumptions.").

As the cases above firmly establish, the creation of presumptions is an *inherent* power authorized to issue regulations or conduct adjudications to administer a statute, regardless of whether the particular statute explicitly addresses presumptions. Moreover, "in challenging the validity of [a] regulatory presumption . . . [the Plaintiff] bears the heavy burden of demonstrating that there is no rational connection between the fact proved and the ultimate fact to be presumed." *Cole*, 33 F.3d at 1267; *id.* at 1268 ("It is the party challenging the validity of the presumption who must demonstrate that it is irrational.").

Plaintiffs also contend that the presumptions are improper because ATF generally has limited authority to promulgate regulations. But Congress's explicit grant of authority to the Attorney General to promulgate necessary regulations belies this contention. *See supra* pp. 22-23. Plaintiffs cite no case law supporting their related argument that ATF has somehow waived its authority to engage in rulemaking by previously stating that the older statutory text alone was sufficient in a particular context. *See* Mot. 28. In any event, the statutory language was since amended by the BSCA to expand the definition of engaged in the business of dealing in firearms, further supporting the need for regulatory clarity. *See supra*, pp. 5-6.

Plaintiffs' argument that the Rule's presumptions create impermissible bright-line rules also fails for multiple reasons. First, the presumptions are rebuttable by reliable evidence and therefore by

definition are not bright-line rules.  Second, the case Plaintiffs rely upon for the proposition that bright-line rules are improper in the "engaged in the business" context is inapposite.  *United States v. Brenner*, 481 F. App'x 124 (5th Cir. 2012), is a criminal case applying a different and elevated evidentiary standard from the presumptions, which are limited to civil and administrative contexts.  Moreover, the *Brenner* court actually concluded that "the jury must examine all of the circumstances" to convict a defendant of a crime based on being engaged in the business of dealing.  *Id.* at 127.  As noted above, a fact-specific inquiry considering the totality of the circumstances, including the presumptions and any rebuttal evidence, is exactly what the Rule requires.

Finally, Plaintiffs argue that ATF cannot rely on its "unexplained experience" as the sole justification for regulatory presumptions.  For this proposition, they cite to the unremarkable observation that presumptions "cannot be a matter of [agency] *ipse dixit*." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 251 (5th Cir. 2024).  But Plaintiffs make no effort to identify which presumptions, if any, constitute *ipse dixit*.  And as the rule reflects, none of the presumptions suffers from a failure of explanation.  All of the presumptions are supported either by case law — developed before Congress expanded the statutory language — holding that evidence of the conduct set forth in the presumptions is sufficient to uphold a conviction for unlicensed dealing, *see* Rule, 89 Fed. Reg. at 28,977-79, 28,981-82 & nn.72, 74-80, 82, 97-104, or other evidence demonstrating that a rational nexus exists..  As ATF also explained in detail in the Rule, *see infra*, pp. 35-40, and Plaintiffs do not address, the rational nexus linking the conduct identified in the presumptions to the likelihood of being engaged in the business of dealing or intending predominantly to profit from the resale of firearms is further supported by statutory interpretation and common sense, confirmed by decades of ATF's enforcement experience.

##### 2.    The Rule's Engaged in the Business (EIB) Presumptions Are Permissible

Plaintiffs contend that the Rule's presumptions that a person is engaged in the business of dealing firearms, Rule 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)), are impermissible for two general reasons: (1) the presumptions contradict the statutory text and (2) the presumptions rely on conduct that is otherwise lawful.  The first argument is inaccurate and the second misunderstands the nature of presumptions.  ATF has determined, as it is entitled to do, that proof an individual is engaged in any of the conduct identified in the EIB presumptions renders that individual's likelihood of being engaged in the business of dealing "so probable that it is sensible" to conclude they are in fact engaged in the business of dealing, absent rebuttal evidence.  *See Career Colls.*, 98 F.4th at 251 (quoting *Chem. Mfrs. Ass'n v. Dep't of Transp.*, 105 F.3d 702, 705 (D.C. Cir. 1997)).  A rational nexus based on legal precedent, common sense, and ATF's history of administering and enforcing the GCA underlies each of these presumptions and Plaintiffs, for the most part, have not even challenged those connections. It is facially rational, for example, to presume that individuals holding themselves out to be dealers of firearms, Rule, 89 Fed. Reg. at 29091 (27 C.F.R. § 478.13(c)(1)), purchasing for resale or offering to resell through illegal means or with illegal firearms, *id.* (27 C.F.R. § 478.13(c)(2)), or repetitively offering to resell certain firearms within short periods of time, *id.* (27 C.F.R. § 478.13(c)(3)), are engaged in the business of dealing firearms absent reliable evidence to the contrary.

Plaintiffs also raise specific attacks against most of the EIB presumptions, but those are likewise without merit.  Plaintiffs object to presuming that a person is engaged in the business as a dealer because they offer to resell firearms and demonstrate a willingness or ability to resell additional firearms, Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)(1)), because, they contend, the statute requires actual sales.  Mot. 29.  It does not; the GCA requires devotion of time, attention, and labor to dealing firearms as a regular course of trade or business with the predominant *intent* of earning profit *through* repetitive sales.  *See supra*, pp. 24-26.  In any event, contrary to Plaintiffs' assertion, the

presumption does not render the specified conduct a violation of the statute but rather presumes that individuals engaged in that conduct are sufficiently likely to actually be engaged in the business of dealing, pending reliable evidence to the contrary.  Courts have frequently held that repetitively holding oneself out as a source of firearms for resale supports a conclusion that a person is engaged in the business of dealing.  *See* Rule, 89 Fed. Reg. 28,977 & n.72.[20]  Again, however, even in that scenario, the seller would be able to introduce any reliable rebuttal evidence to show that he was not in fact engaged in the business.

Plaintiffs also contend that presuming a person is engaged in the business as a dealer because they repetitively purchase, offer, or resell firearms unlawfully (*e.g.*, stolen firearms or firearms sold to straw purchasers), *id.* at 29,091 (27 C.F.R. § 478.13(c)(2)), contravenes the statute because the statute requires both purchase and resale.  Mot. 29.  This argument fails for the same reason.  Moreover, courts have long held that the GCA covers such activities, even before the BSCA.  *See* Rule, 89 Fed. Reg. at 28,977-78 & nn.74-77, 79;[21] *id.* at 29,030.

Plaintiffs argue that presuming a person is engaged in the business as a dealer when they repetitively resell or offers to resell firearms within 30 days of purchase, *id.* at 29,091 (27 C.F.R. § 478.13(c)(3)(i)), ignores the non-business reasons a person might behave in that manner, but this argument also fails.  Mot. 29.  ATF considered these non-business reasons and explained why such

---

[20] *See, e.g.*, *United States v. Ochoa*, 726 F. App'x 651, 652 (9th Cir. 2018) ("[section] 922(a)(1)(A) reaches those who hold themselves out as sources of firearms."); *United States v. Mulholland*, 702 F. App'x 7, 12 (2d Cir. 2017); *King*, 735 at 1107; *United States v. Kevin Shan*, 361 F. App'x 182, 183 (2d Cir. 2010); *United States v. Zheng Jian Shan*, 80 F. App'x 31, 32 (9th Cir. 2003); *United States v. Carter*, 801 F.2d 78, 82 (2d Cir. 1986)).

[21] The numerous cases cited in these footnotes include *United States v. Fleischli*, 305 F.3d 643, 652 (7th Cir. 2002) ("In short, a convicted felon who could not have legitimately obtained a manufacturer's or dealer's license may not obtain access to machine guns by setting up a sham corporation."); *United States v. Fields*, 608 F. App'x 806, 809 (11th Cir. 2015) (unlicensed dealing conviction for selling stolen firearms); *United States v. Ilarraza*, 963 F.3d 1, 6 (1st Cir. 2020) (unlicensed dealing conviction for selling firearms with obliterated serial numbers); *United States v. Fridley*, 43 F. App'x 830, 831-32 (6th Cir. 2002) (unlicensed dealing conviction for selling unregistered machineguns).

non-business reasons were unlikely to be the underlying reason for *repetitively* reselling firearms within such a short period; for example, many firearms sellers allow returns within 30 days, so repetitive resales within 30 days are more likely to represent dealing in firearms than an effort to unload firearms after suffering buyer's remorse.  *See* Rule, 89 Fed. Reg. at 29,031 & n.204; *id.* at 28978-79 & nn.80-81. And, of course, if an individual has genuine non-business reasons for repetitively reselling firearms within 30 days, he may present them as rebuttal evidence in a civil or administrative proceeding.

Plaintiffs also take issue with the presumption that a person is engaged in the business when they repetitively resell firearms in new condition or the same model of firearm within one year of purchase.  Mot. 29-30; *see also* Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)(3)(ii)).  Plaintiffs contend that this presumption is impermissibly vague and improperly incorporates the preamble to the Rule.  Mot. 29-30.  But this presumption is clear: it applies to resales "[w]ithin one year" of purchase.  89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)(3)(ii)).  Moreover, this presumption does not "incorporate" the preamble at all.  The Rule's preamble notes that a person may be engaged in the business of dealing if she "intentionally stockpiles and sells new or like-new firearms, or the same make and model or variants thereof, with an intent to evade the one-year turnover limitation," *id.* at 29,016, but in that circumstance, the *presumption would not apply* because resales would by definition occur after the one-year limit.  Rather, if the individual resold *after* a year had elapsed the factfinder would consider all the relevant facts without applying a presumption at all. *Id.* at 29,091 (27 C.F.R. § 478.13(a)).

### 3.   The Rule's Intent to Predominantly Earn a Profit Presumptions Are Permissible

As explained, some of the Rule's presumptions concern individuals' intent to predominantly earn a profit.  The Rule lawfully presumes that if an individual is engaged in certain conduct, it is sufficiently probable that they intend to predominantly earn a profit that it is sensible to assume so absent contrary evidence.  *See* Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)); *Career Colls.*, 98

37

F.4th at 251.  Additionally, as explained *supra*, pp. 24-26, the statute does not require that ATF prove an individual in fact gained a profit to be engaged in the business of dealing, but only that their primary underlying intent was to profit.

Three presumptions infer an intent predominantly to profit from the resale of firearms where a person repetitively promotes a firearms business, exchanges anything of value for physical space to display firearms for resale, or makes records of profits and losses from firearms purchased for resale. Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)(2)(i)-(iii)).  Plaintiffs argue that these presumptions undermine the statute's exception for individuals who "sell[] all or part of [their] personal collection of firearms," because the Rule's definition of "resale" is too broad.  18 U.S.C. § 921(a)(21)(C). Plaintiffs misapprehend the structure of the statute.  Section 921(a)(21)(C) indicates that even if a person's conduct were to satisfy each of the conditions of the engaged in the business definition, the statutory "term shall not include a person . . . who sells all or part of his personal collection of firearms."  Consistent with this statutory exclusion, the Rule makes clear that selling firearms to liquidate a personal collection does not constitute engaging in the business of dealing, and that evidence of such conduct can rebut the presumptions.  Rule, 89 Fed. Reg. at 29,091-93 (27 C.F.R. § 478.13(a), (e)(4), (f)).

Perhaps these presumptions may capture some individuals who contend that they are repeatedly selling parts of their personal collection, but that is why the presumptions are rebuttable. *See id.* at 29,092 (27 C.F.R. § 478.13(e)(4)) (evidence that a person is liquidating all or part of a personal collection would rebut the presumptions).  Numerous court cases support the common-sense conclusion that that a person who repetitively promotes a firearms business, purchases physical space to display firearms for resale, or records profits and losses from firearms resales likely intends to profit

from firearms resales.  *Id.* at 28,981 nn.97-99;[22] *see also id.* at 28,981 (citing, in addition, ATF's "decades-long body of experience"); *id.* at 29,046.

Another presumption applies to people who purchase merchant services, such as credit card transaction services, as a business with the intention to repetitively accept payments for firearms transactions. Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)(2)(iv)).  Plaintiffs contend that the presumption may improperly reach businesses unrelated to firearms.  Mot. 31.  But it is facially reasonable to presume, pending contrary evidence, that a business that secures merchant services with the intent to repetitively accept payments for firearms transactions is intending to predominantly profit from the resale of firearms.  Pre-BCSA cases support this presumption, relying on the use of such financial services as evidence to infer that a person operating as a business intends to profit rather than having some other purpose for engaging in firearms transactions.  Rule, 89 Fed. Reg. at 28,981-82 at n.100;[23] *see also id.* at 28,981 (finding additional support in ATF's "decades-long body of experience").  Plaintiffs' concern that "unrelated" business might become regulated as dealers, Mot. 31 (emphasis omitted), is unfounded.  As noted, intending predominantly to profit from the resale of firearms is not sufficient, without more, to satisfy the statutory definition of being engaged in the business.  *See* Rule, 89 Fed. Reg. at 29,049.[24]  If such non-dealing businesses do not "devote time,

---

[22] *See, e.g., United States v. Caldwell*, 790 F. App'x 797, 799 (7th Cir. 2019) (defendant repetitively placed advertisements on a website devoted to gun sales); *United States v. Wilkening*, 485 F.2d 234, 235 (8th Cir. 1973) (defendant set up a glass display case and displayed for sale numerous firearms); *United States v. Dettra*, 238 F.3d 424, 2000 WL 1872046, at *2 (6th Cir. 2000) (table) ("Dettra carefully recorded the cost of each firearm he acquired, enabling him to later determine the amount needed to sell the item in a profitable manner.")

[23] *See, e.g., Dettra*, 2000 WL 1872046, at *2 ("Dettra's . . . acceptance of credit payment provide[s] further reason to infer that he was conducting his firearms activity as a profitable trade or business, and not merely as a hobby.")

[24] Plaintiffs also assert that this presumption is overbroad and therefore improper because it may "sweep up lawful activity."  Mot. 31 n.32.  This argument neglects to account for the facts that the presumption is rebuttable, and predominant intent to earn a profit is just one element of being engaged in the business of dealing firearms.

attention, and labor to dealing in firearms as a regular course of trade or business," *id.* at 29,091 (27 C.F.R. § 478.13(a)), the Rule does not consider them to be engaged in the business of dealing.

Under the Rule, ATF will presume a person who secures business security services to protect firearm assets and repetitive firearms transactions has the predominant intent to earn a profit. *Id.* at 29,091 (27 C.F.R. § 478.13(d)(2)(v)). As ATF explained, there is a rational nexus between expending resources in this manner and an intent to predominantly profit from the resale of firearms. *Id.* Pre-BSCA precedent supports this common-sense presumption. *Id.* at 28,981-82 & n.102; *id.* at 29,049-50. Plaintiffs' assertion that a narrow category of security companies that are not firearms businesses might incidentally trigger this presumption does not disprove the connection for every other type of case, and that is the sort of evidence that could be used to rebut this presumption. Nor is there a meaningful risk that this narrow category of businesses "would be forced to defend against charges of unlawful dealing," Mot. 32, if they are indeed not otherwise engaged in the business of dealing firearms because the predominant intent to profit is just one element of the definition of engaged in the business.[25]

### 4. Conduct That the Rule Identifies as Not Supporting a Presumption Does Not Contradict the Statute

Plaintiffs also incorrectly contend that the Rule "water[s] down" or "neuters" the personal collection-related statutory exclusion from being engaged in the business by clarifying that evidence supporting this exclusion can be used to rebut presumptions under the Rule. Mot. 32-33. The Rule

---

[25] It is unclear what Plaintiffs mean when they state that the terms of the "sixth PEP presumption" would "reach[]" security companies that purchase and sell firearms for employee use." Mot. 32. The remaining two presumptions in this section of the Rule are for a person who "establishes a business entity, trade name, or online business account . . . through which the person makes or offers to make, repetitive firearms transactions," Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)(2)(vi)), and a person who "[s]ecures or applies for a State or local business license to purchase for resale or to resell merchandise that includes firearms," *id.* at 29091-92 (27 C.F.R. § 478.13(d)(2)(vii)). Plaintiffs do not challenge these two presumptions and both sets of conduct have a rational nexus to the predominant intent to profit from the resale of firearms.

tracks the statute exactly in excluding from the definition of engaged in the business "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(a)); *accord* 18 U.S.C. § 922(a)(21)(C). ATF separately added conduct that satisfies this statutory exclusion as conduct that cannot be presumed to be engaged in the business and could be used to rebut the presumptions, Rule, 89 Fed. Reg. at 29,092 (27 C.F.R. § 478.13(e)(2), (4)), in response to commenters who thought the proposed rule was insufficiently protective of personal collection-related activity, *id.* at 29,020, 29,022. This belt-and-suspenders approach of protecting such activity in two distinct parts of the Rule effectuates the statutory exclusion and helps, rather than hurts, regulated parties.

## C.    The Rule Appropriately Regulates Former Licensees' Inventory

Plaintiffs incorrectly contend that the Rule contravenes the GCA by improperly creating a category of former licensees and imposing restrictions on former licensees' business stock of firearms that the statute does not authorize. But the Rule does not invent the concept of former licensees; former licensees are an inherent feature of the GCA's licensing scheme. Absent the Rule, a former licensee is prohibited from engaging in the business in the same ways and to the same extent as anyone else who is not currently licensed. *See* 18 U.S.C. § 921(a)(21)(C); *see also* 27 C.F.R. §§ 478.57(c) & (d); 478.78(c) & (d) (stating that former licensees are barred from continuing to engage in the business of dealing firearms and that any resale of their inventory not covered by exceptions will be subject to the general engaged in the business presumptions of § 478.13). Thus, contrary to Plaintiffs' arguments that the Rule improperly constrains former licensees in disposing of firearms, Mot. 33-34, the Rule actually interprets the GCA to provide them with a way to dispose of their inventory lawfully. Specifically, under the revised 27 C.F.R. §§ 478.57(b); 478.78(b), former licensees are authorized to

liquidate or transfer their firearms inventories in manners which would otherwise constitute engaging in the business of dealing.

Plaintiffs' challenges to the specific presumptions applicable to former licensees fail for the same reasons as their challenges to the Rule's other presumptions, *see supra* pp. 32-34. ATF is authorized to promulgate regulations including presumptions so long as those presumptions rely on a rational nexus between the proven fact and the inference. There is a clear rational nexus underlying each of these presumptions and Plaintiffs have not invalidated them.

First, Plaintiffs assert that the Rule imposes a new requirement on former licensees prohibiting them from selling firearms transferred to a personal collection until one year has passed. Mot. 33-34. They contend that the statute imposes this condition only on current licensees and that ATF lacks the authority to expand it to former licensees. *Id.* Plaintiffs once again misunderstand the basic concept of the Rule; it does not render any conduct unlawful but rather permits ATF to presume individuals are engaged in the business of dealing firearms based on conduct with a rational nexus to the regulated conduct. It is reasonable to conclude that a person reselling firearms in a manner prohibited by the statute for licensees after surrendering or losing their license is likely engaged unlawfully in the business of dealing firearms. *See* Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)(5)(ii)). The rational nexus supporting this presumption is based on ATF's common-sense interpretation of the GCA. *Id.* at 29033-34.[26]

Second, GCA licensees are prohibited from reselling firearms that were transferred with the intent to willfully evade the GCA restrictions on licensees. *See* 18 U.S.C. § 923(c). Plaintiffs contend

---

[26] Plaintiffs also assert that the various sections of the Rule related to former licensees "cannot be the law" because they make it difficult for former licensees to sell firearms that they possess without engaging in the business of unlicensed dealing. Mot. 35. However, the entire purpose of the statute and the Rule is to prevent unlicensed individuals from engaging in the business of dealing firearms. Giving former licensees free rein to engage in the business of dealing their inventories after they surrender their license (or have it revoked) would run contrary to the statute's text and purposes.

that ATF lacks authority to prohibit the resale by a former licensee of firearms that were transferred before the termination of a license with such intent because that unlawful conduct "does not taint the firearms themselves or support a presumption that unlawful dealing continues." Mot. 34. That presumption is manifestly sensible. Willfully evading federal firearms regulations is equally impermissible for licensees and non-licensees. The rational nexus supporting this presumption is patently clear and is supported by ATF's common-sense interpretation of the GCA. *See*, Rule 89 Fed. Reg. 29,035-36.

Third, Plaintiff's contention that, under the Rule, firearms that were never transferred from a business inventory while an individual was licensed "remain forever in purgatory, and any attempt to transfer them leads to the presumption of unlawful dealing," is inaccurate. Mot. 34. The presumption itself states that the former licensee will not be presumed to be engaged in the business of dealing if they resell or offer to resell to "a licensee in accordance with §478.57 or §478.78." Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)(4)). And as explained *supra*, p. 41, the statute itself does not permit any unlicensed person to resell firearms in a manner that would satisfy the conditions of being engaged in the business of dealing. Moreover, the Rule construes the GCA to allow former licensees with business inventory, which the Rule calls "former licensee inventory," to dispose of such inventory lawfully. Specifically, under 27 C.F.R. §478.57(b) and §478.78(b), former licensees must liquidate or transfer their former licensee inventory "within 30 days, or such additional time period approved by the Director for good cause." Purchasing inventory while licensed does not in any sense "serve as a predicate offense for a charge of *unlicensed* dealing," Mot. 34, but rather the circumstances as a whole inform the presumption that the former licensee continues to engage in the business of dealing firearms.[27]

---

[27] Plaintiffs also assert without explanation that "if a 'former licensee' merely sells inventory acquired while licensed to do just that, the statute permits that activity." Mot. 34. The statute clearly does not

### D.      Plaintiffs Are Not Likely to Succeed on their Second Amendment Claim

The Rule comports with the Second Amendment.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court made clear that "longstanding . . . laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures," *id.* at 626-27 & n.26, and the Fifth Circuit has held that the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), "did nothing to disturb that part of *Heller*." *McRorey v. Garland*, ---F.4th---, 2024 WL 1825398, at *3 (5th Cir. Apr. 26, 2024).

In *Bruen*, both the majority opinion and Justice Kavanaugh's concurrence affirmed the constitutionality of "'shall-issue' licensing regimes," in which the right to carry weapons is conditioned on passing a "background check" and obtaining a license.  *Bruen*, 597 U.S. at 39 n.9; *see also id.* at 80 (Kavanaugh, J., concurring).   And the Fifth Circuit recently held that the background check requirements of the BSCA are constitutional, even though those background checks may delay an individual's ability to purchase a firearm. *McRorey*, 2024 WL 1825398, at *5-6.  A requirement that firearms dealers be licensed has an even more attenuated relationship to the right protected by the Second Amendment's text (*i.e.*, the right to "keep and bear arms," U.S. Const. amend. II) than such requirements, and it is no surprise that courts both before and after *Bruen* have regularly rejected arguments that the Second Amendment precludes regulation of those engaged in the business of dealing firearms.  *See, e.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc); *United States v. Flores*, 652 F. Supp. 3d 796 (S.D. Tex. 2023).[28]

---

permit such activity, however, as there is no temporal requirement attached to the various conditions for meeting the definition of being engaged in the business of dealing.  A former licensee would almost without exception have met this definition while acquiring the firearms at issue and may not evade the restrictions by becoming unlicensed before reselling.

[28] *See United States v. Duncan*, Case No. 7:20-cr-00167-M-3, 2023 WL 7346042, at *3 (E.D.N.C. Nov. 7, 2023) ("impos[ing] a condition, namely licensing, on firearms commerce . . . does not violate the Second Amendment"); *United States v. King*, 646 F. Supp. 3d 603, 607 (E.D. Pa. 2022) ("the Second Amendment does not protect the *commercial* dealing of firearms"); *United States v. McNulty*, ---F

Plaintiffs cite several cases in support of their Second Amendment claim, Mot. 36-37, but none held that the Second Amendment guaranteed a right to engage in the business of dealing firearms without regulation.  One case cited by Plaintiffs held that the Second Amendment's text "confers a right on the 'people' who would keep and use arms, not those desiring to sell them."  *Teixeira*, 873 F.3d at 683.  Another case reasoned that "the Second Amendment right to keep and bear arms for self-defense necessarily includes the right to acquire a firearm, and that this right is implicated by local laws directly or functionally banning firearm sales."  *Kole v. Vill. of Norridge*, No. 11 C 3871, 2017 WL 5128989, at *9 (N.D. Ill. Nov. 6, 2017).[29]  But Plaintiffs do not and cannot claim that the Rule functionally bans any firearm sales.  There are currently more than 49,000 federally licensed firearms dealers,[30] and the Rule is likely to lead to more people and businesses becoming licensed.  Individuals can also acquire firearms from unlicensed parties whose firearms sales activity falls short of being engaged in the business of dealing under the Rule.  Another case cited by Plaintiffs quoted a Virginia state statute that conferred a right to engage in the "sale, or transfer of firearms" as a matter of state law, not federal constitutional law.  *Lynchburg Range & Training, LLC v. Northam*, 105 Va. Cir. 159, 2020 WL 8817562, at *3 (2020) (quoting Va. Code § 44-146.15(3)).

The GCA's modest requirements for commercial sales are, moreover, "consistent with this

---

Supp.3d.---, 2023 WL 4826950, at *4 (D. Mass. July 27, 2023); *United States v. Tilotta*, Case No. 3:19-cr-04768-GPC, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022).

[29] *See also Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, 647 F. Supp. 3d 508, 521 (W.D. La. 2022) ("while sales restrictions do not explicitly infringe the right to 'keep or bear Arms,' a complete restriction on the sale of firearms could effectively gut the right to own or possess firearms by foreclosing the ability of 'the people' to legally purchase firearms"); *Altman v. Cnty. of Santa Clara*, 464 F. Supp. 3d 1106, 1125 (N.D. Cal. 2020) (recognizing a "right to *acquire* firearms," but noting that the case did not concern a right to "*sell* them").  In *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), the court noted in dicta that there may be a "constitutional defect in prohibiting the commercial sale of firearms," but the court did not suggest that mere regulations on commercial sales would implicate the Second Amendment.  *Id.* at 92 n.8.

[30] *See* ATF, Complete Federal Firearms Listings, https://www.atf.gov/firearms/listing-federal-firearms-licensees/complete.  In the Excel spreadsheet linked on that page, rows with "01" for "LIC_TYPE" in Column D are licensed dealers in firearms other than destructive devices.

Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.  As ATF explained in the Rule's preamble, "there is a robust historical tradition supporting the Government's authority to require licenses and inspection of firearms sellers."  Rule, 89 Fed. Reg. at 29,002.  For example, in 1794, Congress enacted a law temporarily making it unlawful "to export from the United States any cannon, muskets, pistols, bayonets, swords, cutlasses, musket balls, lead, bombs, grenades, gunpowder, sulpher, or saltpetre," Act of May 22, 1794, 1 Stat. 369, ch. 33, § 1, making clear that the Founding generation believed that it was constitutionally permissible to regulate arms sales.

Colonies and states in the early republic also regulated firearms commerce.  Several states or colonies, including Massachusetts in 1651 and 1809, Connecticut in 1775, New Jersey in 1776, required licenses or inspection to export or sell gunpowder, which was necessary to operate a firearm.[31] Massachusetts in 1805 and Maine in 1821 required pistol barrels to be "proved," meaning inspected and marked, before they could be sold.[32]  In concluding that "[t]he historical record confirms that the right to sell firearms was not within the 'historical understanding of the scope of the [Second

---

[31] *See* Colonial Laws of Massachusetts Reprinted from the Edition of 1672, at 126, Powder (1890) (1651 statute requiring license to export gunpowder); 2 General Laws of Massachusetts from the Adoption of the Constitution to February, 1822, at 198-200, ch. 52, An Act Providing for the Appointment of Inspectors, and Regulating the Manufactory of Gun-Powder, secs. 1, 8 (1823) (1809 statute providing for the appointment of an "inspector of gunpowder for every public powder magazine, and at every manufactory of gunpowder," and imposing penalties for any sale or export of gunpowder "before the same has been inspected and marked"); 15 The Public Records of the Colony of Connecticut, from May, 1775, to June, 1776, Inclusive 191, An Act for Encouraging the Manufactures of Salt Petre and Gun Powder (1890) (1775 Connecticut law establishing, among other things, that no gunpowder manufactured in the colony "shall be exported out" of the colony "without [an applicable] licence"); Acts of the General Assembly of the State of New-Jersey, at a Session Begun at Princeton on the 27th Day of August 1776, and Continued by Adjournments 6, ch. 6, An Act for the Inspection of Gun-Powder, § 1 (1877) (No person shall offer any gunpowder for sale "without being previously inspected and marked as is herein after directed."); Laws of the State of New Hampshire; With the Constitutions of the United States and of the State Prefixed 276-78, An Act to Provide for the Appointment of Inspectors and Regulating the Manufactory of Gunpowder, secs. 1, 8 (1830) (authorizing "inspector of gunpowder for every public powder magazine, and at every manufactory of gunpowder in this state" and imposing penalties for any sale or disposition of gunpowder "before the same has been inspected and marked").

[32] *See* 3 Laws of the Commonwealth of Massachusetts, from November 28, 1780, to February 28, 1807, at 259–61 (1807); 1 Laws of the State of Maine 546 (1830).

Amendment] right,'" *Teixeira*, 873 F.3d at 683 (citations omitted), the Ninth Circuit cited additional historical materials showing that many colonies enacted restrictions on commercial sales of firearms to Indians, and Connecticut and Virginia "controlled more generally where colonial settlers could transport or sell guns," *id.* at 685.[33]

Plaintiffs ask the Court to disregard this history of regulation of firearms dealing because historical laws did not regulate firearms dealing in quite the same way as the Rule does. Mot. 37-38. Plaintiffs improperly demand a "historical *twin*," when the Supreme Court has made clear that a "historical *analogue*" is sufficient to sustain a modern firearms regulation. *Bruen*, 597 U.S. at 30.

### E.    The Rule Is Consistent with the Fourth Amendment

Plaintiffs' claim that the Rule violates the Fourth Amendment is meritless. The GCA expressly authorizes ATF to periodically inspect federal firearms licensees for compliance with the GCA's requirements. *See* 18 U.S.C. § 923(g)(1)(B)(ii); 27 C.F.R. § 478.23. More specifically, ATF "may inspect or examine the inventory and records of" a licensee "without . . . reasonable cause or warrant" to "ensur[e] compliance with" the GCA's "recordkeeping requirements." 18 U.S.C. § 923(g)(1)(B); *see* 27 C.F.R. § 478.23(b) (providing that compliance inspections be conducted "during business hours"). Such inspections, however, may take place "not more than once during any 12-month period." 18 U.S.C. § 923(g)(1)(B)(ii)(I).

Plaintiffs argue that the Rule violates the Fourth Amendment by requiring "thousands of gun owners to seek" a federal firearms license in order to sell "portions of their personal [firearms] collections," and then subjecting these "new, home-based licensees to the GCA's warrantless inspection regime." Mot. 38-39. Plaintiffs are mistaken for at least two reasons.

---

[33] Contrary to Plaintiffs' assertion, Mot. 37, the historical laws discussed in *Teixeira* were not all limited to the provision of arms to Indians. A Connecticut law "banned the sale of firearms by its residents outside the colony," and a Virginia law prohibited traveling within three miles of an Indian town with more arms or ammunition than needed for personal use, "even if he was not actually bartering, selling, or otherwise engaging with the Indians." *Teixeira*, 873 F.3d at 685.

As a threshold matter, Plaintiffs fail to demonstrate that they have standing to challenge the Rule on Fourth Amendment grounds. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press . . . ."). Plaintiffs' theory of Fourth Amendment injury hinges on currently unlicensed individuals (1) "apply[ing] for and receiv[ing]" a federal firearms license and (2) subsequently being subjected to a warrantless compliance search by ATF at some unknown time in the future. Compl. ¶ 200. The only individuals who could conceivably suffer such an injury are Plaintiff Tormey and unlicensed gun owners who are members of the organizational plaintiffs. *See Carpenter v. United States*, 585 U.S. 296, 303 (2018) (explaining that the Fourth Amendment "safeguard[s] the privacy and security of *individuals* against arbitrary invasions by government officials" (emphasis added) (citation omitted)). Yet nothing in Tormey's declaration indicates that he intends to seek a federal firearms license — a prerequisite to being subject to an ATF compliance inspection, *see* 18 U.S.C. § 923(g)(1)(B) — once the Rule goes into effect. *See* Tormey Decl. ¶ 11 ("I believe my activities have always been lawful under federal law, and I wish to continue to alter, improve, or even be able to liquidate my personal collection . . . *without becoming a licensed dealer*." (emphasis added)); *see id.* ("Indeed, I am not even sure if I could become licensed, due to zoning restrictions, etc."). And the organizational plaintiffs' declarations similarly fail to specifically demonstrate whether any of their members would even need to obtain a license under the Rule; whether the members who do are even eligible for a license, *see* 18 U.S.C. § 923(d)(1) (listing the eligibility requirements); and whether any eligible members would actually apply for a license, *see, e.g.,* Archie Decl. ¶ 4 ("[M]any other TFA members do not consider themselves to be firearms dealers, and have opted not to apply for any category of federal firearms license").

In any event, precedent squarely forecloses Plaintiffs' Fourth Amendment claim. The Supreme Court has made clear that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an

enterprise." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) (citation omitted); *see New York v. Burger*, 482 U.S. 691, 700 (1987) (observing that an expectation of privacy "is particularly attenuated in commercial property employed in 'closely regulated' industries"). Consequently, "a warrantless inspection of commercial premises" engaged in such a "closely regulated" industry "may well be reasonable within the meaning of the Fourth Amendment." *Id.* at 702; *see Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 967 (5th Cir. 2023) ("For such an industry, the threshold for whether a search is reasonable for purposes of the Fourth Amendment is much lower."). And it is well settled that "firearms dealing" is one such closely regulated industry. *See City of L.A. v. Patel*, 576 U.S. 409, 424 (2015); *United States v. Biswell*, 406 U.S. 311, 316 (1972) ("When a [firearms] dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection.").

Indeed, the Supreme Court has explicitly held that ATF's compliance inspection procedures are consistent with the Fourth Amendment. *See Biswell*, 406 U.S. at 316-17; *see also Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) (rejecting a Fourth Amendment challenge to an ATF compliance search conducted pursuant to 18 U.S.C. § 923(g)(1)(B)(ii) (citing *Biswell*, 406 U.S. at 317)); *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009) (holding that a warrantless search of a gun store "conducted pursuant to established regulatory authority" did not violate the Fourth Amendment (citing *Biswell*, 406 U.S. at 316)). Thus, if Plaintiff Tormey or an unnamed member-gun owner acquires a license and is then subjected to an ATF compliance inspection, that inspection would be reasonable under the Fourth Amendment. *See Biswell*, 406 U.S. at 317.[34] Plaintiffs' Fourth Amendment claim therefore fails as a matter of law and cannot justify the extraordinary relief they seek.

---

[34] Plaintiffs speculate that the current Supreme Court "would probably not decide *Biswell* similarly today." Mot. 39. But "[i]nferior courts must follow directly applicable Supreme Court precedent that has not been overruled or modified." *United States v. Vargas*, 74 F.4th 673, 680 (5th Cir. 2023).

### F.      Plaintiffs' Separation-of-Powers Claim Lacks Merit

Plaintiffs' separation-of-powers claim also lacks merit.   Plaintiffs contend that the Rule represents an effort by "unelected bureaucrats" at ATF to "amend federal gun laws without involving Congress." Mot. 41-42; *see* Compl. ¶ 205 (alleging that the Rule "usurp[s] legislative powers").   As explained above, the Rule implements, rather than "amends," the provisions of the GCA.   In promulgating the Rule, moreover, ATF exercised authority delegated to it by an elected and democratically accountable Congress.  *See* 18 U.S.C. § 926(a); *see also* 28 U.S.C. § 599A(b)(1) (delegating responsibility for enforcing the GCA to ATF).  The Rule "implement[s]" a "statutory change" to the GCA that was likewise enacted by an elected and democratically accountable Congress (*i.e.*, the BSCA).

The gravamen of Plaintiffs' separation-of-powers claim is that ATF, in issuing the Rule, allegedly "contravene[d] congressional intent."  Mot. 41 n.6.  Put another way, Plaintiffs effectively claim that the Rule is "in excess of" ATF's "statutory . . . authority" or "otherwise not in accordance with law" — a theory of relief that is indistinguishable from their APA claims.  5 U.S.C. § 706(2). Plaintiffs' separation-of-powers claim thus amounts to little more than an attempt to repackage a statutory claim as a constitutional one and should therefore be rejected.  *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("[I]t is a well-established principle . . . that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." (citation omitted)).

## IV.    The Balance of Equities and Public Interest Disfavor Injunctive Relief

The balance of the equities and public interest merge when the government is a party.  *Nken,* 556 U.S. at 435.  In this case the balance tips decidedly against preliminary injunction of the regulation. Plaintiffs bear the burden of establishing each of the preliminary injunction factors, and in addition to demonstrating no likelihood of success on the merits, they have not established any harm to themselves in allowing the Rule to take effect during the pendency of this case.  Plaintiffs identify no

benefit to the public generally of enjoining the Rule.  Nor as they claim, Mot. 44, does the Rule actually make any changes to the statutory scheme or introduce additional uncertainty for potentially regulated parties, *see supra* pp. 29-32.  Consequently, Plaintiffs have placed nothing at all on their side of the balance.

Conversely, here ATF has exercised its authority to issue regulations to effectuate laws enacted by Congress to reduce violent crime.  Congress specifically amended the definition of "engaged in the business" to encompass more conduct and to reduce the volume of unlicensed dealing in firearms.  Under such circumstances, if the government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).  Moreover, courts have long recognized that regulation of "dealers in firearms" is "undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders."  *Biswell*, 406 U.S. at 315; *see also, e.g.*, *United States v. Hosford*, 82 F. Supp. 3d 660, 667 (D. Md. 2015) ("[R]egulating firearms dealers . . . furthers the Government's substantial interest in protection the community."), *aff'd*, 843 F.3d 161 (4th Cir. 2016); *Chambered Grp. USA LLC v. Babcock*, No. CV-23-01850-PHX-SPL, 2023 U.S. Dist. LEXIS 173796, at *13-14 (D. Ariz. Sept. 27, 2023) ("A licensee's failure to follow the GCA regulations jeopardizes public interest because it poses a danger to society.").  Therefore, granting the requested preliminary injunction would significantly harm the government's interest in law enforcement and public safety.  The public consequences of continuing to permit what Congress and ATF have identified as a significant source of unlicensed dealing in firearms weighs heavily against granting an injunction.

## V.   Any Relief Should Be Limited

For the reasons explained above, no relief is warranted.  But in the event the Court were to award any relief, such relief should be no broader than necessary to remedy any demonstrated harms

51

of the Plaintiffs in this case.  "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).  "A district court abuses its discretion if it does not 'narrowly tailor an injunction to remedy the specific action which gives rise to the order.'" *ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) (quoting *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)), *overruled on other grounds by Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023).

*First*, the Court should decline to issue a so-called "nationwide injunction" that bars application of the Rule to any party nationwide.  The Fifth Circuit recently counseled that "judicial restraint" is warranted when crafting injunctive relief, and district courts should consider "whether one district court should make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021).  Since then, three Justices of the Supreme Court concluded that a "district court's universal injunction defied . . . foundational principles" that "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., joined by Thomas, J., and Alito, J., concurring in the grant of the stay) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also id.* at 931 (Kavanaugh, J., joined by Barrett, J., concurring in the grant of the stay) ("prohibiting nationwide or statewide injunctions may turn out to be the right rule as a matter of law"). Nationwide injunctions "short-circuit the decisionmaking benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top," *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring), a concern especially salient here given that challenges to the Rule are pending in two other cases in different circuits.[35]  Nationwide injunctions

---

[35] *See Kansas v. Garland*, Case No. 2:24-cv-88 (E.D. Ark.); *Florida v. ATF*, Case No. 8:24-cv-1041 (M.D. Fla.).

also "sometimes give States victories they do not want." *Id.* at 396. That is the case here, where twenty states and the District of Columbia submitted a comment in support of the Rule, concluding that the Rule is lawful and would promote public safety within their jurisdictions. Comment of Attorney General of New York, et al., Definition of "Engaged in the Business" as a Dealer in Firearms, Docket No. ATF 2022R-17 (Dec. 7, 2023), https://ag.ny.gov/sites/default/files/letters/multistate-comment-on-nprm-eitb-atf-rule.pdf.

The fact that Plaintiffs invoke § 705 of the Administrative Procedure Act (APA) does not change the inadvisability of a universal remedy. That section provides: "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. In limiting such relief "to the extent necessary to prevent irreparable injury," the statute directs courts to apply traditional equitable principles, which include tailoring relief to be no more intrusive than necessary to prevent irreparable harm to the parties. Indeed, the House Report for the APA indicates that relief under § 705 should "normally, if not always, be limited to the parties complainant." *Administrative Procedure Act*, S. Doc. No. 248, 79th Cong., 2d Sess. 277 (1946).[36]

*Second*, relief should extend only to Plaintiffs that the Court concludes have demonstrated both standing and irreparable harm. "Article III does not give federal courts the power to order relief to any uninjured plaintiff." *TransUnion*, 594 U.S. at 431 (citation omitted). If the Court agrees with Defendants' arguments in part and concludes that only some Plaintiffs have demonstrated injury-in-fact and irreparable harm, the Court should (indeed, must) exclude from any relief the Plaintiffs who

---

[36] *See id.* ("[t]he authority granted is equitable and should be used by both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy" and that "[s]uch relief would normally, if not always, be limited to the parties complainant and may be withheld in the absence of a substantial question for review").

have not made that showing.

*Third*, if the Court concludes that Plaintiffs are likely to succeed in showing that only certain provisions or aspects of the Rule are unlawful, the Court should limit relief to the provisions or aspects held likely unlawful. The Rule contains a "[s]everability" section expressing ATF's intent that the Rule's provisions be severable to the maximum extent possible, such that if any aspect of the Rule is held unlawful, the remainder "shall not be affected and shall be construed so as to give them the maximum effect permitted by law." Rule, 89 Fed. Reg. at 29,070. Typically, "[w]hether the offending portion of a regulation is severable depends upon [1] the intent of the agency *and* [2] upon whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broads. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001); *accord Sw. Elec. Power Co. v. U.S. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (vacating only "the portions of the final rule" the court decided were unlawful). The Rule's severability section makes clear ATF's intentions with respect to severability. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987). Thus, any "objectionable provision[s]" should be temporarily enjoined while the others remain in place. *Id.*

## CONCLUSION

The Court should deny Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction.

DATED: May 14, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
KERI L. BERMAN
ZACHARY W. SHERWOOD
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

On May 14, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeremy S.B. Newman*