UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § § § | |
| Plaintiff(s), | § § | |
| v. | § § | CASE NO. 2:24-cv-00089-Z |
| UNITED STATES OF AMERICA, et al., | § § | |
| Defendant(s). | § § | |
| and | § § | |
| LEVI RUDDER | § § § | |
| Proposed Plaintiff- Intervenor | § § | |

## PROPOSED PLAINTIFF-INTERVENOR'S MOTION FOR LEAVE TO INTERVENE/JOIN AS PLAINTIFF AND BRIEF IN SUPPORT THEREOF

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") respectfully request that the Court grant him leave to intervene/join as a Plaintiff in this action as of right pursuant to Fed. R. Civ. P. 24(a)(2) and Fed. R. Civ. P. 19(a)(B)(i) or, in the alternative, grant him permissive intervention/joinder pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) and Fed. R. Civ. P. 20(a)(1), so that he may be covered by any relief granted to the Parties; and to address constitutional arguments that were, intentionally or unintentionally, omitted from the current complaint that will more completely protect PPI's interests.

Defendants have advised the Proposed Plaintiff-Intervenor that they oppose the motion to intervene. Plaintiffs have been notified and have not responded.

### Brief in Support of Intervention/Joinder

## I. STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") is a U.S. and Texas citizen that will undoubtedly be affected by the Final Rule. If the Rule is allowed to go into and stay in effect, the PPI as well as thousands of others similarly situated will be subjected to a multitude of civil and criminal consequences, and could face a loss of their liberties and property. This unique, personal interest supports intervention. Accordingly, the PPI hereby respectfully submit the following Brief/Memorandum of Law in Support of Motion to Intervene as Defendants.

## II. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed this lawsuit seeking a stay of agency action, temporary restraining order, and/or a preliminary injunction to preserve the status quo, followed by a declaratory judgment and permanent injunctive relief restraining Defendants from enforcing a Final Rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives of the U.S. Department of Justice on April 19, 2024, entitled "Definition of 'Engaged in the Business' as a Dealer in Firearms" ("Final Rule"), 89 Fed. Reg. 28968, and this case is still in the early stages of the proceedings.

## III. SUMMARY OF THE ARGUMENT

As set forth below, Plaintiffs' requested injunctive relief, and if not granted, it would substantially impair the interests of the PPI. Plaintiffs' attorneys cannot/have not adequately represented the PPI's interests because they are responsible for representing a broad range of public interests and are not focused on the PPI's interests protected by the Art. V amendment process, and the Ninth and Tenth Amendments. Allowing the PPI to participate as intervenor will ensure that his interests are adequately protected and will provide him with the opportunity to offer evidence and argument that will assist the Court in rendering a decision in this important case.

Because the PPI meets all the requirements for intervention under Rule 24(a)(2), he respectfully request that his motion to intervene be granted.

## IV. THE PPI IS ENTITLED TO INTERVENTION AS OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) provides:
On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene as of right under Rule 24(a)(2), an applicant must meet four requirements: (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the basis of the controversy in the underlying case; (3) the disposition of the case may impair or impede the potential intervenor's ability to protect his interest; and (4) the existing parties do not adequately represent the potential intervenor's interests. *See Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).

The Fifth Circuit has construed Rule 24(a) broadly in favor of intervenors. *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "[T]he inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotation and citation omitted). "[I]ntervention of right must be measured by a practical rather than technical yardstick." *See id.* at 999 (internal quotation and citation omitted). Accordingly, courts, as a general matter, allow intervention where "no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Glickman*, 256 F.3d at 375) (internal quotation omitted).

### A. The PPI' Motion to Intervene Is Timely

In determining whether a motion for intervention is timely under Fed. R. Civ. P. 24(a)(2), the Court should consider: (1) the length of time between the potential intervenor's learning that

3

its interest is no longer protected by the existing parties and its filing of a motion to intervene, (2) the extent of prejudice to the existing parties from allowing late intervention, (3) the extent of prejudice to the potential intervenor if the motion is denied, and (4) any unusual circumstances. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009).

The PPI' Motion to Intervene comes promptly after they learned of their interest in the case via the filing of Plaintiffs' complaint, filed on May 1, 2024. The litigation is currently in its early stages, and the timing of this motion poses little or no prospect of prejudicing the parties: at this early juncture, Defendants have yet to file their answer, no discovery has been conducted, no scheduling order has been issued other than an expedited briefing schedule and the hearing on the motion for preliminary relief set for 11am on May 16, 2024, and no trial date set.

Although Plaintiffs have filed a motion for a TRO (*see* Dkt. No. 16), the Court has not ruled on this motion. PPI would not be protected by the relief sought, if the court limits the relief granted only to the Parties involved, as sought by the Defendants in V, of their response (Doc. 31 p. 51). The PPI does not intend to request any modification to the current hearing schedule, and intervention therefore poses no potential to prejudice the rights of any current party. *See Ford v. City of Hunstville*, 242 F.3d 235, 240 (5th Cir. 2001) (finding that prejudice is only created by "the intervenor's delay in seeking to intervene after it learns of its interest") (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)); *see also Stallworth*, 558 F.2d at 265 ("[T]he prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action").

On the other hand, the PPI would be severely prejudiced if this Court denies this motion to intervene. In *Stallworth*, the Fifth Circuit framed the question of prejudice against proposed

4

intervenors who are denied intervention in terms of whether "a [Rule 24] section (a) intervenor 'may be seriously harmed if he is not permitted to intervene.'" 558 F.2d at 266 (internal quotation and citation omitted). In this case, distinct from Plaintiffs, the PPI as an individual, without conflicting State or Associational interests, have a direct, personal, and financial stake in the outcome of this case. In point of fact, the PPI is a target of the outcome of this case: if the Court does not enjoin the implementation of the Final Rule, PPI is likely to be at risk of losing his opportunity to act in a non-illegal manner subject to his own discretion.

As a nonparty, the PPI will be directly affected by any court ordered remedy, but will not be able to participate in presenting evidence and argument in support of his positions or to appeal the ruling. *See Edwards*, 78 F.3d at 1002–03; *see also Lease Oil Antitrust Litig.*, 570 F.3d at 249–50 ("Intervening in the existing federal lawsuit is the most efficient, and most certain, way for [the potential intervenor] to pursue its claim."). Without the ability to intervene, the PPI will be relegated to the sidelines in a case in which his interests will be directly impacted by the outcome and his fate will be determined by other parties.

As the Defendants' Final Rule directly affects his right to act in a non-illegal manner, PPI respectfully urge the Court to grant him an opportunity to present his case and protect his interests from the extraconstitutional exercise of authority by the Defendants. Considering each of the factors above, this intervention is timely because (1) the PPI promptly filed this motion; (2) the existing parties will not be prejudiced if the Court permits intervention at this juncture; and (3) the PPI will be greatly harmed if this motion is denied because he will not be able to protect his interests, or have his interests protected to the fullest extent, before the Court.

### B. The PPI Possess a Protectable Interest

The PPI also satisfy the requirements of Rule 24(a)(2) because he has a protectable interest in the subject matter of this litigation that would be otherwise impaired by an adverse decision.

5

His protectable interest does not have "to be of a legal nature identical to that of the claims asserted in the main action." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). Indeed, "[a]ll that is required by the terms of the rule is an interest in . . . [the] rights that are at issue [which involve the right to keep and bear arms and other unenumerated rights], provided the other elements of intervention are present." *Id.* Ultimately, "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005).

Here, the PPI' interest is to prevent extraconstitutional authority from being used against him, and maintain the ability to exercise his Liberty to the fullest extent that the U.S. Constitution does not delegate to the discretion of the federal government. The PPI's life will be directly and adversely impacted. His interest is therefore sufficient, even under *Diaz*.

Courts have routinely granted intervention to parties seeking to protect their interest in government actions that affect them. For example, in Kansas, a federal district court allowed students and Latino organizations to intervene in a case concerning a challenge to state legislation that made undocumented immigrant students eligible for in-state tuition rates. *See Day v. Sebelius*, 227 F.R.D. 668, 670, 676 (D. Kan. 2005) (granting motion to intervene as defendants filed by the Kansas League of United Latin American Citizens, the Hispanic American Leadership Organization, and three college students); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (detainees seeking to intervene as a matter of right in an action brought by a U.S. Senator to challenge housing of immigrant felons at a particular facility had an interest relating to the main suit). Similarly, in *Lewis v. Stark*, 312 F. Supp. 197 (N.D. Cal. 1968), *rev'd on other grounds by Lewis v. Martin*, 397 U.S. 552 (1980), the plaintiffs sought a declaration that the state welfare law, which provided that a man assuming the role of spouse in a home is bound to support children in the home, was unconstitutional and contrary to federal regulations interpreting the

Social Security Act. *Id.* at 199. The court held that families with men assuming the role of spouse in the household were entitled to intervene as of right under Rule 24(a). *Id.* In the same way, the PPI here has shown strong and legally cognizable interests related to the Final Rule and from the Acts that supposedly authorize such rulemaking authority stem.

Should the Court deny the Plaintiffs' request, the PPI will be deprived of opportunities to exercise their non-delegated rights and powers, which are safeguarded by the Ninth and Tenth Amendments. Consequently, this denial would impose further restrictions on the Plaintiff-Intervenor's ability to support himself and his family, in a manner not authorized by the Constitution. Courts have held that economic interests, especially those that would "afford [PPI] greater recompense and satisfaction," is a significant protectable interest. *Usery v. Brandel*, 87 F.R.D. 670, 676 (W.D. Mich. 1980); *see also Decker v. United States Dep't of Labor*, 473 F. Supp. 770 (E.D. Wis. 1979) (holding that a city archdiocese which received financial benefits from a federal statute had a sufficient interest in the action to intervene as of right under Rule 24(a)(2)).

The PPI's interests diverge from the interests that Plaintiffs pursue: State Plaintiffs are responsible for their particular State interests, but not specifically for PPI providing for himself and his family; Non-State Plaintiffs have associational, and other, interests that may prevent them from providing the utmost protection to the interests of the PPI's; all agree the Final Rule is the attempted exercise of extraconstitutional authority, but diverge on why. The divergence on the "why", is why PPI asks the Court to provide them with the opportunity to defend his own interests in this case.

### C. The PPI' Interests Would Be Subject to Impairment if Intervention is Denied

The PPI is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). Here, the advisory committee notes to Rule 24(a) are instructive: "[i]f an absentee would be substantially affected in a practical

7

sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 advisory committee note to 1966 Amendment. To demonstrate "impairment," a prospective intervenor "must show only that impairment of its substantial legal interest *is possible* if intervention is denied." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (citing *Mich. State AFL*-CIO *v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)) (emphasis added). "This burden is minimal." *See Grutter*, 188 F.3d at 399 (rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest).

There is no doubt that the issues in this case—if PPI takes certain acts it is possible that he will be subject to warrantless searches— will directly impair the PPI's life, potentially resulting in incarceration, litigation, and preventing legal transactions that may produce profits.

The PPI cannot wait until the conclusion of the litigation to vindicate their interests. Courts have recognized that parties seeking intervention would face a "practical disadvantage" in asserting their rights once a court has rendered a decision. *Chiles*, 865 F.2d at 1214. The Fifth Circuit has recognized that a prospective intervenor's interest may be practically "impaired by the *stare decisis* effect" of a court's rulings in subsequent proceedings. *Sierra Club*, 18 F.3d at 1207 (quoting *Ceres Gulf*, 957 F.2d at 1204) (italics in original); *see also Martin v. Travelers Indem. Co.*, 450 F.2d 542, 554 (5th Cir. 1971) ("[S]tare decisis . . . would loom large" in any attempt by prospective intervenor "to achieve a favorable resolution of the coverage issue" on their own.); *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (to the extent that a lawsuit involves common legal issues, potential adverse effects on the prospective intervenors favor intervention).

### D. The PPI' Interests is not Adequately Represented by the Existing Parties

The burden under this prong is "satisfied if [the PPI] show[] that representation of [their] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Intervention is warranted when the proposed intervenors "occup[y] a different position and [have] different interests" than the existing defendants. *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. 07-0608, 2008 U.S. Dist. LEXIS 47405, at *18-19 (S.D. Tex. June 11, 2008).

Courts have recognized that governmental representation of private, non-governmental intervenors may be inadequate. For example, in *Dimond v. District of Columbia*, the court held that because the government was responsible for representing a broad range of public interests rather than the more narrow interests of intervenors, the "application for intervention . . . falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances." 792 F.2d 179, 192 (D.C. Cir. 1986); *see Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect its personal interests, which may at times be in conflict with those of the EEOC); *see also Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911-12 (D.C. Cir. 1977) (holding that the government does not adequately represent private organizations because Intervenor's interests are different).

As noted above, this prong is easily satisfied here. Plaintiffs and the PPI's interests are profoundly different. The Plaintiff States are responsible for defending their sovereign interests, but none of them are or ever subject to arrest by the Defendants; and the other Plaintiffs have no duty to argue for the utmost protection of the PPI's rights and interests, and don't have the same personal interest at stake. None of the existing Plaintiffs are asserting the constitutional protections afforded by the burdensome Art. V amendment process, which in PPI's view is the strongest argument and one of the most fundamental interest involved in this case.

In addition, even assuming their best intentions, Plaintiffs may be hesitant to advance relevant arguments because of the highly-charged political debate surrounding firearms as a social

9

and political policy issue which could expose Plaintiffs to severe public scrutiny and criticism. Plaintiffs' potential failure to advance certain arguments (and already shown by their omission from the complaint) is sufficient to satisfy the PPI' minimal burden that Plaintiffs' representation "may be" inadequate. *Trbovich*, 404 U.S. at 538 n.10. The PPI' interests are too divergent from the interests of Plaintiffs, and too vital for PPI to be denied an active role as intervenor. *See Day*, 227 F.R.D. at 674-75 (granting intervention and recognizing direct and personal interests of undocumented immigrant student in defending an in-state tuition law). For these reasons, the PPI seek to participate in this case as an intervenor and respectfully request that the Court grant them intervention as a matter of right.

## V. PERMISSIVE INTERVENTION IS ALSO APPROPRIATE

Even if this Court were to determine that the PPI do not satisfy the requirements for intervention as of right, it should grant permissive intervention. Rule 24(b)(1)(B) grants permissive intervention upon timely motion by anyone who "has a claim or defense that shares with the main action a common question of law or fact." The Fifth Circuit has recognized that permissive intervention may be granted in the Court's discretion if (1) the motion is timely; (2) an applicant's claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b); *see United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenor raise common questions of law and fact.").

As a threshold matter, the PPI' motion to intervene is timely. *See supra* Section IV.A. Second, the PPI' claim will share substantial questions of law and fact with the main action as the PPI seek to prevent extraconstitutional actions taken by the Defendants. Third, as discussed above, intervention will not create delay or prejudice the existing parties. *See id.* Adding the PPI as

plaintiff-intervenors at this juncture of the lawsuit will not needlessly increase cost, delay disposition of the litigation, or prejudice the existing parties, and may even expedite disposition.

Importantly, the PPI' participation in this lawsuit will offer evidence and argument from an individual who is a real target of the Final Rule/this lawsuit and who have a direct and personal stake in the outcome of this case. At a minimum, therefore, the PPI ask the Court to exercise its broad discretion and grant them permissive intervention.

This motion is a substantial duplicated from the motion to intervene that was originally denied in the district court, but subsequently reversed by the 5th Circuit Court in *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015), including citations that are analogous for intervention purposes.

## VI.   CONCLUSION

For the foregoing reasons, the PPI respectfully request that the Court grant his motion to intervene in this action as an additional Plaintiff, and to accept the supplemental complaint addressing claims not previously raised by Petitioners.

Dated:  May 16, 2024

Respectfully submitted,

/s/ Levi Rudder

Levi Rudder
7717 Milwaukee Ave. Ste. 500-401
Lubbock, Texas 79424
Phone: (512) 640-9619
Constitutional.USLaw@gmail.com

## DECLARATION OF LEVI RUDDER

1) My name is Levi Rudder. I am a U.S. citizen and resident of Lubbock Texas, located within Lubbock County. I make this declaration in support of PPI's Motion Complaint for Leave to Intervene as Plaintiff and Additional Declaratory and Injunctive Relief. Unless otherwise stated, I make this declaration based on personal knowledge. If called as a witness, I can testify to the truth of the statements contained herein.

2) I am a law-abiding person, eligible to possess firearms under state and federal law. I am a self-employed landlord and investor. I am an avid gun owner and supporter of the right to keep and bear arms. I am not knowingly a member of any of the Associations/Leagues/etc. that are parties to this case.

3) I have been a gun owner for nearly three decades, and I have been around firearms my entire life, as my father was an avid hunter. Thus, from a young age and to this day, much of my daily activities involve firearms and the right to keep and bear arms.

4) I presently have a personal collection of firearms that I have accumulated over many years. I am a collector and a hobbyist, but I also believe that the widespread public ownership of firearms is, as the Second Amendment says, "necessary" for a "free state". Part of my motivation for collecting is the hope to realize a pecuniary gain from appreciating value of the firearms, and/or ammunition, even if the firearms are used.

5) Thus, in addition to maintaining my personal collection of firearms, and engaging in non-illegal firearm activities (including recreation, target shooting, hunting, training, and commerce not involving a Foreign Nation, or Indian Tribe), I also attempt to promote responsible gun ownership in whatever capacity I can, including training and advocating.

6) I have attended local gun shows for many years. I have bought, sold, and traded firearms at various times and for various reasons.

7) I have traded up to nicer models in order to enhance my collection of firearms.

8) But although I have occasionally bought and sold firearms through private sales, I have never knowingly been "engaged in the business" of dealing in firearms. Thus, I do not hold, nor have I ever held, a federal firearms license in order to engage in my private inland commerce activities.

9) Thus, I believe my activities have always been lawful under federal law, and I wish to continue to alter, improve, or even be able to liquidate (for pecuniary gain) my personal collection, if the desire were to arise, without becoming a licensed dealer. Indeed, I am not even sure if I could become licensed, due to zoning, and other, restrictions.

10) However, ATF's recent "Engage in the Business" rulemaking makes portions of my perfectly lawful activity seem suspect under the new regulations being enacted.

11) For example, various of the Final Rule's definitions are written so broadly that they cover conduct that Congress left lawful under the statute, or are written so narrowly that they eviscerate explicit statutory protections for personal collections such as mine. Indeed, the Rule arbitrarily defines "collection" so narrowly that I am not even certain if my firearms collection still qualifies.

12) Moreover, various of the Rule's presumptions would seem to be so broad that they apply to certain of my activities, thus making me "presumptively" engaged in felonious activity unless I can prove that my activities are in fact innocent, as they are.

13) Additionally, parts of the Rule are so convoluted, vague, and ambiguous (for example: a lack of threshold number of transactions to qualify as doing business) that I cannot

clearly determine what is prohibited versus what is allowed. Does buying 2 pistols with the intent to sell them at some point for a pecuniary gain constitute doing business, or does it need to be 200, or is it after a certain amount of time (1 day or 30 years)? I thus fear that the vague threats and ambiguous definitions in the Final Rule will be wielded as a weapon against me in order to threaten, coerce, and intimidate me into complying with oppressive and tyrannic edicts, and forcing me to obtain a license that the Constitution does not permit to be imposed.

14) Finally, Congress is totally void of authority to regulate Arms in the manner it attempts or to establish a prohibition of Arms as it has, in the statutes below.

15) I intend on making, or intend on having made, a few items that would be considered NFA items and offering some of them for sale for a pecuniary gain, in inland commerce, and keeping some in my collection. These would include suppressors, short barrel rifles ("SBR"), and a post 1986 rifle and/or pistol capable of firing 2 shots with a single function of a trigger. The SBR only requires changing out the barrel of my AR-15 rifle with an approx. 7 1/2" barrel and a few other components that I already have, just not assembled into a firearm. That same AR lower receiver only needs 2 holes drilled in it to be able to accept the components to fire multiple rounds with a single function of the trigger that are readily available online, and I already have a design for the component which would limit it to the desired 2 shots per function of the trigger, this component I also intend on having manufactured and patented. The suppressor components can be acquired readily, and I have some selected to try out first. I also have a stencil and a jig for making devises know a lightning links, which are NFA Items, I would make them if not prohibited by one or more of the Statutes cited below. It is undisputable that if I were to further act on building or assembling the items described above to completion, it would expose me to criminal and/or civil proceedings under each, and potentially several of the challenged and cited statutes below, if

relief from the illegal laws is not granted. Point of clarification, I do not have any NFA items, just a partial list of components needed assemble or make various different NFA items.

16) I have witnessed gun cases and Second Amendment litigation, and I thus know firsthand the way ATF has manipulated federal laws and rules to target gun owners for parts that don't even meet the ATF's own definition of a firearm.

17) The Statutes that unlawfully restrict my rights, in violation of the U.S. Constitution are believed to stem from the following:

    a) The National Firearms Act of 1934 ("NFA");

    b) The Federal Firearms Act of 1938 ("FFA");

    c) The Gun Control Act of 1968 ("GCA");

    d) The Hughes Amendment of the Firearm Owners Protection Act of 1986 ("FOPA"); and,

    e) The Brady Act of 1993

18) If I am to continue to engage in the perfectly lawful behavior that the Constitution secures, but which the Rule and Statutes declares could be unlawful, I fear that I will be subject to an overreaching administrative action, civil forfeiture, an ATF cease-and-desist letter, or even arrest and criminal indictment.

I, Levi Rudder, declare under penalty of perjury that the foregoing is true and correct.

5-16-2024  
Date

*/s/ Levi Rudder*  
Levi Rudder