UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., § § § | |
| Plaintiff(s), § § | |
| v. § § | CASE NO. 2:24-cv-00089-Z |
| UNITED STATES OF AMERICA, et al., § § | |
| Defendant(s). § § | |
| and § § | |
| LEVI RUDDER § § | |
| Proposed Plaintiff- Intervenor § § | |

## PROPOSED PLAINTIFF-INTERVENOR/JOINER'S SUPPLEMENTAL COMPLAINT

### INTRODUCTION AND SUMMARY OF THE ARGUMENTS

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") adopts and incorporate in full the Plaintiffs' Complaint for Declaratory and Injunctive Relief (Dkt. No. 1) (the "Plaintiffs' Complaint") and submit the following supplemental brief to address the unique personal interests of PPI who will be directly and continually affected by the resolution of the challenged action in this case, if *extraconstitutional* authority is permitted to remain on the books, and/or continue to be enacted.

As Plaintiffs' Complaint speaks for itself, and as set forth below, PPI sets out supplemental claims to protect PPI's interest to the utmost extent. While the Plaintiffs' Complaint explains in compelling detail the statutory, Congressional, and Supreme Court case authority, it fails to adequately address the direct impact of extraconstitutional authority being imposed on individuals

such as the PPI. By examining the impact of the Final Rule and extraconstitutional statutes, one will easily see that they are ***not constitutionally authorized*** (extraconstitutional), because they were enacted **prior to an Amendment being properly proposed and ratified** as prescribed by Article V of the U.S. Constitution*.

For these reasons, the PPI respectfully submits the following Supplemental Complaint, along with PPI's Motion to intervene. Even though Mr. Tormey would supposedly have similar or the same interest as PPI, Mr. Tormey has not defended his or PPI's interests to the fullest extent, and why PPI seeks to intervene/join.

For Declaratory and Permanent Injunction purposes, PPI believes by First addressing the contravention/circumvention of the Art. V Amendment Process issues below, will allow for a much quicker and accurate resolution of this case, which will save the Court's and Parties' resources. Doing otherwise would likely lead to incomplete relief being granted, a longer and more drawn out process (similar to pulling the seed head off of a dandelion to prevent the spread of weeds in a yard, as opposed to removing the root and all of the weed, which only has to be done once, instead of each time a new seed head starts to form), and is only treating a symptom as it festers as opposed to addressing the true root cause of this controversy.

## STATEMENT OF THE ADDITIONAL ISSUES TO BE RULED UPON BY THE COURT

First and foremost, as the *text* of the U.S. Constitution ("Constitution") is silent on vesting Congress, or either of the other branches, with authority to regulate inland commerce pertaining to commercial transactions involving Arms, that is not specifically commerce: a) with a foreign Nation; b) with Indian tribes; or c) among the *several States* (interstate commerce); and therefore the Art. V prescribed Amendment process must be performed prior to federal authority being exercised, that is not enumerated within the U.S. Constitution (a Condition Precedent), since it

was left to the States or the People of the several States, and was further expressed by the Ninth and Tenth Amendments.

    1.    Is an "Amendment", as used in Art. V of the Constitution, a noun (name) for the action of supplying a defect, by some addition of what is wanted (such as a word, clause, or paragraph) as well as by expunging what is wrong (such as a word, clause, or paragraph)? If so,

    2.    were the gun control acts commonly known as: the National Firearms Act of 1934 ("NFA"); The Federal Firearms Act of 1938 ("FFA"); The Gun Control Act of 1968 ("GCA"); The Hughes Amendment of the Firearm Owners Protection Act of 1986 ("FOPA"), specifically the prohibition of private ownership of certain firearms manufactured after it went into effect ("Hughes Amendment"); and, the Brady Act of 1993 ("Brady Act"), (collectively "Gun Control Acts" or "GCAs") enacted prior to a properly proposed and ratified amendment authorizing the Federal government to exercise discretion over PPI's right to keep and bear arms? If so,

    3.    does the Art. V amendment process provide protection from the exercise of federal governmental authority from being imposed in an oppressive and/or tyrannic manner? If so,

    4.    and no Amendment was properly proposed and ratified, prior to the enactment of the GCAs, was the U.S. Constitution's Art. V process contravened/circumvented by malicious and/or destructive ingenuity, intentional or otherwise? If so,

    5.    was it permitted by: a) the fact that no party to a previous suit raised an argument of the protections afforded by the burdensome Art. V process against an oppressive and/or tyrannic exercise of governmental power; or, b) from an unwillingness to apply and support the Constitution, with its perceived flaws, as written?

**Proffered answers to questions 1-5 above:**

    1) Yes, as looking to the 1828 Webster dictionary confirms;

2) Yes, of the 27 Amendments ratified by the several States, none of them vest Congress with the general or specific power necessary to enact the GCAs;

3) Yes, because the burdensome prescribed process is designed to prevent the momentary passions of some, from being used to oppress others, by impassioned pleas as to why it may be necessary to expand federal authority;

4) Yes, as no authority to regulate inland commerce (intrastate) transactions between individuals was granted to Congress's discretion related to Arms, yet Congress currently exercises such authority prior to a properly proposed and ratified Amendment vesting Congress with the authority, the Art. V amendment process must have been contravened/circumvented by malicious and/or destructive ingenuity;

5)(a) Yes, it appears that no party has ever raised the fact that Art. V is a mandatory process required to be performed, as prescribed therein, to vest Congress (or another branch) with powers previously unenumerated/omitted from being vested by the Constitution; and,

5)(b) Yes, it appears that parties have continuously urged courts to rule in ways the text of the Constitution does not permit, and the courts acquiesced, especially to expand governmental authority (for example: one only has to look at *Korematsu v. United States*, 323 U.S. 214 (1944), involving Japanese internment camps established during World War II, which was done under the guise of national security to justify a tyrannic and oppressive exercise of governmental authority being imposed on a minority group of People, without constitutional authorization, and even had the acquiescence of at least a majority of the justices of the U.S. Supreme Court (Justices Roberts, Murphy, and Jackson dissented); this is the only example given for brevity and concision).

**Legal Analysis**

An "Amendment" (as used in Art. V) is a noun (name) for the verb (action) "amend(ing)" by: supplying a defect, by some addition of what is wanted, as well as by expunging what is wrong

(a.k.a. to amend/amending), (https://webstersdictionary1828.com/Dictionary/**amendment**) (https://webstersdictionary1828.com/Dictionary/**amend**). The 1828 Webster American Dictionary of the English Language is one of, if not, the first dictionaries written, after the Constitution was drafted and ratified, specifically of American English, making it an authority when defining word's meaning at and around the founding era.

**A. The NFA violates the U.S. Constitution because it was enacted by contravening/circumventing (by malicious and/or destructive ingenuity) the prescribed process in which the Constitution may be amended to expand governmental authority, by gaining the consent of the People through the Art. V proposal and ratification process.**

6. The NFA started off by narrowly infringing and targeting, the people's rights keep and bear Arms, by trying to make it too expensive to obtain select types of Arms that were disfavored by the government. For example, when they imposed a $200 tax on gun parts (suppressors) that cost as little as $5-$7 in and around the 1910's, per https://smallarmsreview.com/silencers-the-u-s-army-and-the-nfa-the-early-history-of-suppressors/.

7. For less than $10 worth of consumable hand tool components (Dremel bits, etc.), PPI could produce multiple components in a single day, that would be considered a NFA taxable (or prohibited) item, out of scrap materials laying around many garages, shops, barns, etc. That is over a 2,000% tax, possibly a direct tax, and now that it is post 1986 some of the items aren't even taxable, as they are entirely prohibited from being made, without a constitutionally imposed prohibition, like the 18th Amendment, nor any other constitutionally vested power to proscribe such manufacturing for personal use or intrastate commerce. If PPI were to make any number of the devices the legislations attempts to regulate, PPI would be guilty of violating this illegal law and subject to years of incarceration.

8. No Art. V amendment has been proposed to the States' Legislators, or the People in Convention, for ratification (which purports to vest in Congress directly, nor in an Agency, as Congress thinks proper, to designate which Arms should be regulated or completely prohibited), therefore the consent of the people has not been properly acquired, thereby making any exercise of power of that nature, the exercise of extraconstitutional authority, which is a tyrannical usurpation of authority.

9. As the Art. V amendment process does not give the Federal court authority to amend the U.S. Constitution, like the authority the English courts have/had, even the Supreme Court cannot add exception/limitations to rights, nor can it expand authority of the federal government. Only the People have the ability to amend the Constitution by granting or denying, a request for the addition or subtraction of power, or delegating power elsewhere, once properly proposed for ratification.

10. As a matter of Constitutional law, the supreme law, and the forgoing reasons the NFA is not constitutionally authorized, and any law that is not constitutionally authorized is null and void from the beginning.

**B.    The FFA violates the U.S. Constitution because it was enacted by contravening/circumventing (by malicious and/or destructive ingenuity) the prescribed process in which the Constitution may be amended to expand governmental authority, by gaining the consent of the People through the Art. V proposal and ratification process.**

11. The FFA infringed and targeted, the people's rights keep and bear Arms, by trying to regulate intrastate business, pertaining to the manufacturing/sales/ transportation of Arms, and therefore the FFA is the exercise of extraconstitutional authority, since No Art. V amendment has been proposed to the States' Legislators, or the People in Convention, for ratification which

purports to vest in Congress directly, or in an Agency, as Congress thinks proper, with authority to regulate intrastate manufacturing/sales/ transportation/etc.

12. As the Art. V amendment process does not give the Federal court authority to amend the U.S. Constitution, like the authority the English courts have/had, even the Supreme Court cannot add exception/limitations to rights, nor can it expand authority of the federal government. Only the People have the ability to amend the Constitution by granting or denying, a request for the addition or subtraction of power, or delegating power elsewhere, once properly proposed for ratification.

13. As a matter of Constitutional law, the supreme law, and the forgoing reasons the FFA is not constitutionally authorized, and any law that is not constitutionally authorized is null and void from the beginning.

**C. The GCA violates the U.S. Constitution because it was enacted by contravening/circumventing (by malicious and/or destructive ingenuity) the prescribed process in which the Constitution may be amended to expand governmental authority, by gaining the consent of the People through the Art. V proposal and ratification process.**

14. No Art. V amendment has been proposed to the States' Legislators, or the People in Convention, for ratification (which purports to vest in Congress directly, nor in an Agency, as Congress thinks proper, to designate which Arms should be regulated or completely prohibited, nor to regulate intrastate business, pertaining to the manufacturing/sales/transportation of Arms), therefore the consent of the people has not been properly acquired, thereby making any exercise of power of that nature, the exercise of extraconstitutional authority, which is a tyrannical usurpation of authority.

15. As the Art. V amendment process does not give the Federal court authority to amend the U.S. Constitution, like the authority the English courts have/had, even the Supreme

Court cannot add exception/limitations to rights, nor can it expand authority of the federal government. Only the People have the ability to amend the Constitution by granting or denying, a request for the addition or subtraction of power, or delegating power elsewhere, once properly proposed for ratification.

16. As a matter of Constitutional law, the supreme law, and the forgoing reasons the GCA is not constitutionally authorized, and any law that is not constitutionally authorized is null and void from the beginning.

**D. The Hughes Amendment violates the U.S. Constitution because it was enacted by contravening/circumventing (by malicious and/or destructive ingenuity) the prescribed process in which the Constitution may be amended to expand governmental authority, by gaining the consent of the People through the Art. V proposal and ratification process.**

17. No Art. V amendment has been proposed to the States' Legislators, or the People in Convention, for ratification (which purports to vest in Congress directly, nor in an Agency, as Congress thinks proper, to designate which Arms should be regulated or completely prohibited, nor to regulate intrastate business, pertaining to the manufacturing/sales/transportation of Arms), therefore the consent of the people has not been properly acquired, thereby making any exercise of power of that nature, the exercise of extraconstitutional authority, which is a tyrannical usurpation of authority.

18. As the Art. V amendment process does not give the Federal court authority to amend the U.S. Constitution, like the authority the English courts have/had, even the Supreme Court cannot add exception/limitations to rights, nor can it expand authority of the federal government. Only the People have the ability to amend the Constitution by granting or denying, a request for the addition or subtraction of power, or delegating power elsewhere, once properly proposed for ratification.

19. As a matter of Constitutional law, the supreme law, and the forgoing reasons the Hughes Amendment is not constitutionally authorized, and any law that is not constitutionally authorized is null and void from the beginning.

E. **The Brady Act of 1993 violates the U.S. Constitution because it was enacted by contravening/circumventing (by malicious and/or destructive ingenuity) the prescribed process in which the Constitution may be amended to expand governmental authority, by gaining the consent of the People through the Art. V proposal and ratification process.**

20. The Brady Act imposes duties on individual businesses, and business owners, in a way not constitutionally authorized, and denies a buyer from purchasing a handgun in a State different from the State they are a citizen of (in violation of the "all Privileges and Immunities of Citizens in the several States" U.S. Const. art. IV, § 2, clause). For example, the Brady Act requires FFL licensees to report transactions of qualified buyers if the buyer purchases two or more handguns within a five day period, delay transactions, requires the licensee to run a background check without cause, and prohibits someone from obtaining a handgun in the same manner that a Citizen of a State could (a Texan, while in NM, cannot purchase and acquire a handgun from a NM FFL, yet a New Mexican can purchase and acquire a handgun in the State, all else being equal except State Citizenship of the Buyers.)

21. No Art. V amendment has been proposed to the States' Legislators, or the People in Convention, for ratification (which purports to vest in Congress directly, nor in an Agency, as Congress thinks proper, to designate which Arms should be regulated or completely prohibited, nor to regulate intrastate business, pertaining to the manufacturing/sales/transportation of Arms), therefore the consent of the people has not been properly acquired, thereby making any exercise of power of that nature, the exercise of extraconstitutional authority, which is a tyrannical usurpation of authority.

22. As the Art. V amendment process does not give the Federal court authority to amend the U.S. Constitution, like the authority the English courts have/had, even the Supreme Court cannot add exception/limitations to rights, nor can it expand authority of the federal government. Only the People have the ability to amend the Constitution by granting or denying, a request for the addition or subtraction of power, or delegating power elsewhere, once properly proposed for ratification.

23. As a matter of Constitutional law, the supreme law, and the forgoing reasons the Hughes Amendment is not constitutionally authorized, and any law that is not constitutionally authorized is null and void from the beginning.

## COUNT 1
### Contravention/Circumvention of the U.S. Constitution Art. V Amendment Process: Exercise of Authority in Excess of VESTED Constitutional Authority

24. All foregoing allegations are repeated and re-alleged as if fully set forth herein.

25. Defendants may only exercise the authority conferred upon them by the Constitution itself, or statutes that are "necessary and proper" for (carrying into effect/"in pursuance" of) an enumerated power contained therein. (U.S. Const. art. I, § 8 and U.S. Const. art. VI)

26. As the U.S. Const. art. V states:

> ("The Congress, **whenever two thirds of both Houses shall deem** it ***necessary, shall* propose Amendments to this Constitution**, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, **which, in either Case, shall be *valid* to all Intents and Purposes, *as Part of this Constitution*, when *ratified by*** the Legislatures of ***three fourths* of the several States, or by Conventions in three fourths thereof**, as the one or the other Mode of Ratification may be proposed by the Congress; …)

27. Art. V is the only constitutionally prescribed method for Congress (on behalf of the federal government as a whole) to request the consent of the governed (the People collectively),

to be vested with additional authority not previously and clearly delegated to the federal government.

28. An "Amendment (as used in Art. V) is a noun (name) for the action of, supplying a defect, by some addition of what is wanted, as well as by expunging what is wrong (a.k.a. to amend/amending).

29. There are two types of Amendments, valid and invalid, considered for constitutional purposes.

30. Valid Amendments are ones in which comport with the proscribed processes of Art. V.

31. Invalid Amendments are ones in which fail to comport with the proscribed processes of Art. V.

32. A valid Amendment must be Ratified by 3/4ths of the States (in one of two ways), however ratification by 3/4ths of the States is not the sole factor of making an Amendment valid. An Amendment must also be properly proposed, in addition to being ratified by the States to be valid.

33. A properly proposed and ratified Amendment to the U.S. Constitution which vests authority in some part of the U.S. Government with authority, to regulate and/or restrict the acquiring, manufacturing, transporting, selling, etc. of Arms, is required prior to such authority being considered a *constitutionally valid/authorized exercise of authority*. For example: the 18th Amendment, which was a prohibition on the manufacturing, transporting, selling of alcohol, and alcohol was nowhere mentioned in the Constitution, as opposed to Arms, and was properly enacted without circumventing Art. V. This does not mean, nor suggest, every statute must be enacted through the amendment process, only that specific authority to regulate something not enumerated in the U.S. Constitution must be vested, through the Art. V process, to the federal government by

a grant of general plenary power, or power specifically pertaining to a type of item or action (Ex: Arms specifically, or general Manufacturing within the States/Territories/etc.). To not give credence to this point of fact/law, would be to deny the protections afforded by the burdensome Art. V process and assert that we no longer have a "Constitutional form of Government", but rather a Government merely limited to what Judges deem are "reasonable" regulations.

34. There is no record of a valid Amendment being properly ratified giving the U.S. Government either, 1) Plenary authority generally, or 2) Plenary authority to specifically regulate Arms and their components/parts/accessories/etc.; and what limitations (if any) placed on such authority.

35. Congress, if it deems it necessary to regulate Arms and their components/parts/accessories/etc., could propose an Amendment that would vest them (or some other entity, such as the ATF) with such regulatory authority, as prescribed by Art. V since it is not a subject in which the Amendment process is limited (like States' equal suffrage in the Senate), and could exercise such authority, upon it being properly ratified by 3/4ths of the States. An example of an amendment that Congress could propose for ratification: "Congress may regulate Arms, as they deem appropriate; Congress may, by law, vest in an agency of their choosing the regulating authority of Arms, but Congress may veto any regulation by a *insert arbitrary calculation, such as ($1/5^{th}$, $3/5^{th}$, ½) vote of Members of each house who are present and voting", and upon the ratification of a properly proposed Amendment, such as above, Congress or the ATF would have constitutionally authorized authority to enact the Final Rule, as is currently being attempted; but not until then.

36. If it deems it necessary, Congress could even propose an Amendment to make the Amendment process even less burdensome, or entirely abolish the ratification process by the States entirely to the point of leaving it to the sole discretion of the Supreme Court or a bare majority of members of Congress present and voting; and upon gaining the consent of the People through the

current ratification process, depending on the text of the Amendment, subsequent Amendments may or may not need the People's consent, which would remove a lot of the burden from Congress.

37. There is a long history of the federal government abusing discretion which (regardless of whether it constitutionally had discretion or not) alone justifies ending the tolerated, or improperly challenged, exercise of extraconstitutional authority; but since specifically being challenged herein, as a matter of law, such authority must be held null and void.

38. "[All] law[s] repugnant to the constitution [are] void, and that courts, as well as other departments, are bound by that "instrument", *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

39. All the laws addressed in A-E above, and their progeny, jointly and individually must be held as repugnant to the U.S. Constitution for the reason that the People (collectively) have not yet abdicated our individual discretion (given our consent) to regulate the Arms industry generally nor specifically, or to regulate intrastate transactions, and therefore the legislation was enacted under an invalid Amendment that contravened/circumvented, by malicious and/or destructive ingenuity, Art. V of the U.S. Constitution.

40. Other than through the Art. V process, the People did not authorize Congress (nor any other part of the federal government) through judicial decisions or otherwise, to nullifying the People's constitutional safeguards against an oppressive and tyrannic government, by removing or adding clauses to the Constitution so that the government could be more efficient.

41. Defendants have effectively stripped 1) the Plaintiff States of their authority, which was vested in them by their respective State Constitutions and U.S. Constitution, for their legislators to grant or deny ratification of a properly proposed Amendment; and 2) the People of the States of their ability to participate in the ratification process through a Convention, or through interactions with their legislators that would otherwise vote on ratifying a proposed Amendment.

42. Defendants exercise of authority that is in excess of the authority enumerated in the Constitution, is repugnant to the constitution, and a permanent injunction shall be issued to enjoin the enforcement of any extraconstitutional action taken by, or on behalf of, the Defendants.

### COUNT 2
### Ninth and Tenth Amendments:
### Contravention of Rights and Powers of the People and the States

1. All foregoing allegations are repeated and re-alleged as if fully set forth herein.

2. The Ninth Amendment expressly acknowledges the People's unenumerated rights, and prohibited those rights from being denied or disparaged.

3. The Tenth Amendment reserved all powers not delegated to the U.S. to the People and States respectively.

4. Together these amendments clarify and strengthen the constitution's stated purpose as expressed in its Preamble, and that the government established by the U.S. Constitution only has the authority expressly vested in it, as opposed to Inherent/Implied powers.

5. Additionally, these amendments confirm that Congress must propose amendments (as opposed to assuming a power is vaguely authorized) when they deem it is necessary for them (or another branch) to exercise authority, which is not clearly vested by the Constitution. The specific acknowledgement of these unenumerated rights and unenumerated powers in the Ninth and Tenth amendments clearly require a presumption/prejudice/bias in favor of the People and/or State, and against the U.S. Government when a claim or defense asserted under either or both of these amendments against governmental power, is raised. Even though without the Ninth and Tenth amendments, a faithful application of the Constitution would result in the same conclusion when keeping the purpose, contained in the Constitution's Preamble, in the forefront of one's mind while applying the Constitution in/to a given circumstance.

6. Congress has failed to go through the Art. V process (Condition Precedent) to vest authority in any part of the U.S. Government which would allow, regulations of Intrastate Commerce, regulations of Arms, prohibition of Arms, a targeted tax on Arms and their components to dissuade their acquisition, or to prohibit citizens of one State from buying Arms which are sold to the citizens in another State.

As this is a case of first impression (specifically asserting an Art. V violation) there is no case law to point to, but *Marbury v. Madison* (1803) in which the Supreme Court insinuated that it could not exercise original jurisdiction over the case at hand unless, and not until, the Constitution was Amended, is a case that would support the assertion contained herein.

## Supplemental Demand for Relief

Plaintiffs respectfully request that the Court:

a. Declare that the implementation of **The NFA** was enacted and enforced under an **Invalid Amendment** because no Amendment was properly proposed and ratified by 3/4ths of the States, as prescribed by Art. V of the U.S. Constitution; and such implementation and enforcement of **The NFA** constitutes a contravention/circumvention of the Art. V process which is the People's chosen way to safeguard against an oppressive and tyrannic government; and, preliminarily and permanently enjoin Defendants and anyone acting in concert with them from enforcing the NFA or from taking any action inconsistent with the injunction of the NFA.

b. Declare that the implementation of **The FFA** was enacted and enforced under an **Invalid Amendment** because no Amendment was properly proposed and ratified by 3/4ths of the States, as prescribed by Art. V of the U.S. Constitution; and such implementation and enforcement of **The FFA** constitutes a contravention/circumvention of the Art. V process which is the People's chosen way to safeguard against an oppressive and tyrannic government.

c.  Declare that the implementation of **The GCA** was enacted and enforced under an **Invalid Amendment** because no Amendment was properly proposed and ratified by 3/4ths of the States, as prescribed by Art. V of the U.S. Constitution; and such implementation and enforcement of **The GCA** constitutes a contravention/circumvention of the Art. V process which is the People's chosen way to safeguard against an oppressive and tyrannic government.

d.  Declare that the implementation of **The Hughes Amendment** was enacted and enforced under an **Invalid Amendment** because no Amendment was properly proposed and ratified by 3/4ths of the States, as prescribed by Art. V of the U.S. Constitution; and such implementation and enforcement of **The Hughes Amendment** constitutes a contravention/circumvention of the Art. V process which is the People's chosen way to safeguard against an oppressive and tyrannic government.

e.  Declare that the implementation of **The Brady Act of 1993** was enacted and enforced under an **Invalid Amendment** because no Amendment was properly proposed and ratified by 3/4ths of the States, as prescribed by Art. V of the U.S. Constitution; and such implementation and enforcement of **The Brady Act of 1993** constitutes a contravention/circumvention of the Art. V process which is the People's chosen way to safeguard against an oppressive and tyrannic government.

f.  Preliminarily and permanently enjoin Defendants and anyone acting in concert with them from enforcing the any of the Acts herein or from taking any action inconsistent with the injunction of the Acts herein;

g.  Grant Plaintiff litigation costs reasonably incurred in this action;

h.  Grant Plaintiff such other relief as the Court deems just and proper and as justice so requires.

Dated: May 16, 2024

Respectfully submitted,

*L Rudder*

Levi Rudder
7717 Milwaukee Ave. Ste. 500-401
Lubbock, Texas 79424
Phone: (512) 640-9619
Constitutional.USLaw@gmail.com

## CERTIFICATE OF CONFERENCE

I certify that I have attempted confer with Plaintiffs and Defendants by email. Plaintiffs were notified on 5-9-2024 and have not responded. Defendants have been notified, and per their counsel Jeremy Neman are opposed, without explanation, as of 5-16-2024.

*/s/ Levi Rudder*

_____
Levi Rudder


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 16th day of May 2024, I hand delivered the above and foregoing documents to all counsel of record appearing at the preliminary relief hearing on even date, and will mail, in accordance with Fed. R. Civ. P. 5, to any counsel of record not present that I am made aware of. I also certify that I have/will emailed a copy of the above and foregoing document to all counsel of record.

*/s/ Levi Rudder*

_____
Levi Rudder
***Proposed Plaintiff Intervenor***