UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,<br>    *Plaintiffs*,<br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, *and* STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br>    *Defendants*. | CIVIL ACTION NO. 2:24-CV-00089-Z |

### SUPPLEMENTAL DECLARATION OF ERICH M. PRATT

1. My name is Erich M. Pratt. I am a U.S. citizen and resident of Virginia. I make this supplemental declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief and pursuant to this Court's May 19, 2024 Order for supplemental briefing, ECF #45. I make these statements in my capacity as the Senior Vice President of Gun Owners of America, Inc. ("GOA") and as the Senior Vice President of Gun Owners Foundation ("GOF"). Unless otherwise stated, I make this declaration based on personal knowledge. If called as a witness, I can testify to the truth of the statements contained herein.

1

Exhibit A

2. This Declaration is offered as a supplement to my prior Declaration, ECF #1-2.

3. As I previously reported, GOA and GOF have been in contact with members and supporters nationwide who do not hold Federal Firearms Licenses ("FFLs") to deal in firearms. These members and supporters fear Defendants' Engaged in the Business Rule ("Rule") will lead to them being arbitrarily classified as presumptively "engaged in the business" of dealing in firearms and therefore subject to civil and criminal enforcement.

4. For example, GOA spoke to one member who maintains a personal collection of at least a hundred firearms. This individual regularly purchases firearms for personal, noncommercial use, primarily for self-defense and related training (*i.e.*, practicing timed drills, drawing from concealment, and weapon manipulation like reloading or clearing malfunctions). This individual believes the private ownership of several firearms for self-defense purposes is "necessary to the security of a free State" and also serves as a political statement against governmental overreach and abuse.

5. This individual does not collect firearms "for study, comparison, exhibition (*e.g.*, collecting curios or relics, or collecting unique firearms to exhibit at gun club events), or for a hobby (*e.g.*, noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, historical re-enactment, or noncommercial firearms safety instruction)." FR at 29090.

6. Rather, this individual "accumulate[s] [firearms] primarily for personal protection," FR at 29090, a purpose that the Rule expressly exempts from the definition of "personal collection."

7. Occasionally, this individual sells firearms from their collection in order to make room for new firearms or to replace firearms that, after self-defense training and everyday carry, are discovered to have shortcoming such as poor ergonomics or issues with mechanical reliability.

Additionally, this individual at times has sold firearms to pay child support, pay rent, and other family and business expenses.

8. At times, these occasional sales generate a profit, compared to the price this person paid when acquiring a given firearm. More often, however, these sales generate no profit (or even a loss).

9. In order to facilitate these occasional sales, this individual will discuss various firearms they want to sell on a social media account viewed by the public. Then, this individual would be contacted through various social media accounts in order to effectuate the sale. This person estimates that they have sold approximately ten firearms, but plans on selling more.

10. This individual fears that the advertising of these occasional "for sale" ads means that, under the Rule, the individual "[r]epetitively or continuously advertises, markets, or otherwise promotes a firearms business (*e.g.*, **advertises or posts firearms for resale**, including through the internet or other digital means, establishes a website to offer their firearms for resale, makes available business cards, or tags firearms with sales prices), **regardless of whether the person incurs expenses** or only promotes the business informally." FR at 29091 (emphases added). As the Rule makes clear, such activities can take place "may occur wherever, or through whatever medium," including "over the internet." FR 28968, 29071.

11. In other words, the Rule presumes this individual, based upon perfectly lawful activities, nevertheless has an "intent to predominantly earn a profit," FR at 29091, and will require this individual to rebut this presumption upon enforcement.

12. This individual has stated that, absent a Temporary Restraining Order or future injunctive relief against the Rule, they would cease their occasional sales of firearms from their private collection altogether for fear of enforcement and the attendant burdens of proving their

compliance with the statute's safe harbor.

13. GOA spoke to another member who inherited a large collection of firearms from a late relative.

14. This individual wishes to liquidate portions of that inheritance so that they can afford to pay rent or help a family member attend school. They believe the best way to do so would be to offer these firearms for sale at a local gun show, where there are plenty of potential buyers.

15. This individual planned on selling some of these inherited firearms at a local gun show.

16. However, the local gun show is not a charitable enterprise.  In order to secure a table to display these firearms for sale, this individual must "exchange[] … something of value" with the venue.  FR at 29091.

17. Moreover, this individual will have to spread their gun-show sales across several dates, given the number of firearms in this inheritance, the finite duration of the gun show, and the time constraints of their own schedule and availability.

18. But once this individual begins advertising these inherited firearms at the gun show, they fear the Rule will presume they have an "intent to predominantly earn a profit," FR at 29091, and will require this individual to rebut this presumption upon enforcement.

19. Indeed, the Rule establishes a presumption when an individual "[r]**epetitively** or continuously **purchases, rents, or otherwise exchanges (directly or indirectly) something of value to secure permanent or temporary physical space to display firearms** they offer for **resale**, including part or all of a business premises, **a table or space at a gun show**, or a display case." FR at 29091 (emphases added).

20. This individual fears enforcement because the Rule adopts a broad definition of "resale," which includes "**selling a firearm**, including a stolen firearm, **after it was previously sold by**

4

**the original manufacturer or any other person**." FR at 29090 (emphases added).

21. Even though this individual *inherited* the firearms they wish to sell, this does not change the fact that the firearms were, at one point in time, "previously sold by the original manufacturer," if their late relative had purchased them new, or "previously sold by … any other person," if their late relative had purchased them used.

22. Moreover, this individual understands that gun shows are frequented by local law enforcement and ATF agents, often undercover, who observe the public in an effort to enforce state and federal laws. Consequently, this individual fears that, if they were to secure a table to sell their inherited firearms on more than one occasion, there is a credible risk of enforcement, should the Rule take effect.

23. This individual does not wish to expose themselves to such liability, where they will be forced to prove compliance with the statute. Therefore, they have indicated that they will not attempt to sell their inherited firearms at a gun show if the Rule takes effect.

24. Practically speaking, this means this individual will be unable to easily convert their inheritance into the money that they need to afford life expenses, even though federal law permits just that.

25. GOA spoke to another member who has a sizeable collection of firearms, both as a collection and firearms that constitute "self-defense" types of firearms.

26. This individual wishes to sell some of these firearms, including guns purchased and carried for "self-defense." Specifically, this individual states that they have sold a Ruger LC9, and is planning to sell a Glock 43. Both of these firearms were tried out as "self-defense," but this person ultimately did not like to carry these specific firearms.

27. This individual desires to sell certain of their firearms, including these firearms carried

5

and owned for self-defense, by handing out flyers during a local gun show. In the past, this member has rented a table to sell firearms (and has in the past handed out flyers). This member merely wishes to sell various firearms that did not ultimately fulfill their intended purpose, something that clearly does not constitute being engaged in the business.

28. The Final Rule, however, provides that some of this perfectly lawful conduct may trigger presumptions that this person is an unlawful dealer. And, whereas this individual understands that their local gun show is frequented by local law enforcement, they fear that, if they were in the future to hand out flyers at a rented table at a gun show, in order to sell personally owned firearms, there is a credible risk of enforcement, should the Rule take effect.

29. This individual does not wish to expose themselves to such liability, where they will be forced to prove compliance with the statute. However, they have indicated that they will still attempt to sell their personal firearms at a gun show by renting a table even if the Rule takes effect, because they believe their planned conduct to be lawful under federal law, even if the Final Rule creates a different regime.

30. GOA spoke to another member who maintains a large private collection of firearms.

31. This individual stated that they are an organized person, who finds it important to retain the original documentation of all the firearms they purchase.

32. Likewise, this individual also maintains a digital spreadsheet of information on their extensive collection.

33. For example, in this spreadsheet, this individual has a tab that lists data on their firearms in chronological order based on date of purchase, including the make, model, serial number, caliber, approximate round count (*i.e.*, how many rounds of ammunition have been fired through the firearm), price paid, place of purchase, and if applicable, the date sold and sale price, with a

link to any bill of sale or other documentation evincing a transfer in ownership.

34. Based on the sheer number of firearms in this individual's private collection, they believe this spreadsheet to be the best way to keep track of this important data.

35. For example, if this individual were ever to have a portion of their collection stolen, they would be able to reference the spreadsheet and assist law enforcement with the serial numbers of any stolen firearms and accessories on those firearms.

36. Occasionally, this individual will sell a firearm from their collection, whether to recoup funds in order to purchase a new firearm, or to assuage the concerns of their spouse that they spend too much on firearms.

37. In these cases, this individual tracks bought/sold price data purely out of interest. But sometimes, knowing the price paid for a firearm years ago can be useful in determining a fair price at which to sell the firearm.

38. But despite this individual's inherently noncommercial, private activity, they fear that they fall under at least one of the Rule's presumptions. Accordingly, they have indicated that if the Rule takes effect, they no longer will sell firearms from their private collection, even occasionally, because the spreadsheet that they maintain to stay organized could expose them to liability in the eyes of ATF.

39. Indeed, the Rule presumes an individual has an "intent to predominantly earn a profit" when one "[m]akes and maintains records to document, track, or calculate profits and losses from firearms repetitively purchased for resale." FR at 29091.

40. Due to the Rule's expansive definition of "resale," as discussed above, this individual fears that they are presumed to have an "intent to predominantly earn a profit," subject to rebuttal upon enforcement, even though they merely intend to enhance their personal collection.

41. Additionally, GOA spoke with another member who has recently been targeted by the ATF for sales of firearms from their "personal collection." Specifically, this member reported that, shortly after the Bipartisan Safe Communities Act was passed, the ATF visited them and gave them a "warning letter" about selling personal firearms.

42. Then, in early May 2024, this member explained that the ATF attempted to visit them at home, and then showed up at their place of employment in order to speak with them. This person explained that, on the advice of counsel, they declined to meet with the ATF, but that agents made a scene which caused their employer to be uncomfortable, and their employment was terminated shortly thereafter. This member explained that, historically, they would buy firearms for self-defense, and then sometimes would sell them after they decided they either did not want to carry them for self-defense, or otherwise did not like the firearms purchased. This person explained that they may have sold ten firearms in the course of a year, but that such sales were never to make a profit, but only to free up funds to buy other firearms.

43. It thus seems apparent that the ATF is enforcing the Engaged in the Business Rule against this member.

44. Finally, we have spoken with a GOF supporter, who has donated funds specifically with the intent to enable GOF to pursue litigation such as this.

45. This supporter is a "YouTuber" with a YouTube channel focused on reviews of various firearms and firearm accessories.

46. In order to create this content, this GOF supporter will at times purchase a firearm with their own funds, in order to acquire items to then review. However, upon completion of the content and after the review is posted, this member does not have the financial resources to be able to keep each and every firearm that is reviewed.

8

47. Thus, this person will at times sell various firearms after reviewing them, occasionally for a profit, but often for a loss. There is no business purpose or profit motivation involved with these sales.

48. Nevertheless, based on the vague presumptions in the Rule, this supporter fears that the ATF will enforce the Rule and presumptions against them for buying and selling firearms, especially since some of these sales occur a short time after the firearm was acquired.

49. Under the Rule, this supporter fears civil action or criminal prosecution by ATF. If the Rule takes effect, this member will be unable to engage in the sorts of activities in which they have engaged in the past, thus putting their YouTube channel out of commission.

50. GOF funds its litigation efforts, in part, by way of individual contributions, along with contributions received from individuals through the Combined Federal Campaign. GOF's supporters provide the funds directly used to support GOF's litigation efforts, which efforts would be impossible without contributions from our supporters. Our supporters contribute to GOF specifically so that we can bring litigation like this. Many have donated to GOF specifically in order to fund this litigation.

51. And, as part of keeping its supporters up to date on this and other litigation, and various other Second Amendment topics, GOF provides its supporters with a newsletter which provides updates directly to them, keeping them advised of what GOF is doing. *See* Exhibit 1.

52. GOF's supporters desire that GOF be involved in this case as it directly impacts wide swaths of protected Second Amendment conduct.

I, Erich M. Pratt, declare under penalty of perjury that the foregoing is true and correct.

_5-31-24_  
**DATE**

_Erich Pratt_  
**ERICH M. PRATT**