UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,<br><br>                                      *Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, and STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br><br>                                      *Defendants*. | CIVIL ACTION NO. 2:24-CV-00089-Z |

**PLAINTIFF LOUISIANA'S SUPPLEMENTAL BRIEFING
IN SUPPORT OF STANDING**

Pursuant to this Court's order, Louisiana submits the following briefing "explaining and evidencing" its "basis for standing." ECF No. 45.

**I.    Louisiana Has Standing.**

To establish standing, Louisiana must show an (A) imminent injury (B) caused by the Defendants and (C) redressable by judicial relief. *See, e.g.*, *TransUnion LLC v.*

1

*Ramirez*, 594 U.S. 413, 423 (2021) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Louisiana readily satisfies each of these elements.

### A. Louisiana will suffer a classic "pocketbook injury" caused by the Final Rule and redressable by a favorable decision.

*First, an injury in fact.* Monetary harms are some of "[t]he most obvious" and "traditional tangible harms" that count as concrete injuries. *TransUnion LLC*, 594 U.S. at 425. Louisiana, much like Texas, stands to suffer a direct "pocketbook injury" from the Final Rule. *See* ECF 44 at 5 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (describing a pocketbook injury as "a prototypical form of injury in fact")).

For standing purposes, record evidence of the exact amount of monetary harm is unnecessary. *See Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022). In this context, "a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). Moreover, a future injury "may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Here, the Final Rule will prohibit otherwise eligible persons in Louisiana from obtaining a Federal Firearms License ("FFL"), thereby reducing the total gun sales—both at gun shows and online—and subsequently causing Louisiana to suffer a financial harm via lost sales tax revenue. *See* 89 Fed. Reg. 29,054 (contemplating 10% of currently unlicensed dealers leaving the market altogether).

Louisiana collects 4.45% sales tax on taxable items sold, including guns.[1] *See* La. R.S. 47:302, 321, 321.1, 331; La. R.S. 51:1286; Exhibit A, Declaration of Lucius L. Morris II, ¶ 12. The sales tax applies to items sold at fairs, festivals, and other special events—including gun shows. *See* La. R.S. 47:301(4)*;* Ex. A ¶ 12.[2] The sales tax also applies to the sale of tickets or admission fees to gun shows. *See* La. R.S. 47:301(14)(c); Ex. A ¶ 12. Currently, Louisiana has at least 45 gun shows calendared between now (June 2024) and the end of the year. *See* Ex. A ¶ 11.[3] Louisiana also collects a sales tax on internet sales of guns within the state. *See id.* ¶ 13. The upshot: Fewer gun sales in the state will result in less revenue from Louisiana's sales and use tax. *See* Ex. A ¶ 14.

*Second, causation.* The Final Rule is expected to reduce the number of people who sell firearms. The Final Rule confirms this expectation, as it acknowledges that its implementation will reduce gun sales. *See* 89 Fed. Reg. 29,054. To accomplish this goal, the Final Rule will force unlicensed sellers from the marketplace—both in person and online. *See* Ex. A ¶¶ 10, 12–13. Without the Final Rule, certain unlicensed

---

[1] Louisiana does have one weekend a year, normally Labor Day weekend, where the State's sales and use tax does not apply to firearms. *See* La. R.S. 47:305.62 (creating the Annual Louisiana Second Amendment Weekend Holiday Act).

[2] S*ee generally Fairs, Festivals, and Other Special Events*, LOUISIANA DEP'T OF REVENUE, available at https://revenue.louisiana.gov/FAQ/Categories/16 (last visited May 30, 2024).

[3] *See also Louisiana Gun Shows*, GUN SHOW TRADER, available at https://gunshowtrader.com/gunshows/louisiana-gun-shows/ (last visited May 30, 2024).

3

dealers would still be able to sell their goods at gun shows or via the internet. *See* Ex. A ¶¶ 12–13.

A decline in the number of unlicensed dealers at Louisiana's gun shows will inevitably result in less gun sales, and thus less tax revenue collected by Louisiana. *See* Ex. A ¶ 14. Put differently, Louisiana's economic injury is fairly traceable to the Final Rule. *See, e.g.*, *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Tex. v. Becerra*, 575 F. Supp. 3d 701, 714 (N.D. Tex. 2021) ("This causal link 'requires no more than *de facto causality*[.]'" (citation omitted)). Louisiana therefore has "a direct injury in the form of a loss of specific tax revenues." *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992). Especially since any amount of monetary harm is sufficient to establish an injury. *See TransUnion LLC*, 594 U.S. at 425; *Collins*, 141 S. Ct. at 1779; *see also* ECF 44 at 5. The Final Rule, therefore, will directly cause Louisiana to suffer a classic pocketbook injury.

*Third, redressability.* Louisiana must demonstrate a "substantial likelihood that the requested relief will remedy the alleged injury." *Becerra*, 575 F. Supp. 3d at 714 (quoting *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 120 (2000) (internal marks omitted)). Here, Louisiana and the other Plaintiff States request injunctive relief to stop the implementation of the Final Rule. Enforcement of the Final Rule will lead to Louisiana's pocketbook injury—the loss of revenue from sales tax collected on guns sold within Louisiana.

Injunctive relief is necessary because economic injuries, such as those alleged by Louisiana, "cannot be recovered in the ordinary course of litigation." *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023); *see also In re NTE Conn., LLC*, 26 F.4th 980, 990–91 (D.C. Cir. 2022) ("We have recognized that financial injury can be irreparable where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." (cleaned up)). Such is the case here. The Rule's effects on Louisiana's sales tax revenue are irreparable, as the economic loss is "unrecoverable because of the government-defendant's sovereign immunity from monetary damages[.]" *Natl. Rifle Assn. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, No. 3:23-CV-1471-L, 2024 WL 1349307, at *9 (N.D. Tex. Mar. 29, 2024); *see also* Ex. A ¶ 15. Redressability is therefore satisfied because a grant of injunctive relief would stop the implementation of the Final Rule, thus preventing Louisiana's irreparable injury. *See Simon* v, 426 U.S. at 38 (1976) (Louisiana's pocketbook injury "is likely to be redressed by a favorable decision").

Because Louisiana has a concrete injury, caused by the Final Rule, and redressable by a favorable judicial decision, this Court should hold that Louisiana has demonstrated standing for the purposes of the requested temporary restraining order. *TransUnion LLC*, 594 U.S. at 423; *Lujan*, 504 U.S. at 560–61; ECF 45.

### B. Texas Has Established Standing, So Louisiana Also Has Standing.

Although Louisiana independently meets the three requirements for standing, *supra* I.A, it is "well settled that once [courts] determine that at least one plaintiff

5

has standing, [courts] need not consider whether the remaining plaintiffs have standing to maintain the suit." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014); *see also Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

This Court has already determined that Texas—a fellow Plaintiff State—"sufficiently demonstrated standing for the purposes of the requested temporary restraining order." ECF 44 at 5 (finding Texas adequately pleaded a cognizable "pocketbook injury" for loss of sales tax revenue from firearm sales at gun shows). Because Texas has shown standing, Louisiana and all plaintiffs in this matter should also have standing. *See McAllen Grace Brethren Church*, 764 F.3d at 471.

## CONCLUSION

For the aforementioned reasons, this Court should find that Louisiana has established standing and should be afforded the same relief previously granted to Texas. ECF No. 44 at 14.

Date: May 31, 2024                                             Respectfully submitted,

**LIZ MURRILL**
  ATTORNEY GENERAL OF LOUISIANA

*/s/ Kelsey L. Smith*
**GARRETT GREENE**                                             **KELSEY L. SMITH**
Special Counsel                                                  *Deputy Solicitor General*
Office of the Attorney General                                 Texas Bar No. 24117070
  of Texas
Special Litigation Division                                    LOUISIANA DEPARTMENT OF JUSTICE
P.O. Box 12548, Capitol Station                                1885 N. Third Street
Austin, TX 78711-2548                                          Baton Rouge, LA 70804
(512) 463-2100                                                 (225) 428-7432
garrett.greene@oag.texas.gov                                   smithkel@ag.louisiana.gov
                                                               *Counsel for State of Louisiana*

**COUNSEL FOR PLAINTIFF STATE OF LOUISIANA**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of this document was filed electronically (via CM/ECF) on May 31, 2024.

*/s/ Kelsey L. Smith*
**KELSEY L. SMITH**