UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,<br><br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, and STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br><br>*Defendants*. | CIVIL ACTION NO. 2:24-CV-00089-Z |

## DECLARATION OF LUCIUS L. MORRIS II

1. I am Lucius L. Morris II. I am over the age of 18 and a U.S. citizen. I make this Declaration supporting Plaintiffs' Motion for Stay and Preliminary Injunction and Louisiana's Supplemental Briefing Regarding in Support of Standing. I have personal knowledge of the facts contained in this Declaration unless otherwise stated. I could competently testify as to the contents of this Declaration if called upon to do so.

1

2. I am duly appointed the Assistant Secretary for the Office of Legal Affairs with the Louisiana Department of Revenue ("LDR"), pursuant to La. R.S. 36:458(F), where I have worked for over 9 years. In this capacity, I am responsible for providing legal consultation and representation in tax litigation matters before the state and federal courts and the Board of Tax Appeals, bankruptcy cases in the federal bankruptcy courts, and any matters related thereto. I provide executive management of the LDR Litigation Division, External Reporting Division, and Tax Policy and Planning Division, which includes attorneys, analysts, and economists.

3. The LDR is primarily tasked with collecting and enforcing the collection of all taxes, penalties, interest, and other charges that may be due under the provisions of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950, as amended, and to administer the legislative mandates contained therein. La. R.S. 47:1502.

4. I am aware of the Final Rule at issue in this case and have reviewed it. I am also aware of the requirements for a federal firearms licensee and have reviewed them.

5. The Final Rule states that its implementation will reduce gun sales and increase the number of federal firearms licensees. 89 Fed. Reg. at 28,968, 29,054.

6. The Final Rule's definition for what it means to be engaged in the business as a "dealer" in firearms creates uncertainty regarding lawful conduct provided by statute and what conduct is prohibited under the Final Rule for a broad swath of business activities occurring within specific business channels. The business

activities included in the Final Rule relate to the sale, purchase, and trading of firearms conducted anywhere—such as a gun show or event, flea market, auction house, gun range or club, a person's home—or through any medium, such as by mail order, via the Internet as an online broker or auction, through other electronic means, or any other domestic or international public or private premises. 89 Fed. Reg. at 29,090.

7. The Final Rule states that a determination of whether a person is engaged in the business as a dealer in firearms is a "fact-specific inquiry." 89 Fed. Reg. at 29,091. The Final Rule adds presumptions that a person is engaged in the business as a dealer and to a person's intent to "predominantly earn a profit." 89 Fed. Reg. at 29,091. The Final Rule states that "even a single firearm transaction or offer to engage in a transaction" "may require a federal firearms license." 89 Fed. Reg. at 29,091. Therefore, under the Final Rule, there is no minimum number of transactions that determines whether a person is "engaged in the business" of dealing in firearms. 89 Fed. Reg. at 29,091. Additionally, no actual sales are required to establish that a person is engaged in the repetitive purchase and resale of firearms. 89 Fed. Reg. at 29,021. Determining whether a person is engaged in the business of dealing in firearms is based on the "totality of the circumstances." 89 Fed. Reg. at 29,091.

8. To a significant number of persons who are not a Federal Firearms Licensee (FFL) and currently lawfully buy, sell, or trade firearms in transactions through one or more of the business activities identified in paragraph 6, the threat of potentially being subject to civil, administrative and possibly criminal penalties

under the ATF's interpretations and enforcement actions under the Final Rule, and the burdensome obligations FFL assumed to avoid the potential enforcement risk, will make them less likely to buy, sell, or trade firearms should the Final Rule become effective.

9. Based on the information available to the ATF, the Final Rule is expected to decrease the sale of firearms by unlicensed vendors and persons by 10%. 89 Fed. Reg. 29,054.

10. Louisiana's sales and use tax revenue may decrease by a higher percentage given the perceived risks of engaging in such firearm transactions under the Final Rule without being an FFL, given the breadth of the definition of a "dealer" and the business activities covered by the Rule. This is based on the expectation that there will be a 10% or greater decrease in the number of lawful vendors and persons who will purchase, sell, and trade firearms at gun shows, events, and over the Internet due to the risk of an adverse ATF action under the Final Rule. The reduction in lawful non-FFL sales of firearms at a gun show, event, or online will make it less likely for gun enthusiasts, collectors, sportsmen, hunters, and other firearm customers to attend a gun show, event, or log online to purchase, sell, or trade their firearms legally. Over time, the ATF's enforcement actions of the Final Rule may cause a further reduction in public interest and consumer activity at gun shows, events, and sales, purchases, or trades over the Internet. The impact of such reductions in public interest and consumer activity could further reduce the number of persons who purchase, sell, or trade firearms through any other above-described

business activities in paragraph 6. The reduction in public interest and consumer activity may also cause fewer overall taxable transactions for other goods or services being sold at the gun show, event, or online due to the reduced consumer traffic should the Final Rule go into effect.

11. Over 45 Louisiana gun shows and events are scheduled for the remainder of 2024.[1] Gun show and event promoters provide the opportunity for persons to purchase, sell, or trade firearms, including commemorative firearms, historic firearms, sporting firearms, hunting firearms, and self-protection firearms, to customers, including firearm collectors, enthusiasts, sportsmen, hunters, and other customers. These customers are able to meet their different individual needs by purchasing, selling, or trading firearms with individuals or persons who are not FFLs engaged in the business of dealing in firearms as provided by statute.

12. Gun show promoters (organizers) are considered "dealers" as provided by La. R.S. 47:301(4), and as such, must collect and remit the State's sales and use tax on their sales and trades, as well as sales and trades made by individuals, sellers, or salespersons at these events who do not have a sales tax exemption certificate for sales for resale pursuant to La. R.S. 47:13(B). Gun show promoters and vendors collect and remit 4.45% state sales tax to the State of Louisiana for all sales at retail acquired from the sale or trade of a firearm. La. R.S. 47:302, 321, 321.1, 331; La. R.S.

---

[1] *See Louisiana Gun Shows*, GUN SHOW TRADER, available at https://gunshowtrader.com/gunshows/louisiana-gun-shows/ (last visited May 29, 2024); *Current Louisiana Gun Show Date*, GUN SHOW TIMES, available at https://www.gunshowtimes.com/states/louisiana/dates (last visited May 29, 2024).

51:1286.[2] Gun shows also collect and remit 4.45% state sales tax to the State of Louisiana on the taxable service of parking and other taxable sales of tangible personal property sold at the gun show venue. La. R.S. 47:301(14)(c).

13. The collection of the 4.45% sales tax on Internet sales, purchases, and trades of firearms is performed by the Louisiana Sales and Use Tax Commission for Remote Sellers as the designated single collector on behalf of LDR and local sales tax collectors. Many websites allow lawful sales of firearms by persons who are not required to be an FFL. The Final Rule will likely reduce the number of persons who sell on those website, thus causing a decrease in Louisiana's sales tax revenue from such sales. The Final Rule also does not include the additional loss over overall sales tax revenue that may be caused by the loss of sales of related taxable tangible personal property or services that could have been generated from a higher consumer activity or traffic on the website.

14. Thus, the Final Rule's induced and intended 10% reduction in firearm sales, combined with the probable and related reduction of other taxable vendor and consumer activities (i.e. fewer ticket sales, attendance, and traffic at gun shows), will cause the State of Louisiana to experience a loss of State sales and use tax revenue.

---

[2] *See also Fairs, Festivals, and Other Special Events FAQs*, LOUISIANA DEP'T OF REVENUE, available at https://revenue.louisiana.gov/FAQ/Categories/16 (last visited May 29, 2024) (discussing FAQs regarding state sales tax for events like gun shows).

15. The remedy of damages against the United States is unavailable to the State of Louisiana, so the Final Rules' effect on the lost State sales and use tax is unrecoverable.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF LOUISIANA THAT THE FOREGOING IS TRUE AND CORRECT. 28 U.S.C. § 1746.**

Sworn and subscribed this 31st day of May, 2024, in Baton Rouge, Louisiana.

_____
LUCIUS L. MORRIS II