UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,<br>  Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, and STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br>  Defendants. | CIVIL ACTION NO. 2:24-CV-89-Z |

### DECLARATION OF MURL E. MILLER

I, Murl E. Miller, declare as follows:

1. I am Murl E. Miller. I am over the age of 18 and a U.S. citizen. I make this Declaration supporting Plaintiffs' Original Petition and Motion for Stay and Permanent Injunction. I have personal knowledge of the facts contained in this Declaration unless otherwise stated. I could competently testify as to the contents of this Declaration if called upon to do so.

2. I am Chief Counsel at the office of the Texas Comptroller of Public Accounts (CPA), where I have worked for over 14 years. My role with the CPA includes tax policy, tax litigation, and general litigation. I work with numerous divisions within the CPA, with personnel that include attorneys, analysts, accountants, auditors, and economists.

3. The CPA is primarily tasked with collecting all state tax revenue and estimating the tax revenue available to the Texas Legislature for appropriation.

4. I am aware of the Final Rule at issue in this case and have reviewed it. I am also aware of the requirements for a federal firearms licensee and have reviewed them.

5. The Final Rule states that its implementation will reduce gun sales and increase the number of federal firearms licensees. 89 Fed. Reg. at 29,898, 29,054.

6. The Final Rule's definition to determine what it means to be engaged in the business as a "dealer" in firearms creates uncertainty regarding lawful conduct provided by statute and what conduct is prohibited under the Final Rule for a broad swath of business activities occurring within specific business channels. The business activities included in the Final Rule relate to the sale, purchase, and trading of firearms conducted wherever or through whatever medium, such as a gun show or event, flea market, auction house, or gun range or club, at one's home; by mail order; over the Internet as an online broker or auction; through the use of other electronic means; or any other domestic or international public or private premises. 89 Fed. Reg. at 29,090.

7. The Final Rule states that a determination of whether a person is engaged in the business as a dealer in firearms is a "fact-specific inquiry." 89 Fed. Reg. at 29,091. The Final Rule adds presumptions that a person is engaged in the business as a dealer and to a person's intent to "predominantly earn a profit." 89 Fed. Reg. at 29,091. The Final Rule states that "even a single firearm transaction or offer to engage in a transaction" may require a federal firearms license." 89 Fed. Reg. at 29,091. Therefore, under the Final Rule, there is no minimum number of transactions that determines whether a person is "engaged in the business" of dealing in firearms. 89 Fed. Reg. at 29,091. Additionally, no actual sales are required to establish that a person is engaged in the repetitive purchase and resale of firearms. 89 Fed. Reg. at 29,021. Determining whether a person is engaged in the business of dealing in firearms is based on the "totality of the circumstances." 89 Fed. Reg. at 29,091.

8. To a significant number of persons who are not a Federal Firearms Licensee (FFL) and currently lawfully buy, sell, or trade firearms in transactions through one or more of the business activities identified in paragraph 3, the threat of potentially being subject to civil, administrative and possibly criminal penalties under the ATF's interpretations and enforcement actions under the Final Rule, and the burdensome obligations FFL assumed to avoid the potential enforcement risk, will be less likely to buy, sell, or trade firearms should the Final Rule become effective.

9. Based on the information available to the ATF, the Final Rule is expected to decrease the sale of firearms by unlicensed vendors and persons by 10%. 89 Fed. Reg. 29,054.

10. At my request, the analyst who reviewed the Final Rule reported that the ATF's estimate of decreased firearms sales by unlicensed vendors and persons by 10% is conservative. Sales and thus State sales and use tax may decrease by a higher percentage given the perceived risks of engaging in such firearm transactions under the Final Rule without being an FFL, given the breadth of the definition of a "dealer" and the business activities covered by the Rule. This is based on the expectation that there will be a 10% or greater decrease in the number of lawful vendors and persons who will purchase, sell, and trade firearms at gun shows, events, and over the Internet due to the risk of an adverse ATF action under the Final Rule. The reduction in lawful non-FFL sales of firearms at a gun show, event, or online will make it less likely for gun enthusiasts, collectors, sportsmen, hunters, and other firearm customers to attend a gun show, event, or log online to purchase, sell, or trade their firearms legally. Over time, the ATF's enforcement actions of the Final Rule may cause a further reduction in public interest and consumer activity at gun shows, events, and sales, purchases, or trades over the Internet. The impact of such reductions in public interest and consumer activity could further reduce the number of persons who purchase, sell, or trade firearms through any other above-described business activities in paragraph 3. The reduction in public interest and consumer activity may also cause fewer overall taxable transactions for other goods or services being sold at the gun show, event, or online due to the reduced consumer traffic should the Final Rule go into effect.

11. Over 260 Texas gun shows and events are scheduled for 2024[1]. Two of the seven largest gun shows in the United States scheduled to be held in 2024 will occur in Texas[2]. Gun show and event promoters provide the opportunity for persons to purchase, sell, or trade firearms that include commemorative firearms, historic firearms, sporting firearms, hunting firearms, and self-protection firearms to customers that include firearm collectors, enthusiasts, sportsmen, hunters, and other customers to meet their different individual needs from individuals or persons who are not FFLs engaged in the business of dealing in firearms as provided by statute.

12. Gun show promoters (organizers) are considered sellers, and they must collect, report, and remit the sales and use tax on their sales and trades, as well as sales and trades made by individuals, dealers, or salespersons at these events who do not have an active Texas Sales and Use Tax Permit and whose sales do not qualify for a tax exemption. Tex. Tax Code §§ 151.0242, 151.409, 151.410. Gun show promoters and vendors collect, report, and pay 6.25% state sales and use tax to the State of Texas and up to 2% local sales and use tax for all taxable proceeds acquired from the sale or trade of a firearm. Tex. Tax Code § 151.051. Gun shows also collect, report, and pay 6.25% state sales and use tax to the State of Texas

---

[1] https://www.gunshowtimes.com/states/texas/current-tx-dates ; https://carry-texas.com/texas-gun-shows ; https://carry-texas.com/texas-gun-shows
[2] The Original Fort Worth Gun Show in Fort Worth, Texas is ranked the 4th largest gun show to be held in the United States during 2024. The NRA Annual Meeting and Exhibits in Dallas, Texas is ranked as the 7th largest gun show to be held in the United States during 2024.

Page **3** of **5**

Declaration of Murl E. Miller - Texas

and up to 2% local sales and use tax on attendance fees, parking, and other taxable sales of tangible personal property sold at the gun show venue. Id.

13. Texas also collects 6.25% state sales and use tax and up to 2% of local sales and use tax on Internet sales, purchases, and trades of firearms within the state. Tex. Tax Code § 151.051. Many websites allow lawful sales of firearms by persons who, by statute, are not required to be an FFL. The Final Rule will likely reduce the number of persons who sell on those websites, and the ATF estimates that 10% of unlicensed dealers will leave the market altogether because of the rule supports the loss of such State sales and use tax revenues. 89 Fed. Reg. at 29,898. The Final Rule does not include the additional loss of overall sales tax revenue that may be caused by the loss of sales of related taxable goods or services that could have been generated from the higher consumer activity or customer traffic on the website.

14. The State of Texas considers gun shows to be a form of trade show event. Gun shows generally attract attendees from outside the Texas community hosting the event, and the shows are often attended by individuals from out of state. Some of these attendees will participate in multiple days of a gun show. The larger the gun show, there will generally be a corresponding increase in vendors from outside the Texas community paying the gun show promoter for authorization to set up a booth or operate from a table to sell their goods and services at the show. These vendors will also purchase taxable parking from the vendor. Some gun show promoters do not live in the Texas community hosting the event, and some gun show promoters live out of state and travel to Texas to host the gun show in Texas communities. These attendees, vendors, and promoters may pay 20 cents per gallon motor fuels tax to the State of Texas. These attendees, vendors, and promotors may pay 6.25% food and beverage tax to the State of Texas and up to 2% local tax. These attendees, vendors, and promotors may pay 6.25% entertainment tax to the State of Texas and up to 2% local tax. These attendees, vendors, and promotors may pay a state sales and use tax of 6.25% and up to 2% to local tax on all alcohol purchased for consumption off-premises. If the attendees, vendors, and promotors buying alcohol to be consumed on-premise, there is a 14.95% state tax. All alcoholic drinks purchased on an airline in Texas are taxed an additional 5 cents per drink. These attendees, vendors, and promotors may pay a 6 % state hotel tax, which applies to any room or space in a hotel, including meeting and banquet rooms. Local hotel taxes, however, are due only on those rooms ordinarily used for sleeping and can vary, depending upon the jurisdiction, from 7% to up to 11%.

15. Thus, the Final Rule's induced and intended 10% reduction in firearm sales and the likely loss of related taxable onsite promotor, vendor, and consumer transactional activities due to the loss of consumer traffic and activity will cause the State of Texas and local governments to experience a loss of State and local sales and use tax revenue at the venue. Further, the Final Rule's induced and intended 10% reduction in firearm sales will correspond with State and local governments experiencing a loss of additional sales and

use taxes, motor fuels taxes, entertainment, alcoholic beverage taxes, and hotel taxes from the reduced consumption of such taxable goods and service by the promotors, vendors, and attendees.

16. The remedy of damages against the United States is unavailable to the State of Texas, so the Final Rules' effect on the lost State sales and use tax is unrecoverable.

I declare under penalty of perjury under the laws of the United States of America and the State of Texas that the preceding is true and correct.

Executed in Austin, Texas on this 31st day of May 2024.

BY: _____
Murl E. Miller