UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

**STATE OF TEXAS, et al.**                                                    **PLAINTIFFS**

**VS.**                                                    **CIVIL ACTION NO. 2:24-cv-00089-Z**

**BUREAU OF ALCOHOL, TOBACCO,**
**FIREARMS AND EXPLOSIVES, et al.**                              **DEFENDANTS**

**THE STATE OF MISSISSIPPI'S**
**SUPPLEMENTAL BRIEFING IN SUPPORT OF STANDING**

Plaintiff the State of Mississippi submits this brief that explains and evidences its basis for standing in response to this Court's May 19 order [Dkt. 45].

**Mississippi Has Standing To Challenge ATF's Rule**

Under Article III, § 2 of the U.S. Constitution, a plaintiff must establish its standing to sue in federal court by demonstrating: an "injury in fact"; "a causal connection between the injury and the conduct complained of"; and that it is "likely" that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). Mississippi meets that test in this Administrative Procedure Act challenge to ATF's "Definition of 'Engaged in the Business' as a Dealer in Firearms," 89 Fed. Reg. 28968 (Apr. 19, 2024) ("Final Rule").

***Injury in fact.*** Mississippi will likely lose state sales-tax revenue collected from retail sales of firearms if the Final Rule takes effect. Those impending losses of sales-tax revenue is a threatened "pocketbook injury" that "is a prototypical form of injury in fact." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021); *see also*, *e.g.*, *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023); TRO Order [Dkt. 44 at 5] (quoting 141 S. Ct. at 1779). Sales-tax losses are the loss of a specific tax revenue, which is a

1

cognizable standing injury. *See Wyoming v. Oklahoma*, 502 U.S. 437, 447-48 (1992); *see also El Paso Cnty. v. Trump*, 982 F.3d 332, 340 (5th Cir. 2020) (explaining the difference between losses of general revenues and losses of "specific tax revenue[s]" which support standing). And such revenue losses attributable to the Final Rule show a "concrete" and "particularized" injury to the State's fisc that is "actual or imminent," as Mississippi will begin incurring losses when the Final Rule takes effect in the State as scheduled in June 2024. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotation marks omitted).

The Final Rule aims to reduce the number of eligible persons who sell firearms without a federal firearms license, and estimates that ten percent of currently unlicensed sellers are likely to quit selling firearms after the rule takes effect because the sellers will be unwilling or unable to obtain such license. *See* Final Rule, 89 Fed. Reg. at 29054. That reduction in sellers will likely diminish future retail sales of firearms in Mississippi at gun shows and other similar events where such sales often occur. And the State would lose tax revenue if a reduction in retail sales of firearms at such events occurs. Mississippi levies a sales tax of 7% on gross proceeds of sales of "tangible personal property." Duke Declaration at 1, Ex. "A"; *see* Miss. Code Ann. § 27-65-17. Firearms are "tangible personal property" under state law. Duke Declaration at 1, Ex. "A." Retail sales of firearms in Mississippi are taxable sales and generate state sales-tax revenue. *Ibid.*; *see* Miss. Code Ann. § 27-67-3. For example, the State collects revenue for such taxable firearms sales "made by Mississippi retailers, out-of-state retailers or persons selling firearms at gun shows or other

promoted events where vendors collect sales tax and remit the tax to the event promoter who then remits the collected tax" to the State revenue department. Duke Declaration at 1, Ex. "A." Between June 1 and the end of this year, at least 19 gun shows are scheduled to take place in Mississippi. *Id.* at 2. The State revenue department anticipates that "any action" that causes "an overall decrease in firearms sales to Mississippi customers" through sales at those gun shows or other retail sales "would result in reduced" sales-tax revenue to the State. *Ibid.* In addition, for similar reasons, the reduction in firearms sellers contemplated by the Final Rule may lead to reduced state use-tax collections on internet firearms transactions by certain sellers who will potentially be impacted by the rule. *See id.* at 1-2. These prospective revenue losses anticipated by the State revenue department are attributable to the Final Rule and establish that Mississippi will suffer an impending pocketbook injury that establishes its standing. *See, e.g.*, *Collins*, 141 S. Ct. at 1779; *Clapper*, 133 S. Ct. 1138 at 1147.

For standing purposes, it is irrelevant that the State cannot yet quantify the precise amount or extent of expected lost tax revenue that the Final Rule will inflict on Mississippi. The loss of even a "small amount of money" can show a standing "injury." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) (quotation marks omitted); *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (even a "single dollar of harm" can support standing). And lost Mississippi tax revenue caused by the Final Rule—in any amount—would irreparably harm the State, as such revenue loss would be unrecoverable as damages in this litigation or through other means due to

defendants' sovereign immunity. *See* TRO Order [Dkt. 44 at 5] (explaining that "[i]n determining whether costs are irreparable, the key inquiry is 'not so much the magnitude but the irreparability'" and that "[e]ven purely economic costs" "'may count as irreparable harm where they cannot be recovered in the ordinary course of litigation'") (quoting *Restaurant Law Ctr. v. U.S. Dep't of Labor*, 66 F.4 593, 597 (5th Cir. 2023)).

***Causal Connection.*** The loss of tax revenue that Mississippi would suffer here is "fairly traceable" to the defendants' implementation of the Final Rule and not "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). As noted, ATF estimates that "as a result of" the Final Rule some currently unlicensed firearms sellers likely will be "unwilling or unable to become licensed" as a dealer. Final Rule, 89 Fed. Reg. at 29054. Those "unwilling or unable" sellers who leave the market will no longer sell firearms in Mississippi. And that loss of sellers will diminish the State's sales-tax collections associated with upcoming gun shows and other retail sales. *See* Duke Declaration at 1-2, Ex. "A." That is but-for causation: Mississippi will lose tax revenues *because of* the defendants' enforcement of the Final Rule. And that is more than enough to show that the State's injury that is "fairly traceable" to the defendants' conduct. *See, e.g., Department of Com. v. New York*, 139 S. Ct. 2551, 2565-66 (2019) (finding standing where there was a "sufficient likelihood" that third parties "will likely react in predictable ways" to government action and cause plaintiffs to lose funds).

***Redressability.*** Finally, Mississippi's impending lost tax revenue attributable to defendants' implementation of the Final Rule is "likely" to be "redressed by a favorable decision" in this action. *Lujan*, 504 U.S. at 561 (quotation marks omitted). This Court is authorized to enjoin the enforcement of the Final Rule or postpone its enforcement pending judicial review, and ultimately vacate the Final Rule. *See* 5 U.S.C. §§ 705, 706. That relief would prevent and redress Mississippi's impending injury.

## Conclusion

This Court should rule that Mississippi has established standing at this stage and grant preliminary injunctive relief barring defendants from enforcing the Final Rule.

Dated: June 2, 2024

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>LYNN FITCH<br>Attorney General</td></tr>
<tr><td></td><td>*S/Justin L. Matheny*</td></tr>
<tr><td>GARRETT GREENE<br>Special Counsel<br>Office of the Attorney General<br>  of Texas<br>Special Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, TX 78711-2548<br>(512) 463-2100<br>garrett.greene@oag.texas.gov</td><td>JUSTIN L. MATHENY<br>Deputy Solicitor General<br>ND Tex. Bar No. 100754MS<br>Mississippi Attorney General's Office<br>P.O. Box 220<br>Jackson, MS 39205<br>(601) 359-3680<br>justin.matheny@ago.ms.gov</td></tr>
<tr><td></td><td>*Counsel for Plaintiff State of Mississippi*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed electronically via the Court's ECF system and thereby served on all counsel of record.

Dated: June 2, 2024

<div align="center" style="margin-left:auto">

*S/Justin L. Matheny*
Justin L. Matheny

</div>