# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

|  |  |  |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
|     Plaintiff(s), | § | |
| | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:24-cv-00089-Z |
| UNITED STATES OF AMERICA, et al., | § | |
|     Defendant(s). | § | |
| | § | |
| and | § | |
| | § | |
| LEVI RUDDER | § | |
|     Proposed Plaintiff- Intervenor | § | |

## MOTION FOR LEAVE TO FILE MOTION TO INTERVENE
### Motion for Leave to File

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") motions the Court for leave to file this motion to intervene, incompliance with (currently contested) sanctions imposed by the United States District Court for the Northern District of Texas, Lubbock Division. See Case 5:23-mc-004-H, ECF No. 5, without collaterally attacking the validity of the sanctions (but not waiving the right to, if needed), as to simplify the underlying proceedings and to conserve judicial resources, as even if the sanctions properly apply, it is believed justice would require PPI's intervention as of a right, or at least permissively.[1]

---

[1] PPI: 1) did not realize that the sanctions applied to other Divisions, and thought it was limited to that particular location in Lubbock, and apologizes for the misunderstanding; and 2) PPI did not initiate this case, nor was it existing when the order was issued. PPI thought that as the order did not impose sanctions on filing motions in future cases in which he has a personal and direct interest, that he was not doing anything subject to the sanction whatsoever, even if his original motion to intervene would have been filed in the Lubbock Division. (for example: if PPI was sued in federal court tomorrow, he would not have initiated the case, nor would it have been existing at the time of the order, and therefore, as per the terms of the sanctions themselves, his defense from such a suit would not be contingent on the discretion of a judge as to whether or not PPI could defend himself from such a lawsuit.) (In context with the events for which the sanctions were originally imposed, there was no justification to attempt to reach future cases not initiated by PPI.)

1

PPI is not being adequately represented by Texas, nor any other Party, and this case is of national importance, and individually significant to PPI's interest. Granting the leave to file and adding PPI to this case is in the best interest for justice to be done. Attached is PPI's proposed motion to intervene; brief in support; supplemental complaint; and Declaration of Levi Rudder to support the request.

Dated:  June 2, 2024

Respectfully submitted,

/s/Levi Rudder
Levi Rudder
7717 Milwaukee Ave. Ste. 500-401
Lubbock, Texas 79424
Phone: (512) 640-9619
Constitutional.USLaw@gmail.com

**Certificate of Conference**

On June 2, 2024, I emailed counsel of record, but as of this filing they have not stated whether or not they are opposed.

/s/Levi Rudder
Levi Rudder

**Certificate of Service**

On June 2, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/Levi Rudder
Levi Rudder

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
|    Plaintiff(s), | § | |
| | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:24-cv-00089-Z |
| UNITED STATES OF AMERICA, et al., | § | |
|    Defendant(s). | § | |
| | § | |
| and | § | |
| | § | |
| LEVI RUDDER | § | |
|    Proposed Plaintiff- Intervenor | § | |

## Proposed Motion to Intervene or Join

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") respectfully request that the Court grant him leave to intervene/join as a Plaintiff in this action as of right pursuant to Fed. R. Civ. P. 24(a)(2) or, in the alternative, grant him permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) and Fed. R. Civ. P. 20(a)(1), so that he may address constitutional arguments that were, intentionally or unintentionally, omitted from the current complaint that will more completely protect PPI's interests. This is necessary due to the Defendant's continual and repetitive disregard of the Constitution's text, and that a court can only rule on issues properly brought before it. Additionally, the current Plaintiffs have not raised the argument/issue which will permanently resolve the foundational cause of the litigation clogging up the courts all across the country, and injury to PPI.

PPI's unprecedented U.S. Const. Art. V argument, which is not being raised by Texas or any other Plaintiff, is proof in and of itself that PPI's interests are not inadequately being represented. PPI's interests are directly connected to the foundational issues involved in this case, including the NFA of 1934 all the way through to the 2022 Bipartisan Safer Communities Act

3

("BSCA"). Texas's arguments would merely retard or temporarily suppress the federal authoritarianism at best; whereas, PPI's argument is designed to permanently remove the foundation and all of the unsanctioned authoritarian overreach which is the true cause of the case at hand, and encourage Congress to properly go through the constitutionally prescribed and burdensome method of proposing amendments to the U.S. Constitution, which request the consent of the People, to exercise authority to regulate Arms and intrastate commerce. The process leaves it to the People, as they think proper, to grant or deny Congress's request to exercise such authority.

Plaintiffs did not raise the constitutionality of all the germane gun laws, and as stated in PPI's Declaration #15, his intended actions directly conflict with unsanctioned statutes and regulations the Defendants enforce, that stem from the NFA to the BSCA, regardless of travel outside of the State, and no relief was requested by any of the Plaintiffs, including Texas, to address these issues.

The long-term relief sought by the Plaintiffs has not been granted, nor is enough relief sought to fully protect PPI's individual interests and entitles PPI to intervene as of a right; or in the alternative, permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) and Fed. R. Civ. P. 20(a)(1), so that he may address constitutional arguments that were, intentionally or unintentionally, omitted from the current complaint that will more completely protect PPI's interests and ensure justice is done.

Texas, in Dkt. 61, once again is only basing its standing on protecting its pocketbook, and not that its State sovereignty nor the powers retained by the People, have been superseded by the federal governments constitutionally unsanctioned exercise of power. It is likely that we will be right back here in the not too distant future even if the Court holds that the Final Rule violates the APA, as the Defendants make it a practice of proposing rules that violate PPI's right to keep and bear Arms, and enforcing illegal laws compliant with the APA.

Dated:  June 2, 2024

Respectfully submitted,

/s/Levi Rudder
Levi Rudder
7717 Milwaukee Ave. Ste. 500-401
Lubbock, Texas 79424
Phone: (512) 640-9619
Constitutional.USLaw@gmail.com

## Certificate of Conference

On June 2, 2024, I emailed counsel of record, but as of this filing they have not stated whether or not they are opposed.

/s/Levi Rudder
Levi Rudder

## Certificate of Service

On June 2, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/Levi Rudder
Levi Rudder

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
|     Plaintiff(s), | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:24-cv-00089-Z |
| UNITED STATES OF AMERICA, et al., | § | |
|     Defendant(s). | § | |
| | § | |
| and | § | |
| | § | |
| LEVI RUDDER | § | |
|     Proposed Plaintiff- Intervenor | § | |

**<u>Brief in Support of Intervention</u>**

**Brief**

### I.      STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") is a U.S. and Texas citizen that will undoubtedly be affected by the Final Rule.  If the Rule is allowed to go into and/or stay in effect, as well as the germane statutes, the PPI as well as thousands of others similarly situated will be subjected to a multitude of civil and criminal consequences, and could face a loss of their liberties and property. This unique, personal interest supports intervention. Accordingly, PPI hereby respectfully submits the following Brief/Memorandum of Law in Support of the Motion to Intervene/join as a Plaintiff, primarily for the long term relief.

### II.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed this lawsuit seeking a stay of agency action, temporary restraining order, and/or a preliminary injunction to preserve the status quo, followed by a declaratory judgment and permanent injunctive relief restraining Defendants from enforcing a Final Rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives of the U.S. Department of Justice on April 19, 2024, entitled "Definition of 'Engaged in the Business' as a Dealer in Firearms" ("Final Rule"), 89 Fed. Reg. 28968, and this case is still in the early stages of the proceedings.

### III.      SUMMARY OF THE ARGUMENT

As set forth below, Plaintiffs' requested injunctive relief is too narrow, and should include enjoining the enforcement of all the germane federal gun laws, for if not granted, it would continue the substantial impairment of PPI's interests. Plaintiffs' attorneys cannot/have not adequately represented the PPI's interests because they are responsible for representing a broad range of public and other interests, and are not focused on the PPI's interests protected by the Art. V amendment process, and the Ninth and Tenth Amendments. Allowing the PPI to join or intervene will ensure that his interests are adequately protected and will provide him with the opportunity to offer evidence and argument that will assist the Court in rendering a constitutionally correct decision in

this important case. Because, PPI meets all the requirements for intervention under Rule 24(a)(2), he respectfully request that his motion to intervene be granted.

### IV.      THE PPI IS ENTITLED TO INTERVENTION AS OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene as of right under Rule 24(a)(2), an applicant must meet four requirements: (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the basis of the controversy in the underlying case; (3) the disposition of the case may impair or impede the potential intervenor's ability to protect his interest; and (4) the existing parties do not adequately represent the potential intervenor's interests. *See Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).

The Fifth Circuit has construed Rule 24(a) broadly in favor of intervenors. *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "[T]he inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotation and citation omitted). "[I]ntervention of right must be measured by a practical rather than technical yardstick." *See id.* at 999 (internal quotation and citation omitted). Accordingly, courts, as a general matter, allow intervention where "no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Glickman*, 256 F.3d at 375) (internal quotation omitted).

### A. The PPI' Motion to Intervene Is Timely

In determining whether a motion for intervention is timely under Fed. R. Civ. P. 24(a)(2), the Court should consider: (1) the length of time between the potential intervenor's learning that

its interest is no longer protected by the existing parties and its filing of a motion to intervene, (2) the extent of prejudice to the existing parties from allowing late intervention, (3) the extent of prejudice to the potential intervenor if the motion is denied, and (4) any unusual circumstances. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009).

The PPI' Motion to Intervene comes promptly (within 3 days) after he learned of his interest in the case via the filing of Plaintiffs' complaint, filed on May 1, 2024, and from the limited "pocketbook" interest, asserted by Texas, in Dkt. 61, filed on 5/31/2024. The litigation is currently in its early stages, and the timing of this motion poses little or no prospect of prejudicing the parties (at least not unjustly, if at all, in the quest for Declaratory and Permanent Injunctive relief): at this early juncture, Defendants have yet to file their answer, no discovery has been conducted, no order has been issued regarding the Declaratory judgment and permanent injunctive relief requested, no trial date set. Currently, Defendants are to respond to Plaintiffs' supplemental briefing on standing by June 7, 2024, and granting intervention if the Court rules that a current Plaintiff has standing, would not prejudice either Party, in any unjust way, with proceeding in this case.

PPI does not intend to request any modification to any current briefing schedule, and intervention therefore poses no potential to prejudice the rights of any current party. *See Ford v. City of Hunstville*, 242 F.3d 235, 240 (5th Cir. 2001) (finding that prejudice is only created by "the intervenor's delay in seeking to intervene after it learns of its interest") (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)); *see also Stallworth*, 558 F.2d at 265 ("[T]he **prejudice to the original parties** to the litigation that is **relevant to the question of timeliness is** only that **prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action**").

9

**On the other hand, the PPI would be severely prejudiced if this Court denies this motion to intervene**.  In *Stallworth*, the Fifth Circuit framed the question of prejudice against proposed intervenors who are denied intervention in terms of whether "a [Rule 24] section (a) intervenor 'may be seriously harmed if he is not permitted to intervene.'"  558 F.2d at 266 (internal quotation and citation omitted).  In this case, distinct from Plaintiffs, the PPI as an individual, without conflicting State or Associational interests, have a direct, personal, and financial stake in the outcome of this case.  In point of fact, the PPI is a target of the outcome of this case: if the Court does not enjoin the implementation of the Final Rule and Unsanctioned Statutes, PPI is likely to be at risk of losing his opportunity to act in a non-illegal manner subject to his own discretion.

As a nonparty, the PPI will be directly affected by any court ordered remedy, but will not be able to participate in presenting evidence and argument in support of his positions or to appeal the ruling.  *See Edwards*, 78 F.3d at 1002–03; *see also Lease Oil Antitrust Litig.*, 570 F.3d at 249–50 ("***Intervening in the existing federal lawsuit is the most efficient, and most certain, way for [the potential intervenor] to pursue its claim.***"), emphasis added.  **Without the ability to intervene**, the **PPI will be relegated to the sidelines in a case in which his interests** will be directly impacted by the outcome **and his fate will be determined by other parties**.

As the Defendants' Final Rule and germane statutes directly affects his right to act in a non-illegal manner, PPI respectfully urges the Court to grant him an opportunity to present his case and protect his interests from the repetitive and ongoing constitutionally unsanctioned exercise of authority by the Defendants. Considering each of the factors above, this intervention is timely because (1) the PPI promptly filed this motion; (2) the existing parties will not be prejudiced if the Court permits intervention at this juncture (as PPI is interested in the long term relief primarily); and (3) the PPI will be greatly harmed if this motion is denied because he will not have his interests protected to the fullest extent, before the Court.

10

**B. The PPI Possess a Protectable Interest**

The PPI also satisfy the requirements of Rule 24(a)(2) because he has a protectable interest in the subject matter of this litigation that would be otherwise impaired by an adverse decision. His *protectable interest does not have "to be of a legal nature identical to that of the claims asserted in the main action*." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). Indeed, "[a]ll that is required by the terms of the rule is an interest in . . . [the] rights that are at issue [which involve the right to keep and bear Arms], provided the other elements of intervention are present." *Id.* Ultimately, "the interest 'test' is primarily a practical guide to *disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process*." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) emphasis added.

Here, the PPI' interest is to prevent constitutionally unsanctioned authority from being used against him, and maintain the ability to exercise his right (to keep and bear Arms) the fullest extent that the U.S. Constitution does not delegate to the discretion of the federal government. The PPI's life will be directly and adversely impacted.  His interest is therefore sufficient, even under *Diaz*.

Courts have routinely granted intervention to parties seeking to protect their interest in government actions that affect them. For example, in Kansas, a federal district court allowed students and Latino organizations to intervene in a case concerning a challenge to state legislation that made undocumented immigrant students eligible for in-state tuition rates. *See Day v. Sebelius*, 227 F.R.D. 668, 670, 676 (D. Kan. 2005) (granting motion to intervene as defendants filed by the Kansas League of United Latin American Citizens, the Hispanic American Leadership Organization, and three college students); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (detainees seeking to intervene as a matter of right in an action brought by a U.S. Senator to challenge housing of immigrant felons at a particular facility had an interest relating to the main suit).  Similarly, in *Lewis v. Stark*, 312 F. Supp. 197 (N.D. Cal. 1968), *rev'd on other*

*grounds by Lewis v. Martin*, 397 U.S. 552 (1980), the plaintiffs sought a declaration that the state welfare law, which provided that a man assuming the role of spouse in a home is bound to support children in the home, was unconstitutional and contrary to federal regulations interpreting the Social Security Act. *Id*. at 199. The court held that families with men assuming the role of spouse in the household were entitled to intervene as of right under Rule 24(a). *Id*. In the same way, PPI here has shown strong and legally cognizable interests related to the Final Rule and the unsanctioned Acts, which supposedly authorize such rulemaking authority stem.

Should the Court deny the Plaintiffs' request, the PPI will be deprived of opportunities to exercise their non-delegated rights and powers, which are safeguarded by the burdensome Art. V processes and the Ninth and Tenth Amendments. Consequently, this denial would impose further restrictions on the Plaintiff-Intervenor's ability to support himself and his family, in a manner not authorized by the Constitution. Courts have held that economic interests, especially those that would "afford [PPI] greater recompense and satisfaction," is a significant protectable interest. *Usery v. Brandel*, 87 F.R.D. 670, 676 (W.D. Mich. 1980).

The PPI's interests diverge from the interests that Plaintiffs pursue: State Plaintiffs are responsible for their particular State interests, but not specifically for PPI providing for himself and his family; Non-State Plaintiffs have associational, and other, interests that may prevent them from providing the utmost protection to the interests of the PPI's; all agree the Final Rule is the attempted exercise of constitutionally unsanctioned authority, but diverge on the *why*. The divergence on the *why*, is why PPI asks the Court to provide him with the opportunity to defend his own interests in this case.

### C. The PPI' Interests Would Be Subject to Impairment if Intervention is Denied

The PPI is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). Here, the advisory committee

notes to Rule 24(a) are instructive: "*[i]f an absentee would be substantially affected in a practical sense* by the determination made in an action, he should, *as a general rule, be entitled to intervene*." Fed. R. Civ. P. 24 advisory committee note to 1966 Amendment (emphasis added). To demonstrate "impairment," a prospective intervenor "must show only that impairment of its substantial legal interest *is possible* if intervention is denied." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)) (emphasis added). "This burden is minimal." *See Grutter*, 188 F.3d at 399 (rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest).

There is no doubt that the issues in this case—if PPI takes certain acts, it is possible/likely that he will be subject to warrantless searches— will directly impair the PPI's life, potentially resulting in incarceration, litigation, and preventing legal transactions that may produce profits.

The PPI cannot wait until the conclusion of the litigation to vindicate his interests. Courts have recognized that parties seeking intervention would face a "*practical disadvantage*" in asserting their rights once a court has rendered a decision. *Chiles*, 865 F.2d at 1214. The Fifth Circuit has recognized that a prospective intervenor's interest may be practically "impaired by the *stare decisis* effect" of a court's rulings in subsequent proceedings. *Sierra Club*, 18 F.3d at 1207 (quoting *Ceres Gulf*, 957 F.2d at 1204) (italics in original); *see also Martin v. Travelers Indem. Co.*, 450 F.2d 542, 554 (5th Cir. 1971) ("[S]tare decisis . . . would loom large" in any attempt by prospective intervenor "to achieve a favorable resolution of the coverage issue" on their own.); *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (to the extent that a lawsuit involves common legal issues, potential adverse effects on the prospective intervenors favor intervention).

13

**D.   The PPI' Interests is not Adequately Represented by the Existing Parties**

The burden under this prong is "satisfied if [the PPI] show[s] that representation of [his]

interest '***may be***' inadequate; and the burden of making that showing should be treated as minimal."

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), emphasis added.

Intervention is warranted when the proposed intervenors "occup[y] a different position and [have]

different interests" than the existing defendants.  *Sierra Club v. Fed. Emergency Mgmt. Agency*,

No. 07-0608, 2008 U.S. Dist. LEXIS 47405, at *18-19 (S.D. Tex. June 11, 2008). Here PPI

occupies both different positions and interests from Texas and the other Plaintiffs.

Courts have recognized that ***governmental representation of private, non-governmental***

***intervenors may be inadequate***.  For example, in *Dimond v. District of Columbia*, the court held

that because the government was responsible for representing a broad range of public interests

rather than the more narrow interests of intervenors, the "application for intervention . . . falls

squarely within the relatively large class of cases in this circuit recognizing the inadequacy of

governmental representation of the interests of private parties in certain circumstances."  792 F.2d

179, 192 (D.C. Cir. 1986); *see Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980)

(granting individual aggrieved party's motion to intervene in order to protect its personal interests,

which may at times be in conflict with those of the EEOC); *see also Natural Res. Def. Council v.*

*Costle*, 561 F.2d 904, 911-12 (D.C. Cir. 1977) (holding that the ***government does not adequately***

***represent private [individuals] because Intervenor's interests are different***).

As noted above, this prong is easily satisfied here. Plaintiffs and the PPI's interests are

profoundly different. The Plaintiff States are responsible for defending their sovereign interests

(but not adequately doing so), and none of them are subject to arrest by the Defendants; and the

other Plaintiffs have no duty to argue for the utmost protection of the PPI's rights and interests,

and don't have the same personal interest at stake. None of the existing Plaintiffs are asserting the

constitutional protections afforded by the burdensome Art. V amendment process, which in PPI's view is the strongest argument to secure the individual Liberties of the People, and one of the most fundamental interest involved in this case.

In addition, even assuming their best intentions, Plaintiffs may be hesitant to advance relevant arguments because of the highly-charged political debate surrounding firearms as a social and political policy issue which could expose Plaintiffs to severe public scrutiny and criticism. Plaintiffs' potential failure to advance certain arguments (and already shown by their omission from the complaint) is sufficient to satisfy the PPI' minimal burden that Plaintiffs' representation "may be" inadequate.  *Trbovich*, 404 U.S. at 538 n.10.  The PPI' interests are too divergent from the interests of Plaintiffs, and too vital for PPI to be justly denied an active role as intervenor.  *See Day*, 227 F.R.D. at 674-75 (granting intervention and recognizing direct and personal interests of undocumented immigrant student in defending an in-state tuition law).  For these reasons, the PPI seek to participate in this case as an intervenor and respectfully request that the Court grant the intervention as a matter of right.

### V.   PERMISSIVE INTERVENTION IS ALSO APPROPRIATE

Even if this Court were to determine that the PPI do not satisfy the requirements for intervention as of right, it should grant permissive intervention. Rule 24(b)(1)(B) grants permissive intervention upon timely motion by anyone who "has a claim or defense that **shares with the main action a common question of law** or fact."  The Fifth Circuit has recognized that permissive intervention may be granted in the Court's discretion if (1) the motion is timely (which it is, in regards to the long term relief); (2) an applicant's claim or defense has a question of law or fact in common with the existing action (legality of the actions taken by the Defendants in regards to Arms); and (3) intervention will not delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b); *see United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986)

("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenor raise common questions of law and fact.").

As a threshold matter, the PPI' motion to intervene is timely. *See supra* Section IV.A. Second, the PPI' claim will share substantial questions of law and fact with the main action as the PPI seek to prevent constitutionally unsanctioned actions taken by the Defendants. Third, as discussed above, intervention will not create delay or prejudice the existing parties. *See id*. Adding PPI as a plaintiff-Intervenor at this juncture of the lawsuit will not needlessly increase cost, delay disposition of the litigation, or prejudice the existing parties, and may even expedite disposition.

Importantly, PPI' participation in this lawsuit will offer evidence and argument from an individual who is a real target of the Final Rule/this lawsuit and who have a direct and personal stake in the outcome of this case. At a minimum, therefore, the PPI ask the Court to ensure justice prevails by granting permissive intervention.

This motion is a substantial duplicated from the motion to intervene that was originally denied in the district court, but subsequently reversed by the 5th Circuit Court in *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015), including citations that are analogous for intervention purposes. In that case, it clearly addressed that a government does not adequately represent an individual's interest by default. Texas is claiming a "pocketbook" injury and not a Tenth Amendment interest or an U.S. Const. Art. V violation, which both better protect PPI's interest regarding the issues involved herein.

## VI.   CONCLUSION

For the foregoing reasons, the PPI respectfully request that the Court grant his motion to intervene in this action as an additional Plaintiff, and to accept the supplemental complaint addressing claims not previously raised by Petitioners.

Dated:  June 2, 2024

Respectfully submitted,
/s/Levi Rudder
Levi Rudder
7717 Milwaukee Ave. Ste. 500-401
Lubbock, Texas 79424
Phone: (512) 640-9619
Constitutional.USLaw@gmail.com

**Certificate of Conference**

On June 2, 2024, I emailed counsel of record, but as of this filing they have not stated whether or not they are opposed.

/s/Levi Rudder
Levi Rudder

**Certificate of Service**

On June 2, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/Levi Rudder
Levi Rudder

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | § | |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| v. | § | CASE NO. 2:24-cv-00089-Z |
| | § | |
| UNITED STATES OF AMERICA, et al., | § | |
| | § | |
| Defendant(s). | § | |
| | § | |
| and | § | |
| | § | |
| LEVI RUDDER | § | |
| | § | |
| Proposed Plaintiff- Intervenor | § | |

## PROPOSED PLAINTIFF-INTERVENOR SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION AND SUMMARY OF THE ARGUMENTS

The Proposed Plaintiff-Intervenor Levi Rudder ("PPI") adopts and incorporate in full the Plaintiffs' Complaint for Declaratory and permanent Injunctive Relief (Dkt. No. 1) (the "Plaintiffs' Complaint") and submit the following supplemental brief to address the additional unique personal interests of PPI who will be directly and continually affected by the resolution of the challenged action in this case, if *constitutionally unsanctioned* authority is permitted to be enacted, remain on the books, or enforced.

As Plaintiffs' Complaint speaks for itself, and as set forth below, PPI sets out supplemental claims to protect PPI's interest to the utmost extent. While the Plaintiffs' Complaint explains in compelling detail the statutory, Congressional, and Supreme Court case authority, it fails to adequately address the root cause of the constitutionally unsanctioned authority being imposed on

18

individuals such as the PPI. By examining the impact of the constitutionally unsanctioned Final Rule and statutes, one will easily see that they are * ***constitutionally unsanctioned***, because they were enacted **prior to an Amendment being properly proposed and ratified** as prescribed by Article V of the U.S. Constitution*.

For these reasons, the PPI respectfully submits the following Supplemental Complaint, along with PPI's Motion to intervene. Even though Mr. Tormey would supposedly have similar or even the same interest as PPI, Mr. Tormey has not defended his or PPI's interests to the fullest extent, and justifies PPI's intervention.

For Declaratory and Permanent Injunction purposes, PPI believes by addressing the contravention/circumvention of the Art. V Amendment Process issues below, it will allow for a permanent resolution of this root cause of this and numerous other cases, which will additionally save judicial resources in the future. Doing otherwise will undoubtedly lead to incomplete relief being granted, and would only be treating a symptom, as it festers, as opposed to permanently removing the true root cause of this controversy altogether.

## STATEMENT OF FACTS

1.     First and foremost, the government, as prescribed by the Constitution, gets its just authority to act solely from the enumerated powers vested to it by People themselves, and written in the Constitution, and no other source.

2.     The federal government is only permitted to do that which is authorized by the written U.S. Constitution ("Constitution"), and nothing more, as it established a government limited to doing only that which is enumerated therein. The ***text*** of the Constitution as originally ratified is silent on vesting Congress, or either of the other branch, with authority to regulate inland/intrastate commerce pertaining to commercial transactions involving Arms, or otherwise, that is not specifically commerce: a) with a foreign Nation; b) with Indian tribes; or c) among the

*several States*. The Art. V prescribed Amendment proposal and ratification process (like a Condition Precedent) must be performed prior to federal authority being exercised in an unenumerated way or over unenumerated/omitted subject matters.

3.      The distinctions of governmental powers, as used in the Constitution are: "The body that deliberates and enacts laws, is ***legislative***; the body that judges, or applies the laws to particular cases, is ***judicial***; the body or person who carries the laws into effect, or superintends the enforcement of them, is ***executive***"([webstersdictionary1828.com/executive](webstersdictionary1828.com/executive)),(emphasis added).

4.      The gun control acts that are germane to this case are commonly known as the National Firearms Act of 1934 ("NFA"); The Federal Firearms Act of 1938 ("FFA"); The Gun Control Act of 1968 ("GCA"); The Hughes Amendments of the Firearm Owners Protection Act of 1986 ("Hughes Amendment") established prohibitions of private ownership of certain Arm; the Brady Act of 1993 ("Brady Act"); and, the Bipartisan Safer Communities Act of 2022 (BSCA); and (collectively "Gun Control Acts" or "GCAs").

5.      The GCAs were enacted, and are being enforced, prior to a properly proposed and ratified amendment which authorize the federal government to exercise discretion over PPI's right to keep and bear arms.

6.      The Constitution's Art. V amendment process provides the strongest protection, second only to secession or bearing Arms, from the exercise of oppressive and/or arbitrary federal authority from being wielded against the People and the States.

7.      Within the federal government, only Congress is authorized to propose Amendments to the States for ratification or rejection. And only after being ratified by 3/4ths of the States, does the proposed Amendment become a "valid" Amendment to the U.S. Constitution.

8.      Eighth, as supported by PPI's Declaration attached hereto, PPI has standing to challenge the federal actions herein due to the ongoing injuries caused by the Defendants actions.

## ADDITIONAL ISSUES FOR DECLARATORY RELIEF

1.      Is an "Amendment", as used in Art. V of the Constitution, a noun (name) for the action of supplying a defect, by some addition of what is wanted (such as a word, clause, or paragraph) as well as by expunging what is wrong (such as a word, clause, or paragraph)?

2.      Was the U.S. Constitution's Art. V process contravened/circumvented by malicious and/or destructive ingenuity by enacting and enforcing, some or all of, the gun control? If so,

3.      was it permitted by: a) the fact that no other party to a previous suit raised an argument that the protections afforded by the burdensome Art. V process against an oppressive and/or tyrannic exercise of governmental power were being circumvented; or, b) from an unwillingness to apply and support the Constitution, with its perceived flaws, as written?

## ADDITIONAL ISSUES FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      The GCAs, and the exercise of authority under them, are the exercise of constitutionally unsanctioned authority because they were enacted, and are being enforced, prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and therefore it must be enjoined from being enforced.

2.      The NFA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted, and is being enforced, prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and therefore it must be enjoined from being enforced.

3.      The FFA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted and is being enforced prior to Congress going

through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and therefore it must be enjoined from being enforced.

4.      The GCA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted, and is being enforced, prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and therefore it must be enjoined from being enforced.

5.      The Hughes Amendment, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted, and is being enforced, prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and therefore it must be enjoined from being enforced.

6.      The Brady Act and the BSCA, and the exercise of authority under them, are the exercise of constitutionally unsanctioned authority because they were enacted, and are being enforced, prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and therefore it must be enjoined from being enforced.

7.      Delegating legislative authority to the Executive branch and/or its Agencies is the exercise of constitutionally unsanctioned authority because it was delegated prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to delegate authority vested in Congress alone, to another governmental body by

contravening/circumventing the prescribed (Art. V) process to transfer legislative authority, and therefore it must be enjoined from being exercised by the Defendants.

## Supplemental Demand for Relief

Plaintiffs respectfully request that the Court:

a.      Declare that an "Amendment", as used in Art. V of the U.S. Constitution, is the name for the action of supplying a defect, by some addition of what is wanted (such as a word, clause, or paragraph) as well as by expunging what is wrong (such as a word, clause, or paragraph), for the purpose of changing, adding, removing, or clarifying the powers vested in the federal government, or to limit the otherwise unlimited/unqualified rights and powers of the People and the Several States.

b.      Declare that the circumvention of the required proposal and ratification process for Amendments lasted as long as it has due to the failure of Parties to point out the procedural misstep of Congress (not going through the Art. V amendment process) prior to exercising unenumerated authority; and from the less than faithful application of the U.S. Constitution as written, by Officers of all three branches of government at one point or another, as shown by the circumstances surrounding and including the decision of *Korematsu v. United States*, 323 U.S. 214 (1944).

c.      Declare that the gun control acts commonly known as the National Firearms Act of 1934 ("NFA"); The Federal Firearms Act of 1938 ("FFA"); The Gun Control Act of 1968 ("GCA"); The Hughes Amendments of the Firearm Owners Protection Act of 1986 ("Hughes Amendment") established prohibitions of private ownership of certain Arm; the Brady Act of 1993 ("Brady Act"); and the Bipartisan Safer Communities Act of 2022 (BSCA), and the exercise of authority under them, are the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the

consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in concert with them from enforcing the Acts or from taking any action inconsistent with the injunction of the Acts.

       d.     Declare that the NFA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in concert with them from enforcing the NFA or from taking any action inconsistent with the injunction of the Act.

       e.     Declare that the FFA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in concert with them from enforcing the FFA or from taking any action inconsistent with the injunction of the Act.

       f.     Declare that the GCA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in

concert with them from enforcing the GCA or from taking any action inconsistent with the injunction of the Act.

g.      Declare that the Hughes Amendment, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in concert with them from enforcing the Hughes Amendment or from taking any action inconsistent with the injunction of the Act.

h.      Declare that the Brady Act, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in concert with them from enforcing the Brady Act or from taking any action inconsistent with the injunction of the Act.

i.      Declare that the BSCA, and the exercise of authority under it, is the exercise of constitutionally unsanctioned authority because it was enacted prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to regulate their individual right to keep and bear Arms, by contravening/circumventing the prescribed (Art. V) process to expand federal authority, and permanently enjoin Defendants and anyone acting in concert with them from enforcing the BSCA or from taking any action inconsistent with the injunction of the Act.

j.      Declare that the delegating of legislative authority to the Executive branch and/or its Agencies is the exercise of constitutionally unsanctioned authority because it was delegated prior to Congress going through the Art. V proposal and ratification process, to gain the consent of the People to delegate authority, which was vested in Congress alone, to another governmental body by contravening/circumventing the prescribed (Art. V) process to transfer legislative authority, and therefore it must be enjoined from being exercised by the Defendants.

k.      Permanently enjoin Defendants and anyone acting in concert with them from enforcing any of the Acts herein or from taking any action inconsistent with the injunction of the Acts herein;

l.      Grant Plaintiff litigation costs reasonably incurred in this action;

m.      Grant Plaintiff such other relief as the Court deems just and proper and as justice so requires.

Dated:  May 16, 2024

Respectfully submitted,

/s/ Levi Rudder
Levi Rudder
7717 Milwaukee Ave. Ste. 500-401
Lubbock, Texas 79424
Phone: (512) 640-9619
Constitutional.USLaw@gmail.com

**Certificate of Conference**

On June 2, 2024, I emailed counsel of record, but as of this filing they have not stated whether or not they are opposed.

/s/Levi Rudder
Levi Rudder

**Certificate of Service**

On June 2, 2024, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/Levi Rudder
Levi Rudder

## Declaration of Levi Rudder

1)        My name is Levi Rudder. I am a U.S. citizen and resident of Lubbock Texas, located within Lubbock County. I make this declaration in support of PPI's Motion Complaint for Leave to Intervene as Plaintiff and Additional Declaratory and Injunctive Relief. Unless otherwise stated, I make this declaration based on personal knowledge. If called as a witness, I can testify to the truth of the statements contained herein.

2)        I am a law-abiding person, eligible to possess firearms under state and federal law. I am a self-employed landlord and investor. I am an avid gun owner and supporter of the right to keep and bear arms. I am not knowingly a member of any of the Associations/Leagues/etc. that are parties to this case.

3)        I have been a gun owner for nearly three decades, and I have been around firearms my entire life, as my father was an avid hunter. Thus, from a young age and to this day, much of my daily activities involve firearms and the right to keep and bear arms.

4)        I presently have a personal collection of firearms that I have accumulated over many years. I am a collector and a hobbyist, but I also believe that the widespread public ownership of firearms is, as the Second Amendment says, "necessary" for a "free state". Part of my motivation for collecting is the hope to realize a pecuniary gain from appreciating value of the firearms, and/or ammunition, even if the firearms are used for other purposes.

5)        Thus, in addition to maintaining my personal collection of firearms, and engaging in non-illegal firearm activities (including recreation, target shooting, hunting, training, and commerce not involving a Foreign Nation, or Indian Tribe), I also attempt to promote responsible gun ownership in whatever capacity I can, including training and advocating.

6)        I have attended local gun shows for many years. I have bought, sold, and traded

firearms at various times and for various reasons.

7)        I have traded up to nicer models in order to enhance my collection of firearms.

8)        But although I have occasionally bought and sold firearms through private sales, I have never knowingly been "engaged in the business" of dealing in firearms. Thus, I do not hold, nor have I ever held, a federal firearms license in order to engage in my private inland commerce activities.

9)        Thus, I believe my activities have always been lawful under federal law, and I wish to continue to alter, improve, or even be able to liquidate (for pecuniary gain) my personal collection, if the desire were to arise, without becoming a licensed dealer. Indeed, I am not even sure if I could become licensed, due to zoning, and other, restrictions.

10)       However, ATF's recent "Engage in the Business" rulemaking makes portions of my perfectly lawful activity seem suspect under the new regulations being enacted.

11)       For example, various of the Final Rule's definitions are written so broadly that they cover conduct that Congress left lawful under the statute, or are written so narrowly that they eviscerate explicit statutory protections for personal collections such as mine. Indeed, the Rule arbitrarily defines "collection" so narrowly that I am not even certain if my firearms collection still qualifies.

12)       Moreover, various of the Rule's presumptions would seem to be so broad that they apply to certain of my activities, thus making me "presumptively" engaged in felonious activity unless I can prove that my activities are in fact innocent, as they are.

13)       Additionally, parts of the Rule are so convoluted, vague, and ambiguous (for example: a lack of threshold number of transactions to qualify as doing business) that I cannot clearly determine what is prohibited versus what is allowed. Does buying 2 pistols with the intent

29

to sell them at some point for a pecuniary gain constitute doing business, or does it need to be 200, or is it after a certain amount of time (1 day or 30 years)? I thus fear that the vague threats and ambiguous definitions in the Final Rule will be wielded as a weapon against me in order to threaten, coerce, and intimidate me into complying with oppressive and tyrannic edicts, and forcing me to obtain a license that the Constitution does not permit to be imposed.

14)     Finally, Congress is totally void of authority to regulate Arms in the manner it attempts, or to establish a prohibition of Arms as it has, in the statutes below.

15)     I intend on making, or intend on having made, a few items that would be considered NFA items and offering some of them for sale for a pecuniary gain, in inland commerce, and keeping some in my collection. These would include suppressors, short barrel rifles ("SBR"), and a post 1986 rifle and/or pistol capable of firing 2 shots with a single function of a trigger. The SBR only requires changing out the barrel of my AR-15 rifle with an approx. 7 1/2" barrel and a few other components that I already have, just not assembled into a firearm. That same AR lower receiver only needs 2 holes drilled in it to be able to accept the components to fire multiple rounds with a single function of the trigger that are readily available online, and I already have a design for the component which would limit it to the desired, this component I also intend on having manufactured and patented. As I regularly travel outside of the State multiple times a year, I intend on taking the AR-15 suppressed and capable of firing 2 shots per function of the trigger with me when I travel, for self-defense and other lawful purposes. The suppressor components can be acquired readily, and I have some selected to try out first. I also have a stencil and a jig for making devises know a lightning links, which are NFA Items, I would make them if not prohibited by one or more of the Statutes cited below. It is indisputable that if I were to further act on building or assembling the items described above to completion, it would expose me to criminal and/or civil

30

proceedings under each, and potentially several of the challenged and cited statutes below, if relief from the illegal laws is not granted. Point of clarification, I do not have any NFA items, just a partial list of components needed to assemble or make various different NFA items.

16)　　I have witnessed gun cases and Second Amendment litigation, and I thus know firsthand the way ATF has manipulated federal laws and rules to target gun owners for parts that don't even meet the ATF's own definition of a firearm.

17)　　The Statutes that unlawfully restrict my rights, in violation of the U.S. Constitution are believed to stem from the following:

　　a)　The National Firearms Act of 1934 ("NFA");

　　b)　The Federal Firearms Act of 1938 ("FFA");

　　c)　The Gun Control Act of 1968 ("GCA");

　　d)　The Hughes Amendments of the Firearm Owners Protection Act of 1986 ("Hughes Amendment");

　　e)　The Brady Act of 1993

　　f)　The Bipartisan Safer Communities Act of 2022 (BSCA)

18)　　If I am to continue to engage in the perfectly lawful behavior that the Constitution secures, but which the unsanctioned Rule and Statutes declares unlawful, I fear that I will be subject to an overreaching administrative action, civil forfeiture, an ATF cease-and-desist letter, or even arrest and criminal indictment.

　　I, Levi Rudder, declare under penalty of perjury that the foregoing is true and correct.

6-2-2024　　　　　　　　　　　　　　　　　/s/ Levi Rudder
Dated　　　　　　　　　　　　　　　　　　Levi Rudder