# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,<br>    *Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, and STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br>    *Defendants*. | No. 2:24-CV-89-Z |

**State of Utah's Supplement Brief on Standing**

The State of Utah submits this supplemental brief explaining and evidencing its basis for standing in response to this Court's order dated May 19, 2024. ECF No. 43.

## Introduction

To establish standing, a plaintiff has a minimal burden, especially in the early stages of litigation. And with multiple plaintiffs, a case may proceed if one plaintiff has standing. Utah has standing for at least two reasons.

First, Utah has standing for the same reason this Court has already determined Texas has standing. The Final Rule will cause Utah to suffer a pocketbook injury by reducing its tax revenue from firearm sales.

Second, because Utah conducts its own background checks, the Final Rule injures Utah by requiring it to perform additional backgrounds checks that federal law doesn't require. That injury also gives Utah standing.

## Argument

The Court ordered this supplemental briefing because it determined it "must address the threshold question of standing before addressing the merits." ECF No. 44 (citation omitted). This case may proceed to merits. As shown below, this Court need only determine that one plaintiff has standing to proceed to the merits. And Utah has standing.

1

I. **The Court may proceed to the merits if one plaintiff demonstrates standing.**

In a case with multiple plaintiffs, the Court need only determine that one plaintiff has standing. *See McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit."); *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (holding that because one of five State plaintiffs had shown it had standing to challenge a federal program, a lawsuit could proceed); *United States v. Texas*, 97 F.4th 268, 275 & n.28 (5th Cir. 2024) (declining to consider if remaining plaintiffs had standing because one plaintiff had demonstrated standing to obtain preliminary injunction); *Gen. Land Off. v. Biden*, 71 F.4th 264, 271 (5th Cir. 2023) ("Each State asserts it has standing. But only one needs standing for the action to proceed.").

This principle applies to preliminary injunctive relief. In *General Land Office*, after determining one State (Texas) had standing, the Fifth Circuit remanded for the district court to consider both States' motion for a preliminary injunction. 71 F.4th at 275; *see also Texas*, 97 F.4th at 275 & n.28 (determining that standing of one plaintiff sufficed in context of an appeal of an order granting preliminary injunction).

In this case, the Court determined that "Plaintiffs Texas, Tormey, and affiliated organizations have sufficiently demonstrated standing for the purposes of the requested temporary restraining order." ECF. No. 44, at 5. That determination allows all plaintiffs to be parties to the TRO.

Further, if this Court confirms that "Plaintiffs Texas, Tormey, and affiliated organizations," or any one of them, has standing based on the supplemental briefing, the Court should allow this case to proceed as to all plaintiffs, especially in the early stages of this litigation.

## II.     Utah has standing.

In any event, Utah has standing in its own right. To demonstrate standing, Utah must show the Final Rule creates a substantial risk of some slight harm to Utah that may be redressed by the relief requested. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice [for standing purposes] if the threatened injury is certainly impending, or there is a *substantial risk* that the harm will occur." (emphasis added) (internal quotation marks omitted)); *see also OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (explaining that because "the injury in fact requirement under Article III is qualitative, not quantitative, in nature," an injury alleged as an Article III injury-in-fact "need not be substantial" and "*need not measure more than an identifiable trifle*" (emphasis added) (internal quotation marks omitted)).

3

Utah clears those hurdles. Utah has standing because the Final Rule will harm Utah by (A) reducing Utah's sales tax revenue and (B) requiring Utah to unnecessarily conduct additional background checks in violation of federal law.

### A.   Utah has standing because the Final Rule will cause Utah to suffer a pocketbook injury.

Utah has standing for the same reason this Court has determined Texas has standing. ECF No. 44, at 5. The Final Rule will cause Utah to suffer a pocketbook injury in the form of decreased sales tax revenues.

Texas has already persuaded the Court that that "Final Rule will prohibit otherwise eligible persons from obtaining a Federal Firearms License ("FFL"), thereby reducing total gun sales at gun shows." ECF No. 44, at 5. Like Texas, Utah collects a sales tax on taxable items sold, including firearms sold at gun sales.[1] *See* Utah State Tax Commission, https://tax.utah.gov/sales/specialevents (stating that "[a]ll vendors participating in special events," including gun shows, "are required to obtain a Temporary Sales Tax License" and "to report and pay taxes collected at [the] special event."). And Utah has six gun shows upcoming this year.

---

[1] The sales tax for "retail sales of tangible personal property made within the state" is a minimum of 4.85%. Utah Code §§ 59-13-103(2)(a)(i)(A), -103(11)(a).

4

https://gunshowtrader.com/gunshows/utah-gun-shows/. Thus, like Texas, Utah will sustain a financial loss because of the Final Rule. ECF No. 44, at 5.

### B. Utah has standing because the Final Rule will cause Utah to unnecessarily perform additional background checks.

The Final Rule also harms Utah because it is a "point of contact" state for purposes of firearm background checks. *See* Final Rule, 89 Fed. Reg. at 28,065 (noting Utah is a "point of contact state"); Federal Bureau of Investigation, *NICS Participation Map*, https://www.fbi.gov/file-repository/nics-participation-map-020124, at 1-2; *Mance v. Sessions*, 896 F.3d 699, 717 & n.46 (5th Cir. 2018) (citing, inter alia, Utah Code § 76-10-526(3)(a) (Owen, J., concurring). As a point of contract state, Utah, by and through a state agency, conducts the background checks required by federal law. *See Mance*, 896 F.3d at 706-07.[2]

Federal law requires background checks for sales by federal firearms licensees (FFLs) to unlicensed buyers, 18 U.S.C. § 922(t), but not sales by unlicensed sellers (private sales). *See* Final Rule, 89 Fed. Reg. at 28,987 (stating that "Congress has not passed a law to require universal background checks" that would "require persons to run background checks whenever a private, unlicensed person transfers a firearm to another").

---

[2] That state agency is the Bureau of Criminal Investigations (BCI). Utah Code §§ 76-10-501(2), 76-10-526(5)-(7).

5

The Final Rule will cause Utah to conduct more background checks. As the Department of Justice acknowledges, the Final Rule will cause some private sellers to become FFLs, and that in turn will increase the number of required background checks:

a. "This rulemaking will result in more persons who are already engaged in the business of dealing in firearms becoming licensed . . . ." 89 Fed. Reg. at 28,968.

b. "*As more persons become licensed under this rule, those licensees will conduct more background checks* to prevent prohibited persons from purchasing or receiving firearms . . . ." *Id.* (emphasis added).

c. "The Department . . . agrees that the rule will result in more persons who are engaged in the business of dealing in firearms, regardless of location, becoming licensed as required [by federal law]. Once licensed, those persons will be required to abide by the . . . background check requirements [federal law]." *Id.* at 28,988.

d. "The Department . . . agrees that, as a result of this rule, . . . more individuals who engage in the business of dealing in firearms at gun shows and online will become licensed under [federal law] and therefore run background checks." *Id.* at 28,989.

e. "*[T]he amended regulations will increase the number of background checks performed* because more dealers will become licensed and run background checks on their customers." *Id.* at 28,993 (emphasis added).

The additional background checks required by the Final Rule will tangibly increase Utah's workload as a point of contact State. As the Department acknowledges, those additional checks aren't already required by Utah law. 89 Fed. Reg. at 29,065 ("Of the States that do not currently require

6

background checks for all private sales, only three States (Florida, Tennessee, and Utah) do not rely on Federal law enforcement for their background checks and are 'point of contact' States."); *see also id.* at 28,088 (stating that of the States that don't "already require background checks for private party sales," only Utah, Florida, and Tennessee conduct their own background checks).

Even the Department concedes "these three States *may* be affected by this rule to the extent they have to conduct increased background checks. *Id.* at 28,088 (emphasis added). Though the Department equivocates with its use of "may," its previous admissions prove Utah *will* be affected by the Final Rule. The Department unequivocally admitted that the ATF's regulations, as amended by the Final Rule, "*will increase* the number of background checks performed." 89 Fed. Reg. at 28,993 (emphasis added). Because Utah conducts the requisite background checks in Utah, the Final Rule increases Utah's workload. At the very least, the Final Rule creates a "substantial risk" Utah's workload will increase, which is all the is required to establish an injury for standing purposes. *See Driehaus*, 573 U.S. 149 at 158.

Beyond the increased workload and associated opportunity cost, Utah has an interest in ensuring that the background checks it performs are required by federal law, and not by a Final Rule that violates federal law. In that regard, this Court has already determined the Final Rule likely violates

7

the APA and "clashes with the text of [Bipartisan Safer Communities Act (BCSA)] in at least three ways." ECF No. 44. at 8-9.

As this Court determined, the Final Rule clashes with the BSCA by providing that "there is no minimum threshold number of firearms purchased or sold that triggers the licensing requirement." *Id.* (quoting 89 Fed. Reg. at 29091). The improper triggering of the licensing requirement in turn improperly triggers the background check requirement. So the Final Rule creates a substantial risk that Utah will conduct background checks that violate the BSCA.

This Court also determined the "Final Rule arbitrarily eviscerates Section 921(a)(21)(C)'s safe harbor provision" by excluding from its protections "firearms accumulated primarily for personal protection." ECF No. 44. at 11-12. Because of that evisceration, the Final Rule improperly requires licenses and background checks for sales protected by the statutory safe harbor provision. The unnecessary and unlawful background checks that Utah must perform because of the evisceration constitutes a burden on Utah sufficient to demonstrate standing. *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 446 (5th Cir. 2019) (ruling that Texas had standing to challenge EEOC's guidance that imposed a burden on Texas).

To be clear, for purposes of this motion, Utah doesn't claim these additional background checks cause a pocketbook injury. For now, Utah

8

assumes the background checks are cost neutral because BCI collects a fee for conducting background checks. Utah Code § 76-10-526(12). Yet, Utah will suffer other substantial injuries from these additional checks. Though background checks presumably are cost neutral, Utah has made the policy choice of not requiring universal background checks or any checks beyond those required by Congress. But, in violation of Utah policy, the Final Rule will compel Utah perform to additional checks not required or authorized by Congress or Utah law. Forcing Utah to violate its policy is an injury. The time spent performing unauthorized background checks could be used to perform other work that promotes Utah policy.

## Conclusion

For these reasons, Utah has standing.

/s/ Andrew Dymek
Andrew Dymek* (Utah Bar No. 9277)
Assistant Solicitor General
Office of the Utah Attorney General
Heber Wells Bldg.
160 East 300 South, Fifth Floor
P.O. Box 140858
Salt Lake City, Utah 84114-0180
801-366-0533
adymek@agutah.gov

Counsel for Plaintiff State of Utah
*Admission to ND Tex pending

Filed on ECF by Stanford Purser on behalf of Mr. Dymek, and under his signature, by his permission.

9

**Certificate of Service**

The foregoing documents was served on all counsel of record via the Court's ECF filing system.

<u>Andrew Dymek</u>