UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA, STATE OF MISSISSIPPI, STATE OF UTAH, JEFFREY W. TORMEY, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, TENNESSEE FIREARMS ASSOCIATION, and VIRGINIA CITIZENS DEFENSE LEAGUE,<br><br>  *Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, UNITED STATES DEPARTMENT OF JUSTICE, MERRICK GARLAND, in his official capacity as Attorney General of the United States, *and* STEVEN M. DETTELBACH, in his official capacity as Director of ATF,<br><br>  *Defendants*. | CIVIL ACTION NO. 2:24-CV-00089-Z |

**INDIVIDUAL AND ORGANIZATIONAL PLAINTIFFS' REPLY
TO DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEFING ON STANDING**

1

Exhibit A

I.      **Plaintiff Tormey Has Standing.**

Defendants dispute Tormey's standing, claiming he "fails to satisfy multiple elements," including "fail[ing] to 'establish a serious intention to engage in conduct proscribed by law.'" ECF #66 ("Resp.") at 13. First, Defendants claim this Court "did not analyze" this prong. *Id.* at n.9. On the contrary, the Court specifically described Tormey's conduct (ECF #44 at 5) as something Tormey wishes to continue (ECF #16-3 ¶11).

Second, Defendants maintain that Tormey's conduct as a "collector and a hobbyist" conclusively does not constitute being "engaging in the business." Resp. 14. In support, Defendants merely quote the Rule quoting the statute. *Id.* But what the Rule *does* with that definition is important. Rather than acknowledge the statutory safe harbor for what it is – that certain conduct definitively *is not* "engaging in the business" – it creates a novel and affirmative obligation to prove statutory compliance, claiming protected activity merely "does not support a presumption" so long as the accused provides "reliable evidence" of innocence. FR at 29092. It does not matter whether Tormey's conduct ultimately is not "engaging in the business" (though under the Rule's presumptions, it arguably is). For many, the process of defending against enforcement actions will be the punishment. The law does not require Plaintiffs to await enforcement to challenge the Rule's inversion of their being "innocent until proven guilty."

When confronted with Tormey's self-defense collection, Defendants suddenly invoke the statutory "multi-element standard" the Rule neglects, now emphasizing "time, attention, and labor to dealing." Resp. 14. But as Plaintiffs already explained, the Rule's presumptions *do not apply the* "multi-element standard." MPI 20-21. Instead, the Rule presumes illegality for all manner of innocuous conduct, leaving Plaintiffs with the burden to show which "element[s]" should cause an enforcement action or prosecution to fail.

2

Third, Defendants double down that "even a single … offer to engage in a transaction" can require licensure, while simultaneously insisting that Tormey's repeated sales "do[] not constitute being 'engaged in the business.'" Resp. 15, 14.  But this interpretation of the law flatly contradicts the statute's plural requirement of "repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C); ECF #44 at 9-10.  Defendants then discuss the purportedly "ample case law" supporting the Rule (Resp. 15-16) to defend all manner of *other* types of EIB charges.  But what is at issue is how the Rule applies to *Tormey's* activities.

Finally, Defendants challenge this Court's finding of a credible threat of enforcement against Tormey (ECF #44 at 6), discounting the Arwady prosecution and reiterating their position that Tormey is not "engaging in the business" under the Rule.[1]  But Defendants' nonbinding, self-serving, and conclusory insistence that Tormey is not "engaging in the business" is of little reassurance given Defendants' vigorous defense of their Rule and the presumptions' general application of an unlawful burden-shifting scheme on all gun owners, Tormey included.  As the Fifth Circuit recently observed, "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution *in the absence of compelling contrary evidence*."  *Barilla v. City of Houston*, 13 F.4th 427, 432 (5th Cir. 2021) (emphasis added); *see also id.* at n.2 (noting "neither Supreme Court nor Fifth Circuit precedent limits this rule to political speech claims"); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022) (The Second Amendment "is not 'a second-class right, subject to an entirely different body

---

[1] Even if true, Tormey remains subject to the Rule's presumptions generally, under which he must prove his own statutory compliance to avoid liability.

3

of rules than the other Bill of Rights guarantees.'"). Ironically, Defendants have failed to bear *their* burden here, as they do not even begin to disclaim their intent to enforce the Rule.

**II.     The Organizational Plaintiffs Have Standing.**

Defendants bifurcate their opposition to the organizational Plaintiffs' standing. First, Defendants claim GOF, a non-traditional membership association, fails the "indicia of membership" test. Second, Defendants claim GOA, TFA, and VCDL all fail by virtue of their arguments against Plaintiff Tormey's standing. Defendants then urge adoption of a 'naming' requirement for identified yet unnamed members, which is not the law of this Circuit – and which this Court already rejected. Then, as to all organizational Plaintiffs, Defendants appear to make a hearsay objection to Plaintiffs' supplemental declarations before citing out-of-circuit cases to suggest a heightened summary-judgment standard for a preliminary injunction. Finally, Defendants claim the identified organizational members' conduct conclusively is not "engaging in the business." None of these arguments is availing.

First, Defendants contest GOF's standing by citing *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012), to suggest a conjunctive "indicia of membership" requirement where non-traditional members must "elect leadership, serve as the organization's leadership, *and* finance the organization's activities" in all cases. Resp. 18. But the statement Defendants reference was dicta, as the Court did not reach that question or apply the "indicia of membership" test. Indeed, other courts have held that the "indicia of membership test" is disjunctive rather than conjunctive. *See Gettman v. DEA*, 290 F.3d 430, 435 (D.C. Cir. 2002) (emphases added) (representational standing *can be achieved* even by "'an organization that has no members in the traditional sense'" if "'the organization is the <u>functional equivalent</u> of a traditional membership organization,'" such as by members "selecting its leadership, guiding its

4

activities, or financing those activities").[2, 3] A disjunctive test makes sense, as the "indicia" which Defendants purport to require for non-traditional organizations are not even requirements for *traditional* membership organizations. Rather than requiring each and every traditional organization to "elect leadership" in order to have standing, for example, the Supreme Court simply declared that "[w]here … an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 201 (2023). It is unlikely that the Court intended a significantly more stringent standard for one organization over another, when the end goal of the *Hunt* test simply is to determine whether an organization "represent[s]" individuals which are "*effectively* members." *Id.* at 200.

Because *Hunt* requires that an "organization must represent the individuals it claims as members and provide 'the means by which [those individuals] express their collective views and

---

[2] *Cf. Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.C. Cir. 2002) (emphasis added) (rejecting representational standing because "Fund Democracy's course is steered entirely by Bullard, and Fund Democracy does not claim to receive funding from its purported members," and thus "it may have reasons for instituting suit other than to assert the rights of these alleged supporters").

[3] Nor did the court in *Apalachicola Riverkeeper v. Taylor Energy Co., L.L.C.*, 113 F. Supp. 3d 870, 876 (E.D. La. July 7, 2015), understand the test to be conjunctive. Rather, the court stated that "[n]either compliance with corporate formalities nor the existence of a formal membership structure is required. Instead, the Court inquires whether an individual possesses certain 'indicia of membership,' *such as* … financing the organization's activities [or] associating with the organization voluntarily. *This is a holistic test*. The purpose is to determine whether an organization provides the means by which members 'express their collective views and protect their collective interests.'" (Emphasis added.) *See also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344-45 (1977) ("while the apple growers and dealers are not 'members' of the Commission in the traditional trade association sense … they alone finance its activities, including the costs of this lawsuit.... In a very real sense, therefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests."). This expression of "collective views" and protection of "collective interests" is quintessentially the function of nonprofit organizations, whether to protect seniors, veterans, or another class (such as gun owners), or to advocate for environmental, social justice, or other causes (such as the right to keep and bear arms).

5

protect their collective interests,'" GOF clearly meets this standard. *Funeral Consumers*, 695 F.3d at 344 n.9. For this reason, Plaintiffs submit that their supplemental briefing adequately 'indicates' GOF is the functional equivalent of a membership organization. *See* ECF #56 at 2 (explaining that members voluntarily fund GOF, receive information on activities from GOF, communicate their views and priorities to GOF, and rely on GOF to represent their interests).

Second, Defendants claim GOA, TFA, and VCDL lack standing because Tormey, their member, lacks standing. Resp. 18. But as already explained, Defendants fail to undermine Tormey's individual standing, so their argument as to the organizational Plaintiffs fails in turn. *See supra*; *see also* ECF #53.

Third, assuming that Tormey lacks standing in his own right, Defendants posit that GOA, TFA, and VCDL must also lack standing because they *identified* but did not *name* <u>other</u> members.[4] Resp. 19. While "respectfully disagree[ing]" with this Court's prior conclusion that the doctrine of representational standing does *not* in fact require *naming* of members, Defendants fail to cite one Fifth Circuit case supporting their interpretation of the law. *Id.* Indeed, Defendants rely on decisions from the Second,[5] Eighth, Sixth, and First Circuits. But even under these cases' most charitable reading,[6] all Defendants identify is a circuit split from the Eighth Circuit – certainly not the law that this Court must (or even should) apply. In fact, Defendants' Sixth, First, and Second Circuit cases support Plaintiffs' standing here. *See Waskul v. Washtenaw Cty. Cmty. Mental Health*,

---

[4] *But see* ECF #54-1 (identifying C. Richard Archie as both a director *and member* of TFA).
[5] Under *Do No Harm v. Pfizer Inc.*, 96 F.4th 106 (2d Cir. 2024), Plaintiffs still could disclose "*to the court* the names of the members whose Article III injuries support the organization's standing" while avoiding disclosure to Defendants or to the public generally. *Id.* at 119. And even then, the Second Circuit still supports Plaintiffs' standing. *See id.* at 118 ("association must identify by name at least one injured member for purposes of establishing Article III standing....").
[6] Save for the outlier Eighth Circuit, Defendants' remaining circuits all require an organization to name just *one* member, not *every* member. To hold otherwise would undo the doctrine of representational standing altogether.

900 F.3d 250, 255 (6th Cir. 2018) (emphases added) ("the [organization] must show that *one* of its *named* members…" has standing.); *see also Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (emphasis added) ("the Supreme Court has said that an affidavit provided by an association to establish standing is insufficient unless it names *an* injured individual."); *see also* n.5, *supra*. Here, all organizations have named at least one member who has standing.

Additionally, the Seventh, Ninth, Tenth, and Eleventh Circuits support the position that no individual member need be named. *See Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (representational standing "allows for the member on whose behalf the suit is filed to remain unnamed by the organization"); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (Court "not convinced" that "an injured member of an organization must always be specifically identified.... Where it is relatively clear … that one or more members have been or will be adversely affected … and where the defendant need not know the identity of a particular member to understand and respond … we see no purpose to be served by requiring an organization to identify by name the member or members injured."); *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949-50 (10th Cir. 2024) (answering "yes" to "whether the first element [of standing] can be satisfied when the organization's members … are not identified by name"); *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) ("Nor must the association name the members on whose behalf suit is brought."). For a concise and reasoned refutation of Defendants' interpretation of *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), Plaintiffs adopt by reference the Tenth Circuit's discussion in *Speech First*, 92 F.4th 947. In other words, the overwhelming weight of authority supports the organizations' standing here.

Fourth, Defendants take issue with Plaintiffs' supplemental declarations because they aggregated the concerns of specific unnamed members. Defendants discount these declarations as

7

"hearsay," observing that the organizations' "leader[s] merely summarize[] statements made by other … members." Resp. 19. At the outset, this admission – that the organizations effectively advance the concerns of their members – belies Defendants' earlier claim that GOF "fails to establish that it is an 'appropriate representative' of its supporters." Resp. 18. But more importantly, Defendants' theory has never been the test for representational standing, which simply requires identification or description of members. To require the members to unmask themselves in individual declarations would undermine the doctrine in the first place.

Fifth, Defendants demur that Plaintiffs' current supplemental briefing in support of preliminary relief "certainly would not establish associational standing at the summary judgment stage." Resp. 20. But again, that ignores Tormey's non-hearsay declaration. And even if true, Defendants fail to cite a single authority from within this Circuit to support imposing such a requirement here, nor do they explain why it even would be preferable.

Finally, Defendants claim that, even if this Court were to consider the identified members in each organizational Plaintiff's supplemental declaration, the members' conduct "does not rise to being 'engaged in the business' of dealing firearms." Resp. 21. But in each case, the members' conduct expressly falls under a presumption, as explained in each supplemental declaration and brief, or otherwise falls victim to the Rule's statutory expansionism.

Accordingly, Plaintiffs Tormey, GOA, GOF, TFA, and VCDL have standing.

                                                 Respectfully submitted,

Dated: June 11, 2024

Brandon W. Barnett
Texas Bar No. 24053088
Barnett Howard & Williams PLLC
930 W. 1st St., Suite 202
Fort Worth, Texas 76102
817-993-9249 (T)
817-697-4388 (F)
E-mail: barnett@bhwlawfirm.com

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
NDTX#: 102784MS
MS Bar No. 102784
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
E-mail: stephen@sdslaw.us

John I. Harris III (TN # 12099)
Schulman, LeRoy & Bennett PC
3310 West End Avenue, Suite 460
Nashville, Tennessee 37203
(615) 244 6670 Ext. 111
Fax (615) 254-5407
jharris@slblawfirm.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, hereby certify that I have on this day caused the foregoing document or pleading to be filed with this Court's CM/ECF system, which caused a Notice of Electronic Filing and copy of this document or pleading to be delivered to all counsel of record.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh