**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

STATE OF TEXAS, *et al.*,

    Plaintiffs,

    v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

    Defendants.

Case No. 2:24-cv-00089-Z

## <u>REPLY IN SUPPORT OF</u><br><u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

I.      Plaintiffs Lack Standing. ..........................................................................................1

II.     The GCA Does Not Impose A Rigid Numerical Threshold of Multiple Completed
        Purchases and Sales ..................................................................................................3

III.    The GCA Requires Predominant Intent to Profit, Not Actual Profit ................................7

IV.     The Rule Appropriately Regulates Former Licensees .........................................................10

V.      ATF Has Authority to Define Statutory Terms ...................................................................13

VI.     The Rule Properly Interprets the "Personal Collection" Provision ..................................14

VII.    The Rule's Presumptions Are a Lawful Exercise of ATF's Authority ............................17

VIII.   The Rule of Lenity Is Inapplicable ....................................................................................20

IX.     The Rule Comports with the Second Amendment ..............................................................21

X.      The Rule Does Not Violate the Fourth Amendment ...........................................................23

XI.     The Rule Is Not Unconstitutionally Vague .........................................................................24

XII.    The Rule Does Not Violate the Separation of Powers .......................................................24

XIII.   Any Relief Should Be Appropriately Limited ....................................................................24

XIV.    Conclusion ...........................................................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Air Prods. & Chems., Inc. v. GSA,*
   700 F. Supp. 3d 487, (N.D. Tex. 2023) ................................................................15

*Ballard v. Burton,*
   444 F.3d 391 (5th Cir. 2006) ..............................................................................8

*Barber v. Thomas,*
   560 U.S. 474 (2010) ...........................................................................................20

*Clark v. Scouffas,*
   No. 99 C 4863, 2000 WL 91411 (N.D. Ill. Jan. 19, 2000) ................................9

*Cole v. U.S. Dep't of Agric.,*
   33 F.3d 1263 (11th Cir. 1994)............................................................................19

*Dist. of Columbia. v. Heller,*
   554 U.S. 570 (2008) .................................................................................15, 21, 22

*Freeman v. Quicken Loans, Inc.,*
   626 F.3d 799 (5th Cir. 2010) ..............................................................................15

*Johnson v. Smith,*
   104 F.4th 153 (10th Cir. 2024) ..........................................................................23

*Mallory v. Norfolk S. Ry. Co.,*
   600 U.S. 122 (2023) ...........................................................................................23

*McRorey v. Garland,*
   99 F.4th 831 (5th Cir. 2024)..........................................................................21, 22

*Myers v. United States,*
   272 U.S. 52 (1926) .............................................................................................22

*Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,*
   522 U.S. 479 (1998) ...........................................................................................15

*Nat'l Rifle Ass'n v. Brady,*
   914 F.2d 475 (4th Cir. 1990) .........................................................................13, 17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   597 U.S. 1 (2022) ...............................................................................................21

*Ortiz v. Am. Airlines,* Inc.,
  5 F.4th 622 (5th Cir. 2021) ................................................................ 1, 2

*Paxton v. Dettlebach,*
  105 F.4th 708 (5th Cir. 2024) ............................................................... 1

*Teixeira v. Cnty. of Alameda,*
  873 F.3d 670 (9th Cir. 2017) ................................................................ 23

*Tex. Med. Ass'n v. U.S. Dept. of Health and Human Servs.,*
  110 F.4th 762 (5th Cir. 2024) ............................................................... 25

*Texas Med. Ass'n v. U.S. Dep't of Health & Human Servs.,*
  120 F.4th 494 (5th Cir. 2024) ............................................................... 25

*United States v. Baptiste,*
  607 F. App'x 950 (11th Cir. 2015) ......................................................... 5

*United States v. Biswell,*
  406 U.S. 311 (1972) ............................................................................ 23

*United States v. Carter,*
  801 F.2d 78 (2d Cir. 1986) ................................................................... 5

*United States v. Cerri,*
  753 F.2d 61 (7th Cir. 1985) .................................................................. 24

*United States v. Flores,*
  53 F.4th 313 (5th Cir. 2022) ................................................................ 17

*United States v. Flores,*
  652 F. Supp. 3d 796 (S.D. Tex. 2023) ................................................... 9

*United States v. Gray,*
  470 F. App'x 468 (6th Cir. 2012) .......................................................... 5

*United States v. Idarecis,*
  164 F.3d 620, 1998 WL 716568 (2d Cir. 1998) ...................................... 15

*United States v. Kevin Shan,*
  361 F. App'x 182 (2d Cir. 2010) ........................................................... 5, 6

*United States v. King,*
  735 F.3d 1098 (9th Cir. 2013) .............................................................. 5, 8

*United States v. Murphy,*
  852 F.2d 1 (1st Cir. 1988) .................................................................... 5, 6

*United States v. Nadirashvili,*
   655 F.3d 114 (2d Cir. 2011) ................................................................ 5, 6

*United States v. Rahimi,*
   602 U.S. 680 (2024) .................................................................. 21, 22

*United States v. Ruan,*
   597 U.S. 450 (2022) .......................................................................18

*United States v. Shipley,*
   546 F. App'x 450 (5th Cir. 2013) .......................................................8

*United States v. Strunk,*
   551 F. App'x 245 (5th Cir. 2014) .......................................................9

*United States v. Tyson,*
   653 F.3d 192 (3d Cir. 2011) ..............................................................9

*United States v. Valdes,*
   681 F. App'x 874 (11th Cir. 2017) ................................................. 8, 9

*United States v. Williams,*
   553 U.S. 285 (2008) .......................................................................24

*United States v. Wilmoth,*
   636 F.2d 123 (5th Cir. Unit A 1981) ...................................................8

*United States v. Zheng Jian Shan,*
   80 F. App'x 31 (9th Cir. 2003) ...................................................... 5, 6

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982) .......................................................................24

**Constitutional Provisions**

U.S. Const., amend. II ...........................................................................21

**Statutes**

5 U.S.C. § 706 ....................................................................................24

18 U.S.C. § 921 .............................................................................*passim*

18 U.S.C. § 922 ...................................................................................11

18 U.S.C. § 923 ............................................................................... 4, 12

18 U.S.C. § 926 ............................................................................. 13, 17

FOPA, Pub. L. No. 99-308, § 101, 100 St. 449 ................................................................ 10, 15

**Regulations**

27 C.F.R. § 478.11 ................................................................................................................ 14, 16

27 C.F.R. § 478.13 ......................................................................................................... 3, 18, 21, 25

89 Fed. Reg. 28,968 (Apr. 19, 2024) .......................................................................... *passim*

### I.    Plaintiffs Lack Standing.

For the reasons explained in detail in Defendants' summary judgment brief, all Plaintiffs lack standing under the heightened standard of proof applicable at the summary judgment stage. Defs.' Mot. for Summ. J. and Opp. to Pls.' Mot. for Summ. J. (Defs.' Br.), ECF No. 90, 7-27. Plaintiffs' reply offers no further support "by affidavit or other evidence [of] specific facts" to "support each element of the standing analysis." *Ortiz v. Am. Airlines*, Inc., 5 F.4th 622, 628 (5th Cir. 2021)(cleaned up). The Plaintiffs therefore fail to satisfy the standing inquiry for the numerous reasons already explained, and their arguments based on the existing insufficient record cannot save their claims.

Plaintiff Tormey remains unable to demonstrate that he has any serious intention to engage in conduct proscribed by the Rule and therefore that there exists any credible threat of enforcement against him. *See Paxton v. Dettlebach*, 105 F.4th 708, 711 (5th Cir. 2024). Although the Rule has been preliminarily enjoined for more than 6 months, Tormey has failed to submit any evidence that he, or indeed anyone else similarly situated, has engaged in conduct that would subject them to potential enforcement under the Rule (whether enjoined or not in the relevant circumstance).[1] Tormey's previous assertions were indeed vague "some day" intentions insufficient to justify standing at any stage. *See id.* at 713; Defs.' Br. at 8-13. Although Plaintiffs' reply reiterates Tormey's various objections to the Rule in the abstract, *see* Pls.' Opp. to Defs.' Mot. for Summ. J. and Reply to Pls.' Mot. for Summ.

---

[1] Plaintiffs contend that they did submit evidence of the Rule being applied to persons similarly situated to Tormey. However, even assuming the people involved were in fact comparable, Plaintiffs' examples of 1) a prosecution occurring 10 years before the promulgation of the Rule, and 2) a hearsay account of alleged discussions with ATF that did not result in a prosecution, clearly cannot support a conclusion of a credible threat to Tormey. *See* Pls.' Reply Br. at 12-13.

J. (Pls.' Reply Br.), ECF No. 94, at 9-12, it fails to advance his argument that he meets the requirements to actually challenge the Rule himself.[2]

The State Plaintiffs also fail to supply any additional support for standing at summary judgment. Despite the increased burden of proof, Plaintiffs rely on their attenuated chain of causation arguments and speculation about possible monetary losses which predate the effective date of the Rule. Plaintiffs continue to assert that the downstream effects of the Rule are predictable despite a lack of logical basis or any supporting evidence. *See* Defs.' Br. at 24-27. Plaintiffs mischaracterize Defendants' position, alleging it would require Plaintiffs to "prove actual revenue losses in non-party jurisdictions to establish standing." Pls.' Reply Br. at 6. Not so. Plaintiffs admit that they rely exclusively on the likelihood of a specific type of lost state sales tax revenue, Pls.' Reply Br. at 4, and so evidence of the impact, if any, of the Rule in the states where it is not enjoined would show how tax revenues would *likely* be affected in the enjoined states in the absence of the preliminary injunction. *See* Defs.' Br. at 25-27. But Plaintiffs did not obtain or provide this information and instead ask the Court to continue relying on their stale and speculative predictions at summary judgment.

Plaintiffs also do not provide any additional support for the Organizational Plaintiffs' standing. Plaintiffs contend that the Defendants' objections are moot because they have now identified the formerly anonymous organization members by name, Pls.' Reply Br. at 15. But merely identifying them does not cure the fact that their allegations, like Tormey's, fail to establish a serious intention to engage in conduct proscribed by the Rule and a consequent credible threat of enforcement. Defs.' Br. at 17-19. Plaintiffs are simply incorrect that the summary judgment stage does not demand a higher quantum of proof for standing, *see Ortiz*, 5 F.4th at 628, and their conclusory assertions that their

---

[2] Lacking any additional support, Tormey's arguments concerning his threat of prosecution attempt to improperly water down the standing requirements, including by incorrectly applying the unique standing jurisprudence of the First Amendment context. *See* Pls.' Reply Br. at 13-14.

previously submitted declarations "already were sufficient" do not support their argument. Pls.' Reply Br. at 16. Plaintiffs also brush off Defendants' objections to their reliance on various types of hearsay evidence, but such evidence is impermissible at summary judgment, whether or not it was considered in the preliminary injunction context. *See* Defs.' Br. at 15-16. Plaintiffs further contend that the individual declarants for the Organizations have demonstrated that they are at risk of enforcement because the Rule will presume that they acted with a predominant intent to profit. *Id.* at 17. But as Defendants explained, with regard to both these individuals and Tormey, the relevant consideration for pre-enforcement standing is whether there is a credible threat of prosecution. *See* Defs.' Br. at 8-13. Since none of the declarants come close to meeting the "engaged in the business" definition there is no credible risk of enforcement against them. *See id.* at 17-19. Finally, Plaintiffs assert that the organizations and declarants have not provided further evidence to the Court of their engagement in activities they feared would be unlawful under the Rule because they have the benefit of the preliminary injunction. Pls.' Reply Br. at 19. But that is not a justification for failing to produce such evidence. Defendants challenged the declarants' alleged future plans to buy and sell firearms; if any of the Plaintiffs or their members had in fact engaged in this activity it could only strengthen their summary judgment position to provide that evidence.

## II.    The GCA Does Not Impose A Rigid Numerical Threshold of Multiple Completed Purchases and Sales.

ATF correctly construed the GCA to require "a fact-specific inquiry" about whether a person is engaged in the business of dealing in firearms, rather than imposing a "minimum threshold number of firearms purchased or sold." 89 Fed. Reg. 29,968, 29,091 (Apr. 19, 2024) (27 C.F.R. § 478.13(b)); Defs.' Br. 27-32. From the enactment of FOPA in 1986 until this Court's preliminary rulings, courts had uniformly concluded that the GCA's text did not impose a numerical threshold of firearms purchases or sales. Defs.' Br. 29; 89 Fed. Reg. at 28,976 & n.67, PA009 (collecting cases). In arguing

for a rigid threshold of at least two completed purchase and sales transactions, Pls.' Reply Br. 22-28, Plaintiffs misread the GCA's text and fail to distinguish this case law.

Plaintiffs concede that "the statute imposes no fixed numbers," but then immediately backtrack that concession by asserting that the GCA imposes a fixed minimum of at least two completed purchase and sale transactions. Pls.' Reply Br. 22 (arguing that "more than one . . . transaction involving more than one firearm" is required). The error in Plaintiffs' interpretation, can be shown by considering a person who undergoes substantial efforts to open a gun shop, say by acquiring a storefront, registering the business with the state, hiring staff, displaying inventory, and advertising the store's opening. As Defendants explained, such a person satisfies the statutory definition of engaging in the business of dealing, even before he has made a sale or two sales, because he has devoted substantial effort to engage in firearms dealing as a regular business with the predominant intent to profit from firearms purchases and resales. Defs.' Br. 28-29. Yet Plaintiffs argue that such a gun shop owner is not engaged in the business of dealing until he completes multiple sales, even though they do not dispute Defendants' argument that Plaintiffs' interpretation would create a "'first sale is license-free' exception to the GCA's licensing requirement." Pls.' Reply Br. 23 (quoting Defs.' Br. 28-29). This argument cannot be squared with the GCA's plain text, which requires a firearms dealer to obtain a license *before* selling to the public. 18 U.S.C. § 923(a) ("No person shall engage in the business of . . . dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General.").

Plaintiffs' proposed atextual rule would frustrate the GCA's purposes of protecting public safety. Under Plaintiffs' view, even if law enforcement determined that a gang kingpin or terrorist had devoted substantial effort to launching a firearms sales operation, law enforcement could not prosecute the dealer for unlawful firearms dealing unless and until he successfully completed multiple firearms sales, by which time the firearms would have already made it into criminals' hands.

4

Congress's choices to make the required action "devot[ing] time, attention, and labor," 18 U.S.C.

§ 921(a)(21)(C), rather than completing a numerical threshold of firearms sales, and requiring dealers

to get licensed *before* they begin selling, *id.* § 923(a), avoid such dangerous results.

     Plaintiffs do not dispute that apart from this Court's preliminary rulings, courts have uniformly

affirmed ATF's view that the GCA does not set a rigid numerical threshold of firearms transactions.[3]

Plaintiffs' efforts to distinguish or rebut this uniform case law are unpersuasive. Plaintiffs first point

out that in some of these cases, the defendant engaged in multiple firearms transactions, as Plaintiffs

assert is required. Pls.' Reply Br. 23-24, 25. That is true in some cases, but not others. As Plaintiffs

concede, in *United States v. King*, 735 F.3d 1098 (9th Cir. 2013), the defendant completed "*no sales*," yet

particularly egregious facts showed the defendant's substantial efforts to deal in firearms. Pls.' Reply

Br. 25. Other cases involved a single proven transaction combined with other evidence of unlawful

dealing, such as the defendants repeatedly holding themselves out as a source for firearms and

engaging in efforts to deal in firearms, *United States v. Zheng Jian Shan*, 80 F. App'x 31, 32 (9th Cir.

2003); *United States v. Nadirashvili*, 655 F.3d 114, 120-21 (2d Cir. 2011), or a single transaction involving

---

[3] *See, e.g., United States v. Gray*, 470 F. App'x 468, 473 (6th Cir. 2012) ("the statute does not establish a minimum threshold for the number of guns sold"); *United States v. Kevin Shan*, 361 F. App'x 182, 183 (2d Cir. 2010) (affirming conviction where "defendant sold two firearms within roughly one month" and advertised himself as a source of other weapons for resale); *United States v. Zheng Jian Shan*, 80 F. App'x 31, 32 (9th Cir. 2003) (affirming conviction based on "evidence of the sale of weapons-arguably in only one transaction" along with further evidence of his readiness to procure and resell other weapons); *United States v. Murphy*, 852 F.2d 1, 8 (1st Cir. 1988) (affirming conviction based on a "single transaction" that "was sufficiently large in quantity, price and length of negotiation to constitute dealing in firearms"); *United States v. Baptiste*, 607 F. App'x 950, 952-53 (11th Cir. 2015) ("§ 921(a)(21)(C) does not require a threshold number of sales, profit, or hours spent before a person has engaged in the business of dealing in firearms"); *United States v. King*, 735 F.3d 1098, 1102, 1107 n.8 (9th Cir. 2013) (upholding conviction where defendant had undergone substantial effort to set up an illicit firearms trafficking operation even though "there was no evidence that King successfully sold any firearms" because "Section 922(a)(1)(A) does not require an actual sale of firearms"); *United States v. Nadirashvili*, 655 F.3d 114, 119 (2d Cir. 2011) (rejecting a "magic number" of required sales in aiding-and-abetting conviction where defendants "were aware [the co-defendant] was engaged in a single gun transaction" and was also aware of the co-defendant's other substantial efforts to deal in firearms) (quoting *United States v. Carter*, 801 F.2d 78, 81-82 (2d Cir. 1986)).

102 firearms and negotiated over a year, *United States v. Murphy*, 852 F.2d 1, 8 (1st Cir. 1988). Yet on Plaintiffs' view, courts and factfinders would be unable to consider these "egregious facts," and instead would conclude that such parties had failed to meet a rigid numerical requirement of "more than one . . . transaction involving more than one firearm." Pls.' Reply Br. 22, 25.

Plaintiffs also argue that some cases should be discounted because they issued before FOPA's enactment. Yet each of these cases also cited and quoted FOPA's statutory text.[4] These cases thus reflect the courts' reasoned conclusions that FOPA's statutory text was consistent with pre-FOPA case law rejecting rigid numerical thresholds.[5]

Finally, Plaintiffs rehash their arguments that individual words in the statutory definition impose a requirement of multiple completed purchase and sale transactions. Pls.' Reply Br. 26-28. But as Defendants explained, read in context, the definition requires devoting substantial effort to dealing in firearms with the intent to profit from selling firearms, not meeting a numerical threshold of completed transactions. Defs.' Br. 30-32. Plaintiffs, for example, point to "dealing," "engaging," "firearms," and "regular course of trade or business" as requiring completed sales, Pls.' Reply Br. 26, but the conduct required by the statute is "devot[ing]" (*i.e.*, expending) "time, attention and labor", 18 U.S.C. § 921(a)(21)(C), not completing a threshold number of sales. Plaintiffs read the phrase "the repetitive purchase and resale of firearms" as an independent requirement that must actually occur before the license requirement attaches. Pls.' Reply Br. 25-26. That ignores the word "through," which makes clear that the phrase describes how a person must intend to earn a profit: "to predominantly

---

[4] *See Kevin Shan*, 361 F. App'x at 183; *Zheng Jian Shan*, 80 F. App'x at 31; *Murphy*, 852 F.2d at 8 n.8; *Nadirashvili*, 655 F.3d at 119.

[5] Plaintiffs are incorrect that the administrative record "discredit[s]" cases cited by Defendants. Plaintiffs cite a comment submitted by a law firm arguing that certain cases took an approach to FOPA's statutory definition that, in the law firm's view, did not give sufficient credence to FOPA's requirement of intent to earn a livelihood. PA685. But that same law firm argued that the "BSCA embrace[d]" the approach taken by those cases by eliminating the requirement of intent to earn a livelihood. PA695.

earn a profit *through* the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added). Nor is there any merit in Plaintiffs' argument, Pls.' Reply Br. 27, that the statute's separate provision defining the required "intent underlying the sale or disposition of firearms," *id.* § U.S.C. § 921(a)(22), actually defines the required action rather than the required intent because the phrase includes the word "intent" once rather than twice, *see* Defs.' Br. 32.

### III.    The GCA Requires Predominant Intent to Profit, Not Actual Profit.

The GCA clearly defines "to predominantly earn a profit" as an *intent* requirement rather than an *action* requirement, "mean[ing] that the *intent* underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other *intents*." 18 U.S.C. § 921(a)(22) (emphasis added); *see* Defs.' Br. 33-36. Although Plaintiffs argue that this provision requires actual profit, they do not offer a plausible reading of this language as anything other than an articulation of the required intent.

Plaintiffs instead restate their argument that under the "negative implication canon," the definition's proviso — which states, "*Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism," 18 U.S.C. § 921(a)(22) — means that proof of *actual* profit is required when the purpose is not crime or terrorism. As Defendants showed, the negative implication canon cannot bear that weight because such a reading would violate the harmonious reading canon by causing the proviso to conflict with the main definition's clear language stating the required intent. Defs.' Br. 35. Plaintiffs respond that "the harmonious-reading canon might have application *only if one adopts Defendants' reading* of the statute. If not, then *all* canons support Plaintiffs." Pls.' Reply Br. 30. This argument fails because Plaintiffs offer no plausible reading of the main definition other than as an intent requirement. Yet the main definition and proviso are in perfect harmony if one reads the phrase "proof of profit" in the proviso as referring to the same proof of predominant intent to profit discussed in the main

definition. Plaintiffs protest that that such a reading would add words to the statute, but the proviso does not specify the type of "profit"-related "proof" to which it refers. Plaintiffs could equally be accused of adding language to the statute by reading the phrase as "proof of *actual* profit." The difference is that Defendants' reading harmonizes the proviso with the main definition, while Plaintiffs' reading would cause them to conflict diametrically.

Plaintiffs do not dispute that many cases, over decades, have concluded that actual profit is not required. Defs.' Br. 33. Plaintiffs' attacks on these cases are unavailing. *See* Pls.' Reply Br. 28-29. Perhaps the clearest rejection of an actual profit requirement is in *United States v. Shipley*, which held that the statute "does not require that [the defendant] succeed in" making a profit, such that evidence that the defendant "suffer[ed] a net loss" would not undermine a conviction. 546 F. App'x 450, 454 (5th Cir. 2013).[6] Plaintiffs claim that *Shipley* "relied on" a pre-FOPA case, *United States v. Wilmoth*, 636 F.2d 123 (5th Cir. Unit A 1981), Pls.' Reply Br. 29, but *Shipley* does not cite *Wilmoth*, and its relevant analysis relies on FOPA's text and post-FOPA case law. *See Shipley*, 546 F. App'x at 454.

Defendants also cited *King*, in which the Ninth Circuit held that the GCA required an "intent of making profits," and upheld a conviction even though the defendant had made no sales and therefore could not have profited. 735 F.3d at 1106-07. Plaintiffs bizarrely discount *King* as an "inapplicable" "pre-FOPA case[]," even though it was decided in 2013, 27 years after FOPA.

Likewise, in *United States v. Valdes*, the Eleventh Circuit explained that the government "does not need to show . . . that [the defendant] necessarily made a profit from dealing," and affirmed her conviction based on evidence of intent to profit, such as calling her activity a "hustle" and "hand[ing]

---

[6] Plaintiffs note that *Shipley* is nonbinding, Pls.' Reply Br. 28, which Defendants indicated by providing a Federal Appendix citation. Still, Fifth Circuit unpublished decisions issued after January 1, 1996 can be cited as "persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006).

out business cards." 681 F. App'x 874, 877-78 (11th Cir. 2017) (quoting *Wilmoth*, 636 F. 2d at 125).[7] Plaintiffs argue that in *Valdes*, the defendant earned "actual profit." Pls.' Br. 29. But the court discussed only the number of firearms sold, and did not analyze whether her revenues exceeded her costs, as would have been necessary if actual profit were required. *See Valdes*, 681 F. App'x at 877-78.

In *United States v. Tyson*, the court discussed evidence of actual profit, as Plaintiffs note, Pls.' Br. 29, but it did so to support its conclusion that the defendant's activity was "driven by a pecuniary motive." 653 F.3d 192, 201 (3d Cir. 2011). That approach is consistent with the Rule, which instructs that "[i]f persons repetitively resell firearms and actually obtain pecuniary gain, . . . that gain is evidence demonstrating the intent element of being engaged in the business." 89 Fed. Reg. at 29,041. Other cases are in accord. *See* 89 Fed. Reg. at 28,981 & n.96, PA014 (collecting cases). In sum, ample case law persuasively rejects a requirement of actual profit.[8]

Plaintiffs also fail to rebut Defendants' point that it is not clear how a requirement of actual profit could sensibly be enforced. Defs.' Br. 34. Plaintiffs are vague as to how they believe profit should be measured, other than to say that it could be measured by looking at each "particular sale." Pls.' Br. 30. But this approach would invite circumvention by dealers who could evade background-

---

[7] *Valdes* quoted *Wilmoth* immediately after quoting FOPA's statutory text, thus reflecting the court's conclusion that FOPA's text was consistent with *Wilmoth*. *See Valdes*, 681 F. App'x at 877.

[8] None of the three cases cited by Plaintiffs support an actual profit requirement. Pls.' Reply Br. 29-30 n.20. In *United States v. Strunk*, the Fifth Circuit noted that the defendant "retained money collected on the sale of others' firearms," (*i.e.*, that he retained revenue). 551 F. App'x 245, 246 (5th Cir. 2014). The Court did not consider whether he earned actual *profit* or suggest that profit would be required. In *United States v. Flores*, in stating that a conviction requires showing that the defendant "sold guns at wholesale or retail for profit (or to facilitate crimes)," the court did not endorse a requirement of actual profit. 652 F. Supp. 3d 796, 800 n.14 (S.D. Tex. 2023). Rather, that phrase was a summary of the Fifth Circuit pattern jury instructions, quoted immediately before that passage, which set forth the requirement of a "*principle objective of livelihood and profit* through the repetitive purchase and resale of firearms." *Id.* (emphasis added). In *Clark v. Scouffas*, the Court concluded that a person who sold two firearms to himself and one firearm to his wife over a ten-year period did not qualify as a dealer, reasoning that: "No profit was made from any of the sales; in fact, given who the purchasers were, it is likely that plaintiff *did not even intend to make a profit* from his sales." No. 99 C 4863, 2000 WL 91411, at *3 (N.D. Ill. Jan. 19, 2000) (emphasis added).

9

check requirements by selling an individual firearm at a loss, and Plaintiffs still do not specify whether they believe the required actual profit is gross profit, operating profit, before-tax profit, after-tax profit, or some other measure. There is no case law addressing how to determine whether a firearms dealer has earned actual profit because the GCA does not, and never has, required actual profit.

Finally, neither of the amendments to the engaged in the business definition since FOPA can plausibly be read as adding a requirement of actual profit. Defs' Br. 35-36. Plaintiffs do not dispute this point, arguing that FOPA "*always* included a requirement of proof of profit." Pls.' Br. 30. Thus, their theory hinges on the argument that this language from FOPA required proof of actual profit: "The term 'with the principal objective of livelihood and profit' means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." FOPA, Pub. L. No. 99-308, § 101, 100 St. 449, 450. No textual argument, not even the flawed negative implication canon argument as to the current statute, supports this reading.

## IV. The Rule Appropriately Regulates Former Licensees.

As Defendants explained in their motion and opposition, Defs.' Br. at 36-37, operation of the statute creates a group of unlicensed persons—former licensees—who may retain a stock of firearms obtained for the purpose of dealing in firearms. Without the Rule, such former licensees are prohibited from engaging in the business in the same ways and to the same extent as anyone else who is not currently licensed, *see* 18 U.S.C. §§ 921(a)(21)(C); 922(a)(1)(A), but the Rule provides limited opportunities for former licensees to dispose of such retained stock of firearms. Plaintiffs insist that the former licensee regulations actually impose additional burdens on former licensees not

contemplated by the statute, but it is the unchallenged statute and not the Rule which imposes obligations on unlicensed dealing.[9]

Plaintiffs insist that there are "only the *licensed* and the *unlicensed*" under the statute, so the Rule cannot speak to former licensees, while simultaneously insisting that former licensees cannot be subject to the restrictions applicable to either category. The statute cannot reasonably be read, as Plaintiffs contend, Pls.' Reply Br. at 31, to excuse former licensees from licensee restrictions like the one-year waiting period while simultaneously permitting them to sell "prior inventory without restriction" unlike any unlicensed person.[10] Plaintiffs are also incorrect that the Rule prohibits a person from "acquiring guns while licensed, surrendering the license, and then selling the firearms without restriction," while the statute permits it. *Id.* Although Plaintiffs assert that this is an impossible or "imaginary situation," it is exactly what they stated their interpretation would permit two sentences prior. *Id.* The statute prohibits any actions that qualify as dealing firearms by any unlicensed person, *see* 18 U.S.C. § 922(a)(1)(A), and the Rule merely clarifies the manner in which those restrictions apply to former licensees, a category of unlicensed persons. Plaintiffs are thus wrong to suggest that the Rule imposes unique burdens on former licensees, or improperly constrains former licensees in disposing of firearms they acquired as part of engaging in the business of dealing in firearms. The Rule instead benefits those former licensees by providing a clear path by which they can sell or otherwise dispose of firearms while avoiding liability.

---

[9] Plaintiffs also assert that "even if it were true that the Rule is a boon to former dealers, Defendants cite no authority allowing them to exempt anyone from the statute's operation." Pls.' Reply Br. at 31. The Rule does not exempt anyone, including former licensees, from the requirements of the statute. But if it did Plaintiffs would be unable to demonstrate any harm and would lack standing to challenge the Rule on that basis.

[10] Plaintiffs claim that the "statutory safe harbor" permits former licensees to make unrestricted sales of *inventory*, i.e. firearms accumulated for the purpose of dealing, but it very explicitly applies only to "occasional" sales of firearms for "a hobby" or "enhancement of a personal collection." 18 U.S.C. § 921(a)(21)(C).

As it concerns the specifics of the Rule's treatment of former licensees, Plaintiffs' reply continues to misread the Rule and misrepresent Defendants' positions. As explained in Defendants' motion, the presumptions applicable to former licensees do not create any liability but instead permit ATF to presume that a former licensee is engaged in the business if that person takes certain actions with a rational nexus to prohibited conduct. *See* Defs.' Br. at 37. In their reply, Plaintiffs allege that Defendants failed to respond to their argument that the Rule "ban[s]…a former licensee *ever* selling a firearm that was purportedly transferred out of inventory improperly." Pls.' Br. at 31. However, what Plaintiffs were referring to in their opening brief was the presumption that a former licensee who transfers firearms to willfully evade the requirements of the GCA is engaged in the business. *See* Pls.' Mot. for Summ. J. (Pls.' Br.), ECF No. 83 at 24-25; Rule, 89 Fed. Reg, 29,091. Defendants' opposition did address this argument, Defs.' Br. at 38, and it is indeed clear that the statute forbids attempts to deliberately skirt its requirements for licensees and unlicensed persons alike. *See* 18 U.S.C. § 923(c).

Plaintiffs also argue that notwithstanding the grace period included in the Rule for transferring firearms that remained in licensee inventory at the time a license was lost, some firearms are in a status where they can never be transferred. Pls.' Br. at 31. This characterization is not accurate. As Defendants explained, Defs.' Br. at 38-39, the statute, not the Rule, is what requires that no unlicensed person may resell firearms in a manner that qualifies as being engaged in the business. The Rule's grace periods for former licensees, contrary to Plaintiffs' arguments, clearly expand rather than restrict the opportunity to sell or otherwise dispose of inventory without being presumed to be in violation of the statute. *See* Rule, 89 Fed. Reg, 29,091-92.

Finally, Plaintiffs argue that evidence of sales of inventory by former firearms licensees cannot demonstrate that they have made both purchases and sales as required by the statute. Pls.' Reply Br. at 32. As explained *supra*, actual sales are not required to meet the statutory definition. Beyond that, as explained in Defendants' opposition, the Rule only applies presumptions to the conduct of former

licensees. *See* Defs.' Br. at 36-37. It merely identifies conduct that in non-criminal cases establishes a rebuttable presumption that a former licensee is engaged in the business and does not criminalize any conduct. Plaintiffs bear the burden of challenging the rational nexus underlying these presumptions, *see infra*, and have failed to do so. It is obvious why a person continuing to sell firearms business inventory after the termination of his license would be presumed to be engaged in the business, but the opportunity remains available to him to attempt to rebut that presumption.

## V.    ATF Has Authority to Define Statutory Terms.

The GCA indisputably delegates authority to the Attorney General, and through him ATF, to promulgate "rules and regulations as are necessary to carry out" the GCA. 18 U.S.C. § 926(a). And "[b]ecause § 926 authorizes the [Attorney General] to promulgate those regulations which are 'necessary,' it almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'" *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990). In *Brady*, the court approved as "necessary" ATF regulations defining terms in the GCA. *See id.* at 480-81 (upholding ATF regulations defining "business premises" and "gun show or event").

Despite this clear statutory grant, Plaintiffs argue that ATF lacks authority to define terms consistent with the statutory text. *See* Pls.' Reply Br. at 34, relying on a conflation of vagueness and separation of powers concepts. Plaintiffs assert that the GCA would be unconstitutional if any clarification were necessary "because ordinary people could not understand what was proscribed without reference to the Rule." *Id.* at 35. This is not the void for vagueness standard, *see infra*. Moreover, Congress anticipated and explicitly provided for the promulgation of regulations to interpret and administer the statute. *See* 18 U.S.C. § 926. Plaintiffs also argue that any regulatory definition contrary to the statutory text is necessarily void. Pls.' Reply Br. at 35. This elementary observation does nothing to advance Plaintiffs' position. As Defendants explained in detail in their opposition, there is no disparity between the Rule and the text of the GCA. *See* Defs.' Br. at 45-46.

Plaintiffs also argue that ATF acted outside its authority by defining other subsidiary terms from the statute that Plaintiffs believe to be unambiguous. *See* Pls.' Reply Br. at 35. But Plaintiffs' opinion as to the clarity of these terms is unsupported and irrelevant. As noted in the Rule, the amended GCA "authorizes the Department to utilize its expertise gained from decades of enforcement experience to further define terms or to issue other rules that are necessary to implement the GCA." 89 Fed. Reg. at 29,011, PA044. Relying on its experience, ATF determined that these terms required clarification. Its definitions of these subsidiary terms, which Plaintiffs allege are at most superfluous, not inconsistent with the text of the statute, serve a necessary function by preventing attempts to elude enforcement of the statute. *See* Defs.' Br. at 46-47.

## VI.     The Rule Properly Interprets the "Personal Collection" Provision.

Plaintiffs' arguments concerning the Rule's definition of "personal collection," and the Court's interpretation in its preliminary injunction opinion, with which Defendants respectfully disagree, both improperly treat the exception to the engaged in the business statute as a standalone statutory provision. Plaintiffs repeat their contention that Defendants fail to explain why the exception should be read narrowly, but the reason is clear when viewing the statutory section as a whole. As Defendants explained, the purpose of the "engaged in the business" statute is to prevent unlicensed dealing of firearms. Defs.' Br. at 40, 42-43. The so-called "safe harbor" provision is explicitly an exception to the general structure and purpose of the statute ("but such term shall not include…") and it must be read in that context. 18 U.S.C. § 921(a)(21)(C).

Plaintiffs' argument that the Court should rely on the preamble to the FOPA to conclude that Congress "would have exempted from criminal liability the ability to buy and sell 'personal protection' firearms" is belied by the very existence of the engaged in the business restrictions. Pls.' Reply Br. at 33. Congress intended to restrict and place controls on the sale of all firearms meeting the elements

14

of the statute with limited exceptions that should not be read to overwhelm the primary rule.[11] Plaintiffs assert that the exception should be read broadly because the FOPA preamble, which again is not an operative part of the statute,[12] states that the GCA as a whole is not intended to place "any undue or unnecessary Federal restrictions or burdens" on the "acquisition, possession, or use" of firearms for various purposes including personal protection. *Id.* at 33; *see* FOPA, Pub. L. 99-308, 100 Stat. 449, 449. Not only does this section not mention sales of firearms, but it also does not state that the GCA will not burden firearm ownership, only that it will not do so unduly or unnecessarily. Congress concluded that the general engaged in the business restrictions on firearms dealing were appropriate and the Rule merely effectuates that determination.

The particular language of the statutory exception and common dictionary definitions also support the Rule's reading of personal collection. *See* Defs.' Br. at 39-43.  Plaintiffs' argument that the definition of "collector" in the same statutory section as the engaged in the business definition should not inform the definition of "collection" is simply incorrect. *See, e.g., Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 803 (5th Cir. 2010) (quoting *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998)) ("identifying 'the established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning.'"). As Defendants noted, courts have specifically rejected Plaintiffs' argument "that the definition of a gun 'collection' in § 921(a)(21)(c) should be read more broadly than the definition of a gun 'collector'" because "[t]here is no case authority to suggest that there is a distinction between the definition of a collector and of a collection in the statute." *United States v. Idarecis*, 164 F.3d 620, 1998 WL 716568, at

---

[11] The Rule does however explicitly clarify that it shall not "be construed as precluding a person from *lawfully acquiring* firearms for self-protection or other lawful personal use." 89 Fed. Reg. at 29,090, PA123 (27 C.F.R. § 478.11) (emphasis added).

[12] S*ee, e.g., Air Prods. & Chems., Inc. v. GSA*, 700 F. Supp. 3d 487, (N.D. Tex. 2023) (quoting *Dist. of Columbia. v. Heller*, 554 U.S. 570, 578 (2008) ("preambles do not 'limit or expand the scope of the operative' text.").

*3-4 (2d Cir. 1998) (table); *see also* 89 Fed. Reg. at 29,038 n.217, PA071 (collecting cases). Plaintiffs are also wrong to imply that the statute only intends to define what it means to be a collector *of* curios and relics and that there could be collectors of other types. *See* Pls.' Br. at 33. There is only one definition of "collector" in the GCA and it applies to any use of the term or related terms. *See* 18 U.S.C. § 921(a)(13) ("The term 'collector' means…").

Plaintiffs restate two final arguments which Defendants previously addressed, Defs.' Br. at 42, and which do not undermine the propriety of the Rule's definition of personal collection. First, Plaintiffs contend that the statute "exempts all firearms in a gun owner's 'personal collection'" even those purchased for "eventual financial gain." Pls.' Reply Br. at 33-34. But this misstates both the statute and the Rule. Both impose restrictions on the sale of firearms accumulated "to predominantly earn a profit." 18 U.S.C. § 921(a)(21)(C); *see also* 18 U.S.C. § 921(a)(22); Rule, 89 Fed. Reg at 29,090, PA123 (27 C.F.R. § 478.11) (personal collection "shall not include any firearm purchased for the purpose of resale with the predominant intent to earn a profit."). However, even though such firearms do not fall within the exception for personal collections, Plaintiffs are correct that a person occasionally selling such a firearm would not necessarily be considered a dealer in firearms; persons who do not meet all of the elements of the engaged in the business definition would not require a license. Similarly, occasional sellers of firearms who happen to profit without that being their predominant intent in entering the firearms market would not meet the elements of the engaged in the business definition. Second, Plaintiffs argue that the Rule improperly conflates "personal collection" and "hobby" firearms which are separately excepted from the general engaged in the business definition under the statute. The definition of personal collection in the Rule maintains and clarifies coverage for all of the same firearms that the statute covers, both personal collection and hobby firearms disjunctively, so there can be no harm to Plaintiffs. *See* Rule, 89 Fed. Reg at 29,090,

PA123 (27 C.F.R. § 478.11) (personal collection means "[p]ersonal firearms that a person accumulates for study, comparison, exhibition …*or* for a hobby….") (emphasis added).

### VII.    The Rule's Presumptions Are a Lawful Exercise of ATF's Authority.

Plaintiffs' reply reiterates without meaningful elaboration their objections to the Rules presumptions. They contend that ATF lacks authority generally to create presumptions, that the presumptions created are not "necessary," and that the specific presumptions conflict with the statute, but as Defendants explained in detail in their opposition Plaintiffs fail to carry their heavy burden in any of their challenges to the presumptions. Defs.' Br. at 47-54.

Plaintiffs first argue that Defendants do not possess authority to include presumptions in the Rule, despite controlling precedent to the contrary. *Id.* at 47-48. Plaintiffs appear to be arguing that agency authority to regulate at all must be granted by Congress. *See* Pls.' Reply Br. at 36. Here, Congress explicitly delegated regulatory authority to ATF. 18 U.S.C. § 926. None of Plaintiffs' arguments undermine ATF's authority to use presumptions when exercising its delegated authority to regulate. Plaintiffs also contend that the Rule's presumptions are not necessary to enforce the statute, but as the Fourth Circuit determined in *Brady*, "[b]ecause § 926 authorizes the [Attorney General] to promulgate those regulations which are 'necessary,' it almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'" 914 F.2d at 479. In other words, whether or not Plaintiffs agree with the determination, the authority rests with ATF to determine what regulations are in fact necessary to carry out the GCA. Nor does Plaintiffs' contention that ATF has occasionally succeeded in prosecuting various individuals for violating GCA licensure requirements, *see* Pls.' Reply Br. at 36, meaningfully challenge ATF's determination, on the basis of its decades of enforcement experience, that the Rule is necessary to facilitate enforcement, *see* Defs.' Br. at 45-46.

Plaintiffs' argument concerning the burden shifting created by the presumptions is unsupported and inconsistent with the Fifth Circuit's prior precedent. The Fifth Circuit has recognized

that rebuttable presumptions shift "only the burden of producing rebutting evidence, not the burden of persuasion." *United States v. Flores*, 53 F.4th 313, 315 (5th Cir. 2022). Were it otherwise, presumptions in administrative proceedings would never be permissible, notwithstanding the "well established" distinction between "the burden of production" and the "burden of persuasion," *United States v. Ruan*, 597 U.S. 450, 463 (2022), and the caselaw discussed in our opposition. Plaintiffs cite language from the Fifth Circuit's decision in *Career Colleges & School of Texas v. United States Department of Education*, 98 F.4th 220 (5th Cir. 2024), but as Defendants explained, that case involved procedures for adjudicating claims by a multi-member group of borrowers, and the presumptions assumed that all borrowers in the group were equally aware of and affected by certain alleged misrepresentations, without individualized proof of each claim (or individualized rebuttal by the defendants). The presumptions here, by contrast, apply only after the government has produced reliable evidence about the specific conduct of the individual at issue in the proceeding; only then does the burden of producing rebuttal evidence shift to the individual. And once all evidence is submitted, the factfinder must still determine whether the government has met its burden of persuasion.

Plaintiffs also contend that the Rule's presumptions allow a single factor to stand in for satisfaction of all elements of the statute and there is "no basis in the text of the Rule" for the requirement that ATF consider the totality of the circumstances. Pls.' Reply Br. at 37. This assertion is facially untrue, the Rule explicitly states that "[a]t all times, the determination of whether a person is engaged in the business of dealing is firearms is based on the totality of the circumstances." Rule, 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(b)). The presumptions can be rebutted by evidence supplied by persons potentially dealing in firearms, but ATF must also consider, in addition to any applicable presumptions, all other information available to it when determining if the elements of the statute are met.

Plaintiffs' further references to *Career Colls.* do not meaningfully challenge the bases on which Defendants distinguished that case from this one in their opposition. *See* Defs.' Br. at 50-51. Plaintiffs do not contradict the point that *Career Colls.* applied the rational nexus test, nor do they make more than conclusory assertions responding to the factual differences between the presumptions in the two cases. *See* Pls. Reply at 38. Plaintiffs also argue that the Rule's presumptions are based merely on "ipse dixit" but as Defendants explained in detail that is neither true nor the correct standard for challenging presumptions. *See* Defs.' Br. at 48-51. Indeed, Plaintiffs' argument that the presumptions rely in part on precedent that they deem irrelevant conflicts with their contention that the presumptions are supported only by unexplained agency experience. *See* Pls.' Reply Br. at 38.

Plaintiffs' only attempt to actually challenge the presumptions under the appropriate rational nexus standard also falls far short. First, Plaintiffs improperly attempt to challenge the presumptions in gross rather than explaining how each is individually and entirely irrational as required. *See Cole v. U.S. Dep't of Agric.*, 33 F.3d 1263, 1267-68 (11th Cir. 1994) (explaining the standard and burden for regulatory presumptions). Second, Plaintiffs premise their argument entirely on a single study with a limited scope for review and a limited timeframe, notwithstanding the Rule's extensive explanation of the various support for the presumptions including decades of enforcement experience. *See* Defs.' Br. at 51-52. The Rule does more than enough in its extensive explanations to justify each presumption, but at bottom the burden rests exclusively on the Plaintiffs to prove that for there is no rational connection between the fact proven and the fact to be presumed. Plaintiffs hardly even attempt to meet this heavy burden.

Finally, Plaintiffs reiterate their position that the presumptions conflict with the statute, resting primarily on their arguments that the statute requires actual sales, or both actual purchases and actual sales, and actual profits, which for the reasons explained *supra* is incorrect. But as Defendants explained, even if Plaintiffs' reading were correct, it would not invalidate the presumptions because

none of them render the specified conduct a violation of the statute. Instead, the presumptions permit ATF to conclude, pending reliable evidence to the contrary, that persons engaged in that conduct are sufficiently likely to actually be engaged in the business of dealing. Defs.' Mem at 52-54.

As to the particular presumptions, Plaintiffs argue that repeatedly offering to resell firearms does not indicate a likelihood of being engaged in the business because every owner who has sold a firearm has been willing and able to sell more. *See* Pls.' Reply Br. at 39-40. Plaintiffs have no factual support for this broad assertion, but more importantly, the fact that many people are willing and able to make unlicensed firearms sales supports rather than disproves the rational nexus of the presumption. Plaintiffs also point to what they believe to be exceptional situations in which firearms were resold without accompanying purchases to argue that the presumptions cannot separate purchases and resales. *See* Pls.' Reply Br. at 40. But exceptions, if indeed these are exceptions, do not invalidate the rational nexus of the presumptions. The presumptions are by definition rebuttable, and therefore assume that it is possible that certain situations will arise in which the presumed fact, satisfaction of the elements of the statute, will not follow from the proven fact.[13]

Overall, Plaintiffs have not meaningfully challenged the underlying rational nexuses of the individual presumptions and therefore they have failed to carry their burden to invalidate them.

### VIII.   The Rule of Lenity Is Inapplicable.

Because Plaintiffs identify no "grievous ambiguity" in the GCA that the Rule purportedly construes against potential criminal defendants, *Barber v. Thomas*, 560 U.S. 474, 488 (2010), the rule of lenity has no application. Defs.' Br. 54. Plaintiffs assert that the rule of lenity applies because ATF

---

[13] Plaintiffs also assert that the presumptions are impermissible because they were politically motivated. *See* Pls.' Reply Br. at 40. This allegation is illogical as it applies to the presumptions specifically but also irrelevant. All legislation is political in nature and the Rule as a whole exists to effectuate the legislative changes of the BSCA. Moreover, even if the particular presumptions were somehow politically motivated that would not carry Plaintiffs' burden to demonstrate that for each one individually there is no rational nexus between the proven and presumed facts.

stated that the Rule clarifies the meaning of being engaged in the business. Pls.' Reply Br. 41; *see* 89

Fed. Reg. at 28,968, PA001. But ATF explained that it sought to clarify the statute because "ATF

observed a significant level of noncompliance with the GCA's licensing requirements," 89 Fed. Reg.

at 29,086, PA119, not based on any grievous ambiguity in the GCA.

> **IX.    The Rule Comports with the Second Amendment.**

As Defendants explained, the Rule does not violate the Second Amendment for two

independently sufficient reasons. First, it is a "presumptively lawful" regulation of the "commercial

sale of arms," *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008), that is not subject to

the historical test set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and

*United States v. Rahimi*, 602 U.S. 680 (2024). Defs.' Br. 54-56. Second, the Rule passes that historical

test because it is "consistent with the principle[] that underpin[s] our regulatory tradition," *Rahimi*, 602

U.S. at 692, that the government may regulate firearms commerce to promote public safety. Defs.' Br.

57-58. Plaintiffs' rebuttals to these points are unpersuasive.

Plaintiffs    attempt    to    distinguish    the    Supreme    Court's    statement    that    "laws

imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful

regulatory measures," *Heller*, 554 U.S. at 626-27 & n.26, by arguing that the Rule is not a regulation on

commercial sales. Pls.' Reply Br. 41-42. That is wrong. By its terms, the Rule is limited to those who

engage in the business of dealing, with a definition that matches the GCA's definition. *See* 89 Fed.

Reg. at 29,091 (27 C.F.R. § 478.13(a)), PA124.

Plaintiffs also argue that even if the Rule is a regulation on commercial sales, it is still subject

to *Bruen*'s historical test. Pls.' Reply Br. 42-43. But the Fifth Circuit rejected this argument in *McRorey*

*v. Garland*, 99 F.4th 831 (5th Cir. 2024), explaining that Supreme Court precedent "distinguish[es] the

treatment of prohibitions on 'keep[ing] and bear[ing]' . . . and other ancillary firearm regulations such

as background checks preceding sale." *Id.* at 836-37 (quoting U.S. Const., amend. II). Therefore,

restrictions on firearms transactions are "presumptively lawful," and not "subject to constitutional challenge under *Bruen*'s rigorous historical requirement" unless they are "so burdensome that they act as *de facto* prohibitions on acquisition." *Id.* at 838 n.18, 839.[14] Plaintiffs may disagree with *McRorey*, but such arguments must be directed to the Supreme Court or the en banc Fifth Circuit, not this Court.[15]

Even if historical analysis were required, the Rule is "consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692; *see* Defs.' Br. 57-58. Plaintiffs argue that the Rule is unconstitutional because each specific historical example differs in some way with the Rule, Pls.' Reply Br. 44, but that argument treats our law as "trapped in amber," *Rahimi*, 602 U.S. at 691, which *Rahimi* condemned. Plaintiffs discount a 1794 federal law banning firearms exports because it was temporary. But such laws enacted by Founding-era Congresses with many Framers in their ranks are "of the greatest weight in the interpretation of" the Constitution. *Myers v. United States*, 272 U.S. 52, 174-75 (1926). That law shows that the framers tolerated a far more intrusive restriction on firearms transactions, an outright ban, than the modest licensing requirements implemented by the Rule. Plaintiffs dismiss gunpowder laws as mere fire-safety laws, Pls' Br. 44, but while gunpowder *storage* laws were motivated by fire safety, *Heller*, 554 U.S. at 684 (Breyer, J., dissenting), Defendants cited laws requiring licensing or inspection to export or sell gunpowder. Defs.' Br. 57; 89 Fed. Reg. at 29,003 n.151, PA036. Much like the Rule, those laws protected public safety by regulating access to a necessary component of operating a firearm. Finally, Plaintiffs minimize laws restricting firearms commerce with American Indians by positing that American Indians were not then part of the political

---

[14] Plaintiffs accuse Defendants of trying to "escape their historical burden through dicta shortcut," Pls.' Reply Br. 43, but in *McRorey*, which is also binding precedent, the Fifth Circuit considered itself "generally bound" by Supreme Court dicta and relied on that dicta to conclude that regulations on commercial sales were not subject to *Bruen*'s historical test. *McRorey*, 99 F.4th at 837.

[15] *McRorey* rebuts Plaintiffs' suggestion that only longstanding commercial regulations are presumptively lawful. Pls'. Br. 41. *McRorey* concluded the BSCA's expansion of background checks, enacted in 2022, was presumptively lawful and exempt from *Bruen*'s historical test. 99 F.4th at 833-34.

community. Pls.' Reply Br. 44. Even if that is true, those laws restricted the rights of American colonists, who were undoubtedly part of the political community, to sell firearms. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017) (en banc).

### X.    The Rule Does Not Violate the Fourth Amendment.

Plaintiffs lack standing to challenge the Rule on Fourth Amendment grounds nor, and in any event their claim fails in light of controlling precedent upholding the GCA's inspection regime. For the reasons explained in Defendants opposition, Defs.' Br. at 59, no Plaintiff is under any actual or imminent threat of inspection. Plaintiffs' apparent arguments that other non-plaintiffs might be subject to enforcement and that the Plaintiffs have some freestanding privacy right in not becoming licensed in the first instance, Pls.' Reply Br. at 45, clearly cannot satisfy the Article III standard.

Substantively, Plaintiffs' Fourth Amendment argument objects to the GCA inspection regime and not anything unique to the Rule. As discussed in Defendants' opposition, the Supreme Court in *United States v. Biswell* has already rejected Plaintiffs' arguments. Defs.' Br. at 60. Plaintiffs complain that we did not discuss some post-*Biswell* Fourth Amendment cases, Pls.' Reply Br. at 46, but *Biswell* remains the law and this Court remains bound to follow it. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023);[16] *see also Johnson v. Smith*, 104 F.4th 153, 167 (10th Cir. 2024) (rejecting the argument that the same Fourth Amendment cases relied upon by Plaintiff altered the Supreme Court's "closely-regulated-industry" inspection jurisprudence).

Finally, Plaintiffs cite nothing supporting their contention that a Fourth Amendment issue arises because some people might deal in firearms from home rather than business premises. *See* Pls.' Reply Br. at 55-56. The firearms business is "pervasively regulated" no matter where it is conducted. *Biswell*, 406 U.S. at 316. Indeed, although they attempt to undermine its analysis, Plaintiffs cite a clear

---

[16] This fact also forecloses Plaintiffs' attempt to argue that the Second Amendment analysis in *Bruen* invalidates the Supreme Court's existing Fourth Amendment jurisprudence. *See* Pls.' Reply Br. at 45.

case in support of this proposition. *See* Pls.' Reply Br. at 56 n.31. "It cannot make a difference that Cerri chose to use his *home* as an alternative premises for engaging in the business of a gun dealer. When used as a place of business, the home has the same status under the Fourth Amendment as any other place of business." *United States v. Cerri*, 753 F.2d 61, 64 (7th Cir. 1985).

## XI.    The Rule Is Not Unconstitutionally Vague.

Plaintiffs fail to meet their heavy burden on a facial vagueness challenge to show that the Rule "is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982); *see* Defs.' Br. 60-63. Plaintiffs now argue that there are "several areas where the Rule and its statute simply depart on meaning." Pls.' Reply Br. 57. That is an (incorrect) argument that the Rule *misinterprets* the GCA, not that the Rule "fails to provide a person of ordinary intelligence fair notice" of the Rule's interpretation. *United States v. Williams*, 553 U.S. 285, 304 (2008).

## XII.    The Rule Does Not Violate the Separation of Powers.

Plaintiffs' argument that ATF has violated the separation of powers by "expanding the scope of the criminal law" beyond "the purview of Congress," Pls.' Reply Br. 48-49, is meritless. As explained, the Rule exercises authority delegated by Congress to implement the GCA. *See supra*, pp. __. Plaintiffs' argument further underscores Defendants' point that this claim merely repackages their statutory authority claim in constitutional clothing. Defs.' Br. 63. If, as Defendants contend, the Rule is within statutory authority conferred by Congress, it cannot violate the separation of powers. If, as Plaintiffs (wrongly) contend, the Rule exceeds statutory authority, then the Rule would violate the APA. *See* 5 U.S.C. § 706(2). The separation of powers claim adds nothing.

## XIII.    Any Relief Should Be Appropriately Limited.

If the Court awards any relief, it should limit relief to the parties, not issue universal vacatur. Defs.' Br. 64-65. Although Defendants acknowledge that their argument that the APA does not authorize universal vacatur is currently foreclosed in this circuit, Defs.' Br. 64, Plaintiffs are incorrect

that Fifth Circuit precedent makes universal vacatur mandatory. Pls' Reply Br. 49. *See Tex. Med. Ass'n v. U.S. Dept. of Health and Human Servs.*, 110 F.4th 762, 779-80 (5th Cir. 2024) ("remand without vacatur" is sometimes appropriate); *Texas Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 120 F.4th 494, 510 (5th Cir. 2024) ("party-specific vacatur is definitely appropriate" in some circumstances). If there ever is a case where equitable concerns weigh against universal relief, it is here, where nearly half of the states have filed an appellate amicus brief in this very case supporting the Rule as vital to public safety. *See* Defs.' Br. 65. Tellingly, because the equities weigh against universal vacatur, Plaintiffs urge this Court simply to ignore "the equities and public interests," Pls' Reply Br. 50 n.33, but this request turns on their incorrect argument that universal vacatur is mandatory.

The Court should also limit relief to any specific provisions of the Rule held unlawful. Defs.' Br. 64-65.[17] Plaintiffs concede that a rule is severable if the agency would intend for lawful portions to stand on their own, Pls' Reply Br. 49, and the Rule contains a clear statement that ATF so intends the Rule to be severable to the maximum extent possible. *See* 89 Fed. Reg. at 29,070, PA103.

## XIV.   Conclusion

For the reasons contained in Defendants' motion and opposition, this reply, and the materials submitted as the parties' appendices, the court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated: January 7, 2025                                    Respectfully submitted,

                                                         BRIAN M. BOYNTON
                                                         Principal Deputy Assistant Attorney General

---

[17] Notably, many of Plaintiffs' merits arguments attack specific provisions of the Rule. *See* Pls.' Reply Br. 22-28 (attacking 27 C.F.R. § 478.13(b), which rejects numerical thresholds); *id.* at 28-30 (attacking § 478.13(d)(1), which rejects requirement of actual profit); *id.* at 31-32 (attacking provisions regulating former licensees); *id.* at 32-34 (attacking Rule's definition of "personal collection"); *id.* at 36-41 (attacking Rule's presumptions in 27 C.F.R. § 478.13(c), (d)(2)).

LESLEY FARBY
Deputy Director, Federal Programs Branch

*/s/ Keri L. Berman*
KERI L. BERMAN
JEREMY S.B. NEWMAN
ZACHARY W. SHERWOOD
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
keri.l.berman@usdoj.gov
(202) 305-7538

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On January 7, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Keri L. Berman*
KERI L. BERMAN
Trial Attorney
U.S. Department of Justice

27